# United States Court of Appeals for the Federal Circuit

2007-1385

G. DAVID JANG, M.D.,

Plaintiff-Appellant,

v.

BOSTON SCIENTIFIC CORPORATION
and SCIMED LIFE SYSTEMS, INC.,

Defendants-Appellees.



## Judgment

ON APPEAL from the     United States District Court for the Central District of California

in CASE NO(S).     05-CV-00426

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**<u>VACATED AND REMANDED</u>**

ENTERED BY ORDER OF THE COURT

DATED JUL 1 5 2008

Jan Horbaly, Clerk /kw

**ISSUED AS A MANDATE:** AUG - 5 2008

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _____ Date: 8/5/08

# United States Court of Appeals for the Federal Circuit

2007-1385

G. DAVID JANG, M.D.,

Plaintiff-Appellant,

v.

BOSTON SCIENTIFIC CORPORATION
and SCIMED LIFE SYSTEMS, INC.,

Defendants-Appellees.

Thomas C. Mundell, Mundell, Odlum & Haws, LLP of Westlake Village, California, argued for Plaintiff-Appellant.

Matthew M. Wolf, Howrey LLP, of Washington, DC, argued for Defendants-Appellees.

Appealed from: United States District Court for the Central District of California

Judge Virginia A. Phillips

# United States Court of Appeals for the Federal Circuit

2007-1385

G. DAVID JANG, M.D.,

                                      Plaintiff-Appellant,

v.

BOSTON SCIENTIFIC CORPORATION
and SCIMED LIFE SYSTEMS, INC.,

                                      Defendants-Appellees.

Appeal from the United States District Court for the Central District of California in case no. 05-CV-00426, Judge Virginia A. Phillips.

DECIDED: July 15, 2008

Before GAJARSA, LINN, and DYK, Circuit Judges.

DYK, Circuit Judge.

    In this contract case, plaintiff G. David Jang, M.D., alleges that defendants, Boston Scientific Corporation ("Boston Scientific") and Scimed Life Systems Incorporated ("Scimed") breached a contract with Jang by failing to make required payments. The right to these payments depends on whether the sale of certain devices by Boston Scientific and Scimed were "covered by" (i.e., would have infringed) U.S. Patents No. 5,922,021 and 5,954,743 ("the '021 patent" and "the '743 patent," respectively), originally issued to Jang and later assigned to defendants. The district court issued a claim construction order, and the parties entered into a stipulation

conceding that infringement could not be shown if the district court's claim constructions were upheld on appeal. The stipulation did not explain whether Jang's success on appeal in overturning any particular claim construction issue would, in fact, affect the infringement dispute. At oral argument Jang conceded that resolution of the dispute, at least as to one of the district court's claim constructions, would not affect infringement, and defendants appeared to agree. Moreover, even as to those claim construction rulings that could affect infringement, it is not clear how the claim constructions would render the accused products infringing or noninfringing. As a result of the ambiguity both as to which claim construction rulings affect infringement and as to how those rulings relate to the accused product, we vacate the judgment and remand to the district court for clarification.

## BACKGROUND

Jang is the named inventor of the '021 and '743 patents, relating to the design or architecture of intravascular stents, tube-shaped mesh devices used to treat certain forms of cardiac disease. Intravascular stents are inserted in a blood vessel and then expanded (usually by use of a balloon catheter) to prop open a blocked or weakened section of the vessel. In particular, the patents relate to the particular patterns of repeated shapes that make up the stents and that allow them, among other things, to exhibit radial strength when expanded, to be adequately flexible during insertion, and to avoid foreshortening in length during expansion. See '021 patent, col. 3, ll.23-46; '743 patent, col.3, ll.13-34.

Through a contract executed in 2002, Jang assigned the '021 and '743 patents to Boston Scientific and Scimed. In exchange, Boston Scientific and Scimed agreed to

pay $50 million immediately and agreed to pay an additional amount (up to $110 million) based on the sales of commercial products covered by the assigned patents if such products were produced, or a noncommercialization payment of $10 million if such products were not produced. Boston Scientific and Scimed developed and sold several stent designs that they asserted were not covered by the assigned '021 and '743 patents, and paid Jang only the initial $50 million payment and the $10 million noncommercialization fee.

Jang filed his initial complaint in this action in the District Court for the Central District of California on May 19, 2005. Boston Scientific and Scimed answered and counterclaimed, and Jang filed a First Amended Complaint in March 2006. Jang's First Amended Complaint asserted, as the third alternative claim for relief, a claim for breach of contract against defendants. Jang's breach of contract claim asserted that four models of commercial intravascular stents sold by Boston Scientific and Scimed were "covered by" either or both of the '021 and '743 patents (i.e., would infringe the patents), and thus that Jang was entitled to an additional payment of $100 million under the assignment agreement.[1] The parties' briefs on appeal neglect to advise us which claims are asserted against the accused products. The district court held a claim construction hearing on May 30, 2006. By apparent agreement of the parties, the claim construction hearing focused on terms used in claim 1 of each of the asserted patents.

The district court issued a claim construction order on August 24, 2006, construing the contested claim terms: "expansion column," "connecting strut column,"

---

[1] The first claim for relief in Jang's First Amended Complaint, seeking rescission of the contract, and the fourth claim for relief, asserting a breach of fiduciary

"connecting strut," "expansion strut," "expansion strut pair," "proximal," "distal," and "radius of curvature."

After the district court's claim construction order was issued, the parties entered a stipulation, agreeing that under the district court's claim construction, Jang could not prove that the accused products were "covered by" (i.e., infringed) the asserted patents. Accordingly, the parties agreed that partial summary judgment in favor of Boston Scientific and Scimed should be entered on Jang's breach of contract claim. The stipulation expressly preserved Jang's ability to challenge the claim construction order on appeal. The stipulation did not explain why the district court's claim construction resulted in non-liability, other than to state that, "under the Court's existing Claim Construction Order, Dr. Jang cannot prove that the Express stent is covered by any claims of U.S. Patent Nos. 5,922,021 and 5,954,743 . . . ." J.A. at 19.[2] On September

---

duty, were also based, in part, on the failure by Boston Scientific and Scimed to make the additional disputed $100 million payment.

[2] In relevant part, the stipulation provided:

On or about August 24, 2006, the Court issued a Claim Construction Order ("the Order"), which the parties received on August 28, 2006. Plaintiff Dr. Jang believes that the Court's Order is incorrect in several fundamental respects, and he intends to seek appellate review of the Court's Order in the appropriate appellate court. Nonetheless, the parties agree that, under the Court's existing Claim Construction Order, Dr. Jang cannot prove that the Express stent is covered by any claims of U.S. Patent Nos. 5,922,021 and 5,954,743, and therefore cannot prove that Scimed breached the Assignment Agreement with respect to those patents.

Accordingly, in order to conserve the resources of both the parties and the Court, see, e.g., York Prods., Inc. v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1571 (Fed. Cir. 1996), the parties hereby stipulate and agree, subject to the approval of this Court, and further subject to the full and complete preservation of Dr. Jang's right to appeal the Order, that an order of partial summary judgment should now be entered against Dr. Jang and in favor of Scimed on Dr. Jang's Third Claim

2007-1385                                        4

18, 2006, the district court entered partial summary judgment as to the breach of contract claim based on the parties' joint stipulation requesting this disposition. The judgment did not explain how any of the disputed claim construction rulings related to the accused devices.

This judgment was not yet final as to all claims, however, as other claims and counterclaims remained outstanding. On January 30, 2007, the district court entered partial summary judgment in favor of defendants as to two of Jang's claims seeking rescission of the agreement with respect to the ownership of certain other patents relating to balloon angioplasty that originally issued to Jang. On May 8, 2007, the district court signed a proposed consent judgment drafted by the parties which incorporated the two prior judgments into a final judgment and granted declaratory relief that the disputed balloon angioplasty patents "are not within the scope of Dr. Jang's assignment obligations to [Boston Scientific] under any current or past agreement

---

for Relief for Breach of Contract against Scimed. Similarly, because the Defendants' first and second counterclaims are now moot, the parties also stipulate and agree, subject to the approval of this Court, that an order should be entered dismissing those counterclaims without prejudice.

This Stipulation is wholly predicated on Dr. Jang's right to obtain appellate review of the Court's Claim Construction Order. By entering into this Stipulation, the parties agree that Dr. Jang is not waiving, but rather is expressly reserving, his right to obtain appellate review of the Court's Claim Construction Order and to proceed further with his Third Claim for Relief on remand from the Court of Appeals should the Court of Appeals reverse or vacate this Court's Claim Construction Order in whole or in part. Indeed, Dr. Jang's fight to appeal the Court's Claim Construction Order is an essential condition of this Stipulation, and if the Court does not agree that Dr. Jang is fully preserving all of his rights to obtain appellate review of the Claim Construction Order, then Dr. Jang does not consent to the entry of an order granting partial summary judgment against him on his Third Claim for Relief and requests that the Court reject this Stipulation.

between the parties." J.A. at 29. The consent judgment also preserved Jang's right to appeal the district court's claim construction rulings with respect to the '021 and '743 patents, and preserved Jang's "right to pursue his breach of fiduciary duty and rescission claims in the event the Court of Appeals reverses or vacates [the district court's] claim construction order." Id. at 30.[3]

Jang timely appealed from the final consent judgment, challenging only the district court's claim construction with respect to the '021 and '743 patents. At oral argument on appeal, counsel for plaintiff admitted that resolution of at least one of the claim construction disputes would not affect the issue of infringement.[4] Defendants also acknowledged that the dispute as to whether "expansion column" includes a "vertical" or "tubular" requirement "is not crucial here" and would not affect the issue of infringement. Br. of Defendants-Appellees at 29 n.5. Counsel for defendants again admitted at oral argument that that he did not consider resolution of this dispute

---

J.A. at 19-21 (emphasis added and original emphases omitted).
  [3] In full, this paragraph of the consent judgment provided as follows:

> Dr. Jang waives his right to appeal the Court's order dated January 30, 2007, granting in part and denying in part [Boston Scientific's] motion for summary judgment; such waiver, this Consent Judgment, and the Court's Order dated January 30, 2007, are all without prejudice to Dr. Jang's right to pursue his breach of fiduciary duty and rescission claims in the event the Court of Appeals reverses or vacates this Court's claim construction order dated August 25, 2006, to the extent such claims are not based upon the now-resolved dispute between the parties pertaining to the scope of Dr. Jang's assignment obligations under the Assignment Agreement and Employment Agreement . . . .

J.A. at 30.
  [4] In relevant part, counsel for plaintiff stated: "In fact, I don't think that the issue of tubularness versus non-tubularness has anything to do with infringement, and similarly there is another word in there, vertical--a vertical extension of space as

2007-1385                                6

relevant to the issue of infringement. Oral Argument at 34:50-35:04 ("[A]s to tubular, as I believe we suggested in our brief, we do not think that is a material dispute and we would not have addressed it [if Jang had not]. . . ."). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[5]

## DISCUSSION

### I

It is clear that a judgment entered based on a stipulation of the parties may in appropriate circumstances be reviewed on appeal. Indeed, this court has reviewed stipulated judgments based on claim construction when the judgments were entered with the express purpose of obtaining appellate review of the claim construction. See, e.g., Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276 (Fed. Cir. 2008); Ventana Med. Sys., Inc. v. Biogenex Labs., Inc., 473 F.3d 1173, 1177 (Fed. Cir. 2006); Generation II Orthotics Inc. v. Med. Tech. Inc., 263 F.3d 1356, 1363 (Fed. Cir. 2001); Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1330 (Fed. Cir. 2001). However, a consent judgment must satisfy the same standards of appellate jurisdiction as any other judgment entered by the district court. See, e.g., United States v. Procter & Gamble

---

opposed to a ring of space, that's another one that I don't think is pertinent to the issue of infringement." Oral Argument at 2:43-3:03.

[5] Although this case arises from a contract claim, rather than directly as a patent infringement claim, Jang's right to relief on the contract claim as asserted in the complaint depends on an issue of federal patent law—whether the stents sold by Boston Scientific and Scimed would have infringed the '021 and '743 patents. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988) (explaining that this court has authority over appeals in cases where, inter alia, "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims"); U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (concluding that "patent law is a necessary element of

Co., 356 U.S. 677, 680-81 (1958). A judgment is reviewable only if it is possible for the appellate court to ascertain the basis for the judgment challenged on appeal.

The Supreme Court has recognized the authority to remand for clarification judgments that suffer from ambiguity, particularly when the ambiguity implicates jurisdictional concerns. See, e.g., Bush v. Palm Beach County Canvassing Bd., 531 U.S. 70, 78 (2000) (remanding because there was "'considerable uncertainty as to the precise grounds for the decision[]'" from which the appeal was taken (quoting Minnesota v. Nat'l Tea Co., 309 U.S. 551, 555 (1940))); see also Dennison Mfg. Co. v. Panduit Corp., 475 U.S. 809, 811 (1986) (remanding for clarification due to the "lack [of] an adequate explanation of the basis for the Court of Appeals' judgment"). The Courts of Appeals in general and our court in particular have recognized that a remand for clarification is appropriate where a judgment is ambiguous.[6]

---

U.S. Valves' breach of contract action" because "U.S. Valves must show that Dray sold valves that were covered by the licensed patents" to prevail on that claim).

[6] See, e.g., Nazomi Commc'ns, Inc. v. ARM Holdings, PLC, 403 F.3d 1364, 1371-72 (Fed. Cir. 2005) (remanding for clarification of noninfringement ruling due to "the absence of findings of fact on the nature of the accused device" and of claim construction based on inadequate analysis that did not "supply [a] basis . . . sufficient for a meaningful review"); Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1377 (Fed. Cir. 2001) (remanding for clarification of conclusion that case was not exceptional for purposes of attorney's fees award because "the district court's failure to provide any findings or reasoning prevents us from reviewing its decision"); Telectronics Pacing Sys., Inc. v. Ventritex, Inc., 982 F.2d 1520, 1526 (Fed Cir. 1992) (noting that a remand for clarification of a judgment entered through summary judgment is appropriate "if the 'district court's underlying holdings would otherwise be ambiguous or inascertainable'" (quoting Hanson v. Aetna Life & Cas., 625 F.2d 573, 575 (5th Cir. 1980))); Bott v. Four Star Corp., 807 F.2d 1567, 1574-75 (Fed. Cir. 1986) (remanding for clarification of ambiguity as to the amount of damages the district court intended to award), overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020 (Fed. Cir. 1992); Cable Elec. Prods., Inc. v. Genmark, Inc., 770 F.2d 1015, 1020 (Fed. Cir. 1985) (recognizing that remand for clarification may be necessary when the logic of a judgment under review "cannot be discerned"), overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir.

II

In this case, the consent judgment under review suffers from two ambiguities. As a result, we conclude that it is appropriate to remand this case to the district court for clarification.

A

First, it is impossible to discern from the stiplulated judgment which of the district court's claim construction rulings would actually affect the issue of infringement. Here, plaintiff challenges seven aspects of the district court's claim construction on appeal: (1) the interpretation of "expansion column" to require a "tubular" structure and the failure to require that the expansion column be "vertical;" (2) the interpretation of "expansion column" as being formed "solely" of expansion strut pairs; (3) the interpretation of "connecting strut column" as formed "solely" of connecting struts; (4)

---

1999); see also In re Frillette, 423 F.2d 1397, 1400-01 (CCPA 1970) (remanding for clarification of ambiguity as to whether patent application was rejected for lack of enablement or for indefiniteness of claim language).

Our sister circuits have similarly recognized the authority to remand for clarification of ambiguous judgments, and have applied this principle both in the context of judgments entered through summary judgment and other ambiguous orders. See, e.g., Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1081 (9th Cir. 2000) (per curiam) ("[W]hen multiple grounds are presented by the movant and the reasons for the district court's decision are not otherwise clear from the record, [the court] may vacate a summary judgment and remand for a statement of reasons."); Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994) (remanding for clarification when it was unclear what formed the basis for district court's entry of summary judgment); E.E.O.C. v. Erection Co., 900 F.2d 168, 170 (9th Cir. 1990) (remanding for clarification of ambiguous order sealing consent decree); Hanson, 625 F.2d at 575 (remanding for clarification of basis for judgment entered through summary judgment order); Bonanno v. Thomas, 309 F.2d 320, 321 (9th Cir. 1962) (remanding for clarification as to basis for order of dismissal).

Since the issue concerning the need for clarification is inherently related to patent law (and our claim construction jurisprudence) this issue is governed by Federal Circuit law. See Diego Inc. v. Audible, Inc., 505 F.3d 1362, 1366 (Fed. Cir. 2007) (issues "unique to patent law" governed by Federal Circuit law).

2007-1385                              9

the interpretation of "connecting strut column" as requiring the individual connecting struts within the column to be unattached to each other; (5) the interpretation of "connecting strut" to require that it connect struts in "adjacent" expansion columns; (6) the interpretation of "expansion strut" to mean a strut in an expansion column; and (7) the interpretation of "expansion strut pair" to require a combination of two adjacent expansion struts attached on one side and not the other.

The parties extensively brief the first of these issues, whether the term "expansion column" should be interpreted to require a tubular structure. At oral argument, counsel for plaintiff conceded that the district court's construction of the claim term "expansion column" to include a "tubular" rather than a "vertical" limitation was not "pertinent to the issue of infringement." Oral Argument at 2:43-3:03. Defendants' appellate brief concedes that the issue concerning any "tubular" or "vertical" limitation has no effect on infringement, and counsel for defendants again admitted at oral argument that there was not "a material dispute" between the parties as to this issue. Oral Argument at 34:50-35:04. It appears possible that other claim construction disputes may also not affect infringement.[7] Given the sparse record and the lack of any explanation as to which constructions would support a judgment of infringement, we cannot determine with certainty which of the claim construction disputes actually has an effect on the infringement issue.

If we did not require clarification of the stipulated judgment in this case, we would risk rendering an advisory opinion as to claim construction issues that do not actually

---

[7] At oral argument, Jang's counsel listed the claim construction issues that did and that did not affect infringement, but omitted two claim construction issues raised

affect the infringement controversy between the parties. The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties. Coffman v. Breeze, 323 U.S. 316, 322-24 (1945) ("[F]or purposes of the present suit, the constitutionality of the Act is without legal significance . . . . The prayer of the bill of complaint that the Act be declared unconstitutional is thus but a request for an advisory opinion . . . ."); see also Calderon v. Ashmus, 523 U.S. 740, 747 (1998) (refusing to apply statute to hypothetical dispute because the resulting determination would be only an advisory opinion and would not "resolve the entire case or controversy"); United States v. Evans, 213 U.S. 297, 300-01 (1909) (refusing on advisory opinion grounds to consider merits of government's appeal as to jury instructions in criminal case where statute conferring appellate jurisdiction required that acquittal could not be set aside); Yazoo & Miss. Valley R.R. v. Jackson Vinegar Co., 226 U.S. 217, 219-20 (1912) (refusing to decide dispute as to constitutionality of statute in hypothetical contexts that would not affect the outcome of the case before the court). These concerns strongly counsel in favor of a remand for clarification of the judgment.

B

Second, the stipulated judgment provides no factual context for the claim construction issues presented by the parties. In particular, nothing in the stipulated judgment provides any context with respect to how the disputed claim construction rulings relate to the accused products.

---

in Jang's brief, that is, the district court's construction of the terms "expansion strut" and "expansion strut pair."

2007-1385                                  11

We have previously emphasized the importance of the context provided by an analysis of the accused device when ruling on claim construction and the problems presented by construing claims in the absence of such context. For example, in Lava Trading, Inc. v. Sonic Trading Management, LLC, we noted the difficulty of construing claims without the ability to compare the accused products to the asserted claims:

> Without knowledge of the accused products, this court cannot assess the accuracy of the infringement judgment under review and lacks a proper context for an accurate claim construction. . . . Without the vital contextual knowledge of the accused products or processes, this appeal takes on the attributes of something akin to an advisory opinion on the scope of the [asserted] patent. The problems with such an appeal, even if within this court's jurisdiction, have been noted in many of the court's prior cases.

445 F.3d 1348, 1350 (Fed. Cir. 2006) (internal citation omitted) (citing Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322 (Fed. Cir. 2006)); see also Mass. Inst. of Tech. v. Abacus Software, 462 F.3d 1344, 1350 (Fed. Cir. 2006) (noting "a problem with the mechanism by which th[e] case ha[d] been litigated . . . [because] the record d[id] not disclose the nature of the accused devices"). Indeed, a better understanding of the context of the claim construction as a case proceeds through an infringement determination can appropriately lead a district court to change its initial claim construction. See, e.g., Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1412 (Fed. Cir. 2004); Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art.").

Where a stipulated judgment of noninfringement has been entered based on a district court's claim construction and the stipulated judgment itself does not explain the

basis for the infringement determination, we have sometimes elected to proceed with an appeal challenging the claim construction because we could sufficiently infer the factual context from the record. See, e.g., Lava Trading, 445 F.3d at 1351; Mass. Inst. of Tech., 462 F.3d at 1351. However, where this has not been possible, we have declined to resolve the claim construction issue. See Wilson, 442 F.3d at 1331 (noting that the context for a "rigid" limitation included in the district court's claim construction was unclear and refusing to reach a final construction in this regard on appeal while inviting the district court to "reconsider its construction" as to the "rigid" limitation on a fuller record).

This is not a case in which the impact of the constructions is obvious from a simple examination of the record documents. While the record contains depictions of the accused products and the parties offer cryptic comments in their appeal briefs on the infringement issue, there is no explanation in the stipulation as to why the accused products would not infringe under the district court's claim construction or why they would infringe under the alternative claim constructions offered by Jang. Nor is it possible to infer this information from the record. It is, in fact, not even clear from the stipulation or from the briefs on appeal which claims of the two patents are asserted. The lack of information concerning infringement makes it difficult to comprehend the claim construction issues. In other words, on this record, we lack "a proper context for an accurate claim construction." Lava Trading, 445 F.3d at 1350. Under these circumstances we conclude that a remand for clarification is both necessary and appropriate.

## CONCLUSION

For the reasons set forth above, we vacate the "Consent Judgment" entered by the district court, and remand this case for further proceedings not inconsistent with this opinion.

VACATED and REMANDED

COSTS

No costs.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _Valerie____  Date: _8/5/08_