Douglas E. Lumish, #183863
E-mail: dlumish@kasowitz.com
Jeffrey G. Homrig, #215890
E-mail: jhomrig@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone (415) 655-4310
Facsimile (415) 651-8703

Thomas C. Mundell, #99081
E-mail: tmundell@mohlaw.net
MUNDELL, ODLUM & HAWS, LLP
8300 Utica Avenue, Suite 200
Rancho Cucamonga, CA 91730
Telephone (909) 948-1918
Facsimile (909) 948-0225

Attorneys for Plaintiff
G. David Jang, M.D.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **G. DAVID JANG, M.D.**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**BOSTON SCIENTIFIC SCIMED, INC.**, a corporation; and **BOSTON SCIENTIFIC CORPORATION**, a corporation,<br><br>Defendants. | Case No. CV-05-00426 VAP (CTx)<br><br>**REVISED AND AMENDED STIPULATION AND ORDER: (1) GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF ON PLAINTIFF'S THIRD CLAIM FOR RELIEF FOR BREACH OF CONTRACT AGAINST DEFENDANT SCIMED LIFE SYSTEMS, INC., AND (2) DISMISSING WITHOUT PREJUDICE DEFENDANTS' FIRST AND SECOND COUNTERCLAIMS** |

Plaintiff G. David Jang, M.D. ("Dr. Jang") and Defendants Boston Scientific Corporation ("BSC") and Scimed Life Systems, Inc. ("Scimed") hereby stipulate and agree, by and through their undersigned counsel of record, subject to the terms set forth below, including but not limited to the preservation of Dr. Jang's right of appeal, and further subject to the approval of this Court, that an order should be entered (1) granting summary judgment against Dr. Jang and in favor of Scimed on Dr. Jang's Third Claim for Relief for Breach of Contract against Scimed, and (2) dismissing without prejudice Defendants' First and Second Counterclaims. In support of their Stipulated Motion, the parties state as follows:

1.  On or about March 3, 2006, Dr. Jang filed a First Amended Complaint and Demand For Jury Trial (the "Complaint") against BSC and Scimed. Dr. Jang's Complaint states five claims for relief, including a Third Claim for Relief for breach of contract against Scimed.

2.  Dr. Jang's Third Claim for Relief alleges, among other things, that "Scimed has breached the Assignment Agreement by failing to pay Dr. Jang approximately $100 million of the $160 million in payments to which Dr. Jang is entitled under the Assignment Agreement from the Boston Scientific Parties' sale of Contingent Payment Products, even though the Express and Liberté coronary stent products (including the drug-coated versions thereof) constitute Contingent Payment Products and have generated sufficient revenue to trigger Scimed's Earn Out and other payment obligations under the Assignment Agreement." Complaint, ¶ 31.

3.  Under the Assignment Agreement, the question of whether BSC's stents are Contingent Payment Products, and thus whether Scimed has breached the Assignment Agreement by failing to make payments to Dr. Jang based upon sales of those stents, depends on whether the "development, manufacture, use, or sale" of the stents is "covered by one or more Valid Claims of the Patents in the jurisdiction in which such stent is manufactured or sold or which, but for the assignment made pursuant to this Agreement, would infringe one of more Valid Claims of the

Patents," Complaint, Exh. 3-033. Stated differently, in order for Dr. Jang to prove that Scimed has breached the Assignment Agreement, Dr. Jang must prove that, absent the Assignment Agreement (under which he assigned several of his patents to Scimed), BSC's stents would infringe one or more claims of the patents assigned by Dr. Jang to Scimed.

4.  On or about March 20, 2006, Defendants filed an Answer to Dr. Jang's Complaint and also asserted several counterclaims against Dr. Jang. Defendants' first and second counterclaims are styled "Declaratory Judgment Of Non-Infringement" and "Declaratory Judgment Regarding 'Contingent Payment Products,'" respectively, and turn on the same patent-coverage or infringement issues as does Dr. Jang's breach of contract claim against Scimed.

5.  During discovery, Dr. Jang identified several claims in two U.S. patents (U.S. Patent Nos. 5,922,021 and 5,954,743) that he believes cover BSC's Express stents. The parties dispute whether Dr. Jang relinquished his claims against BSC's Liberté stents, but this does not affect the outcome of this stipulation or appealability of the Court's judgment because the Liberté stents do not include a "connecting strut column" as that term has been construed by the Court for the same reasons set forth below with respect to the Express stents. Accordingly, and after significant briefing on the issue by both parties, the Court held a claim construction (Markman) hearing on May 30, 2006 to construe several terms contained in the patent claims at issue.

6.  On or about August 24, 2006, the Court issued a Claim Construction Order. Shortly thereafter, the parties agreed that, under the Claim Construction Order, Dr. Jang could not prove that BSC's stents infringe any asserted claims of U.S. Patent Nos. 5,922,021 and 5,954,743.

7.  The parties originally so stipulated in September 2006, and this Court entered a consent judgment to that effect that preserved Dr. Jang's right to appeal. Dr. Jang appealed that consent judgment. The Court of Appeals for the Federal Circuit reversed the consent judgment because it did not explain the basis for the determination of non-infringement, and remanded the

matter for clarification. Docket No. 244.

8.   The parties are submitting this Revised Stipulation and Proposed Order to address the deficiencies identified by the Federal Circuit in the previous stipulation.

9.   The two patents at issue, U.S. Patent No. 5,922,021 (issued July 13, 1999) (the "'021 patent"), and U.S. Patent No. 5,954,743 (issued September 21, 1999) (the "'743 patent") claim designs for intravascular stents. The '021 patent and '743 patent share overlapping specifications and use many of the same claim terms.

10.   A coronary stent is an expandable, mesh-like tube, typically made of metal. When it is placed inside a coronary vessel, it acts as scaffolding for the arterial walls, propping the vessel open and helping to ensure blood flow to the heart muscle. *See, e.g.,* '021 patent, at Col. 1, Lines 51-59. The structure and geometry of a stent wall can more easily be ascertained when the stent is cut along its longitudinal axis and flattened; in other words, when it is shown in a two-dimensional format. The figure below is a two-dimensional drawing of an illustrative embodiment of the inventions disclosed in the '021 and '743 Patents.



FIG. 9D

11. In this embodiment of Dr. Jang's invention, the stent is formed by expansion columns (the figure shows two such columns, identified by the green dashed boxes) connected by interspersed connecting strut columns (the figure shows one such column, identified by the red solid-line box).

12. Claim 1 of the '021 Patent, which is representative of the asserted claims of the '021 and '743 Patents with respect to the issue addressed in this Stipulation and Order, provides:

"A stent in a non-expanded state, comprising:

a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair, a plurality of the first expansion strut pair forming a first expansion column;

a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair, a plurality of the second expansion strut pair forming a second expansion column;

a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section,

the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and

the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column,

a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column,

the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections,

wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column."

13.    As discussed below, the parties agree that BSC's stents do not practice the "connecting strut column" limitation – which is contained in claim 1 of the '021 patent and in each of the other asserted claims – as that limitation has been construed by the Court. For example, the following photograph illustrates the structure of Boston Scientific's Express stents:



14. The Express stents consist of rings of "micro elements" joined by linear segments to rings of "macro elements," arranged circumferentially along the longitudinal axis of the stent in an alternating geometric pattern.

Macro Elements



Copyright © 2001 Boston Scientific Corporation. All rights reserved.

Micro Elements



Copyright © 2001 Boston Scientific Corporation. All rights reserved.

15. Dr. Jang asserts, inter alia, that the "micro element" rings, including the linear segments, shown within the red boxes in the figure below (which is a two-dimensional depiction of an unexpanded Express stent), correspond to the "connecting strut column" limitation of the asserted claims of the '021 and '743 patents. Dr. Jang further asserts that each such ring consists of a plurality of interconnected "connecting struts," as that term is used in the asserted claims of the '021 and '743 patents.

16. BSC asserts that the "micro elements" in the Express stent are comprised only of the smaller curvilinear segments making up a circumferential ring and do not include the straight segments connecting that ring of micro elements to the adjacent circumferential ring of larger curvilinear segments (the "macro elements").



17. Dr. Jang's claim of infringement was based upon his assertion that each stent element boxed in red above comprises multiple "connecting struts with intermediate sections that are non-parallel to their proximal and distal sections," these multiple "connecting struts" connecting "expansion pairs" that are longitudinally offset from one another, as required in the asserted claims. One example of this contention is depicted in the Figure below, where the red box depicts a "connecting strut."



Another example of this contention is depicted in the Figure below, where the red box depicts what Dr. Jang asserts is a "connecting strut" with an intermediate section that is non-parallel to its proximal and distal sections.

9



18. In its Claim Construction Order, the District Court defined the term "connecting strut column" as "a column formed solely of a plurality of connecting struts *unattached to each other* and arranged along the circumference of the stent." Claim Construction Order entered August 24, 2006 (emphasis added).

19. The parties agree that, to the extent that the micro elements and straight segments boxed in red above are considered a "connecting strut column" (as Dr. Jang claims), the alleged "connecting struts" (including the examples as depicted in ¶17) comprising each alleged "connecting strut column" (i.e., the interconnected segments comprising the "micro elements" and linear segments in the Express stents) are attached to each other. Thus, because the District Court's Claim Construction Order requires "connecting struts" to be "unattached to each other," Dr. Jang therefore cannot prove that the Express stents infringe any asserted claim of the '021 and '743 patents. Because Dr. Jang cannot show that BSC's stents practice the "connecting strut column" limitation contained in each of the asserted claims, as that limitation has been construed by the Court, he therefore cannot prove that Scimed breached the Assignment Agreement with respect to

the '021 and '743 patents.

20.     Accordingly, in order to conserve the resources of both the parties and the Court, *see, e.g.*, *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1571 (Fed. Cir. 1996), the parties hereby stipulate and agree, subject to the approval of this Court, and further subject to the full and complete preservation of Dr. Jang's right to appeal, that the Court should grant summary judgment against Dr. Jang and in favor of Scimed on Dr. Jang's Third Claim for Relief for Breach of Contract against Scimed. Similarly, the parties also stipulate and agree, subject to the approval of this Court, that an order should be entered dismissing Defendants' first and second counterclaims without prejudice.

21.     This Revised and Amended Stipulation is wholly predicated on Dr. Jang's right to obtain appellate review of the Stipulated Summary Judgment, the Court's Claim Construction Order, and final judgment as to the Third Claim for Relief. By entering into this Stipulation, the parties agree that Dr. Jang *is not waiving*, but rather *is expressly reserving*, his right to obtain appellate review of the Stipulated Summary Judgment, the Court's Claim Construction Order and final judgment, and to proceed further with his Third Claim for Relief on remand from the Court of Appeals should the Court of Appeals reverse or vacate this Court's judgment in whole or in part. Indeed, Dr. Jang's right to appeal the Stipulated Summary Judgment, the Court's Claim Construction Order, and of the final judgment is an *essential condition* of this Stipulation, and if the Court does not agree that Dr. Jang is *fully preserving all of his rights to obtain appellate review of the Claim Construction Order*, then Dr. Jang does not consent to the grant of summary judgment against him on his Third Claim for Relief and requests that the Court reject this Stipulation.

1

2                                          Respectfully submitted,

Dated: August 16, 2011                     Douglas E. Lumish
3                                          Jeffrey Homrig
4                                          Kasowitz, Benson, Torres & Friedman LLP

5                                          Thomas C. Mundell
                                           Mundell, Odlum & Haws, LLP
6

7

8                            By:    __/s/_____
                                    Douglas E. Lumish
9                                   Attorneys for Plaintiff G. David Jang, M.D.

10

Dated: August 16, 2011                     Edward Han
11                                         Mathew M. Wolf
12                                         John E. Nilsson
                                           Arnold & Porter, LLP
13

14

15                           By:    __/s/_____
                                    Matthew M. Wolf
16                                  Attorneys or Defendants Boston Scientific Corporation and
                                    Scimed Life Systems, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

**ORDER**

Having considered the parties' foregoing Revised and Amended Stipulation (1) Granting Summary Judgment Against Plaintiff on Plaintiff's Third Claim for Relief for Breach of Contract Against Defendant Scimed Life Systems, Inc., and (2) Dismissing Without Prejudice Defendants' First and Second Counterclaims, and good cause appearing to exist, IT IS SO ORDERED.

Specifically, in accordance with the terms of the foregoing stipulation, the Court grants summary judgment against Dr. Jang and in favor of Scimed on Dr. Jang's Third Claim for Relief for Breach of Contract. The Defendants' First and Second Counterclaims are dismissed without prejudice. Entry of this Stipulated Summary Judgment does not waive or compromise Dr. Jang's right to obtain appellate review of this Order, the Court's Claim Construction Order, or final judgment as to the Third Claim for Relief and, if judgment is reversed or vacated in part on appeal, to proceed further with his Third Claim for Relief on remand from the Court of Appeals.

Dated: August 30, 2011

_____
Hon. Virginia A. Phillips
United States District Judge