# United States Court of Appeals for the Federal Circuit

2011-1633

G. DAVID JANG, M.D.,

Plaintiff-Appellant,

v.

BOSTON SCIENTIFIC CORPORATION,
and SCIMED LIFE SYSTEMS, INC.,

Defendants-Appellees

RECEIVED
CLERK, U.S. DISTRICT COURT

OCT - 1 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DCM _____ DEPUTY

## Judgment

ON APPEAL from the   United States District Court for the Central District of
California

in CASE NO(S).   05-CV-0426

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

### REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

ENTERED BY ORDER OF THE COURT

DATED ___AUG 2 2 2012___

___[signature]___
Jan Horbaly, Clerk


ISSUED AS A MANDATE:

SEP 2 8 2012

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**G. DAVID JANG, M.D.,**
*Plaintiff-Appellant,*

v.

**BOSTON SCIENTIFIC CORPORATION,**
AND **SCIMED LIFE SYSTEMS, INC.,**
*Defendants-Appellees.*

---

2011-1633

---

Appeal from the United States District Court for the Central District of California in No. 05-CV-0426, Judge Virginia A. Phillips.

---

Decided: August 22, 2012

---

JEFFREY G. HOMRIG, Kasowitz, Benson, Torres & Friedman, LLP, of Redwood Shores, California, argued for plaintiff-appellant. With him on the brief was DOUGLAS E. LUMISH; and JED I. BERGMAN and PATRICIA YOUNG, of New York, New York.

MATTHEW M. WOLF, Arnold & Porter, LLP, of Washington, DC, argued for defendants-appellees. With him on the brief were EDWARD HAN and JOHN E. NILSSON.

---

Before LINN, PLAGER, and DYK, *Circuit Judges.*

LINN, *Circuit Judge.*

Plaintiff-Appellant G. David Jang, M.D. ("Jang") appeals the United States District Court for the Central District of California's revised consent judgment, *see* Revised Consent Judgment, *Jang v. Boston Scientific Corp.*, No. 05-0426 (C.D. Cal. Aug. 25, 2011), ECF No. 268 ("*Consent Judgment*"), and revised stipulated summary judgment order, *see* Revised and Amended Stipulation and Order, *Jang v. Boston Scientific Scimed Inc.*, No. 05-0426 (C.D. Cal. Aug. 30, 2011), ECF No. 269 ("*Order*"), both of which are premised on the district court's construction of the claim term "connecting strut column," *see* Claim Construction Order, *Jang v. Boston Scientific Corp.*, No. 05-0426 (C.D. Cal. Aug. 25, 2006), ECF No. 99 ("*Markman Order*"). Because the district court erroneously imported a limitation from the specification into the term "connecting strut column," this court reverses the district court's claim construction, vacates the *Consent Judgment* and *Order* based thereon, and remands for further proceedings consistent with this opinion.

## I. BACKGROUND

In 1999, the United States Patent and Trademark Office ("PTO") issued U.S. Patents No. 5,954,743 ("'743 Patent") and No. 5,922,021 ("'021 Patent") (a continuation-in-part of the '743 Patent) to inventor Jang. The patents are directed to an improved coronary stent for use in balloon angioplasty catheterization procedures.

JANG v. BOSTON SCIENTIFIC                                    3

Figure 9D of the '021 Patent, as modified in the *Order* at 10 and Appellant's Br. at 13, ("Fig.1" in this opinion) represents Jang's flexible stent design:

**Fig.1**



Jang's claimed stent is comprised of "expansion columns" (inside the dotted-boxes) and "connecting strut columns" (inside the solid middle box).   The connection strut columns join the expansion columns together and provide structural flexibility and integrity.

Exemplary claim 1 of the '021 Patent recites, in pertinent part:

1. A stent in a non-expanded state, comprising:

a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut . . . that couples the first and second expansion struts at a distal end of the first expansion strut pair, a

plurality of the first expansion strut pair forming
a first expansion column;

a second expansion strut pair . . . , a plurality
of the second expansion strut pair forming a sec-
ond expansion column;

a first connecting strut including a first con-
necting strut proximal section, a first connecting
strut distal section and a first connecting strut in-
termediate section, the first connecting strut
proximal section being coupled to the distal end of
the first expansion strut pair in the first expan-
sion column and the first connecting strut distal
section being coupled to the proximal end of the
second expansion strut pair of the second expan-
sion column, a plurality of the first connecting
strut forming a first *connecting strut column* that
couples the first expansion column to the second
expansion column, the first connecting strut in-
termediate section being non-parallel to the first
connecting strut proximal and distal sections,
wherein the first expansion strut of the first ex-
pansion strut pair in the first expansion column
has a longitudinal axis offset from a longitudinal
axis of the first expansion strut of the second ex-
pansion strut pair in the second expansion col-
umn.

'021 Patent col. 18 ll. 9-40 (emphasis added to disputed
term).  The specifications of the '021 and '743 Patents
overlap substantially, and the parties do not dispute that
the claim term in question is used consistently in both
patents.

In 2002, Jang entered into an agreement ("Assign-
ment Agreement") with Scimed Life Systems, Inc. ("Sci-
med"), a wholly-owned subsidiary of Boston Scientific

Corporation, in which Jang assigned the '021 and '743 Patents to Scimed in exchange for an initial $50 million up-front payment.   The Assignment Agreement also included a promise to pay up to $110 million contingent in part on Scimed's sales of products incorporating Jang's patented technology (defined in the Assignment Agreement as "Contingent Payment Products").   Scimed paid Jang the $50 million up-front payment and an additional $10 million contingent payment,[1] but refused to pay to Jang the remaining contingent payments specified in the Assignment Agreement.

In May 2005, Jang filed a complaint (amended March 7, 2006) against Boston Scientific and Scimed (collectively, "BSC") claiming, in relevant part, breach of contract, rescission, and breach of fiduciary duty.   Jang's claims stemmed from BSC's refusal to pay the remaining contingent payments under the Assignment Agreement. According to Jang, Scimed's "Express" and "Liberté" stent products infringed Jang's '021 and '743 Patents, and were thus Contingent Payment Products under the Assignment Agreement.[2]   In March 2006, BSC filed an answer and counterclaims, denying any obligation to make additional contingent payments to Jang on the ground that that the accused stents did not infringe Jang's '021 and '743 Patents, and thus were not Contingent Payment Products under the Assignment Agreement.

---

[1] Pursuant to the Assignment Agreement, Scimed paid Jang the $10 million for failing to obtain a European CE Mark on a Contingent Payment Product within two years of entering into the Assignment Agreement.  This payment was credited toward the full $110 million contingent fee.

[2] Jang brought two additional claims related to Scimed's assignment obligations that settled, and are not at issue on appeal.

6                                    JANG v. BOSTON SCIENTIFIC

At the district court, and now on appeal, the parties frame the dispute in relation to Scimed's Express stent product only, which the parties say is representative of both accused products. The accused Express stent is depicted in the *Order* at 16 ("Fig.2" in this opinion):

Fig.2



The middle (boxed) section of Scimed's Express stent is referred to by BSC as a "micro element," and includes the straight segments that extend out to what BSC refers to as the relatively larger "macro elements," depicted on either side of the "micro element." *See* Fig.2, *supra*. Both the micro and macro elements are referred to by BSC in their briefs as "expansion elements." Jang asserts that the "micro element" of the Express stent is the "connecting strut column" claimed in his '021 and '743 Patents.

As shown in Fig.1, *supra*, the "connecting struts" of the "connecting strut columns" depicted in Jang's '021 and '743 Patents are *unattached* from one another, connecting only to the expansion elements at proximal and distal ends. In contrast, as shown in Fig.2, *supra*, under Jang's interpretation, each "connecting strut" in the Express stent (i.e., two "straight segments" and the associated serpentine structure) is attached to the adjacent connecting strut (as well as to the "macro element" of the adja-

cent expansion column). Jang argues that the difference
is of no consequence to infringement because the term
"connecting strut column" in the asserted claims does not
contain an "unattached" limitation. Jang thus contends
that the "micro element" of Scimed's Express stent meets
the "connecting strut column" limitation in his '021 and
'743 Patents. BSC counters that the "micro element" is
*not* a "connecting strut column," but rather a type of
"expansion element." Even assuming that the "micro
element" is a type of "connecting strut column" (as did the
district court for the purposes of granting the *Order, see
Order* ¶ 19), BSC argues that the Express stent does not
infringe because the term "connecting strut column" must
be construed to require *unattached* connecting struts, and
the Express stent "micro elements" are attached.

In May 2006, the district court held a Markman hear-
ing, and on August 25, 2006, issued the *Markman Order*
construing, in pertinent part, the term "connecting strut
column," to require that the connecting struts forming the
column be "unattached" from one another. *Markman
Order* 9-11. Based on the *Markman Order*, the district
court determined that Scimed's stents did not infringe
Jang's '021 and '743 Patents, and accordingly entered: (1)
partial summary judgment against Jang on the breach of
contract claim; and (2) a consent judgment, *inter alia*,
resolving Jang's claims for rescission and breach of fiduci-
ary duty in favor of BSC. Jang appealed, and the Federal
Circuit (in an earlier decision in this case) vacated the
partial summary judgment and consent judgment and
remanded on the ground that the district court failed to
specify "how the claim constructions would render the
accused products infringing or noninfringing." *Jang v.
Boston Scientific Corp.*, 532 F.3d 1330, 1331, 1334-35
(Fed. Cir. 2008) ("*Jang I*") ("A judgment is reviewable only
if it is possible for the appellate court to ascertain the
basis for the judgment challenged on appeal."). On Au-
gust 25, 2011, and August 30, 2011, the district court

entered the stipulated revised *Consent Judgment* and *Order*, respectively. As directed by this court in *Jang I*, the district court attempted to explain the pertinent claim construction, and why that claim construction would render the accused Express stents non-infringing:

> The parties agree that, *to the extent that the micro elements and straight segments* [in Fig.2] boxed . . . above *are considered a "connecting strut column"* (as Dr. Jang claims), the alleged "connecting struts" . . . comprising each alleged "connecting strut column" (i.e., the interconnected segments comprising the "micro elements" and linear segments in the Express stents) are attached to each other. Thus, because the District Court's Claim Construction Order requires "connecting struts" to be "unattached to each other," Dr. Jang therefore cannot prove that the Express stents infringe any asserted claim of the '021 and '743 patents. Because Dr. Jang cannot show that BSC's stents practice the "connecting strut column" limitation contained in each of the asserted claims, as that limitation has been construed by the Court, he therefore cannot prove that Scimed breached the Assignment Agreement with respect to the '021 and '743 patents.

*Order* ¶ 19 (emphases added). The district court never decided whether the "micro elements" were or were not "connecting strut columns," but simply accepted Dr. Jang's assertion as to this fact for the purpose of the parties' non-infringement stipulation.

The district court preserved Jang's right to appeal both orders and the claim construction. *Consent Judgment* ¶¶ 3-4; *Order* ¶ 21. Jang appeals the *Markman Order* with respect to the construction of the term "connecting strut column," and the August 25, 2011, and

August 30, 2011, revised, stipulated *Consent Judgment* and *Order*, respectively. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

Claim construction is a question of law that this court reviews de novo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

### B. Waiver

BSC argues that Jang is asserting a different claim construction on appeal than before the trial court. Based on the allegedly "new" claim construction, BSC contends that Jang's claim construction argument is waived. Jang responds that he "does not ask this [c]ourt to adopt a full construction for the term 'connecting strut column,' but rather to rule on the *narrow issue of whether the connecting struts forming a column must be 'unattached' to each other*." Appellant's Reply Br. 13 (emphasis added).

BSC is incorrect. The appeal raises the narrow question of whether the connecting struts in the "connecting strut columns" must be unattached. Jang argued below that the claims did not require the "unattached" limitation, and the district court addressed the argument. *See Markman Order* 9-10; *Order* ¶ 16. Jang preserved the issue for appeal; indeed, it is the *only* issue that he appeals. We now turn to the merits.

### C. Claim Construction

The district court adopted BSC's proposed construction of "connecting strut column": "A column formed solely of a plurality of connecting struts *unattached to each other*

and arranged along the circumference of the strut."
*Markman Order* 9 (emphasis added).

### 1. Parties' Arguments

Jang disputes only the "unattached" limitation in the
district court's construction of the term "connecting strut
column." Jang argues that no language in the claims,
specifications, or file histories of the '021 or '743 Patents
suggests that the connecting struts cannot be attached.
According to Jang, the district court improperly imported
the "unattached" limitation from the patent figures. Jang
also argues that there was no common understanding in
the art at the time that "connecting strut columns" were
comprised of unattached struts. To support his argument
that *attached* "connecting strut columns" were known in
the art, Jang points the court primarily to U.S. Patent No.
5,593,442 ("Klein"), which he alleges discloses *attached*
"connecting strut columns." Figure 4A of Klein, as altered
in Appellee's Br. at 30, ("Fig.3" *infra*) shows Klein's "ar-
ticulation structure" 49 (the alleged "connecting strut
column"), with "beam members" 50 and 52 (the alleged
"connecting struts") that are attached in a sinusoidal
fashion:

**Fig.3**



BSC counters that "the court's focus [must] remain[]
on understanding *how a person of ordinary skill in the art
would understand the claim terms.*" Appellee's Br. 25

(quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (emphasis in brief). And, according to BSC, *every* prior art reference, including Klein, discloses only *unattached* connecting struts, which would govern the understanding of one of ordinary skill in the art at the time. In response to Jang's argument that Klein discloses an attached "connecting strut column," BSC argues that the "articulation structure" 49 (*see* Fig.3, *supra*) is not a "connecting strut column," but rather, an expansion element only.

BSC also asserts that the '021 and '743 Patents' specifications do not present "merely a series of 'illustrative drawings,' as Appellant suggests; rather . . . the *totality* of the Jang patents' disclosure" suggests that *the invention* requires unattached connecting struts. Appellant's Br. 35. BSC relies on *ICU Medical, Inc. v. Alaris Medical Systems*, 558 F.3d 1368 (Fed. Cir. 2009), where this court held that the term "spike" in the claim at issue was limited to a pointed tip for piercing a seal because every example in the specification depicted a pointed spike; every figure depicted the spike piercing a seal; piercing was not optional; and the patentee "offer[ed] no support from any intrinsic or extrinsic source in support of its claim that the ordinary meaning of spike would include a non-pointed structure . . . ." *Id.* at 1374-75.

### 2. Analysis

First, the court notes that it does not address BSC's argument that the "micro elements" in the accused Express stent product are *not* "connecting strut columns" because the stipulated summary judgment of non-infringement is *premised* exclusively on the adoption of Jang's argument "that the micro elements . . . are considered a 'connecting strut column.'" *Order* ¶ 19. On remand, the district court is free to consider this argument in the first instance.

Turning to the claim construction of the term "connecting strut column," Jang is correct that the district court impermissibly imported the "unattached" limitation into the claims based on the examples in the specification. While the examples in the '021 and '743 Patents' specifications do show only connecting strut columns with unattached connecting struts, the specifications do not *require* the connecting struts to be unattached. "[W]e have repeatedly held that the fact that the specification describes only a single embodiment, standing alone, is insufficient to limit otherwise broad claim language." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1345 (Fed. Cir. 2008) (declining to impute a limitation into a disputed claim term in the absence of a clear *requirement* in the specification, even where "every disclosure of [the disputed term] in the specification shows [the alleged limitation]"); *see also Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006) ("[T]he mere fact that the [asserted] patent discloses [only certain] embodiments . . . does not in and of itself mean that the method claims at issue are limited to the disclosed embodiments."); *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."). Nor do the '021 and '743 Patents' specifications "clearly indicate the patentee's intent to give [the disputed term] a unique meaning . . . ." *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1372 (Fed. Cir. 2010) ("To be his own lexicographer, a patentee must use a special definition of the term that is clearly stated in the patent specification or file history." (internal quotation and alteration omitted)).

This case is not like *ICU Medical*. In that case: (1) every description in the asserted patent required the "spike" to be a pointed structure capable of piercing; (2) requiring the "spike" to be pointed was necessary in order

for it to perform the function of piercing the seal; and (3) the ordinary meaning of "spike" to one of skill in the art was a pointed structure for piercing. *ICU Medical*, 558 F.3d at 1374-75. The court thus interpreted the claims to include a positive limitation requiring performance of that function. In contrast, here: (1) neither the '021 or '743 Patents' claims nor their specifications say anything about "unattached" connecting struts; (2) nothing in the functionality of the connecting strut column requires the struts to be unattached to one another; and (3) there is no probative evidence as to any ordinary meaning in the art, *see infra*. The only described function of the connecting strut column is to "couple[] the first expansion column to the second expansion column." '021 Patent col. 4 ll. 2-3, col. 18 ll. 33-34. The connecting strut column can perform this function whether the connecting struts are attached to one another or not. Yet BSC nevertheless asks the court to infer a negative limitation into the disputed claim term simply based on the absence of any disclosure of attached connecting struts. *ICU Medical* does not support such a negative inference, but rather relies on *Phillips*, which directly rejects the idea of limiting otherwise broad claim language based on a single disclosed embodiment. *ICU Medical*, 558 F.3d at 1375; *Phillips*, 415 F.3d at 1323. *ICU Medical* only supports the limiting of a claim term when warranted based on "'how a person of ordinary skill in the art would understand the claim terms[]' . . . 'after reading the entire patent.'" 558 F.3d at 1375 (quoting *Phillips*, 415 F.3d at 1321, 1323).

The prior art that the parties point us to is simply insufficient to discern the understanding of one of ordinary skill in the art at the time of the invention. To the extent that the parties argue about whether, in Klein, the "beam members" of the "articulation structure" are attached to one another, the best that can be said is that the reference is ambiguous. Absent any more probative evidence from BSC as to the understanding of one of skill in the art at

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By:                              Date:    SEP 2-8 2012

ISSUED AS A MANDATE

14                                    JANG v. BOSTON SCIENTIFIC

the time of the invention, we decline to read a limitation
into the term "connecting strut column" that is nowhere
present in Jang's '021 and '743 Patents' *claims or specifi-
cations. See, e.g., Vitronics Corp. v. Conceptronic, Inc.*, 90
F.3d 1576, 1582 (Fed. Cir. 1996) ("Such intrinsic evidence
is the most significant source of the legally operative
meaning of disputed claim language.").

### III. CONCLUSION

For the foregoing reasons, we reverse the district
court's claim construction of the term "connecting strut
column," insofar as it includes an unattached limitation,
vacate the district court's *Order* and *Consent Judgment*
based thereon, and remand for further proceedings consis-
tent with this opinion.

### REVERSED-IN-PART, VACATED-IN-PART, AND
### REMANDED