Brian Martinez (State Bar No. 274210)
Brian.Martinez@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, California 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

Matthew Wolf (*pro hac vice*)
Matthew.Wolf@aporter.com
Edward Han (*pro hac vice*)
Ed.Han@aporter.com
John Nilsson (*pro hac vice*)
John.Nilsson@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004-1206
Telephone: 202.942.5000
Facsimile: 202.942.5999

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| G. DAVID JANG, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware Corporation, and SCIMED LIFE SYSTEMS, INC., a Minnesota Corporation,<br><br>Defendants. | Case No. ED CV 05-00426 VAP<br><br>**DEFENDANTS BOSTON SCIENTIFIC CORP.'S AND SCIMED LIFE SYSTEMS, INC.'S REBUTTAL CLAIM CONSTRUCTION BRIEF**<br><br>**September 9, 2013 *Markman* Hearing at 2 p.m.** |

# TABLE OF CONTENTS

Page(s)

I.    THE COURT OF APPEALS' DECISION REGARDING "CONNECTING STRUT COLUMN" NECESSITATES CONSIDERATION OF ADDITIONAL CLAIM TERMS ............................ 1

II.   JANG DEPARTS FROM PROPER CLAIM CONSTRUCTION METHODOLOGY ........................................................................................ 2

III.  JANG'S CONSTRUCTIONS OF "CONNECTING STRUT" AND "CONNECTING STRUT COLUMN" ARE ERRONEOUS ........................... 4

      A.    Jang Wrongly Argues That Connecting Struts And Connecting Strut Columns May Connect Non-Adjacent Expansion Columns .......... 4

      B.    Jang Wrongly Denies The Function Of "Connecting Struts" ................. 9

IV.   JANG'S CONSTRUCTIONS OF THE CLAIMED EXPANSION ELEMENTS ARE ALSO ERRONEOUS ...................................................... 10

      A.    Jang Has Admitted The Necessary Functions Of "Expansion Struts" And "Expansion Strut Pairs" .................................................... 10

      B.    An "Expansion Column" Must Be A Ring To Provide Scaffolding And Resist Recoil ....................................................... 11

V.    CONCLUSION .......................................................................................... 12

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Alloc, Inc. v. ITC,*

5

    342 F.3d 1361 (Fed. Cir. 2003) ....................................................................3

6

*Becton, Dickinson & Co. v. TYCO Healthcare Grp., LP,*

    616 F.3d 1249 (Fed. Cir. 2010) ....................................................................8

7

8

*Bicon, Inc. v. Straumann Co.,*

    441 F.3d 945 (Fed. Cir. 2006) ......................................................................9

9

10

*Finisar Corp. v. DirecTV Grp., Inc.,*

    523 F.3d 1323 (Fed. Cir. 2008) ....................................................................3

11

*Gaus v. Conair Corp.,*

12

    363 F.3d 1284 (Fed. Cir. 2004) ....................................................................8

13

*Jang v. Boston Scientific Corp.,*

14

    493 F. App'x 70 (Fed. Cir. 2012) ..............................................................1, 2

15

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*

16

    429 F.3d 1364 (Fed. Cir. 2005) ....................................................................2

17

*Phillips v. AWH Corp.,*

18

    415 F.3d 1303 (Fed. Cir. 2005) .................................................................2, 3

19

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.,*

    599 F.3d 1308 (Fed. Cir. 2010) ....................................................................2

20

21

*Texas Digital Sys., Inc. v. Telegenix, Inc.,*

    308 F.3d 1193 (Fed. Cir. 2002) ....................................................................3

22

23

24

25

26

27

28

DEFENDANTS BOSTON SCIENTIFIC CORP.'S AND SCIMED LIFE SYSTEMS, INC.'S
REBUTTAL CLAIM CONSTRUCTION BRIEF

1    Pursuant to the Court's Scheduling Order, Defendants Boston Scientific

2  Corporation and SciMed Life Systems, Inc. (collectively, "BSC") respectfully submit

3  this rebuttal memorandum concerning the construction of the asserted claims and in

4  response to Plaintiff G. David Jang's ("Dr. Jang's") Opening Claim Construction

5  Brief.  The primary arguments in Dr. Jang's Opening Brief are that: (1) BSC's

6  proposed constructions for terms other than "connecting strut column" are improper;

7  (2) that BSC has employed an improper claim construction methodology; (3) that this

8  Court erred in previously concluding that "connecting struts" must connect adjacent

9  expansion columns; and (4) that disputed terms such as "connecting strut,"

10 "expansion strut" and "expansion strut pair" have no functional components.  Each

11 argument is addressed in turn below.

12 **I.    THE COURT OF APPEALS' DECISION REGARDING**
   **"CONNECTING STRUT COLUMN" NECESSITATES**
13 **CONSIDERATION OF ADDITIONAL CLAIM TERMS**

14

15    In reversing this Court's construction of "connecting strut column," the

16 August 22, 2012 decision of the Court of Appeals for the Federal Circuit answered

17 only the "narrow question of whether the connecting struts in the 'connecting strut

18 columns' must be unattached" but left it to this Court on remand to determine the

19 proper construction of "connecting strut column" and to conduct further proceedings

20 consistent with its opinion.  *Jang v. Boston Scientific Corp.*, 493 F. App'x 70, 75, 78

21 (Fed. Cir. 2012).  BSC and Dr. Jang agree that the Court of Appeals' decision

22 implicates not only the term "connecting strut columns," but at least "connecting

23 strut" and "expansion column" as well.  (*See, e.g.*, Dkt. 355 at 1.)

24    The parties disagree, however, as to whether two additional terms – "expansion

25 strut" and "expansion strut pair" – also require this Court's consideration.  While

26 Dr. Jang accuses BSC of seeking a "second bite at the apple" (Dkt. 355 at 5, 15), he

27 does not explain why it is proper for this Court to revisit its constructions of

28 "expansion column" and "connecting strut" but not "expansion strut" and "expansion

- 1 -

strut pair." Just as the Court of Appeals' analysis implicates the meaning of "connecting strut" and "expansion column," it also implicates the proper understanding of an expansion column's component parts. As the Court of Appeals recognized, the claimed stent is comprised of two distinct structural columns: "'expansion columns' [ ] and 'connecting strut columns' [ ]. The connection strut columns join the expansion columns together …." *Jang*, 493 F. App'x at 72 & Fig. 1. Each type of column is itself comprised of specific structural elements: "expansion struts" arranged into "expansion strut pairs" for the radially-expanding "expansion columns," and "connecting struts" for the "connecting strut columns." (Dkt. 355 at 10-11, 12 (admitting same).) At base, the parties' dispute concerns whether these elements are structurally and functionally different, as BSC contends, or whether they are conceptually interchangeable, as Dr. Jang's constructions suggest. (*See e.g.*, Dkt. 351 at 21-25; *see also* Fig. 2, *infra*.)

It falls upon this Court how to construe the claim terms in a way that makes sense of the differences between an "expansion strut" and a "connecting strut" and between an "expansion column" and a "connecting strut column." Further claim constructions on each of the five terms identified by BSC is entirely proper. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) ("district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms"); *see also Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010).

## II.  JANG DEPARTS FROM PROPER CLAIM CONSTRUCTION METHODOLOGY

Dr. Jang is correct that "the appropriate starting point for the Court's inquiry is always the words of the claim[.]" (Dkt. 355 at 20.) This is not the ending point for the inquiry, however. As even Dr. Jang admits, a claim's "customary meaning" is its meaning "as understood by a person of skill in the art." (Dkt. 355 at 2 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (emphasis added)). And one

- 2 -

1  of skill in the art is considered to be steeped in "*the entire patent, including the*
2  *specification*" as well as "the prior art, and other evidence, such as the understanding
3  of skilled artisans at the time of invention." *Phillips*, 415 F.3d at 1313; *Alloc, Inc. v.*
4  *ITC*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Finisar Corp. v. DirecTV Grp., Inc.*,
5  523 F.3d 1323, 1328 (Fed. Cir. 2008).

6       Not a single sentence of Dr. Jang's brief focuses on how one of ordinary skill
7  in the art would understand "connecting strut," "connecting strut column,"
8  "expansion strut," or "expansion column," or how one of skill in the art would
9  distinguish between those structures.  Indeed, Dr. Jang fails to cite any authorities at
10  all — no treatise, no dictionary, not even the patents themselves — in support of
11  what he claims is "the ordinary meaning of the terms."  (Dkt. 355 at 6.)  Dr. Jang
12  appears to seek a return to the era in which a Court's claim construction analysis
13  began and ended with reference to a dictionary definition, a methodology rejected by
14  the Federal Circuit in *Phillips*.  *Compare Texas Digital Sys., Inc. v. Telegenix, Inc.*,
15  308 F.3d 1193, 1203-04 (Fed. Cir. 2002) (instructing that a claim term should
16  presumptively be accorded an "ordinary meaning" established by a dictionary), *with*
17  *Phillips*, 415 F.3d at 1320 ("Although the concern expressed by the court in *Texas*
18  *Digital* was valid, the methodology it adopted placed too much reliance on extrinsic
19  sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic
20  sources, in particular the specification and prosecution history.")  As the Federal
21  Circuit explained in *Phillips*, "[t]he main problem with elevating the dictionary to
22  such prominence is that it focuses the inquiry on the abstract meaning of words rather
23  than on the meaning of claim terms within the context of the patent." 415 F.3d at
24  1321.  Not only do Dr. Jang's constructions divorce the claim terms from their
25  context in the patents, his constructions appear to lack even lay dictionary support.

26       Dr. Jang is also right that an interpreting court should endeavor not to add
27  limitations to a claim element.  He is wrong, however, in accusing BSC of seeking to
28  do so.  BSC's constructions explain what it means for an "expansion strut" to expand.

- 3 -

They also explain what it means for a strut in a stent to be a "connecting strut" as opposed to an "expansion strut" and what it means for a column of such connecting struts to be a "connecting strut column" as opposed to an "expansion column." As explained in BSC's Opening Brief, and as explained in additional detail below, Dr. Jang has left all of these crucial questions unanswered.

## III.   JANG'S CONSTRUCTIONS OF "CONNECTING STRUT" AND "CONNECTING STRUT COLUMN" ARE ERRONEOUS

### A.   Jang Wrongly Argues That Connecting Struts And Connecting Strut Columns May Connect Non-Adjacent Expansion Columns

In its original analysis of "connecting strut," this Court concluded that a "connecting strut" must connect adjacent expansion columns. According to Dr. Jang, "importing 'adjacent' violates the same claim construction principles that importing 'unattached' did." (Dkt. 355 at 6.) He claims that his own "proposed construction removes only this improper additional limitation and returns this construction to the ordinary meaning of the terms." (*Id.* at 6.) The lack of citation in support of this supposed "ordinary meaning" is striking but not surprising. There is absolutely no support in the patent or any other source for a "connecting strut" or "connecting strut column" that connects "non-adjacent" expansion columns. To the contrary, the patents state over and over again that connecting struts connect "*adjacent* expansion columns."[1]

- "Connecting struts 38 connect *adjacent expansion columns* 24." (Dkt. 353-1, Ex. A 6:14-15 (emphasis added).)

- "Each connecting strut 38 joins a pair of expansion struts 28 in an expansion column 24 to an adjacent pair of expansion struts 28 in an

---

[1] The Court's prior construction required that "connecting struts" connect adjacent expansion columns. Under BSC's proposed construction, "connecting strut columns" connect adjacent expansion columns. BSC submits that the requirement that adjacent expansion columns be connected is proper in the interpretation of "connecting strut," "connecting strut column," or both terms.

DEFENDANTS BOSTON SCIENTIFIC CORP.'S AND SCIMED LIFE SYSTEMS, INC.'S
REBUTTAL CLAIM CONSTRUCTION BRIEF

1  *adjacent expansion column* 24." (*Id*. 6:17-19 (emphasis added).)

2  • "*Connecting struts 38 couple adjacent expansion columns* 24, by

3  connecting the distal end of an expansion strut pair in one expansion

4  column 24 to the proximal end of an adjacent expansion strut pair 32 in a

5  second expansion column 24." (*Id*. 7:35-38 (emphasis added).)

6  • "Second linear section 56 [of the connecting strut 38] extends

7  substantially parallel to expansion struts 28 connecting at its distal end to

8  joining strut 30 in an *adjacent expansion column* 24." (*Id*. 7:50-53

9  (emphasis added).)[2]

10 • "In this embodiment a four piece slanted connecting strut 38 is used to

11 couple the corner of an expansion strut pair 32 in one expansion column

12 24 to the joining strut 30 of a circumferentially offset expansion strut

13 pair 32 *in an adjacent expansion column* 24." (*Id*. 11:38-42 (emphasis

14 added).)[3]

15 • "Distal end section 168 [of connecting strut 38] extends from second

16 intermediate section 166 attaching at its distal end to joining strut 30 of

17 circumferentially offset expansion strut pair 32 of a*djacent expansion*

18 *column* 24." (*Id*. 12:28-31 (emphasis added).)[4]

19 • "During the expansion process, the slant angles 170, 172 and 174 widen

20 straightening the connection struts 38, and causing an increase in the

21 separation distance between *adjacent expansion columns* 24." (*Id*.

22 12:67-13:3 (emphasis added).)

23 • "FIG. 10A shows a rounded loop connecting strut 38 which joins two

24 circumferentially offset expansion strut pairs 32 in a*djacent expansion*

25 *columns*." (*Id*. 14:61-64 (emphasis added).)

26 _____

27 [2] *See also* Dkt. 353-1, Ex. A 9:23-25.
   [3] *See also* Dkt. 353-1, Ex. A 13:6-11.

28 [4] *See also* Dkt. 353-1, Ex. A 14:3-6.

DEFENDANTS BOSTON SCIENTIFIC CORP.'S AND SCIMED LIFE SYSTEMS, INC.'S
REBUTTAL CLAIM CONSTRUCTION BRIEF

- "In the design of FIG. 10B a rounded loop connecting strut 38 joins two circumferentially offset expansion strut pairs 32 in *adjacent expansion columns*." (*Id.* 15:11-13 (emphasis added).)

- "In the design of FIG. 10C connecting strut 38 joins two circumferentially offset expansion strut pairs 32 in *adjacent expansion columns*." (*Id*. 15:22-24 (emphasis added).)[5]

The fact that connecting struts and connecting strut columns connect adjacent expansion columns is not stated as an option, or a single permutation. It is a basic characteristic of "connecting struts" and "connecting strut columns" as described in the patents.

It defies not only the intrinsic evidence but common sense to suggest that a connecting strut or connecting strut column can "connect" two expansion columns by way of yet another expansion column (or a series of them). If a "connecting strut" or "connecting strut column" can "connect" non-adjacent expansion columns, then it can meander across a stent without delineation. For instance, if connecting struts can connect non-adjacent expansion columns, one must ask why the blue-highlighted struts below cannot be considered "connecting struts" arrayed in two "connecting strut columns."

/ / /

/ / /

/ / /

---

[5] *See also* Dkt. 353-1, Ex. A 15:49-51, 16:4-6.



**Figure 1 — Potential "Connecting Struts" Under Jang's Construction**

Dr. Jang may dismiss these potentialities as departures from the patents, but they are departures that are made possible, even inevitable, by his own claim construction positions.

Dr. Jang's agenda in taking such positions is clear.  He seeks license to ignore intervening expansion elements in the accused Express stent and to trace connecting strut columns across them, as shown below. [6]

**Figure 2 — Jang's Theory Of Infringing "Connecting Struts"**

[6] Jang makes reference to BSC's Liberté as an accused product.  (Dkt. 355 at 2-3.) On April 7, 2006, prior to any *Markman* proceedings, Dr. Jang explicitly limited the products at issue in this case to the Express family of stents and dropped any allegations relating to the Liberté stent.

The problem, as pointed out in BSC's opening brief, is that the same kind of games can be played with prior art stents such as the Lau stent, as shown below.



**Figure 3 — Jang's Theory Captures The Prior Art**

As explained in BSC's Opening Brief, there is no principled reason why the struts highlighted in blue in this figure from Lau should not be considered a "connecting strut column" under Dr. Jang's proposed construction.  This is improper.  *See Becton, Dickinson & Co. v. TYCO Healthcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("Claims are generally construed so as to sustain their validity, if possible.") (quoting *Whittaker Corp. v. UNR Indus., Inc.*, 911 F.2d 709, 712 (Fed.Cir.1990)).

As illustrated in the figures above, Dr. Jang's denial of the Court's conclusion that the connecting elements must connect adjacent expansion columns is bound up with his erroneous assertion that a connecting strut column can be composed of, or include, one or more expansion columns — themselves distinct structural elements of the claims.  As explained in BSC's Opening Brief, one of ordinary skill in the art would understand that a "connecting strut column" is distinct from an "expansion column."  Dkt. 352 ¶ 44.  The claims should be interpreted accordingly.  *See Becton, Dickinson*, 616 F.3d at 1254 ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention.") (citation omitted); *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004) ("Rather, the clear implication of the claim language is that the pair of probe networks is a distinct component, separate from the electrical operating

- 8 -

1   unit of the claimed invention.  The specification confirms that interpretation."); *Bicon,*

2   *Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to

3   argue that physical structures and characteristics specifically described in a claim are

4   merely superfluous would render the scope of the patent ambiguous, leaving examiners

5   and the public to guess about which claim language the drafter deems necessary to his

6   claimed invention and which language is merely superfluous, nonlimiting elaboration.

7   For that reason, claims are interpreted with an eye toward giving effect to all terms in

8   the claim.")

9       **B.      Jang Wrongly Denies The Function Of "Connecting Struts"**

10           Dr. Jang also insists that the "connecting strut" need have no function — other

11  than to "connect" other struts in the stent.  This simply cannot be the case.  Every strut

12  in a stent is connected on either end to another strut or piece of metal.  If Dr. Jang were

13  correct, then every strut would be a "connecting strut." The patents make plain that

14  what distinguishes a connecting strut from expansion struts in the invention is that,

15  whereas the latter reorient themselves circumferentially on deployment, the former

16  straighten, becoming generally parallel to the stent's longitudinal axis, thus

17  compensating for the shortening of the expansion elements.  (Dkt. 353-1, Ex. A 12:64-

18  13:3.)  This is the only way that the patents describe solving the problem of

19  "foreshortening" —  a "drawback" of "conventional stents" supposedly solved by

20  Dr. Jang's invention, as Dr. Jang points out.  (Dkt. 355 at 11.)

21           Dr. Jang's only response to these points is to note that "[a] connecting strut is

22  repeatedly described by Dr. Jang in his Asserted Patents as having various sections

23  that are non-linear." (*Id.* at 23.)   For this proposition Jang cites claim 1 itself.  The

24  claim language, however, describes the stent in its pre-deployment state.  BSC's claim

25  construction, on the other hand, is designed to explain what happens in deployment of

26  the stent.  In the stent's pre-deployment state, "[t]he connecting struts 38 consist of

27  first and second linear sections 54 and 56 forming slant angle 58 at pivot point 60."

28  (Dkt. 353-1, Ex. A 8:14-16.)  On deployment, "[t]he widening of slant angle 58 during

- 9 -

1  expansion straightens connecting struts 38 and lengthens the distance between the

2  coupled expansion strut pairs 32." (*Id.* 8:25-28 (emphasis added).)  In this way, "[t]he

3  widening of the slant angle of connecting struts 38 substantially compensates for the

4  longitudinal shortening of expansions struts 28." (*Id.* 8:28-30.)  As Dr. Jang's counsel

5  told the Court of Appeals, "to perform the function that they have in this design, the

6  connecting struts *need to be able to expand longitudinally*."  (Dkt. 353-12, Ex. K at

7  12 (emphasis added).)  BSC's proposed construction of "connecting strut" recognizes

8  this necessity; Dr. Jang's proposed construction ignores it.

## IV.    JANG'S CONSTRUCTIONS OF THE CLAIMED EXPANSION ELEMENTS ARE ALSO ERRONEOUS

### A.    Jang Has Admitted The Necessary Functions Of "Expansion Struts" And "Expansion Strut Pairs"

Just as Dr. Jang wrongly denies the function of the "connecting struts" of the

claims, he also wrongly insists that the claimed "expansion struts" and "expansion

strut pairs" have no functional component.  This too stands in contrast to Dr. Jang's

counsel's representations — both before the Federal Circuit and even elsewhere in his

brief.  Before the Federal Circuit, Dr. Jang's counsel insisted that "expansion struts

primarily perform the function of providing sufficient support for the vessel wall so it

doesn't collapse after the procedure is done." (Dkt. 353-12, Ex. K at 5.)  And in his

brief, Dr. Jang explains that "[t]his scaffolding is comprised of the opened, or

angulated, expansion struts *reoriented in a position to provide radial strength* of the

deployed stent, resisting collapse of the structure."  (Dkt. 355 at 11 (emphasis added).)

This is consistent with the patents, which explain that on expansion the struts

"are r*eoriented such that they extend in a more circumferential direction*, *i.e.* along

the surface of cylindrical stent 10 and perpendicular to its longitudinal axis."

(Dkt. 353-1, Ex. A 5:58-61 (emphasis added).)  As this occurs, "the expansion strut

pairs 32 spread apart at their open ends 36." (*Id.* 8:20-21.)  BSC's proposed

constructions of "expansion struts" and "expansion strut pairs" reflect the necessary

- 10 -

functionality acknowledged by Dr. Jang's own counsel and Dr. Jang's own briefing. Dr. Jang's proposed constructions do not explain how "expansion struts" and "expansion strut pairs" *expand* at all.

### B.   An "Expansion Column" Must Be A Ring To Provide Scaffolding And Resist Recoil

Dr. Jang's own description of "expansion columns" (in the portion of the brief prior to his proposed construction) is also telling.  In describing his invention, Dr. Jang acknowledges that the "expansion columns expand radially when the stent is deployed to provide the 'scaffolding' that supports the vessel walls." (Dkt. 355 at 11.)  In defending his proposed constructions, however, Dr. Jang denies that the "expansion column" need be a "ring."  What Jang fails to explain is how an "expansion column" can expand radially if it does not form a ring, even one in which individual struts or pieces are removed from an otherwise continuous column.[7]   Jang's own construction has no support whatsoever in the intrinsic evidence.  Nowhere in the patents, prosecution history or the prior art is an expansion column described as a mere "vertical extension of space."[8]

\ \ \

\ \ \

\ \ \

---

[7] The '021 patent states that "[e]xpansion columns are preferably continuous unbroken ring structures extending around the circumference of the stent 10; however, broken structures in which individual struts or pieces of struts are removed from an otherwise continuous expansion column 24 can also be used." (Dkt. 353-1, Ex. A 6:8-13. )  This language does not appear in the specification of the '743 patent.

[8] Dr. Jang also argues that an "expansion column" need not be "tubular" and need not be composed "solely" of "expansion struts" and "expansion strut pairs." (Dkt. 355 at 6.)  These were elements of the Court's prior constructions.  Because they are not material to the disputes between the Parties, BSC has chosen not to advance them here.

DEFENDANTS BOSTON SCIENTIFIC CORP.'S AND SCIMED LIFE SYSTEMS, INC.'S
REBUTTAL CLAIM CONSTRUCTION BRIEF

1

# V.  CONCLUSION

For the reasons set forth above, Boston Scientific respectfully requests that the Court reject Dr. Jang's proposed claim constructions and adopt those proposed by Boston Scientific.

Dated:  August 2, 2013

By: /s/ *Brian Martinez*

Brian Martinez (State Bar No. 274210)
Brian.Martinez@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, California 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

Matthew Wolf (*pro hac vice*)
Matthew.Wolf@aporter.com
Edward Han (*pro hac vice*)
Ed.Han@aporter.com
John Nilsson (*pro hac vice*)
John.Nilsson@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004-1206
Telephone: 202.942.5000
Facsimile: 202.942.5999

Attorneys for Defendants
*Boston Scientific Corporation and
Scimed Life Systems, Inc.*

DEFENDANTS BOSTON SCIENTIFIC CORP.'S AND SCIMED LIFE SYSTEMS, INC.'S
REBUTTAL CLAIM CONSTRUCTION BRIEF