**Exhibit 1**

PTO/SB/57 (08-13)
Approved for use through 07/31/2015. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA  22313-1450**

Attorney Docket No.: P34088US00

Date: 10/08/2013

1. [✓] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number 5,922,021
   issued July 13, 1999 . The request is made by:

   [✓] patent owner.          [ ] third party requester.

2. [✓] The name and address of the person requesting reexamination is:

   Arnold & Porter LLP

   555 Twelfth Street, NW

   Washington, DC 20004

3. [ ] Requester claims  [ ] small entity (37 CFR 1.27)  or  [ ] micro entity status (37 CFR 1.29) – only a patent owner requester can claim micro entity status.

4. [ ] a.  A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [✓] b.  The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
   to Deposit Account No. 50-2387 ;

   [ ] c.  Payment by credit card.  Form PTO-2038 is attached; **or**

   [ ] d.  Payment made via EFS-Web.

5. [✓] Any refund should be made by [ ] check or [✓] credit to Deposit Account No. 50-2387 .
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

6. [✓] A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed. 37 CFR 1.510(b)(4).

7. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table

   [ ] Landscape Table on CD

8. [ ] Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. [ ] Computer Readable Form (CRF)

   b. Specification Sequence Listing on:

   i. [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**

   ii. [ ] paper

   c. [ ] Statements verifying identity of above copies

9. [✓] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

10. [✓] Reexamination of claim(s) 1,6,7,8, and 17 is requested.

11. [✓] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on Form PTO/SB/08, PTO-1449, or equivalent.

12. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14.  This collection is estimated to take 18 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO:  Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (08-13)
Approved for use through 07/31/2015. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

13. ☑ The attached detailed request includes at least the following items:

    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1).

    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2).

14. ☐ A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e).

15. ☐ a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).

    The name and address of the party served and the date of service are:

    _____

    _____

    Date of Service: _____ ; **or**

    ☐ b. A duplicate copy is enclosed since service on patent owner was not possible. An explanation of the efforts made to serve patent owner **is attached**. See MPEP § 2220.

16. Correspondence Address: Direct all communication about the reexamination to:

    ☑ The address associated with Customer Number:      28381

    **OR**

    ☐ Firm or Individual Name _____

Address

| City | State | Zip |
|---|---|---|
| | | |

| Country |
|---|
| |

| Telephone | Email |
|---|---|
| | |

17. ☑ The patent is currently the subject of the following concurrent proceeding(s):

    ☐ a. Copending reissue Application No. _____

    ☐ b. Copending reexamination Control No. _____

    ☐ c. Copending Interference No. _____

    ☑ d. Copending litigation styled:

        Jang v. Boston Scientific Corp. et al. in the United States District Court Central District of California Eastern Division Case No. ED CV 05-00426-VAP (CT-x)

        Jang. v. Boston Scientific Corp. et al., in the United States District Court for the District of Delaware (Wilmington) Case. No. 10-00681-SLR

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| /David R. Marsh/ /Kristan L. Lansbery/ | October 8, 2013 | |
|---|---|---|
| Authorized Signature | Date | |
| David R. Marsh / Kristan L. Lansbery | 41,408 / 53,183 | ☑ For Patent Owner Requester |
| Typed/Printed Name | Registration No. | ☐ For Third Party Requester |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Patent of:             Jang
U.S. Patent No.:       5,922,021 issued July 13, 1999
Issued From:           08/845,657 filed April 25, 1997
Reexam Issue Date:     April 17, 2012
Examiner:              To be assigned
Group Art Unit:        To be assigned
Title:                 INTRAVASCULAR STENT
Control No.:           To be assigned
Atty. Docket No.:      P34088US00

**Request for *Ex Parte* Reexamination**

Mail Stop *Ex Parte* Reexamination
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dear Director:

This is a request for *ex parte* reexamination of Claims 1, 6, 7, 8, and 17 of U.S. Patent

No. 5,922,021 ("the '021 patent").  Because the claims discussed herein were not addressed in

prior reexaminations and the U.S. Court of Appeals for the Federal Circuit has recently provided

guidance on the proper claim construction for claim terms in U.S. Patent Nos. 5,954,743 and

5,922,021 (decision attached as an Appendix 1), Requester submits evidence and arguments that

raise substantial new questions of patentability for Claims 1, 6, 7, 8, and 17 of the '021 patent.

Further to 35 U.S.C. §§ 302-307 and 37 C.F.R. §§ 1.502 et seq., the undersigned hereby

requests reexamination of Claims 1, 6, 7, 8, and 17 under 35 U.S.C. § 102.  The Table of

Contents below lays out the sections of this Request and the references relied upon for

reexamination.

# TABLE OF CONTENTS

I.     DOCUMENTS UPON WHICH REEXAMINATION IS REQUESTED AND THOSE REFERRED TO ................................................................... 1

II.    SUMMARY OF THIS REQUEST ................................................ 3

III.   RELATED PROCEEDINGS .......................................................... 3

IV.   STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTION OF PATENTABILITY ........................................................................ 5

V.    DETAILED EXPLANATION OF ANTICIPATION OF CLAIMS ........................... 6

    A.    Claims 1, 6, 7, 8, and 17 of the '021 patent are anticipated by Wijay ............. 6

         1.    Claim 1 of the '021 patent is anticipated by Wijay ................................. 9

               a.    A stent in a non-expanded state, comprising: ............................ 9

               b.    a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut .............. 9

               c.    and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair ........................................ 10

               d.    a plurality of the first expansion strut pair[s] forming a first expansion column; ............................................................ 11

               e.    a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut ............................................................... 12

               f.    and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair ........................................... 12

               g.    a plurality of the second expansion strut pair[s] forming a second expansion column; ............................................. 13

               h.    a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section .................. 14

i.      the first connecting strut proximal section being
        coupled to the distal end of the first expansion strut pair
        in the first expansion column and ............................................... 15

j.      the first connecting strut distal section being coupled to
        the proximal end of the second expansion strut pair of
        the second expansion column ....................................................... 16

k.      a plurality of the first connecting strut forming a first
        connecting strut column that couples the first expansion
        column to the second expansion column ..................................... 16

l.      the first connecting strut intermediate section being
        non-parallel to the first connecting strut proximal and
        distal sections, ............................................................................... 17

m.      wherein the first expansion strut of the first expansion
        strut pair in the first expansion column has a
        longitudinal axis offset from a longitudinal axis of the
        first expansion strut of the second expansion strut pair
        in the second expansion column ................................................... 18

2.   Claims 6 and 7 of the '021 patent are anticipated by Wijay .............. 19

3.   Claim 8 of the '021 patent is anticipated by Wijay ............................. 19

4.   Claim 17 of the '021 patent is anticipated by Wijay ........................... 20

B.   Claims 1, 6, 7, 8, and 17 of the '021 patent are anticipated by Brown ........... 20

1.   Claim 1 of the '021 patent is anticipated by Brown ............................ 25

     a.   A stent in a non-expanded state, comprising: ........................... 25

     b.   a first expansion strut pair including a first expansion
          strut positioned adjacent to a second expansion strut ............. 25

     c.   and a joining strut of the first expansion strut pair that
          couples the first and second expansion struts at a distal
          end of the first expansion strut pair ......................................... 26

     d.   a plurality of the first expansion strut pair[s] forming a
          first expansion column; ............................................................. 27

     e.   a second expansion strut pair including a first
          expansion strut positioned adjacent to a second
          expansion strut .......................................................................... 28

iii

f.      and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair.......................................... 29

g.      a plurality of the second expansion strut pair[s] forming a second expansion column;.................................................. 29

h.      a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section..................... 30

i.      the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and .............................................. 31

j.      the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column........................................... 32

k.      a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column.................................. 33

l.      the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections,........................................................................... 34

m.      wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column .............................. 34

2.      Claims 6 and 7 of the '021 patent are anticipated by Brown............. 35

3.      Claim 8 of the '021 patent is anticipated by Brown........................... 36

4.      Claim 17 of the '021 patent is anticipated by Brown.......................... 37

C.      Claims 1, 6, 7, 8, and 17 of the '021 patent are anticipated by Lau ............... 37

1.      Claim 1 of the '021 patent is anticipated by Lau ................................. 40

a.      A stent in a non-expanded state, comprising: .......................... 40

b.      a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut............ 40

iv

c. and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair ........................................... 41

d. a plurality of the first expansion strut pair forming a first expansion column; ................................................. 42

e. a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut ....................................................... 42

f. and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair........................................ 43

g. a plurality of the second expansion strut pair forming a second expansion column; ......................................... 44

h. a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section................... 45

i. the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and ............................... 46

j. the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column ....................................... 47

k. a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column ................................ 48

l. the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections, ............................................... 49

m. wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column ................................... 50

2. Claims 6 and 7 of the '021 patent are anticipated by Lau ................. 50

3. Claim 8 of the '021 patent is anticipated by Lau ................. 51

        **4.**    **Claim 17 of the '021 patent is anticipated by Lau** ................................ **52**

**VI.**    **FEE**.................................................................................................................... **53**

**VII.**    **CONCLUSION** ............................................................................................... **53**

## I.   DOCUMENTS UPON WHICH REEXAMINATION IS REQUESTED AND THOSE REFERRED TO

This paper shows that there are substantial new questions of patentability as to Claims 1, 6, 7, 8, and 17 of the '021 patent and that Requester has a reasonable likelihood that it would prevail in this Reexamination on at least one of the claims of the '021 patent, in view of the following documents that are Exhibits hereto:

| Appendix Number | Description |
|---|---|
| 1. | *Jang v. Boston Scientific Corp.*, 493 Fed.Appx. 70 (2012) (nonprecedential) |
| 2. | Plaintiff, Dr. Jang's Opening Claim Construction Brief ("Jang Brief") in the California litigation (*G. David Jang, M.D. v. Boston Scientific Corporation*) |
| 3. | Defendant, Boston Scientific Corporation's Opening Markman Brief in the California litigation (*G. David Jang, M.D. v. Boston Scientific Corporation*) |
| 4. | Joint Claim Construction and Pre-Hearing Statement in the California litigation (*G. David Jang, M.D. v. Boston Scientific Corporation*) |
| 5. | Office Action mailed on January 27, 1998, in US Patent Application No. 08/845,657 |
| 6. | Response to Office Action dated June 17, 1998, in US Patent Application No. 08/845,657 |
| 7. | Terminal Disclaimer dated October 6, 1998, in US Patent Application No. 08/845,657 |
| 8. | Response filed on December 10, 2010, to Office Action, in Reexamination Control No. 90/009,598 |
| 9. | Response filed on June 24, 2011, to Office Action, with the accompanying Moore declaration, in Reexamination Control No. 90/009,598 |
| 10. | Office Action mailed on September 29, 2011, in Reexamination Control No. 90/009,598 |
| 11. | Office Action mailed on February 18, 2011, in Reexamination Control No. 90/009,598 |
| 12. | Office Action mailed on September 10, 2010, in Reexamination Control No. 90/009,598 |

| 13. | Declaration Under 37 C.F.R. § 1.132 of James E. Moore, Jr., signed on December 10, 2010, in Reexamination Control No. 90/009,598 |
| 14. | Office Action mailed on January 10, 2012, in Reexamination Control No. 90/009,598 |

## II.     SUMMARY OF THIS REQUEST

Requester requests that the Office determine if a substantial new question of patentability affecting at least one of Claims 1, 6, 7, 8, and 17 of the '021 patent is raised with respect to the prior art references identified herein in light of the claim constructions provided below.

The '021 patent, which is directed to an intravascular stent, was filed on April 25, 1997 and issued on July 13, 1999. Requests for *ex parte* reexamination were filed on November 17, 2009, and January 17, 2011. These reexaminations were merged on April 15, 2011. A reexamination certificate was issued on April 17, 2012 (the "2012 Reexamination"). The 2012 Reexamination did not address Claims 1, 6, 7, 8, or 17, however. The present Request raises new questions of patentability that were not specifically addressed in either of the prior reexaminations or the original file history.

On June 3, 2002, named inventor, G. David Jang ("Dr. Jang"), assigned the '021 patent to the Requester. During an ongoing litigation between Dr. Jang and the Requester, Dr. Jang has proposed claim constructions that are substantially broader than any previously proposed by the Requester. Accordingly, Requester provides Dr. Jang's new claim constructions with prior art, supporting evidence and argument, through the present Request to determine if a new question of patentability exists. As discussed in detail below, the prior art cited herein may anticipate Claims 1, 6, 7, 8, and 17 of the '021 patent.

## III.     RELATED PROCEEDINGS

The Requests for *ex parte* reexamination in Control Nos. 90/009,598 and 90/011,439 were filed on November 17, 2009 and January 17, 2011, respectively, and a Reexamination Certificate was issued on April 17, 2012. These reexaminations were merged on April 15, 2011. Both reexaminations cited prior art (U.S. Patent Nos. 6,348,065 and 6,203,569) that overlaps with the prior art cited herein, and the reexamined claims share similar terminology with the claims discussed herein. Requester has provided those arguments made during these reexaminations that are relevant (in Requester's opinion) to whether a substantial new question

3

of patentability exists and whether to allow a claim to be confirmed in a reexamination

certificate.  Requester will provide a copy of the full record upon request but will not do so here

for the sake of brevity.  A Request for *ex parte* reexamination in Control No. 90/011,800 was

filed on July 18, 2011, denied on September 15, 2011, and terminated on November 15, 2011.

The '021 patent has also been the subject of District Court litigation, including *Boston

Scientific Corp. et al. v. Conor Medsystems Inc.* in the United States District Court for the

District of Delaware (Wilmington) Case No. 1:05cv768; *Cordis Corporation v Boston Scientific

Corp. et al.* in the United States District Court for the District of Delaware (Wilmington) Case

No. 1:08cv779; *Boston Scientific Corp. et al. v. Cordis Corporation* in the United States District

Court for the District of Minnesota (Minneapolis) Case No. 0:09cv3445; *Boston Scientific Corp.

et al. v. Cordis Corporation* in the United States District Court for the District of Delaware

(Wilmington) Case No. 1:10cv315; *Jang. v. Boston Scientific Corp. et al*., in the United States

District Court for the District of Delaware (Wilmington) Case. No. 10-00681-SLR; and *Jang v.

Boston Scientific Corp. et al.* in the United States District Court Central District of California

Eastern Division Case No. ED CV 05-00426-VAP (CT-x) ("the California litigation").  The

United States Court of Appeals for the Federal Circuit has issued decisions related to the '021

patent, including *Cordis Corporation v Boston Scientific Corp.*, 561 F.3d 1319, 1332 (Fed. Cir.

2009) and *Jang v. Boston Scientific Corp.,* 493 Fed.Appx. 70 (2012) (nonprecedential) (Appx.

1).  The Federal Circuit reversed the District Court's claim construction in the California

litigation because it concluded that the District Court's construction of "connecting strut column"

erroneously imported a limitation from the specification. (*Jang*, 493 Fed.Appx. at 71.)  Dr.

Jang's arguments regarding claim construction in the California litigation are discussed below.

In addition, certain papers from prior litigations were provided during U.S. Control Nos.

90/009,598 and 90/011,439.  Requester can provide any documentation of interest to the CRU

should there be any questions with regard to these prior litigations but do not provide them

herewith for the sake of brevity.

4

## IV.   STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTION OF PATENTABILITY

Under the constructions advanced by named inventor Dr. Jang, the Requester believes that there are substantial new questions of patentability for 1, 6, 7, 8, and 17 of the '021 patent. Requester thus requests that the Office determine if the claim constructions proposed by named inventor Dr. Jang present a substantial new question of patentability affecting at least one of Claims 1, 6, 7, 8, and 17 of the '021 patent.

The United States Court of Appeals for the Federal Circuit recently addressed an issue of claim construction pertaining to the '021 patent and its parent, U.S. Patent No. 5,954,743 in the California litigation. *Jang,* Fed. Appx. 77 (Appx. 1). The Federal Circuit concluded that the Requester and the United States District Court for the Central District of California had erred in construing claim term "connecting strut column" to require that the "connecting struts" within the column be "unattached" to one another. (*Id.* at 78.) The Federal Circuit then remanded the case to the District Court for proceedings consistent with its ruling. (*Id.*)

In the California litigation, Dr. Jang has asserted that certain of the Requester's products are covered by Claims 1, 6, 7, 8, and 17 the '021 patent (among other patents). In that litigation, both parties have submitted briefs setting forth their proposed constructions of certain claim terms in Claims 1, 6, 7, 8, and 17. Requester herein provides the entirety of the Jang Brief, Defendant Boston Scientific Corporation's Opening Markman Brief ("Jang Brief"), and a Joint Claim Construction and Pre-Hearing Statement from the California litigation. In the Jang Brief, Dr. Jang has proposed constructions of certain disputed claim terms, including "connecting strut column," "connecting strut" and "expansion column." (Jang Brief at 5-6.) As explained below, Dr. Jang's proposed constructions of these terms are substantially broader than any construction previously proposed by the Requester.

The claim constructions proposed by Dr. Jang in the California litigation are adopted in this petition for reexamination solely for the purposes of determining whether a substantial new

question of patentability exists with respect to Claims 1, 6, 7, 8, and 17 of the '021 patent. Requester recognizes that "[d]uring reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims. (*In re Yamamoto*, 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984))." MPEP § 2258; *see also, In re Swanson*, 540 F.3d 1368 (Fed. Cir. 2008).  Documents authored by the Requester and Dr. Jang may provide guidance to the Central Reexamination Unit regarding the meanings of the claims of the '021 patent.

## V.    DETAILED EXPLANATION OF ANTICIPATION OF CLAIMS

### A.    Claims 1, 6, 7, 8, and 17 of the '021 patent are anticipated by Wijay

Wijay[1] would anticipate any claim of the '021 patent under 35 U.S.C. § 102(e) regardless of the '021 patent's effective filing date.  Wijay raises a new question of patentability in that, under the broadest reasonable construction, it anticipates Claims 1, 6, 7, 8, and 17 of the '021 patent.  This is not the case for the art argued in the original prosecution, Pinchasik *et al.* (EP 0 709 067 A2[2]).  In the January 27, 1998 Office action ("Office action") in the original prosecution of U.S. Application No. 08/845,657(which issued as the '021 patent), the claims that issued as Claims 1, 6, 7, 8, and 17 in the '021 patent were rejected under 35 USC § 102(b) in view of Pinchasik *et al.* (EP 0 709 067 A2).  (Office action at 3.)  The Office cited a modified Figure 2 of Pinchasik in the Office action setting forth first and second expansion columns 20[3]) and connection columns 30.  (*Id.*)

---

[1] Citations below will be based on U.S. Patent No. 6,203,569 ("Wijay") and have support in the prior filed application, of which Wijay is a continuation application.

[2] The Office action had a typo identifying the Pinchasik *et al.* reference as EP 079 067 A2.

[3] The annotated Figure 2A below is not from the file history.  All of the annotated figures herein are only for the aid of the CRU and are not identical to those in the cited references or applications.



In response, Patentee filed amendments to Claim 1, including the addition of a limitation requiring that the first expansion strut of the first expansion strut pair in the first expansion column have a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column. (Response to Office action filed on June 17, 1998 ("Response") at 3.) The Response with its amendments overcame the rejection under 35 U.S.C. § 102, and after a terminal disclaimer was filed, the '021 patent issued.

Wijay discloses a stent with expansion columns connected to each other by connecting strut columns. Specifically, the "reversing undulations 12" in Figure 1 of Wijay (shown below) read on the "expansion strut pairs" of the '021 patent, and the "crossties 16" read on the '021 patent's "connecting struts"; "rings 10" read on the '021 patent's "expansion columns." (Wijay col 4:42-61.)[4] The multiple "crossties 16" together form a connecting strut column. As shown below in Wijay figure 1, the first expansion strut of the first expansion strut pair in the first

---

[3]Wijay's stent possesses "series of reversing undulations 12 and 14... [and] crossties 16, looking from bottom to top (which is left to right in the figure below), make a bend to the left and a bend to the right on their way from reverse bend 12 to a reverse bend 14.… [T]he crossties 16 have flexibility in that they have … a double bend, such as including 18 and 20.… One or more crossties 16 can be used between rings 10 up to a maximum where every reversing bend, such as 14, is connected to an adjacent by offset circumferentially reversing bend 12." (Wijay col 4:42-61.)

expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.



In an *ex parte* reexamination of the '021 patent, U.S. Control No. 90/009,598, Requester argued that Claims 23 and 24 of the '021 patent were not invalid in view of Wijay.  In particular, that the disclosure of Wijay could not properly be combined with U.S. Patent No. 6,348,065 for a rejection under 35 U.S.C. § 103 due to a teaching away in the '065 patent.  (Response filed on December 10, 2010 to a non-final Office action at 2 in the '598 reexamination.)  In addition, Requester argued during the '598 reexamination that Wijay could not be used to reject the '021 patent claims because "Wijay specifically distinguishes cut tube stents [like those disclosed in the '021 patent] from the wire form stents disclosed" in Wijay.  (Moore Declaration signed June 24, 2011 at ¶¶ 16-17 in the '598 reexamination.)  In addition, Requester argued that the claim language and specification of the '021 patent make clear that the stents of Claims 23 and 24 are directed to tube stents.  (Response filed on June 24, 2011 to a non-final Office action at 7.)  The CRU maintained the rejection for Claims 23 and 24 because "[t]here is nothing in claims 23 and 24 to limit the claims to a cut tube stent."  (Final Office action mailed September 29, 2011 at 9 in

the '598 reexamination.)  Claims 23 and 24 were eventually canceled.  (Reexamination Certificate issued for the '021 patent on April 17, 2012.)

Given that, just as the CRU concluded that Claims 23 and 24 were not limited to cut tube stents, we request it apply the broadest reasonable interpretation under which Claims 1, 6, 7, 8 and 17 are not limited to cut tube stents, and as such, Wijay presents a substantial new question of patentability not having been previously considered with regard to Claims 1, 6, 7, 8 and 17 of the '021 patent.

### 1.   Claim 1 of the '021 patent is anticipated by Wijay

Wijay discloses all of the limitations of Claim 1.  For ease, Claim 1 is broken out into its constituent parts.

#### a.   A stent in a non-expanded state, comprising:

Wijay discloses an expandable stent, and both the expanded and non-expanded states of it would be understood by one of skill in the art.  "The rings themselves have predetermined stress-relieving points to predispose, by stress relief, particular segments of each ring to bend upon application of an expansion force such as by a balloon or by other means."  (Wijay col 3:63-67.)  One of skill in the art would understand that the stent is in its non-expanded state when being delivered through tortuous body lumens.  In a stent of Wijay, it is desirable to have "flexibility to be maneuvered around bends in the vascular system."  (*Id.* col 3:31-34.)

#### b.   a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Wijay discloses a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  In 2006, the District Court in the California litigation construed "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  Dr. Jang agrees with that construction.  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court's construction of "expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent

9

struts in an expansion column may be the first and second expansion struts.  When two expansion struts are joined at one end and open at the other then they form an "expansion strut pair" under the District Court's and Dr. Jang's construction.  Wijay's "reversing undulations 12 and 14" thus read on the "expansion strut pairs" of the '021 patent.



An "expansion strut pair" in which a joining strut of the first expansion strut pair couples the first and second expansion struts at a distal end

> **c.    and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair**

Claim 1 of the '021 patent also requires "a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair." In Wijay, the wire of ring 10 is bent at 12 or 14 to form a reversing undulation such that the wires are joined at one end and open at the other.  (Wijay col 4:40-42; *see* portion of Figure 1 above.)  Accordingly, the alternating bends 12 and 14 of Wijay are joining struts as interpreted in light of the '021 patent.  The District Court and Dr. Jang construed "distal" to mean "to the right when viewing the stent from a horizontal perspective."  (Jang Brief at 27.)  As shown in Wijay Figure 1, the "reversing undulation 12" possesses expansion struts that are coupled at the distal end.



> **d.** **a plurality of the first expansion strut pair[s] forming a first expansion column;**

As described above, the series of reversing undulations 12 and 14 shown in Figure 1 of Wijay read on the "expansion strut pairs" of the '021 patent. Those reversing undulations are joined into a vertical ring 10 by distal joining struts 12. (Wijay col 4:40-42; *see* annotated figure.) The reversing undulations thus comprise a "plurality of expansion strut pairs forming a first expansion column," as recited in Claim 1, and as illustrated below.



> ### e.   a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Wijay discloses a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  As discussed above, the District Court in the California litigation construed "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  Dr. Jang agrees with that construction.  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court's construction of "expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent struts in an expansion column may be the first and second expansion struts.  When two expansion struts are joined at one end and open at the other then they form an "expansion strut pair" under the District Court's and Dr. Jang's construction.  Wijay's "reversing undulations 12 and 14" thus read on the "expansion strut pairs" of the '021 patent.



> ### f.   and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair

Claim 1 of the '021 patent also requires "a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the first expansion strut pair."  In Wijay, the wire of ring 10 is bent at 12 or 14 to form a reversing undulation such that the wires are joined at one end and open at the other.  (Wijay col

12

4:40-42; *see* portion of Figure 1 below.)  Accordingly, the alternating bends 12 and 14 of Wijay

are joining struts as interpreted in light of the '021 patent.  The District Court and Dr. Jang

construed "proximal" to mean "to the left when viewing the stent from a horizontal perspective."

(Jang Brief at 27.)  As shown in Wijay Figure 1, the "reversing undulation 14" possesses

expansion struts that are coupled at the proximal end.  (Wijay col 4:40-42; *see* below.)



g.     **a plurality of the second expansion strut pair[s]
forming a second expansion column;**

As described above, the series of reversing undulations 12 and 14 shown in Figure 1 of

Wijay read on the "expansion strut pairs" of the '021 patent.  Those reversing undulations are

joined into a vertical ring 10 by proximal joining struts 14.  (Wijay col 4:40-42; *see* annotated

figure below.)  The reversing undulations thus comprise a "plurality of second expansion strut

pairs forming a second expansion column," as recited in Claim 1, and as illustrated below.  (*See*

Wijay col 5:63-64; *see* below.)

13



**h.     a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section**

The District Court in California litigation construed "connecting strut" in the claims of the '021 patent to mean "a strut that connects adjacent expansion columns."  (Jang Brief at 21.) Dr. Jang proposes more broadly that a connecting strut need only "connect expansion columns" and that the expansion columns do not need to be "adjacent" to each other.  (*Id.* at 6.)  Under either construction Wijay discloses a "connecting strut" as recited in the '021 patent. Wijay "[c]onnect[s] each row 10 with one or more crossties 16," which can have a double bend including 18 and 20.  (Wijay col 4:55-59; *annotated figure* below.)  As shown below, Wijay's crossties 16 with "double bends 18 and 20" read on the '021 patent's "first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section."

14



     i.    **the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and**

The first connecting strut proximal section of Wijay (*see* portion of crosstie 16 in the circle in the annotated figure below) is coupled to the distal end of the first expansion pair in the first expansion column (see 12 in dashed box of the annotated figure below).



**j.      the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column**

The first connecting strut distal section of Wijay (*see* portion of crosstie 16 in circle below) is coupled to the proximal end of the second expansion pair in the second expansion column (*see* reversing bend 14 in dashed box below).



**k.      a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column**

In the California litigation, the District Court construed "connecting strut column" to mean "a structure formed solely of connecting struts unattached to each other and arranged in a column along the circumference of the stent." (Jang Brief at 17.)  Following remand from the Federal Circuit, Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '021 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent." (*Id.* at 17-18.)  Under either construction, Wijay discloses a first connecting strut column.  Wijay discloses that "[c]onnecting each row 10 is one *or more* crossties 16." (Wijay col 4:55-56 (emphasis added).)  As shown in Wijay Figure 1 below, a plurality of connecting struts (or crossties 16) form "connecting strut columns" between "expansion columns" (or rings 10).

16



> l.    the first connecting strut intermediate section
>       being non-parallel to the first connecting strut
>       proximal and distal sections,

The first connecting strut intermediate section (see portion of crosstie 16 in circle below) are non-parallel to the first connecting strut proximal and distal sections (see dashed boxes below).



> **m.**     **wherein the first expansion strut of the first
> expansion strut pair in the first expansion
> column has a longitudinal axis offset from a
> longitudinal axis of the first expansion strut of
> the second expansion strut pair in the second
> expansion column**

The longitudinal axis of the first expansion struts of the first and second expansion pairs
are longitudinally offset from each other in Wijay.  Wijay discloses that "[o]ne or more crossties
16 can be used between rings 10 up to a maximum where every reversing bend, such as 14, is
connected to an adjacent but offset circumferentially reversing bend 12." (Wijay col 4:64-67.)
Claim 1 of the '021 patent defines "the first expansion strut of the first expansion strut pair in the
first expansion column" and "the first expansion strut of the second expansion strut pair in the
second expansion column" based on their relationship to the first connecting strut.  By
"longitudinally offset," the claim requires that the first expansion strut of the first expansion strut
pair and the first expansion strut of the second expansion strut pair be *circumferentially* offset
from one another.  Wijay discloses that the first expansion strut pair and the first expansion strut
of the second expansion strut pair be circumferentially offset (or "longitudinally offset" in the
parlance of the patents) from one another, as shown below.



### 2. Claims 6 and 7 of the '021 patent are anticipated by Wijay

Claim 6 of the '021 patent is directed to "[t]he stent of claim 1, wherein a first radius of curvature is formed where the first connecting strut proximal section is coupled to the first connecting strut intermediate section."  Claim 7 of the '021 patent requires "[t]he stent of claim 1, wherein a second radius of curvature is formed where the first connecting strut distal section is coupled to the first connecting strut intermediate section."

The broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent is that the first radius of curvature is formed where the first connecting strut proximal or distal section is coupled to the first connecting strut intermediate section.  (*See* The '021 patent, col 13:38-48.)  Wijay discloses proximal and distal sections of a first connecting strut (dashed boxes below), and there is a radius of curvature between those and the first connecting strut intermediate section (in circle below).  The radius of curvature for the embodiment depicted below might be approximately 90 degrees for the first and second radius of curvature each.  As such, Wijay discloses all the limitations of Claims 6 and 7 of the '021 patent.



### 3. Claim 8 of the '021 patent is anticipated by Wijay

Claim 8 of the '021 patent is directed to "[t]he stent of claim 1, wherein a first radius of curvature is formed where the first connecting strut proximal section is coupled to the first connecting strut intermediate section and a second radius of curvature is formed where the first connecting strut distal section is coupled to the first connecting strut intermediate section."  In

light of Wijay reading on the broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent, Wijay also reads on Claim 8.  The radius of curvature for both the proximal section and the distal section is formed where they meet the intermediate section of the connecting strut.  (*See* intersection of circle and dashed boxes above.)

### 4.      Claim 17 of the '021 patent is anticipated by Wijay

Claim 17 of the '021 patent is directed to "[t]he stent of claim 1, wherein the first and second expansion columns are each unbroken, continuous structures."  Given that Claim 1 is anticipated, Claim 17 is also anticipated under the same construction and analysis.  The plurality of reversing undulations in the series of rings 10 are each unbroken, continuous structures.

### B.      Claims 1, 6, 7, 8, and 17 of the '021 patent are anticipated by Brown

U.S. Patent No. 6,818,014 ("Brown") raises a new question of patentability in that it anticipates the '021 claims unlike the art cited in the '021 patent original examination.  There was only one Office action dated January 27, 1998 ("Office action") in the original prosecution of the application that issued as the '021 patent.  In it, the claims that issued as Claims 1, 6, 7, 8, and 17 in the '021 patent were rejected under 35 USC § 102(b) in view of Pinchasik *et al.* (EP 0 709 067 A2).  (Office action at 3.[5])  The Office cited a modified Figure 2 of Pinchasik in the Office action setting forth first and second expansion columns 20 (modified Figure 2A below is not from the file history) and connection columns 30.  (*Id.*)

---

[5] The Office action had a typo identifying the Pinchasik *et al.* reference of EP 079 067 A2.



In response, Patentee filed amendments, including adding of a limitation to Claim 1, and therefore all of its dependent claims (including the claims that issued as Claims 6-8 and 17), that the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.  (Response to Office action filed on June 17, 1998 ("Response") at 3.)  The Response with its amendments overcame the rejection under 35 U.S.C. § 102, and after a terminal disclaimer was filed, the '021 patent issued.

Brown discloses stents with "a plurality of adjacent segments generally indicated at 16, each of which is formed in an undulating flexible patterns of substantially parallel struts 18," as shown below (in Brown Figure 1).  (Brown col 2:64-66.)



The "substantially parallel struts" 18 read on the "expansion struts" of the '021 patent, and
because circumferentially adjacent parallel struts are joined at one end and open at the other they
also read on the "expansion strut pairs" of the '021 patent. Segments 16 form expansion columns
as recited in Claim 1 of the '021 patent.

In addition, "[i]nterconnecting elements 20 extend from one end portion 19 of one
segment 16 to another end portion 19 of another adjacent segment 16 but not to an oppositely
positioned end portion 19 of an adjacent segment 16."  (Brown col 3:16-19.)  As noted above,
Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '021 patent is merely
"a structure formed of a plurality of connecting struts and arranged in a column along the
circumference of the stent."  (Jang Brief at 17-18.)  Dr. Jang further asserts that a connecting
strut column need only connect expansion columns and that the connecting strut column may be
composed of structures other than connecting struts.  (*Id.* at 17.)  Under this broad interpretation
of "connecting strut column," the structure delineated by the dotted box below reads on a
"connecting strut column" with the grayed in portion reading on the claimed "connecting strut."



Accordingly, "[t]he first expansion strut of the first expansion strut pair in the first expansion column" and "the first expansion strut of the second expansion strut pair in the second expansion column" are also offset as required in Claim 1 of the '021 patent.  Claim 1 defines "the first expansion strut of the first expansion strut pair in the first expansion column" as having a longitudinal axis offset from a longitudinal axis of "the first expansion strut of the second expansion strut pair in the second expansion column" (as shown below).



In the '598 reexamination, Requester argued that Brown teaches away from the use of flexible connecting struts and could therefore not be properly combined with Wijay.  (Response filed on December 10, 2010 to non-final Office action at 2 in the '598 reexamination.)  The CRU agreed that Brown taught away from flexible connectors.  (Office action dated February 18, 2011

23

at 7 in the '598 reexamination.)  The CRU also concluded that the "connecting struts of Brown [interconnecting elements 20] do not comprise a proximal section, a distal section and an intermediate section."  (Office action dated September 10, 2010 at 5 in the '598 reexamination.)

It appears clear that, in so reasoning, the CRU was limiting the "connecting struts" of Brown to interconnecting elements 20 only and not considering that the "connecting struts" might also include portions of segments 16.  As explained above, however, under the constructions of "connecting strut" and "connecting strut column" advanced by Dr. Jang in the California litigation, a "connecting strut column" may include structures other than connecting struts, and the connecting struts within the connecting strut column may be attached to one another.  Under Dr. Jang's proposed constructions, the claims read on Brown, as explained below.

In light of the new claim construction arguments raised in the California litigation, a reasonable examiner may also want to consider the exchange between the Requester and the CRU concerning the connector loops 18 and 20 in U.S. Patent No. 5,733,303 ("Israel") in the '598 reexamination.  While Israel is not a cited reference in this Request, certain statements made by the CRU could apply to the intermediate section of the Brown connectors under Dr. Jang's claim construction.  [[Why?]]  Requester argued that Israel does not teach an intermediate section that is non-parallel to its proximal and distal section, as required in Claims 23, 24 and 36 of the '021 patent."  (Moore Declaration signed on December 10, 2010 at ¶¶ 29-30 in the '598 reexamination.)  The Requester further argued that "[t]he loops 20 and 18 have a substantial linear length which is clearly parallel to the straight sections 22" of Israel and that the parallel arrangement was essential to the design of Israel.  (*Id.* at ¶ 19.)  The CRU found that the "vertical legs [of Israel] are not parallel to the horizontal straight sections."  (Office action dated February 18, 2011 at 7 in the '598 reexamination.)  The CRU further found that "any portion of the connecting strut of Israel between the end portions can be considered an intermediate section.  In fact, it can be said that there are three intermediate sections between the end portions…. The claim language is not limited to only a single intermediate section."  (*Id.* at 8.)  Anticipation

rejections over Claims 23 and 24 were maintained in light of Israel and the CRU's understanding of the intermediate section of the '021 patent connecting struts, and those claims were ultimately cancelled.  (Final Office action dated January 10, 2012 at 4 in the '598 reexamination.)  In this Request, Requester identifies an intermediate section of a connecting strut of Brown that has portions parallel and non-parallel to the straight sections of the expansion struts.  (*See* below.)  In so doing, Requester does not repeat the logic of its prior arguments against Israel but instead adopts the CRU's broadest reasonable interpretation of the non-parallel intermediate section of the '021 patent connecting struts applied in the '598 reexamination.  Under that broadest reasonable interpretation, and under the constructions advanced by Dr. Jang in the California litigation, Brown reads on Claims 1, 6, 7, 8, and 17 of the '021 patent and presents a substantial new question of patentability not previously considered.

### 1.  Claim 1 of the '021 patent is anticipated by Brown

Brown discloses all of the limitations of Claim 1.  For ease, Claim 1 is broken out into its constituent parts.

### a.  A stent in a non-expanded state, comprising:

Brown discloses an expandable stent and both the expanded and non-expanded states would be understood by one of skill in the art.  "Typically, a stent will have an unexpected (closed) diameter for placement and an expanded (opened) diameter after placement in the vessel or the duct."  (Brown col 1:21-23.)  "[T]he invention provides a tubular expandable stent."  (Brown col 2:12-13.)  One of skill in the art would understand that the stent is in its non-expanded state when being delivered through tortuous body lumens.

### b.  a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Brown discloses a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts

coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) Dr. Jang also

agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion

column." (*Id*.) Accordingly, any two adjacent struts in an expansion column can be the first and

second expansion struts. Brown discloses circumferentially adjacent "segments" jointed at one

end and open at the other to form "an undulating flexible pattern of substantially parallel struts":

"The configuration can be seen in these Figures to be made up of a plurality of adjacent

segments generally indicated at 16, each of which is formed in an undulating flexible pattern of

substantially parallel struts 18. Pairs of struts are interconnected at alternating end portions 19a

and 19b." (Brown col 2:63-66; *see* portion of Figure 1 below.) Brown's pairs of adjacent

segments 18, which form the undulating flexible pattern of the stent, are composed of adjacent

first and second expansion struts as interpreted in light of the '021 patent.



> **c.**     **and a joining strut of the first expansion strut**
> **pair that couples the first and second expansion**
> **struts at a distal end of the first expansion strut**
> **pair**

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion

strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining

strut and open at the other." (Jang Brief at 16.) "The configuration can be seen in these Figures

to be made up of a plurality of adjacent segments generally indicated at 16, each of which is

formed in an undulating flexible pattern of substantially parallel struts 18. Pairs of struts are

interconnected at alternating end portions 19a and 19b." (Brown col 2:63-66; *see* portion of

Figure 1 below.)  Accordingly, the alternating end portions 19a and 19b of Brown are joining

struts as interpreted in light of the '021 patent.  Brown thus discloses an "expansion strut pair" in

which a joining strut of the first expansion strut pair couples the first and second expansion struts

at a distal end as required in Claim 1 of the '021 patent.



An "expansion strut pair" in
which a joining strut of the
first expansion strut pair
couples the first and second
expansion struts at a distal end

> **d.      a plurality of the first expansion strut pair[s]
>          forming a first expansion column;**

The serpentine patterns 16 of Figure 1 of Brown are constructed of more than two

expansion strut pairs 18 having distal joining struts 19a and 19b.  "The configuration can be seen

in these Figures to be made up of a plurality of adjacent segments generally indicated at 16."

(Brown col 2:63-65; *see above*.)  Brown thus discloses a plurality of the first expansion strut

pairs forming a first expansion column, as required in Claim 1 of the '021 patent, and as shown

below.



e.   **a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut**

Brown discloses a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column."  (*Id*.)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  Brown discloses circumferentially adjacent "segments" jointed at one end and open at the other to form "an undulating flexible pattern of substantially parallel struts": "The configuration can be seen in these Figures to be made up of a plurality of adjacent segments generally indicated at 16, each of which is formed in an undulating flexible pattern of substantially parallel struts 18.  Pairs of struts are interconnected at alternating end portions 19a and 19b." (Brown col 2:63-66; *see* portion of Figure 1 below.)  Brown's pairs of adjacent segments 18, which form the undulating flexible pattern of the stent, are composed of adjacent first and second expansion struts as interpreted in light of the '021 patent.

28

    **f.**  **and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair**

   Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) The undulating pattern in the adjacent segments of the stent of Brown have adjacent first and second expansion struts coupled at a proximal end by a joining strut as shown below.



    **g.**  **a plurality of the second expansion strut pair[s] forming a second expansion column;**

   The adjacent segments described above form "undulating flexible pattern of substantially parallel struts." (*See* Brown col 5:63-64.) As shown below, this undulating flexible pattern reads on "a plurality of the second expansion strut pair[s] forming a second expansion column" as required in Claim 1 of the '021 patent.



> "second expansion column" formed of a plurality of second expansion strut pairs

### h. a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut" in the California litigation. (Jang Brief at 21.) Dr. Jang now proposes that a connection strut only needs to "connect expansion columns" and that the expansion columns do not need to be "adjacent" expansion columns as the 2006 District Court had found. (*Id.* at 6.) Accordingly, the first connecting strut of the '021 patent is read on by the combination of a proximal interconnecting element 20, a distal interconnecting element 20, and the section of undulating pattern between the two interconnecting elements as the intermediate section of the first connecting strut.

30



i.   the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and

The first connecting strut proximal section of Brown is coupled to the distal end of the first expansion pair in the first expansion column, as shown below.



**j.**   **the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column**

The first connecting strut distal section of Brown is coupled to the proximal end of the second expansion pair in the second expansion column, as shown below.



> **k.      a plurality of the first connecting strut forming a
> first connecting strut column that couples the
> first expansion column to the second expansion
> column**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut column" in the California litigation.  (Jang Brief at 17-18.)  Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '021 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent."  (*Id*. at 17-18.)  Dr. Jang further asserts that a connecting strut column need only connect expansion columns and that the connecting strut column may be composed of structures other than connecting struts.  (*Id*. at 17.)  Under this broad interpretation of "connecting strut column," the structure delineated by the dotted box below contains a plurality of "connecting struts" and reads on a "connecting strut column" that couples the "first expansion column" to the "second expansion column."



    **l.**  **the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections,**

As shown below, the first connecting strut intermediate section is non-parallel to the first connecting strut proximal and distal sections because the undulations within the intermediate section are not parallel to any line in the distal or proximal sections.



    **m.**  **wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column**

As shown above, the first connecting strut intermediate section in Brown (*i.e.*, the undulations between interconnecting elements 20) causes the first connecting strut proximal and distal sections (the interconnecting elements 20) to be "longitudinally offset" from each other as required in Claim 1 of the '021 patent (that is, offset along the stent's circumference).  Brown's written description discloses that "[i]nterconnecting elements 20 extend from one end portion 19 of one segment 16 to another end portion 19 of another adjacent segment 16 but not to an oppositely positioned end portion 19 of an adjacent segment 16."  (Brown col 3:16-19.)  In turn, the "first expansion strut pair" and the "second expansion strut pair," which are connected by the

connecting strut, are also "longitudinally offset," as are the "first expansion struts" of each pair, as shown below.



## 2.     Claims 6 and 7 of the '021 patent are anticipated by Brown

Claim 6 of the '021 patent is directed to "[t]he stent of claim 1, wherein a first radius of curvature is formed where the first connecting strut proximal section is coupled to the first connecting strut intermediate section."  Claim 7 of the '021 patent requires "[t]he stent of claim 1, wherein a second radius of curvature is formed where the first connecting strut distal section is coupled to the first connecting strut intermediate section."

The broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent is that the first radius of curvature is formed where the first connecting strut proximal or distal section is coupled to the first connecting strut intermediate section and is determined by linearly extrapolating the connected curved or wavy sections of the first connecting strut intermediate section.  (*See* the '021 patent col 13:38-48.)  Brown discloses proximal and distal sections of a first connecting strut, and there is a radius of curvature between those and a linear extrapolation of a curved or wavy section of the first connecting strut intermediate section.  The broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent is that the first radius

35

of curvature occurs where the first connecting strut proximal section or the first connecting strut distal section is coupled to the first connecting strut intermediate section and is determined by linearly extrapolating the curved or wavy sections of the first connecting strut at the site of connection.  (*See* the '021 patent col 13:38-48.)  Brown discloses a proximal section and a distal section of a first connecting strut, and there is a radius of curvature between those and a linear extrapolation of the curved sections connecting the proximal and distal sections to the intermediate section of the first connecting strut.  As such, Brown discloses all the limitations of Claims 6 and 7 of the '021 patent.



### 3.      Claim 8 of the '021 patent is anticipated by Brown

Claim 8 of the '021 patent is directed to "[t]he stent of claim 1, wherein a first radius of curvature is formed where the first connecting strut proximal section is coupled to the first connecting strut intermediate section and a second radius of curvature is formed where the first connecting strut distal section is coupled to the first connecting strut intermediate section."  In light of Brown reading on the broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent, Brown also reads on Claim 8.  The radius of curvature for both the proximal section and the distal section is formed where they attach to the intermediate section of the connecting strut.  The broadest reasonable interpretation is determined by linearly extrapolating the curved or wavy sections of the entire first connecting strut intermediate section.  (*See* The '021 patent col 13:38-48.)

#### 4.      Claim 17 of the '021 patent is anticipated by Brown

Claim 17 of the '021 patent is directed to "[t]he stent of claim 1, wherein the first and second expansion columns are each unbroken, continuous structures."  Given that Claim 1 is anticipated, Claim 17 is also anticipated under the same construction and analysis.  The plurality of adjacent segments 16 are each unbroken, continuous structures.

#### C.      Claims 1, 6, 7, 8, and 17 of the '021 patent are anticipated by Lau

U.S. Patent No. 5,514,154 ("Lau") would anticipate any claim of the '021 patent under 35 USC § 102(e) regardless of the '021 patent effective filing date.  In addition, Lau raises a new question of patentability in that it anticipates the '021 claims unlike the art cited in the '021 patent original examination.  There was only one Office action dated January 27, 1998 ("Office action") in the original prosecution of the application that issued as the '021 patent.  In it, the claims that issued as Claims 1, 6, 7, 8, and 17 in the '021 patent were rejected under 35 USC § 102(b) in view of Pinchasik *et al.* (EP 0 709 067 A2).  (Office action at 3.[6])  The Office cited a modified Figure 2 of Pinchasik in the Office action setting forth first and second expansion columns 20 (modified Figure 2A below is not from the file history) and connection columns 30. (*Id.*)

---

[6]The Office action had a typo identifying the Pinchasik et al. reference as EP 079 067 A2.



In response, Patentee filed amendments, including addition of a limitation, to Claim 1 and therefore all of its dependent claims (including the claims that issued as Claims 6-8 and 17) adding that the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.  (Response to Office action filed on June 17, 1998 ("Response") at 3.)  The Response with its amendments overcame the rejection under Section 102 (Final Office action mailed September 15, 1998 at 2; *see above* first expansion strut of the first expansion strut pair in the first expansion column and first expansion strut of the second expansion strut pair in the second expansion column are not offset), and after a terminal disclaimer was filed on October 13, 1998, the '021 patent issued on July 13, 1999.

Lau raises a new question of patentability.  Lau discloses stents with elongated elements 13 that interconnect adjacent cylindrical elements 12 as shown in several of the figures, such as Figures 1-11.  The cylindrical elements 12 read on the expansion struts of the '021 patent and form expansion strut pairs and expansion columns as recited in the '021 patent.  As noted above, Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '021 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent."  (Jang Brief at 17-18.)  Dr. Jang further asserts that a connecting

38

strut column need only connect expansion columns and that the connecting strut column may be composed of structures other than connecting struts. (*Id.* at 17.) Under this broad interpretation of "connecting strut column," the structure delineated by the dotted box below reads on a "connecting strut column" with the grayed in portion reading on the claimed "connecting strut."



Accordingly, "the first expansion strut of the first expansion strut pair in the first expansion column" and "the first expansion strut of the second expansion strut pair in the second expansion column" are also offset as required in Claim 1 of the '021 patent, as shown below.



39

Under the broadest reasonable interpretation, and under the constructions advanced by Dr. Jang in the California litigation, Lau reads on Claims 1, 6, 7, 8, and 17 of the '021 patent and presents a substantial new question of patentability not previously considered.

### 1.    Claim 1 of the '021 patent is anticipated by Lau

Lau discloses all of the limitations of Claim 1.  For ease, Claim 1 is broken out into its constituent parts.

### a.    A stent in a non-expanded state, comprising:

Lau discloses an expandable stent and both the expanded and non-expanded states would be understood by one of skill in the art.  "The present invention is directed to an expandable stent which is relatively flexible along its longitudinal axis to facilitate delivery through tortuous body lumens, but which is stiff and stable enough radially in an expanded condition to maintain the patency of a body lumen such as an artery when implanted therein."  (Lau col 1:53-58.) One of skill in the art would understand that the stent is in its non-expanded state when being delivered through tortuous body lumens, and that it is only expanded when it reaches the stenosis.

### b.    a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Lau discloses a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  Lau's Figure 11 shows expansion strut pairs in an undulating pattern vertically aligned with the circumference of the stent: "Fig. 11 is a plan view of a flattened section of a stent illustrating an alternate undulating pattern in the expandable cylindrical elements of the stent." (Lau col 4:5-7.)  "Fig. 11 illustrates an alternative stent structure in which

the cylindrical elements are in serpentine patterns." (Lau col 5:63-64.) The undulating pattern in the expandable cylindrical elements of the stent are composed of expansion strut pairs with adjacent first and second expansion struts, as shown below.



      c.     **and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair**

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) In the undulating pattern of the expandable cylindrical elements of Lau's Figure 11, the adjacent first and second expansion struts are coupled at the distal end by a joining strut, as shown below.

41



**d.      a plurality of the first expansion strut pair forming a first expansion column;**

The serpentine patterns of Lau's Figure 11 discloses a plurality of such expansion strut pairs, forming an expansion column, as shown below.  (*See* Lau col 5:63-64.)



**e.      a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut**

Lau discloses a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  As stated above, Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent

42

expansion struts coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column." (*Id.*) Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts. Lau's Figure 11 shows expansion strut pairs in an undulating pattern vertically aligned with the circumference of the stent: "Fig. 11 is a plan view of a flattened section of a stent illustrating an alternate undulating pattern in the expandable cylindrical elements of the stent[.]" (Lau col 4:5-7.) "Fig. 11 illustrates an alternative stent structure in which the cylindrical elements are in serpentine patterns." (Lau col 5:63-64.) The undulating pattern in the expandable cylindrical elements of the stent are composed of expansion strut pairs with  adjacent first and second expansion struts, as shown below.



    **f.**    **and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair**

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.)  In the undulating pattern of the expandable

43

cylindrical elements of Lau's Figure 11, the adjacent first and second expansion struts are coupled at the distal end by a joining strut, as shown below.



### g.   a plurality of the second expansion strut pair forming a second expansion column;

The serpentine patterns of Figure 11 form columns with more than two expansion strut pairs having proximal joining struts.  (*See* Lau col 5:63-64.)  Lau's Figure 11 thus discloses a plurality of second expansion strut pairs forming a second expansion column, as required in Claim 1 of the '021 patent.



> **h.**   **a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut." (Jang Brief at 21.)  Dr. Jang now proposes that a connection strut only needs to "connect expansion columns" and that the expansion columns do not need to be "adjacent" expansion columns as the 2006 District Court found.  (*Id.* at 6.)  Accordingly, the first connecting strut of the '021 patent is read on by the combination of a proximal interconnecting element 13, a distal interconnecting element 13, and the section of undulating pattern between the two interconnecting elements as the intermediate section of the first connecting strut, as shown below.



In light of the new claim construction argument and the related new claim construction arguments raised by Dr. Jang in the California litigation, a reasonable examiner may consider the exchange between the Requester and the CRU concerning the connector loops 18 and 20 in U.S. Patent No. 5,733,303 ("Israel") in the '598 reexamination.  Although Israel is not a cited reference in this Request, certain statements made by the CRU may also apply to Lau.  Requester previously argued that "Israel does not teach an intermediate section that is non-parallel to its proximal and distal section, as required in Claims 23, 24 and 36 of the '021 patent."  (Moore

45

Declaration signed on December 10, 2010 in the '598 reexamination at ¶¶ 29-30.)  The Requester further argued that "[t]he loops 20 and 18 have a substantial linear length which is clearly parallel to the straight sections 22" of Israel and that the parallel arrangement was essential to the design of Israel.  (*Id.* at ¶ 19.)  The CRU found that the "vertical legs [of Israel] are not parallel to the horizontal straight sections."  (Office action dated February 18, 2011, in the '598 reexamination at 7.)  The CRU further found that "any portion of the connecting strut of Israel between the end portions can be considered an intermediate section.  In fact, it can be said that there are three intermediate sections between the end portions….  The claim language is not limited to only a single intermediate section."  (*Id.* at 8.)  Anticipation rejections over Claims 23 and 24 were maintained in light of Israel and the Examiner's understanding of the intermediate section of the '021 patent connecting struts, and those claims were ultimately cancelled.  (Final Office action dated January 10, 2012 in the '598 reexamination at 4.)  In this Request, Requester identifies an intermediate section of a connecting strut of Lau that has portions that are both parallel and non-parallel to the straight sections of the expansion struts.  (*See* annotated figure above.)  In so doing, Requester does not repeat the logic of the prior arguments against Israel here but instead adopts the CRU's broadest reasonable interpretation of the intermediate section of the '021 patent connecting struts applied in the '598 reexamination.

> ### i.  the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and

The first connecting strut proximal section of Lau (see interconnecting element 13 in the annotated figure below) is coupled to the distal end of the first expansion pair in the first expansion column (*see* the annotated figure below).



**j.** **the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column**

The first connecting strut distal section of Lau (*see* interconnecting element 13 in the annotated figure below) is coupled to the proximal end of the second expansion pair in the second expansion column (*see* the annotated figure below).



47

       **k.**     **a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut column." (Jang Brief at 17-18.) Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '021 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent." (*Id.*) Dr. Jang further asserts that a connecting strut column need only connect expansion columns and that the connecting strut column may be composed of structures other than connecting struts. (*See id.*) Under this broad interpretation of "connecting strut column," the structure delineated by the dotted box below discloses one connecting strut and can read on a "connecting strut column" that couples the "first expansion column" to the "second expansion column" in a longer stent.



Lau discloses that "[t]he particular pattern and how many undulations per unit of length around the circumference of the cylindrical element 13, or the amplitude of the undulations, are chosen to fill particular mechanical requirements of the stent such as radial stiffness." (Lau col 5:65 - col 6:3.) Lau further discloses that "[t]he number and location of elements interconnecting adjacent cylindrical elements can be varied in order to develop the desired longitudinal flexibility in the stent structure." (Lau col 3:5-8.) One of skill in the art would thus understand that the

48

serpentine columns 12 shown in Figure 11 could be much longer and follow the same pattern of alternating interconnecting elements 13 and that the number of interconnecting elements can be varied.  Such a pattern is shown, for example, in Figure 10 of Lau.  "FIG. 10 illustrates a stent of the present invention wherein three interconnecting elements 12 are disposed between radially expandable cylindrical elements 11.  The interconnecting elements 12 are distributed radially around the circumference of the stent at a 120-degree spacing."  (Lau col 5:52-56.)  Three first connecting struts (three interconnecting elements 13 on each side of the second cylindrical column 12 from the bottom and the portion of the second cylindrical column 12 between each interconnecting element bottom and top pair) are shown in Figure 10 connecting the first expansion column (bottom cylindrical element 12) to the second expansion column (third cylindrical element 12 from the bottom).

### l.     the first connecting strut intermediate section being non-parallel to the first connecting strut proximal and distal sections,

As shown below, the first connecting strut intermediate section is non-parallel to the first connecting strut proximal and distal sections because the undulations within the intermediate section are not parallel to the distal or proximal sections.



       **m.**    **wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column**

As shown in the figure below, the first connecting strut intermediate section in Lau (*i.e.*, undulations between interconnecting elements 13) causes the first connecting strut proximal and distal sections (the interconnecting elements 13) to be offset from each other as implicitly required in Claim 1 of the '021 patent (that is, offset along the stent's circumference). In turn, the "first expansion strut pair" and the "second expansion strut pair," which are connected by the connecting strut, are also "longitudinal[ly] offset," as are the "first expansion struts" of each pair, as shown below.



### 2.    Claims 6 and 7 of the '021 patent are anticipated by Lau

Claim 6 of the '021 patent is directed to "[t]he stent of claim 1, wherein a first radius of curvature is formed where the first connecting strut proximal section is coupled to the first connecting strut intermediate section." Claim 7 of the '021 patent requires "[t]he stent of claim 1, wherein a second radius of curvature is formed where the first connecting strut distal section is coupled to the first connecting strut intermediate section."

50

The broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent is that the first radius of curvature is formed where the first connecting strut proximal or distal section is coupled to the first connecting strut intermediate section and is determined by linearly extrapolating the connected curved or wavy sections of the first connecting strut intermediate section. (*See* the '021 patent col 13:38-48.) Lau discloses proximal and distal sections of a first connecting strut, and there is a radius of curvature between those and a linear extrapolation of a curved or wavy section of the first connecting strut intermediate section. The broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent is that the first radius of curvature occurs where the first connecting strut proximal section or the first connecting strut distal section is coupled to the first connecting strut intermediate section and is determined by linearly extrapolating the curved or wavy sections of the first connecting strut at the site of connection. (*See* the '021 patent col 13:38-48.) Lau discloses a proximal sections and a distal section of a first connecting strut, and there is a radius of curvature between those and a linear extrapolation of the curved sections connecting the proximal and distal sections to the intermediate section of the first connecting strut. As such, Lau discloses all the limitations of Claims 6 and 7 of the '021 patent.



### 3.     Claim 8 of the '021 patent is anticipated by Lau

Claim 8 of the '021 patent is directed to "[t]he stent of claim 1, wherein a first radius of curvature is formed where the first connecting strut proximal section is coupled to the first connecting strut intermediate section and a second radius of curvature is formed where the first

connecting strut distal section is coupled to the first connecting strut intermediate section."  In light of Lau reading on the broadest reasonable interpretation of Claims 6 and 7 consistent with the '021 patent, Lau also reads on Claim 8.  The radius of curvature for both the proximal section and the distal section is formed where they attach to the intermediate section of the connecting strut.  The broadest reasonable interpretation is determined by linearly extrapolating the curved or wavy sections of the entire first connecting strut intermediate section.  (*See* the '021 patent col 13:38-48.)



### 4.      Claim 17 of the '021 patent is anticipated by Lau

Claim 17 of the '021 patent is directed to "[t]he stent of claim 1, wherein the first and second expansion columns are each unbroken, continuous structures."  Given that Claim 1 is anticipated, Claim 17 is also anticipated under the same construction and analysis.  One of skill in the art would understand that the serpentine columns 12 shown in Figure 11 could be longer than what is shown in Figure 11, and neither column is interrupted with any other structure.  One of skill in the art would understand that a "serpentine column" is unbroken and continuous.  Lau discloses that "[t]he particular pattern and how many undulations per unit of length around the circumference of the cylindrical element 13, or the amplitude of the undulations, are chosen to fill particular mechanical requirements of the stent such as radial stiffness."  (Lau col 5:65 - col 6:3.)  One of skill in the art would understand that the serpentine columns 12 shown in Figure 11 could be much longer and follow the same pattern of alternating interconnecting elements 13.  Such a pattern is shown, for example, in Figure 10 in Lau.  "FIG. 10 illustrates a stent of the

52

present invention wherein three interconnecting elements 12 are disposed between radially expandable cylindrical elements 11.  The interconnecting elements 12 are distributed radially around the circumference of the stent at a 120-degree spacing." (Lau col 5:52-56.)  Three first connecting struts (three interconnecting elements 13 on each side of the second cylindrical column 12 from the bottom and the portion of the second cylindrical column 12 between each interconnecting element bottom and top pair) are shown in Figure 10 connecting the first expansion column (bottom cylindrical element 12) to the second expansion column (third cylindrical element 12 from the bottom).

## VI.    FEE

Payment of $12,000.00 is provided herewith.  Any additional fees that are necessary are authorized to be charged to our Deposit Account 50-2387.  A charge is also authorized for any other fees related to the present reexamination that are not otherwise provided for in the accompanying documents.

## VII.   CONCLUSION

For the reasons given above, reexamination of Claims 1, 6, 7, 8, and 17 of the '021 patent is respectfully requested as there are substantial new questions of patentability in view of the claims being anticipated in view of prior art and Dr. Jang's claim construction proposed in the California litigation.

Respectfully submitted,

/Kristan L. Lansbery/

David R. Marsh (Atty. Reg. No. 41,408)
Kristan L. Lansbery (Atty. Reg. No. 53,183)

Date:  October 8, 2013

ARNOLD & PORTER LLP
Attn:  IP Docketing
555 12th Street, N.W.
Washington, D.C.  20004
(202) 942-5000 telephone
(202) 942-5999 facsimile