**Exhibit 2**

PTO/SB/57 (08-13)
Approved for use through 07/31/2015. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA  22313-1450**

Attorney Docket No.: P34089US00

Date: 10/08/2013

1. [✓] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number 5,954,743
   issued September 21, 1999 . The request is made by:

   [✓] patent owner.          [ ] third party requester.

2. [✓] The name and address of the person requesting reexamination is:

   Arnold & Porter LLP

   555 Twelfth Street, NW

   Washington, DC 20004

3. [ ] Requester claims [ ] small entity (37 CFR 1.27) or [ ] micro entity status (37 CFR 1.29) – only a patent owner requester can claim micro entity status.

4. [ ] a.  A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [✓] b.  The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
         to Deposit Account No. 50-2387 ;

   [ ] c.  Payment by credit card.  Form PTO-2038 is attached; **or**

   [ ] d.  Payment made via EFS-Web.

5. [✓] Any refund should be made by [ ] check or [✓] credit to Deposit Account No. 50-2387 .
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

6. [✓] A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed. 37 CFR 1.510(b)(4).

7. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   [ ] Landscape Table on CD

8. [ ] Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. [ ] Computer Readable Form (CRF)

   b. Specification Sequence Listing on:

      i. [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**

      ii. [ ] paper

   c. [ ] Statements verifying identity of above copies

9. [✓] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

10. [✓] Reexamination of claim(s) 1, 10, 11, 13, and 16-20 is requested.

11. [✓] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on Form PTO/SB/08, PTO-1449, or equivalent.

12. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14.  This collection is estimated to take 18 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO:  Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (08-13)
Approved for use through 07/31/2015. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

13. [✓] The attached detailed request includes at least the following items:

a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1).

b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2).

14. [ ] A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e).

15. [ ] a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).

The name and address of the party served and the date of service are:

_____

_____

Date of Service: _____ ; or

[ ] b. A duplicate copy is enclosed since service on patent owner was not possible. An explanation of the efforts made to serve patent owner **is attached**. See MPEP § 2220.

16. Correspondence Address: Direct all communication about the reexamination to:

[✓] The address associated with Customer Number: | 28381

**OR**

[ ] Firm or Individual Name _____

Address

| City | State | Zip |
|---|---|---|

| Country |
|---|

| Telephone | Email |
|---|---|

17. [✓] The patent is currently the subject of the following concurrent proceeding(s):

[ ] a. Copending reissue Application No. _____

[ ] b. Copending reexamination Control No. _____

[ ] c. Copending Interference No. _____

[✓] d. Copending litigation styled:

Jang v. Boston Scientific Corp. et al. in the United States District Court Central District of California Eastern Division Case No. ED CV 05-00426-VAP (CT-x)

Jang. v. Boston Scientific Corp. et al., in the United States District Court for the District of Delaware (Wilmington) Case. No. 10-00681-SLR

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| /David R. Marsh/  /Kristan L. Lansbery/ | October 8, 2013 | |
|---|---|---|
| Authorized Signature | Date | |
| David R. Marsh / Kristan L. Lansbery | 41,408 / 53,183 | [✓] For Patent Owner Requester |
| Typed/Printed Name | Registration No. | [ ] For Third Party Requester |

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent of:           Jang
U.S. Patent No.:     5,954,743 issued September 21, 1999
Issued From:         08/824,866 filed March 26, 1997
Examiner:            To be assigned
Group Art Unit:      To be assigned
Title:               INTRAVASCULAR STENT
Control No.:         To be assigned
Atty. Docket No.:    P34089US00

### Request for *Ex Parte* Reexamination

Mail Stop *Ex Parte* Reexamination
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Dear Director:

This is a request for *ex parte* reexamination of Claims 1, 10, 11, 13, and 16-20 of U.S.

Patent No. 5,954,743 ("the '743 patent"). Because the U.S. Court of Appeals for the Federal

Circuit has recently provided guidance on the proper claim construction for claim terms in U.S.

Patent Nos. 5,954,743 and 5,922,021 (decision attached as an Appendix 1), Requester submits

evidence and arguments that raise substantial new questions of patentability for Claims 1, 10, 11,

13, and 16-20 of the '743 patent.

Further to 35 U.S.C. §§ 302-307 and 37 C.F.R. §§ 1.502 et seq., the undersigned hereby

requests reexamination of Claims 1, 10, 11, 13, and 16-20 under 35 U.S.C. §§ 102. The Table of

Contents below lays out the sections of this Request and the references relied upon for

reexamination.

## TABLE OF CONTENTS

I. DOCUMENTS UPON WHICH REEXAMINATION IS REQUESTED AND
THOSE REFERRED TO .................................................................................. 1

II. SUMMARY OF THIS REQUEST ................................................................. 2

III. RELATED PROCEEDINGS ......................................................................... 2

IV. STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTION OF
PATENTABILITY ............................................................................................ 3

V. DETAILED EXPLANATION OF ANTICIPATION OF CLAIMS ........................... 4

 A. Claims 1, 10, 11, 13, and 16-19 of the '743 patent are anticipated by
Wijay .................................................................................................... 4

  1. Claim 1 of the '743 patent is anticipated by Wijay ................................. 5

   a. A stent in a non-expanded state, comprising: ........................... 5

   b. a first expansion strut pair including a first expansion
strut positioned adjacent to a second expansion strut ............... 5

   c. and a joining strut of the first expansion strut pair that
couples the first and second expansion struts at a distal
end of the first expansion strut pair ........................................ 6

   d. a plurality of the first expansion strut pair forming a
first expansion column; ........................................................ 7

   e. a second expansion strut pair including a first
expansion strut positioned adjacent to a second
expansion strut .................................................................... 8

   f. and a joining strut of the second expansion strut pair
that couples the first and second expansion struts of the
second expansion strut pair at a proximal end of the
second expansion strut pair .................................................... 8

   g. a plurality of the second expansion strut pair forming a
second expansion column; ..................................................... 9

   h. a first connecting strut including a first connecting strut
proximal section, a first connecting strut distal section ......... 10

i.      the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and ............................................... 11

j.      the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column ........................................... 12

k.      a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column; ................................. 12

l.      a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut ............ 13

m.      and a third joining strut of the third expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair ...................................... 14

n.      a plurality of the third expansion strut pair forming a third expansion column; ............................................. 14

o.      a second connecting strut including a second connecting strut proximal section and a second connecting strut distal section, ................................................. 14

p.      the second connecting strut proximal section being coupled to the distal end of the second expansion strut pair in the second expansion column and ................................. 15

q.      the second connecting strut distal section being coupled to the proximal end of the third expansion strut pair of the third expansion column ......................................... 16

r.      a plurality of the second connecting strut forming a second connecting strut column that couples the second expansion column to the third expansion column ................... 17

s.      wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column ....................................... 17

2.      Claim 10 of the '743 patent is anticipated by Wijay ........................... 18

3.      Claim 11 of the '743 patent is anticipated by Wijay ........................... 19

4.      Claim 13 of the '743 patent is anticipated by Wijay.............................. 19

5.      Claims 16 and 17 of the '743 patent are anticipated by Wijay .......... 20

6.      Claim 18 of the '743 patent is anticipated by Wijay.............................. 21

7.      Claim 19 of the '743 patent is anticipated by Wijay.............................. 22

B.    Claims 1, 10, 11, 13, and 16-20 of the '743 patent are anticipated by
      Brown .............................................................................................................. 23

      1.      Claim 1 of the '743 patent is anticipated by Brown.............................. 24

              a.      A stent in a non-expanded state, comprising: ........................... 24

              b.      a first expansion strut pair including a first expansion
                      strut positioned adjacent to a second expansion strut ............. 24

              c.      and a joining strut of the first expansion strut pair that
                      couples the first and second expansion struts at a distal
                      end of the first expansion strut pair .......................................... 25

              d.      a plurality of the first expansion strut pair forming a
                      first expansion column; ............................................................... 26

              e.      a second expansion strut pair including a first
                      expansion strut positioned adjacent to a second
                      expansion strut ............................................................................ 27

              f.      and a joining strut of the second expansion strut pair
                      that couples the first and second expansion struts of the
                      second expansion strut pair at a proximal end of the
                      second expansion strut pair......................................................... 28

              g.      a plurality of the second expansion strut pair forming a
                      second expansion column;............................................................ 28

              h.      a first connecting strut including a first connecting strut
                      proximal section a first connecting strut distal section ........... 29

              i.      the first connecting strut proximal section being
                      coupled to the distal end of the first expansion strut pair
                      in the first expansion column and ............................................... 30

              j.      the first connecting strut distal section being coupled to
                      the proximal end of the second expansion strut pair of
                      the second expansion column....................................................... 31

k.     a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column ..................................... 31

l.     a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a third joining strut of the second expansion strut pair that couples the first and second expansion struts of the third expansion strut pair at a proximal end of the second expansion strut pair .................................. 32

m.     a plurality of the third expansion strut pair forming a third expansion column; ............................................. 33

n.     a second connecting strut including a second connecting strut proximal section a second connecting strut distal section ................................................................................. 33

o.     the second connecting strut proximal section being coupled to the distal end of the second expansion strut pair in the second expansion column and ................................ 34

p.     the second connecting strut distal section being coupled to the proximal end of the third expansion strut pair of the third expansion column ........................................ 35

q.     a plurality of the second connecting strut forming a second connecting strut column that couples the second expansion column to the third expansion column ................... 35

r.     wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column. ................................ 36

2.     Claim 10 of the '743 patent is anticipated by Brown .......................... 37

3.     Claim 11 of the '743 patent is anticipated by Brown .......................... 37

4.     Claim 13 of the '743 patent is anticipated by Brown .......................... 38

5.     Claims 16 and 17 of the '743 patent are anticipated by Brown .......... 38

6.     Claim 18 of the '743 patent is anticipated by Brown .......................... 39

7.     Claim 19 of the '743 patent is anticipated by Brown .......................... 40

8.       Claim 20 of the '743 patent is anticipated by Brown............................ 40

C.      Claims 1, 10, 11, 13, and 16-20 of the '743 patent are anticipated by Lau.................................................................................................................. 41

1.       Claim 1 of the '743 patent is anticipated by Lau ................................. 42

a.      A stent in a non-expanded state, comprising: ........................... 42

b.      a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut ............. 42

c.      and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair .......................................... 43

d.      a plurality of the first expansion strut pair forming a first expansion column; ................................................................ 44

e.      a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut ............................................................................. 44

f.      and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair................................................. 45

g.      a plurality of the second expansion strut pair forming a second expansion column;.......................................................... 46

h.      a first connecting strut including a first connecting strut proximal section and a first connecting strut distal section ........................................................................................ 47

i.      the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and ............................................. 47

j.      the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column.................................................... 48

k.      a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column................................... 49

l.    a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut ............. 50

m.    and a third joining strut of the third expansion strut pair that couples the first and second expansion struts of the third expansion strut pair at a proximal end of the third expansion strut pair ...................................... 51

n.    a plurality of the third expansion strut pair forming a third expansion column; ............................................. 52

o.    a second connecting strut including a first connecting strut proximal section and a first connecting strut distal section ........................................................................ 52

p.    the second connecting strut proximal section being coupled to the distal end of the second expansion strut pair in the second expansion column and ................................. 53

q.    the second connecting strut distal section being coupled to the proximal end of the third expansion strut pair of the third expansion column ...................................... 53

r.    a plurality of the second connecting strut forming a second connecting strut column that couples the second expansion column to the third expansion column ................... 54

s.    wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column. ................................ 54

2.    **Claim 10 of the '743 patent is anticipated by Lau** ............. 55

3.    **Claim 11 of the '743 patent is anticipated by Lau** ............. 55

4.    **Claim 13 of the '743 patent is anticipated by Lau** ............. 56

5.    **Claims 16 and 17 of the '743 patent are anticipated by Lau** ............. 57

6.    **Claim 18 of the '743 patent is anticipated by Lau** ............. 58

7.    **Claim 19 of the '743 patent is anticipated by Lau** ............. 59

8.    **Claim 20 of the '743 patent is anticipated by Lau** ............. 60

**VI.    FEE** ............................................................................ 61

**VII.   CONCLUSION** ................................................................................................................ **61**

I.    DOCUMENTS UPON WHICH REEXAMINATION IS REQUESTED AND THOSE REFERRED TO

This paper shows that there are substantial new questions of patentability as to Claims 1, 10, 11, 13, and 16-20 of the '743 patent for at least one of the Claims of the '743 patent, in view of the following documents that are Exhibits hereto:

| Appendix Number | Description |
|---|---|
| 1. | *Jang v. Boston Scientific Corp.,* 493 Fed. Appx. 70 (2012) (nonprecedential) |
| 2. | Plaintiff, Dr. Jang's Opening Claim Construction Brief ("Jang Brief") in the California litigation (*G. David Jang, M.D. v. Boston Scientific Corporation*) |
| 3. | Defendant, Boston Scientific Corporation's Opening Markman Brief ("BSC Brief") in the California litigation (*G. David Jang, M.D. v. Boston Scientific Corporation*) |
| 4. | Joint Claim Construction and Pre-Hearing Statement (Joint Brief) in the California litigation (*G. David Jang, M.D. v. Boston Scientific Corporation*) |

## II.    SUMMARY OF THIS REQUEST

Requester requests that the Office determine if a substantial new question of patentability affecting at least one of Claims 1, 10, 11, 13, and 16-20 of the '743 patent is raised with respect to the prior art reference identified herein in light of the claim constructions provided below.

The '743 patent, which is directed to an intravascular stent, was filed on March 26, 1997, and issued on September 21, 1999.  The present Request raises new questions of patentability that were not specifically addressed in the original file history.  On June 3, 2002, named inventor, G. David Jang ("Dr. Jang"), assigned the '743 patent to the Requester.  During an ongoing litigation between Dr. Jang and the Requester, Dr. Jang has proposed claim constructions that are substantially broader than any previously proposed by the Requester. Accordingly, Requester provides Dr. Jang's new claim constructions with prior art, supporting evidence and argument, through the present Request to determine if a new question of patentability exists.  As discussed in detail below, the prior art cited herein may anticipate Claims 1, 10, 11, 13, and 16-20 of the '743 patent.

## III.    RELATED PROCEEDINGS

The '743 patent is the subject of District Court litigation in *Jang v. Boston Scientific Corp. et al.* in the United States District Court for the Central District of California Eastern Division Case No. ED CV 05-00426-VAP (CT-x) ("the California litigation") and *Jang. v. Boston Scientific Corp. et al.*, in the United States District Court for the District of Delaware (Wilmington) Case. No. 10-00681-SLR.  The United States Court of Appeals for the Federal Circuit issued *Jang v. Boston Scientific Corp.*, 493 Fed.Appx. 70 (2012) (nonprecedential) that reversed the District Court's claim construction of "connecting strut column" because it erroneously imported a limitation from the specification into the term.  493 Fed.Appx. at 71.  Dr. Jang's arguments being made regarding claim construction in the California litigation are discussed below.

2

## IV.    STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTION
## OF PATENTABILITY

Under the constructions advanced by named inventor Dr. Jang, the Requester believes
that there are substantial new questions of patentability for Claims 1, 10, 11, 13, and 16-20 of the
'743 patent.  Requester thus requests that the Office determine if the claim constructions
proposed by the named inventor Dr. Jang present a substantial new question of patentability
affecting at least one of Claims 1, 10, 11, 13, and 16-20 of the '743 patent.

The United States Court of Appeals for the Federal Circuit recently addressed an issue of
claim constructor pertaining to the '743 and '021 patents.  *Jang v. Boston Scientific Corp.,* 493
Fed.Appx. 70 (2012) (nonprecedential) (Appx. 1).    The Federal Circuit concluded that the
Requester and the United States District Court for the Central District of California had erred in
construing claim term "connecting strut column" to require that the "connecting struts" within
the column be "unattached" to one another.  (*Id.* at 78.)  The Federal Circuit then remanded the
case to the District Court for proceedings consistent with its ruling.  (*Id.*)

In the California litigation, Dr. Jang has asserted that certain of the Requester's products
are covered by Claims 1, 10, 11, 13, and 16-20 of the '743 patent (among other patents).  In that
litigation, both parties have submitted briefs setting forth their proposed constructions of certain
claim terms in Claims 1,10, 11, 13, and 16-20.  Requester herein provides the entirety of the Jang
Brief, Defendant Boston Scientific Corporation's Opening Markman Brief ("Jang Brief"), and a
Joint Claim Construction and Pre-Hearing Statement from the California litigation.  In the Jang
Brief, Dr. Jang has proposed constructions of certain disputed claim terms, including
"connecting strut column," "connecting strut," and "expansion column."  (Jang Brief at 5-6.)  As
explained below, Dr. Jang's proposed constructions of these terms are substantially broader than
any construction previously proposed by the Requester.

The claim constructions proposed by Dr. Jang in the California litigation are adopted in
this petition for reexamination solely for the purposes of determining whether a substantial new
question of patentability exists with respect to Claims 1, 10, 11, 13, and 16-20 of the '743 patent.

3

Requester recognizes that "[d]uring reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims. (*In re Yamamoto*, 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984))." MPEP § 2258; *see also, In re Swanson*, 540 F.3d 1368 (Fed. Cir. 2008). Documents authored by the Requester and Dr. Jang in the California litigation may provide guidance to the Central Reexamination Unit ("CRU") regarding the meanings of the claims of the '743 patent.

## V.    DETAILED EXPLANATION OF ANTICIPATION OF CLAIMS

### A.    Claims 1, 10, 11, 13, and 16-19 of the '743 patent are anticipated by Wijay

Wijay[1] would anticipate any claim of the '743 patent under 35 U.S.C. § 102(e) regardless of the '743 patent effective filing date and presents a substantial new question of patentability.

The Office did not issue an Office action in the original prosecution of the application that issued as the '743 patent. Only an Examiner's Statement of Reasons for Allowance was issued during original prosecution. "[T]he prior art of record fails to teach or adequately disclose of [sic] a stent comprising first, second and third expansion strut pairs that are connected by first, second and third connecting struts in an arrangement that allows the stent to expand radially with no axial contraction due to the interrelationship between the first, second and third strut pairs." (Reasons for Allowance dated January 5, 1998 at 2.)

Wijay raises a new question of patentability because, under the broadest reasonable construction, it discloses a stent S with a "series of reversing undulations 12 and 14... [and] crossties 16, looking from bottom to top (which is left and right in the figure below), make a bend to the left and a bend to the right on their way from reverse bend 12 to a reverse bend 14.… [T]he crossties 16 have flexibility in that they have … a double bend, such as including 18 and 20.… One or more crossties 16 can be used between rings 10 up to a maximum where every reversing bend, such as 14, is connected to an adjacent by offset circumferentially reversing bend

---

[1] Citations below will be based on U.S. Patent No. 6,203,569 ("Wijay") and have support in the prior filed application, of which Wijay is a continuation application.

4

12." (Wijay col 4:42-61.)  Accordingly, the rings 10 with reversing undulations 12 and 14 read

on first, second and third expansion strut pairs and are connected by first, second and third

crossties 16 in an arrangement that allows the stent to expand radially with no axial contraction

due to the interrelationship between the first, second and third strut pairs to the same extent of

the '743 patent stents.  Accordingly, Wijay is presented to the CRU to determine if it reads on

the '743 patent and presents a substantial new question of patentability not having been

previously considered with regard to the claims discussed below.

### 1.      Claim 1 of the '743 patent is anticipated by Wijay

Wijay discloses all of the limitations of claim 1.  For ease, claim 1 is broken out into its

constituent parts.

### a.      A stent in a non-expanded state, comprising:

Wijay discloses an expandable stent, and both the expanded and non-expanded states of it

would be understood by one of skill in the art.  "The rings themselves have predetermined stress-

relieving points to predispose, by stress relief, particular segments of each ring to bend upon

application of an expansion force such as by a balloon or by other means."  (Wijay col 3:63-67.)

One of skill in the art would understand that the stent is in its non-expanded state when being

delivered through tortuous body lumens.  In a stent of Wijay, it is desirable to have "flexibility to

be maneuvered around bends in the vascular system."  (*Id.* col 3:31-34.)

### b.      a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Wijay discloses a first expansion strut pair including a first expansion strut positioned

adjacent to a second expansion strut.  In 2006, the District Court in the California litigation

construed "expansion strut pair" as "a combination of two circumferentially adjacent expansion

struts coupled at one end by a joining strut and open at the other."  Dr. Jang agrees with that

construction.  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court's construction of

"expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent

5

struts in an expansion column may be the first and second expansion struts. When two

expansion struts are joined at one end and open at the other then they form an "expansion

strut pair" under the District Court's and Dr. Jang's construction. Wijay's "reversing undulations 12

and 14" thus read on the "expansion strut pairs" of the '743 patent. (*See* below.[2])



An "expansion strut pair" in which a joining strut of the first expansion strut pair couples the first and second expansion struts at a distal end

c.      **and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair**

Claim 1 of the '743 patent also requires "a joining strut of the first expansion strut pair

that couples the first and second expansion struts at a distal end of the first expansion strut pair."

In Wijay, the wire of ring 10 is bent at 12 or 14 to form a reversing undulation such that the

wires are joined at one end and open at the other. (Wijay col 4:40-42; *see* portion of Figure 1

above.) Accordingly, the alternating bends 12 and 14 of Wijay are joining struts as interpreted in

light of the '743 patent. The District Court and Dr. Jang construed "distal" to mean "to the right

when viewing the stent from a horizontal perspective." (Jang Brief at 27.) As shown in Wijay

Figure 1, the "reversing undulation 12" possesses expansion struts that are coupled at the distal

end.

---

[2] The annotated figures shown herein are only for the aid of the CRU and are not identical to
those in the cited references or applications.

6



> **d.** **a plurality of the first expansion strut pair**
> **forming a first expansion column;**

As described above, the series of reversing undulations 12 and 14 shown in Figure 1 of
Wijay read on the "expansion strut pairs" of the '743 patent.  Those reversing undulations are
joined into a vertical ring 10 by distal joining struts 12.  (Wijay col 4:40-42; *see* annotated figure
below.)  The reversing undulations thus comprise a "plurality of expansion strut pairs forming a
first expansion column," as recited in Claim 1, and as illustrated below.



**e.      a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut**

Wijay discloses a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  As discussed above, the District Court in the California litigation construed "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  Dr. Jang agrees with that construction.  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court's construction of "expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent struts in an expansion column may be the first and second expansion struts.  When two expansion struts are joined at one end and open at the other then they form an "expansion strut pair" under the District Court's and Dr. Jang's construction.  Wijay's "reversing undulations 12 and 14" thus read on the "expansion strut pairs" of the '743 patent.



**f.      and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair**

Claim 1 of the '743 patent also requires "a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the first expansion strut pair."  In Wijay, the wire of ring 10 is bent at 12 or 14 to form a reversing undulation such that the wires are joined at one end and open at the other.  (Wijay col

8

4:40-42; *see* portion of Figure 1 below.)  Accordingly, the alternating bends 12 and 14 of Wijay

are joining struts as interpreted in light of the '743 patent.  The District Court and Dr. Jang

construed "proximal" to mean "to the left when viewing the stent from a horizontal perspective."

(Jang Brief at 27.)  As shown in Wijay Figure 1, the "reversing undulation 14" possesses

expansion struts that are coupled at the proximal end.  (Wijay col 4:40-42; *see* below.)



An "expansion strut pair" in which a joining strut of the second expansion strut pair couples the first and second expansion struts at a proximal end

**g.      a plurality of the second expansion strut pair
              forming a second expansion column;**

As described above, the series of reversing undulations 12 and 14 shown in Figure 1 of

Wijay read on the "expansion strut pairs" of the '743 patent.  Those reversing undulations are

joined into a vertical ring 10 by proximal joining struts 14.  (Wijay col 4:40-42; *see* annotated

figure below.)  The reversing undulations thus comprise a "plurality of second expansion strut

pairs forming a second expansion column," as recited in Claim 1, and as illustrated below.  (*See*

Wijay col 5:63-64; *see* below.)

9



**h.    a first connecting strut including a first connecting strut proximal section, a first connecting strut distal section**

The District Court in the California litigation construed "connecting strut" in the claims of the '743 patent to mean "a strut that connects adjacent expansion columns."  (Jang Brief at 21.)  Dr. Jang proposes more broadly that a connecting strut need only "connect expansion columns" and that the expansion columns do not need to be "adjacent" to each other.  (*Id.* at 6.)  Under either construction, Wijay discloses a "connecting strut" as recited in the '743 patent.  Wijay "[c]onnect[s] each row 10 with one or more crossties 16," which can have a double bend, including 18 and 20, or a single bend 18.  (Wijay col 4:55-59; *see* annotated figure below.)



> i.   the first connecting strut proximal section being
> coupled to the distal end of the first expansion
> strut pair in the first expansion column and

The first connecting strut proximal section of Wijay (*see* portion of crosstie 16 in the

circle in the annotated figure below) is coupled to the distal end of the first expansion pair in the

first expansion column (*see* 12 in dashed box in the annotated figure below).



**j.** **the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column**

The first connecting strut proximal section of Wijay (*see* portion of crosstie 16 in the circle in the annotated figure below) is coupled to the distal end of the first expansion pair in the first expansion column (see 12 in dashed box of the annotated figure below).



**k.** **a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column;**

In the California litigation, the District Court construed "connecting strut column" to mean "a structure formed solely of connecting struts unattached to each other and arranged in a column along the circumference of the stent." (Jang Brief at 17.) Following remand from the Federal Circuit, Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '743 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent." (*Id.* at 17-18.) Under either construction, Wijay discloses a first connecting strut column. Wijay discloses that "[c]onnecting each row 10 is one *or more* crossties 16." (Wijay col 4:55-56 (emphasis added).) As shown in Wijay Figure 1 below, a plurality of connecting struts (or crossties 16) form "connecting strut columns" between "expansion columns" (or rings 10).

12



l.  **a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut**

Wijay discloses a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the district court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  (Jang Brief at 16.)  Dr. Jang also agrees with the district court 2006 construction of "expansion strut" as "a strut in an expansion column."  (*Id*. at 16.)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  Figure 1 shows rings 10 constructed of wire pairs having joining struts 12 and 14.  (Wijay col 4:40-42; *see* annotated figure below.)  Wijay's pairs of adjacent wire in ring 10 are adjacent first and second expansion struts as interpreted in light of the '743 patent that form the reversing undulations of the stent.

13



> **m.**   **and a third joining strut of the third expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair**

Dr. Jang and the district court 2006 construction of "expansion strut pair" also requires that the "adjacent expansion struts [are] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.)  Similar to the figures of the '743 stent with the joining strut at the proximal end of the second expansion pair, Figure 1 of Wijay shows ring 10 of the third column constructed of wire pairs having joining struts 14 at the proximal end of the second expansion strut pair.  (Wijay col 4:40-42; *see* annotated figure above).

> **n.**   **a plurality of the third expansion strut pair forming a third expansion column;**

Wijay's pairs of adjacent wire in ring 10 are adjacent first and second expansion struts as interpreted in light of the '743 patent that form the of the stent.  The reversing undulations of Wijay adjacent rings 10 are formed from more than two expansion strut pairs having proximal joining struts 14.  (*see* Wijay col 5:63-64; *see* annotated figure above.)

> **o.**   **a second connecting strut including a second connecting strut proximal section and a second connecting strut distal section,**

In the California litigation, the District Court construed "connecting strut column" to mean "a structure formed solely of connecting struts unattached to each other and arranged in a column along the circumference of the stent." (Jang Brief at 17.)  Following remand from the Federal Circuit, Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '743

patent is merely "a structure formed of a plurality of connecting struts and arranged in a column

along the circumference of the stent." (Jang Brief at 17-18.) Under either construction, Wijay

discloses a second connecting strut column. Wijay discloses that "[c]onnecting each row 10 is

one *or more* crossties 16." (Wijay col 4:55-56 (emphasis added).) As shown in Wijay Figure 1

below, a plurality of connecting struts (or crossties 16) form "connecting strut columns" between

"expansion columns" (or rings 10).



          **p.**      **the second connecting strut proximal section
being coupled to the distal end of the second
expansion strut pair in the second expansion
column and**

    The second connecting strut proximal section of Wijay (*see* portion of crosstie 16 in

circle below) is coupled to the distal end of the second expansion pair in the second expansion

column (*see* 12 in dashed box below).

15



**q. the second connecting strut distal section being coupled to the proximal end of the third expansion strut pair of the third expansion column**

The second connecting strut distal section of Wijay (*see* portion of crosstie 16 in circle below) is coupled to the proximal end of the third expansion pair in the third expansion column (*see* 14 in dashed box below).



16

**r.      a plurality of the second connecting strut forming a second connecting strut column that couples the second expansion column to the third expansion column**

In the California litigation, the District Court construed "connecting strut column" to mean "a structure formed solely of connecting struts unattached to each other and arranged in a column along the circumference of the stent."  (Jang Brief at 17.)  Following remand from the Federal Circuit, Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '743 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent."  (Jang Brief at 17-18.)  Under either construction, Wijay discloses a second connecting strut column.  Wijay discloses that "[c]onnecting each row 10 is one *or more* crossties 16."  (Wijay col 4:55-56 (emphasis added).)  As shown in an annotated Wijay Figure 1 below, a plurality of connecting struts (or crossties 16) form "connecting strut columns" between "expansion columns" (or rings 10).



**s.      wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column**

The longitudinal axis of the first expansion struts of the first and second expansion pairs are longitudinally offset from each other in Wijay.  Wijay discloses that "[o]ne or more crossties 16 can be used between rings 10 up to a maximum where every reversing bend, such as 14, is

17

connected to an adjacent but offset circumferentially reversing bend 12." (Wijay col 4:64-67.) Claim 1 of the '743 patent defines "the first expansion strut of the first expansion strut pair in the first expansion column" and "the first expansion strut of the second expansion strut pair in the second expansion column" based on their relationship to the first connecting strut. By "longitudinally offset," the claim requires that the first expansion strut of the first expansion strut pair and the first expansion strut of the second expansion strut pair be *circumferentially* offset from one another. Wijay discloses that the first expansion strut pair and the first expansion strut of the second expansion strut pair be circumferentially offset (or "longitudinally offset" in the parlance of the patents) from one another, as shown below.



### 2.    Claim 10 of the '743 patent is anticipated by Wijay

Claim 10 of the '743 patent states that "[t]he stent of claim 1, wherein the first and second expansion columns are each unbroken, continuous structures." Given that Claim 1 is anticipated, Claim 10 is also anticipated under the same construction and analysis. The plurality of reversing undulations in the series of rings 10 are each unbroken, continuous structures.

18

### 3.    Claim 11 of the '743 patent is anticipated by Wijay

Claim 11 of the '743 patent states that "[t]he stent of claim 1, wherein a width of a portion of the first connecting struts is equal to or less than a width of portion of the first expansion struts."  Under the broadest reasonable interpretation of the claims in light of the '743 patent specification, the width of a portion of a strut refers to the diameter of the metal forming that portion.  (The '743 patent col 9:42-50; 10:24-29.)  If Claim 1 is anticipated, Claim 11 is also anticipated under the same construction and analysis because one of skill in the art would understand that in a preferred embodiment, the entire Wijay stent can be made of wire.  "The stent S has a series of rings 10 which are preferably of a wire material … bent in a series of reversing undulations 12 and 14."  (Wijay col 4:42.)  In addition, "FIG. 3 illustrates alternative cross-sectional shapes for the wire cross-section which makes up each of the rings 10 and/or the crossties 16."  (Wijay col 5:6-8.)  Given that the entire stent is made of the same material, the strut thickness would be the same throughout and therefore the width of a portion of the crossties 16 is equal to or less than a width of portion of the rings 10.

### 4.    Claim 13 of the '743 patent is anticipated by Wijay

Claim 13 of the '743 patent states that "[t]he stent of claim 1, wherein a width of a portion of the second connecting struts is substantially the same as a width of a portion of the first expansion rates."  Under the broadest reasonable interpretation of the claims in light of the '743 patent specification, the width of a portion of a strut refers to the diameter of the metal forming that portion.  (The '743 patent col 9:42-50; 10:24-29.)  If Claim 1 is anticipated, Claim 13 is also anticipated under the same construction and analysis because one of skill in the art would understand that in a preferred embodiment, the entire Wijay stent can be made of wire. "The stent S has a series of rings 10 which are preferably of a wire material … bent in a series of reversing undulations 12 and 14."  (Wijay col 4:42.)  In addition, "FIG. 3 illustrates alternative cross-sectional shapes for the wire cross-section which makes up each of the rings 10 and/or the crossties 16." (Wijay col 5:6-8.)  Given that the entire stent is made of the same material, the

strut thickness would be the same throughout and therefore the width of a portion of the crossties 16 is substantially the same as a width of portion of the rings 10.

**5.    Claims 16 and 17 of the '743 patent are anticipated by Wijay**

Claim 16 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have a first radius of curvature."  Claim 17 of the '743 patent requires "[t]he stent of claim 16, wherein the portion of the first connecting struts with the first radius of curvature have a second radius of curvature."

The broadest reasonable interpretation of Claims 16 and 17 consistent with the '743 patent includes a first radius of curvature that is formed where the crossties 16 have one or more bends, including 20 or 18.  In the '743 patent, "the distal end of the first linear section 54 [of a connecting strut 28] is joined to the proximal end of the second linear section 56 [of a connecting strut 28] forming slant angle 58."  (The '743 patent col 7:4-6; Figure 2B.)  Similarly, Wijay discloses a portion of a proximal section and an intermediate section of a first connecting strut with a first radius of curvature between those sections and a second radius of curvature between the intermediate section and a portion of the distal section of a crosstie 16.  The radius of curvature for the embodiment depicted below might be approximately 90 degrees for the first and second radius of curvature each.  As such, Wijay discloses all the limitations of Claims 16 and 17 of the '743 patent.

20



**6.      Claim 18 of the '743 patent is anticipated by Wijay**

Claim 18 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs and second linear sections coupled to joining struts of second expansion strut pairs." If Claim 1 is anticipated, Claim 18 is also anticipated under the same construction and analysis because one of skill in the art would understand that in a preferred embodiment, Wijay has a first linear proximal section of crosstie 16 (*see* circle below) coupled to a reversing bend 12 of a first expansion strut pair (*see* dashed square below) and a second linear distal section of a crosstie 16 (circle below) coupled to a reversing bend 14 (*see* dashed square below) of a second expansion strut pairs.



### 7.    Claim 19 of the '743 patent is anticipated by Wijay

Claim 19 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs, second linear sections coupled to joining struts of second expansion strut pairs and third linear sections coupling the first and second linear sections."  If Claim 1 is anticipated, Claim 19 is also anticipated under the same construction and analysis.  The three linear sections as recited in claim 19 are circled below on a Wijay stent.



## B.   Claims 1, 10, 11, 13, and 16-20 of the '743 patent are anticipated by Brown

U.S. Patent No. 6,818,014 ("Brown") would anticipate any claim of the '743 patent under 35 U.S.C. § 102(e) regardless of the '743 patent effective filing date and presents a substantial new question of patentability.

The Office did not issue an Office action in the original prosecution of the application that issued as the '743 patent. Only an Examiner's Statement of Reasons for Allowance was issued during original prosecution. "[T]he prior art of record fails to teach or adequately disclose of [sic] a stent comprising first, second and third expansion strut pairs that are connected by first, second and third connecting struts in an arrangement that allows the stent to expand radially with no axial contraction due to the interrelationship between the first, second and third strut pairs." (Reasons for Allowance dated January 5, 1998 at 2.)

Brown discloses stents with "a plurality of adjacent segments generally indicated at 16, each of which is formed in an undulating flexible patterns of substantially parallel struts 18" that under Dr. Jang's broad claim interpretation, allow the stents to expand radially with no axial contraction due to the interrelationship between the first, second and third strut pairs as shown below (in Brown Figure 1). (Brown col 2:64-66.)





### 1.     Claim 1 of the '743 patent is anticipated by Brown

Brown discloses all of the limitations of claim 1.  For ease, Claim 1 is broken out into its constituent parts.

#### a.     A stent in a non-expanded state, comprising:

Brown discloses an expandable stent and both the expanded and non-expanded states would be understood by one of skill in the art.  "Typically, a stent will have an unexpected (closed) diameter for placement and an expanded (opened) diameter after placement in the vessel or the duct."  (Brown col 1:21-23.)  "[T]he invention provides a tubular expandable stent."  (Brown col 2:12-13.)  One of skill in the art would understand that the stent is in its non-expanded state when being delivered through tortuous body lumens.

#### b.     a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Brown discloses a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts

24

coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) Dr. Jang also

agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion

column." (*Id.*) Accordingly, any two adjacent struts in an expansion column can be the first and

second expansion struts. Brown discloses circumferentially adjacent "segments" jointed at one

end and open at the other to form "an undulating flexible pattern of substantially parallel struts":

"The configuration can be seen in these Figures to be made up of a plurality of adjacent

segments generally indicated at 16, each of which is formed in an undulating flexible pattern of

substantially parallel struts 18. Pairs of struts are interconnected at alternating end portions 19a

and 19b." (Brown col 2:63-66; *see* portion of Figure 1 below.) Brown's pairs of adjacent

segments 18, which form the undulating flexible pattern of the stent, are composed of adjacent

first and second expansion struts as interpreted in light of the '743 patent.



     **c.**     **and a joining strut of the first expansion strut
pair that couples the first and second expansion
struts at a distal end of the first expansion strut
pair**

     Under Dr. Jang's construction and the District Court 2006 construction, an "expansion

strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining

strut and open at the other." (Jang Brief at 16.) "The configuration can be seen in these Figures

to be made up of a plurality of adjacent segments generally indicated at 16, each of which is

formed in an undulating flexible pattern of substantially parallel struts 18. Pairs of struts are

interconnected at alternating end portions 19a and 19b." (Brown col 2:63-66; *see* portion of Figure 1 below.)  Accordingly, the alternating end portions 19a and 19b of Brown are joining struts as interpreted in light of the '743 patent.  Brown thus discloses an "expansion strut pair" in which a joining strut of the first expansion strut pair couples the first and second expansion struts at a distal end as required in Claim 1 of the '743 patent.



> d.   a plurality of the first expansion strut pair forming a first expansion column;

The serpentine patterns 16 of Figure 1 of Brown are constructed of more than two expansion strut pairs 18 having distal joining struts 19a and 19b.  "The configuration can be seen in these Figures to be made up of a plurality of adjacent segments generally indicated at 16." (Brown col 2:63-65; *see above*.)  Brown thus discloses a plurality of the first expansion strut pairs forming a first expansion column, as required in Claim 1 of the '743 patent, and as shown below.



"first expansion column" formed of a plurality of first expansion strut pairs

e.      a second expansion strut pair including a first
        expansion strut positioned adjacent to a second
        expansion strut

Brown discloses a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  Brown discloses circumferentially adjacent "segments" jointed at one end and open at the other to form "an undulating flexible pattern of substantially parallel struts": "The configuration can be seen in these Figures to be made up of a plurality of adjacent segments generally indicated at 16, each of which is formed in an undulating flexible pattern of substantially parallel struts 18.  Pairs of struts are interconnected at alternating end portions 19a and 19b." (Brown col 2:63-66; *see* portion of Figure 1 below.)  Brown's pairs of adjacent segments 18, which form the undulating flexible pattern of the stent, are composed of adjacent first and second expansion struts as interpreted in light of the '743 patent.

27

**f.      and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair**

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) The undulating pattern in the adjacent segments of the stent of Brown have adjacent first and second expansion struts coupled at a proximal end by a joining strut as shown below.



**g.      a plurality of the second expansion strut pair forming a second expansion column;**

The adjacent segments described above form an "undulating flexible pattern of substantially parallel struts." (*See* Brown col 5:63-64.) As shown below, this undulating flexible pattern reads on "a plurality of the second expansion strut pair[s] forming a second expansion column" as required in Claim 1 of the '743 patent.

28



**h.    a first connecting strut including a first connecting strut proximal section a first connecting strut distal section**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut" in the California litigation.  (Jang Brief at 21.)  Dr. Jang now proposes that a connection strut only needs to "connect expansion columns" and that the expansion columns do not need to be "adjacent" expansion columns as the 2006 District Court had found.  (*Id*. at 6.)  Accordingly, the first connecting strut of the '743 patent is read on by the combination of a proximal interconnecting element 20, a distal interconnecting element 20, and the section of undulating pattern between the two interconnecting elements as the intermediate section of the first connecting strut.

29



> i.  the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and

The first connecting strut proximal section of Brown is coupled to the distal end of the first expansion pair in the first expansion column, as shown below.



**j.** **the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column**

The first connecting strut distal section of Brown is coupled to the proximal end of the second expansion pair in the second expansion column, as shown below.



**k.** **a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut column" in the California litigation.  (Jang Brief at 17-18.)  Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '743 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent."  (*Id*. at 17-18.)  Dr. Jang further asserts that a connecting strut column need only connect expansion columns and that the connecting strut column may be composed of structures other than connecting struts.  (*Id*. at 17.)  Under this broad interpretation of "connecting strut column," the structure delineated by the dotted box below contains a plurality of "connecting

31

struts" and reads on a "connecting strut column" that couples the "first expansion column" to the
"second expansion column."



  **l.** **a third expansion strut pair including a first
expansion strut positioned adjacent to a second
expansion strut and a third joining strut of the
second expansion strut pair that couples the first
and second expansion struts of the third
expansion strut pair at a proximal end of the
second expansion strut pair**

  Given the claim construction of Dr. Jang discussed above, any two adjacent struts in an

expansion column can be the first and second expansion struts.  Brown's pairs of adjacent

segments 18 are adjacent first and second expansion struts as interpreted in light of the '743

patent that form the undulating flexible pattern of the stent.   Dr. Jang agrees with the District

Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially

adjacent expansion struts coupled at one end by a joining strut and open at the other."  (*Id.* at 16.)

The undulating pattern in the adjacent segments 16 of the stent of Brown have a first expansion

strut 18 adjacent to a second expansion strut 18 with a third end portion 19a (*see* all three within

the box in the "3rd" expansion column in the figure below) as recited in Claim 1 of the '743

patent with the third joining strut at the proximal end of the third expansion pair.



**m.**   **a plurality of the third expansion strut pair forming a third expansion column;**

The serpentine patterns of Brown adjacent segments 16 are formed from more than two expansion strut 18 pairs having proximal end portions 19a and form a third expansion column as recited in Claim 1 of the '743 patent. (*see* Brown col 5:63-64.) The third expansion column is indicated with a grey "3rd" and a plurality of third expansion strut pairs are indicted in grey in the figure above.

**n.**   **a second connecting strut including a second connecting strut proximal section and a second connecting strut distal section**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut" in the California litigation. (Jang Brief at 21.) Dr. Jang now proposes that a connection strut only needs to "connect expansion columns" and that the expansion columns do not need to be "adjacent" expansion columns as the 2006 District Court had found. (*Id.* at 6.) Accordingly, the first connecting strut of the '743 patent is read on by the combination of two struts 18 of an adjacent segment 16 that are proximal to a distal interconnecting element 20 (in black, all within the box on the illustration below). The second connecting struts shown as a black figure below are consistent with the District Court and Dr. Jang construction of "proximal" to mean "to the left when viewing the stent from a horizontal perspective" (Jang Brief at 27). The two struts 18 are to the left side of the interconnecting element 20 that they are coupled to.

33

The first connecting strut and the second connecting strut are not the same shape and there is no evidence under Dr. Jang's claim construction that they are required to be the same shape.



> o.   the second connecting strut proximal section being coupled to the distal end of the second expansion strut pair in the second expansion column and

The second connecting strut proximal section in black and indicated as "2nd connect" below is coupled to the distal end of the grey second expansion strut pair "2nd."  (See box below including a half grey and half black stent section.)



        **p.**     **the second connecting strut distal section being coupled to the proximal end of the third expansion strut pair of the third expansion column**

The distal interconnecting element 20 of the second connecting strut is coupled to the left of the third expansion column in grey ("3rd").  (*See* box below.)



        **q.**     **a plurality of the second connecting strut forming a second connecting strut column that couples the second expansion column to the third expansion column**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut column" in the California litigation.  (Jang Brief at 17-18.)  Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '743 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent."  (*Id*. at 17-18.)  Dr. Jang further asserts that a connecting strut column need only connect expansion columns and that the connecting strut column may be composed of structures other than connecting struts.  (*Id.* at 17.)  Under this broad interpretation of  "connecting strut column," the structure is read on by a plurality of "second connecting struts" (that are a combination of elements, including two struts 18 of an adjacent segment 16 proximal to a distal interconnecting element 2), that couple the "second expansion column" to the "third expansion column."

35



    **r.**    **wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.**

As shown above, the first connecting strut intermediate section in Brown (*i.e.*, the undulations between interconnecting elements 20) causes the first connecting strut proximal and distal sections (the interconnecting elements 20) to be "longitudinally offset" from each other as required in Claim 1 of the '743 patent (that is, offset along the stent's circumference).  Brown's written description discloses that "[i]nterconnecting elements 20 extend from one end portion 19 of one segment 16 to another end portion 19 of another adjacent segment 16 but not to an oppositely positioned end portion 19 of an adjacent segment 16."  (Brown col 3:16-19.)  In turn, the "first expansion strut pair" and the "second expansion strut pair," which are connected by the connecting strut, are also "longitudinally offset," as are the "first expansion struts" of each pair, as shown below.



### 2.    Claim 10 of the '743 patent is anticipated by Brown

Claim 10 of the '743 patent states that "[t]he stent of claim 1, wherein the first and second expansion columns are each unbroken, continuous structures."  Given that Claim 1 is anticipated, Claim 10 is also anticipated under the same construction and analysis.  The plurality of adjacent segments 16 are each unbroken, continuous structures.

### 3.    Claim 11 of the '743 patent is anticipated by Brown

Claim 11 of the '743 patent states that "[t]he stent of claim 1, wherein a width of a portion of the first connecting struts is equal to or less than a width of portion of the first expansion struts."  Under the broadest reasonable interpretation of the claims in light of the '743 patent specification, the width of a portion of a strut refers to the diameter or thickness of the metal forming that portion.  (The '743 patent col 9:42-50; 10:24-29.)  If Claim 1 is anticipated, Claim 11 is also anticipated under the same construction and analysis because one of skill in the art would understand that in a preferred embodiment, the entire Brown stent is the same thickness.  "A more preferred method of manufacture begins with a thin walled tube which is then laser cut to provide the desired configuration."  (Brown col 3:11-13.)  Given that the entire stent is made of the same material, the strut thickness would be the same throughout and

37

therefore the width of a portion of the interconnecting elements 20 is equal to or less than a width of portion of the adjacent segments 16.  Moreover, under the same construction and analysis of Claim 1 discussed above, a portion of an adjacent segment 16 is a portion of the first connecting strut, and one of skill would understand that the width of all of the adjacent segments 16 are equal to each other.

**4.     Claim 13 of the '743 patent is anticipated by Brown**

Claim 13 of the '743 patent states that "[t]he stent of claim 1, wherein a width of a portion of the second connecting struts is substantially the same as a width of a portion of the first expansion rates."  Under the broadest reasonable interpretation of the claims in light of the '743 patent specification, the width of a portion of a strut refers to the diameter of the metal forming that portion.  (The '743 patent col 9:42-50; 10:24-29.)  If Claim 1 is anticipated, Claim 11 is also anticipated under the same construction and analysis because one of skill in the art would understand that in a preferred embodiment, the entire Brown stent is the same thickness. "A more preferred method of manufacture begins with a thin walled tube which is then laser cut to provide the desired configuration."  (Brown col 3:11-13.)  Given that the entire stent is made of the same material, the strut widths would be the same throughout and therefore the width of a portion of the interconnecting elements 20 is equal to or less than a width of portion of the adjacent segments 16.  Moreover, under the same construction and analysis of Claim 1 discussed above, a portion of an adjacent segments 16 are a portion of the first connecting column and the second connecting column, and one of skill would understand that the width of all of the adjacent segments 16 are substantially the same as each other.

**5.     Claims 16 and 17 of the '743 patent are anticipated by Brown**

Claim 16 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have a first radius of curvature."  Claim 17 of the '743 patent requires "[t]he stent of claim 16, wherein the portion of the first connecting struts with the first radius of curvature have a second radius of curvature."

38

The broadest reasonable interpretation of Claims 16 and 17 consistent with the '743 patent would include a first radius of curvature formed where the interconnecting elements 20 meets a portion of the adjacent segment 16 that is an intermediate section of a first connecting strut.  In the '743 patent, "the distal end of the first linear section 54 [of a connecting strut 28] is joined to the proximal end of the second linear section 56 [of a connecting strut 28] forming slant angle 58."  (The '743 patent col 7:4-6; Figure 2B.)  Similarly, under one interpretation, Brown discloses a portion of a proximal section (an interconnecting element 20) and an intermediate section of a first connecting strut with a first radius of curvature between those sections and a second radius of curvature between an intermediate section and a portion of the distal section (another interconnecting element 20).  As such, Brown discloses all the limitations of Claims 16 and 17 of the '743 patent.



### 6.    Claim 18 of the '743 patent is anticipated by Brown

Claim 18 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs and second linear sections coupled to joining struts of second expansion strut pairs."  If Claim 1 is anticipated, Claim 18 is also anticipated under the same construction and analysis because Brown has a first linear proximal section of interconnecting element 20 (circle below) coupled to an end portion 19a of a first expansion strut pair (dashed square below) and a second

linear distal section of a interconnecting element 20 (circle below) coupled to a end portion 19b (dashed square below) of a second expansion strut pairs.



### 7.     Claim 19 of the '743 patent is anticipated by Brown

Claim 19 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs, second linear sections coupled to joining struts of second expansion strut pairs and third linear sections coupling the first and second linear sections."  If Claim 1 is anticipated, Claim 19 is also anticipated under the same construction and analysis.  Three linear sections as recited in Claim 19 are circled below on a Brown stent.



### 8.     Claim 20 of the '743 patent is anticipated by Brown

Claim 20 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion

40

strut pairs, second linear sections coupled to joining struts of second expansion strut pairs, third

and fourth linear sections coupling the first and second linear sections."  If Claim 1 is

anticipated, Claim 20 is also anticipated under the same construction and analysis.  Four linear

sections as recited in Claim 20 are circled below on a Brown stent.



### C.     Claims 1, 10, 11, 13, and 16-20 of the '743 patent are anticipated by Lau

U.S. Patent No. 5,514,154 ("Lau") would anticipate any claim of the '743 patent under

35 USC § 102(e) regardless of the '743 patent effective filing date and raises a substantial new

question of patentability.  The Office did not issue an Office action in the original prosecution of

the application that issued as the '743 patent.  Only an Examiner's Statement of Reasons for

Allowance was issued during original prosecution.  "[T]he prior art of record fails to teach or

adequately disclose of [sic] a stent comprising first, second and third expansion strut pairs that

are connected by first, second and third connecting struts in an arrangement that allows the stent

to expand radially with no axial contraction due to the interrelationship between the first, second

and third strut pairs."  (Reasons for Allowance dated January 5, 1998 at 2.)

Lau discloses stents with elongated elements 13 that interconnect adjacent cylindrical

elements 12 as shown in several of the figures, such as Figures 1-11.  Under Dr. Jang's broad

claim interpretation, the cylindrical elements 12 of Lau read on the expansion struts of the '743

patent to form first, second and third expansion strut pairs that are connected by first, second and

41

third connecting struts in an arrangement that allows the stent to expand radially with no axial contraction due to the interrelationship between the first, second and third strut pairs.

### 1.    Claim 1 of the '743 patent is anticipated by Lau

Lau discloses all of the limitations of Claim 1.  For ease, Claim 1 is broken out into its constituent parts.

#### a.    A stent in a non-expanded state, comprising:

Lau discloses an expandable stent and both the expanded and non-expanded states would be understood by one of skill in the art.  "The present invention is directed to an expandable stent which is relatively flexible along its longitudinal axis to facilitate delivery through tortuous body lumens, but which is stiff and stable enough radially in an expanded condition to maintain the patency of a body lumen such as an artery when implanted therein."  (Lau col 1:53-58.) One of skill in the art would understand that the stent is in its non-expanded state when being delivered through tortuous body lumens, and that it is only expanded when it reaches the stenosis.

#### b.    a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Lau discloses a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column."  (*Id.*)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  Lau's Figure 11 shows expansion strut pairs in an undulating pattern vertically aligned with the circumference of the stent: "Fig. 11 is a plan view of a flattened section of a stent illustrating an alternate undulating pattern in the expandable cylindrical elements of the stent."  (Lau col 4:5-7.)  "Fig. 11 illustrates an alternative stent structure in which the cylindrical elements are in serpentine patterns."  (Lau col 5:63-64.)  The undulating pattern in

42

the expandable cylindrical elements of the stent are composed of expansion strut pairs with adjacent first and second expansion struts, as shown below.



c.    and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.)  In the undulating pattern of the expandable cylindrical elements of Lau's Figure 11, the adjacent first and second expansion struts are coupled at the distal end by a joining strut, as shown below.



**d.      a plurality of the first expansion strut pair forming a first expansion column;**

The serpentine patterns of Lau's Figure 11 discloses a plurality of such expansion strut pairs, forming an expansion column, as shown below.  (*See* Lau col 5:63-64.)



**e.      a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut**

Lau discloses a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  As stated above, Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent

expansion struts coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column." (*Id.*)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  Lau's Figure 11 shows expansion strut pairs in an undulating pattern vertically aligned with the circumference of the stent: "Fig. 11 is a plan view of a flattened section of a stent illustrating an alternate undulating pattern in the expandable cylindrical elements of the stent[.]" (Lau col 4:5-7.)  "Fig. 11 illustrates an alternative stent structure in which the cylindrical elements are in serpentine patterns." (Lau col 5:63-64.)  The undulating pattern in the expandable cylindrical elements of the stent are composed of expansion strut pairs with  adjacent first and second expansion struts, as shown below.



     **f.**     **and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair**

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.)  In the undulating pattern of the expandable

45

cylindrical elements of Lau's Figure 11, the adjacent first and second expansion struts are coupled at the distal end by a joining strut, as shown below.



**g.    a plurality of the second expansion strut pair forming a second expansion column;**

The serpentine patterns of Figure 11 form columns with more than two expansion strut pairs having proximal joining struts.  (*See* Lau col 5:63-64.)  Lau's Figure 11 thus discloses a plurality of second expansion strut pairs forming a second expansion column, as required in Claim 1 of the '743 patent.



        **h.**      **a first connecting strut including a first
connecting strut proximal section and a first
connecting strut distal section**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of

"connecting strut." (Jang Brief at 21.)  Dr. Jang now proposes that a connection strut only needs

to "connect expansion columns" and that the expansion columns do not need to be "adjacent"

expansion columns as the 2006 District Court found.  (*Id.* at 6.)  Accordingly, the first

connecting strut of the '743 patent is read on by the combination of a proximal interconnecting

element 13, a distal interconnecting element 13, and the section of undulating pattern between

the two interconnecting elements, as shown below.



        **i.**       **the first connecting strut proximal section being
coupled to the distal end of the first expansion
strut pair in the first expansion column and**

The first connecting strut proximal section of Lau (see interconnecting element 13 in the

annotated figure below) is coupled to the distal end of the first expansion pair in the first

expansion column (*see* the annotated figure below).

47



j.     **the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column**

The first connecting strut distal section of Lau (*see* interconnecting element 13 in the annotated figure below) is coupled to the proximal end of the second expansion pair in the second expansion column (*see* the annotated figure below).



48

        **k.**     **a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut column." (Jang Brief at 17-18.) Dr. Jang has proposed that the "connecting strut column" of Claim 1 of the '743 patent is merely "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent." (*Id*.) Dr. Jang further asserts that a connecting strut column need only connect expansion columns and that the connecting strut column may be composed of structures other than connecting struts. (*See id.*) Under this broad interpretation of "connecting strut column," the structure delineated by the dotted box below discloses one connecting strut and can read on a "connecting strut column" that couples the "first expansion column" to the "second expansion column" in a longer stent.



Lau discloses that "[t]he particular pattern and how many undulations per unit of length around the circumference of the cylindrical element 13, or the amplitude of the undulations, are chosen to fill particular mechanical requirements of the stent such as radial stiffness." (Lau col 5:65 - col 6:3.) Lau further discloses that "[t]he number and location of elements interconnecting adjacent cylindrical elements can be varied in order to develop the desired longitudinal flexibility in the stent structure." (Lau col 3:5-8.) One of skill in the art would thus understand that the

49

serpentine columns 12 shown in Figure 11 could be much longer and follow the same pattern of alternating interconnecting elements 13 and that the number of interconnecting elements can be varied.  Such a pattern is shown, for example, in Figure 10 of Lau.  "FIG. 10 illustrates a stent of the present invention wherein three interconnecting elements12 are disposed between radially expandable cylindrical elements 11.  The interconnecting elements 12 are distributed radially around the circumference of the stent at a 120-degree spacing."  (Lau col 5:52-56.)  Three first connecting struts (three interconnecting elements 13 on each side of the second cylindrical column 12 from the bottom and the portion of the second cylindrical column 12 between each interconnecting element bottom and top pair) are shown in Figure 10 connecting the first expansion column (bottom cylindrical element 12) to the second expansion column (third cylindrical element 12 from the bottom).

### l.  a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut

Lau discloses a third expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut.  As stated above, Dr. Jang agrees with the District Court 2006 construction of "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other."  (Jang Brief at 16.)  Dr. Jang also agrees with the District Court 2006 construction of "expansion strut" as "a strut in an expansion column."  (*Id.* at 16.)  Accordingly, any two adjacent struts in an expansion column can be the first and second expansion struts.  "Fig. 11 is a plan view of a flattened section of a stent illustrating an alternate undulating pattern in the expandable cylindrical elements of the stent which are out of phase."  (Lau col 4:5-7.)  The undulating pattern in the expandable cylindrical elements of the stent have adjacent first and second expansion struts.  For convenience in visualizing a full stent of Lau, Requester has stamped multiple versions of Figure 10 together below.  This illustration is <u>not</u> in Lau, but there is explicit support in Lau for such a stent as illustrated below.  For example, Lau discloses that the serpentine columns 12 shown in

50

Figure 11 could be much longer and have a different pattern of alternating interconnecting elements 13. "The particular pattern and how many undulations per unit of length around the circumference of the cylindrical element 13 … are chosen to fill particular mechanical requirements for the stent." (Lau col 5:65 - 6:2.) Lau also discloses that the "number and location of elements interconnecting adjacent cylindrical elements" can be altered from what is shown in Figure 11. (*See id.* at 3:5-9; 5:42-51 ("Various configurations for the placement of interconnecting elements are possible."); 6:4-7.)



> **m.**  **and a third joining strut of the third expansion strut pair that couples the first and second expansion struts of the third expansion strut pair at a proximal end of the third expansion strut pair**

Under Dr. Jang's construction and the District Court 2006 construction, an "expansion strut pair" also requires that the "adjacent expansion struts [be] coupled at one end by a joining strut and open at the other." (Jang Brief at 16.) The undulating pattern in the expandable cylindrical elements of the stent of Figure 11 also have adjacent first and second expansion struts with a joining strut (*see* dashed box above) at the proximal end of the pair. "Fig. 11 illustrates an alternative stent structure in which the cylindrical elements are in serpentine patterns." (Lau col 5:63-64.)

51

**n.      a plurality of the third expansion strut pair**
**forming a third expansion column;**

The serpentine patterns of Figure 11 form columns with more than two expansion strut

pairs having proximal joining struts.  (*See* Lau col 5:63-64.)  Figure 11 could be much longer and

have a different pattern of alternating interconnecting elements 13.  A stent pattern is shown, for

example, in Figure 10.  "FIG. 10 illustrates a stent of the present invention wherein three

interconnecting elements 12 are disposed between radially expandable cylindrical elements 11.

The interconnecting elements 12 are distributed radially around the circumference of the stent at

a 120-degree spacing."  (Lau col 5:52-56.)

**o.      a second connecting strut including a first**
**connecting strut proximal section and a first**
**connecting strut distal section**

Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of

"connecting strut." (Jang Brief at 21.)  Dr. Jang now proposes that a connection strut only needs

to "connect expansion columns" and that the expansion columns do not need to be "adjacent"

expansion columns as the 2006 District Court found.  (*Id.* at 6.)  Accordingly, the first

connecting strut of the '743 patent is read on by the combination (shown by the dashed box

below) of a proximal interconnecting element 13 (in a circle below), a distal interconnecting

element 13 (in a circle below), and the section of undulating pattern between the two

interconnecting elements 13.



52

      **p.**    **the second connecting strut proximal section
being coupled to the distal end of the second
expansion strut pair in the second expansion
column and**

The second connecting strut proximal section of Lau (*see* interconnecting element 13 in

circle below) is coupled to the distal end of the second expansion pair in the second expansion

column (*see* dashed box below).



      **q.**    **the second connecting strut distal section being
coupled to the proximal end of the third
expansion strut pair of the third expansion
column**

The second connecting strut distal section of Lau (*see* interconnecting element 13 in

circle below) is coupled to the proximal end of the third expansion pair in the third expansion

column (*see* dashed box below).



    **r.**  **a plurality of the second connecting strut forming a second connecting strut column that couples the second expansion column to the third expansion column**

   Following remand from the Federal Circuit, Dr. Jang has proposed a new construction of "connecting strut column." (Jang Brief at 17-18.)  Dr. Jang now proposes that a connection strut column only needs to connect expansion columns and that the connection strut column can be composed of structures other than connecting struts, in contrast to the 2006 District Court holding.  (*Id.* at 17.)  Accordingly, the connecting strut column of the '743 patent is read on by the combination of a proximal interconnecting element 13, a distal interconnecting element 13, and the section of undulating pattern between the two interconnecting elements as the intermediate section of the first connecting strut with additional undulating patterns in between the connecting struts.

   Lau discloses that "[t]he particular pattern and how many undulations per unit of length around the circumference of the cylindrical element 13, or the amplitude of the undulations, are chosen to fill particular mechanical requirements of the stent such as radial stiffness."  (Lau col 5:65 - col 6:3.)  One of skill in the art would understand that the serpentine columns 12 shown in Figure 11 could be much longer and follow the same pattern of alternating interconnecting elements 13.

    **s.**  **wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.**

   The first connecting strut intermediate section (undulations between interconnecting elements 13) cause the first connecting strut proximal and distal sections (the interconnecting elements 13) to be longitudinally offset from each other.  "The first expansion strut of the first expansion strut pair in the first expansion column" and "the first expansion strut of the second expansion strut pair in the second expansion column" are offset according to the '743 patent

Claim 1 because the claim defines "the first expansion strut of the first expansion strut pair in the first expansion column" and "the first expansion strut of the second expansion strut pair in the second expansion column" based on their relationship to the first connecting strut (as shown below). Accordingly, the longitudinal axis of the first expansion struts of the first and second expansion pairs (in black below) are also longitudinally offset from each other.



### 2.    Claim 10 of the '743 patent is anticipated by Lau

Claim 10 of the '743 patent states that "[t]he stent of claim 1, wherein the first and second expansion columns are each unbroken, continuous structures." Given that Claim 1 is anticipated, Claim 10 is also anticipated under the same construction and analysis. The plurality of the serpentine columns 12 are each unbroken, continuous structures. (*see* Lau Figure 10.)

### 3.    Claim 11 of the '743 patent is anticipated by Lau

Claim 11 of the '743 patent states that "[t]he stent of claim 1, wherein a width of a portion of the first connecting struts is equal to or less than a width of portion of the first expansion struts." Under the broadest reasonable interpretation of the claims in light of the '743 patent specification, the width of a portion of a strut refers to the diameter or thickness of the metal forming that portion. (The '743 patent col 9:42-50; 10:24-29.) If Claim 1 is anticipated, Claim 11 is also anticipated under the same construction and analysis because one of skill in the

art would understand that in a preferred embodiment, the entire Lau stent is the same thickness.
"The elongated elements which interconnect adjacent cylindrical elements should have a
transverse cross-section similar to the transverse dimensions of the undulating components of the
expandable cylindrical elements." (Lau col 2:57-60.)  Given that an entire stent is made of the
same material, the strut thickness would be the same throughout and therefore the width of a
portion of the cylindrical elements 12 is equal to or less than a width of portion of the
interconnecting elements 13.  Moreover, under the same construction and analysis of Claim 1
discussed above, a portion of a cylindrical elements 12 is a portion of the first connecting strut,
and one of skill would understand that the width of all of the cylindrical elements 12 are equal to
each other.

### 4.     Claim 13 of the '743 patent is anticipated by Lau

Claim 13 of the '743 patent states that "[t]he stent of claim 1, wherein a width of a
portion of the second connecting struts is substantially the same as a width of a portion of the
first expansion rates."  Under the broadest reasonable interpretation of the claims in light of the
'743 patent specification, the width of a portion of a strut refers to the diameter of the metal
forming that portion.  (The '743 patent col 9:42-50; 10:24-29.)  If Claim 1 is anticipated, Claim
11 is also anticipated under the same construction and analysis because one of skill in the art
would understand that in a preferred embodiment, the entire Lau stent is the same thickness.
"The elongated elements which interconnect adjacent cylindrical elements should have a
transverse cross-section similar to the transverse dimensions of the undulating components of the
expandable cylindrical elements." (Lau col 2:57-60.)  Given that an entire stent is made of the
same material, the strut thickness would be the same throughout and therefore the width of a
portion of the cylindrical elements 12 is substantially the same as a width of portion of the
interconnecting elements 13.  Moreover, under the same construction and analysis of Claim 1
discussed above, a portion of a cylindrical elements 12 is a portion of the first connecting strut,

and one of skill would understand that the width of all of the cylindrical elements 12 are substantially the same as each other.

**5.    Claims 16 and 17 of the '743 patent are anticipated by Lau**

Claim 16 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have a first radius of curvature."  Claim 17 of the '743 patent requires "[t]he stent of claim 16, wherein the portion of the first connecting struts with the first radius of curvature have a second radius of curvature."

The broadest reasonable interpretation of Claims 16 and 17 consistent with the '743 patent would include a first radius of curvature formed where the interconnecting elements 20 meets a portion of the adjacent segment 16 that is an intermediate section of a first connecting strut.  In the '743 patent, "the distal end of the first linear section 54 [of a connecting strut 28] is joined to the proximal end of the second linear section 56 [of a connecting strut 28] forming slant angle 58."  (The '743 patent col 7:4-6; Figure 2B.)  Similarly, under one interpretation, Lau discloses a portion of a proximal section (an interconnecting element 13) and an intermediate section of a first connecting strut with a first radius of curvature between those sections and a second radius of curvature between an intermediate section and a portion of the distal section (another interconnecting element 13).  As such, Lau discloses all the limitations of Claims 16 and 17 of the '743 patent.



### 6.    Claim 18 of the '743 patent is anticipated by Lau

Claim 18 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs and second linear sections coupled to joining struts of second expansion strut pairs." If Claim 1 is anticipated, Claim 18 is also anticipated under the same construction and analysis because Lau has a first linear proximal section of interconnecting element 13 (circle below) coupled to the end of a first expansion strut pair (dashed square below) and a second linear distal section of a interconnecting element 13 (circle below) coupled to the end (dashed square below) of a second expansion strut pair.



### 7.      Claim 19 of the '743 patent is anticipated by Lau

Claim 19 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs, second linear sections coupled to joining struts of second expansion strut pairs and third linear sections coupling the first and second linear sections."  If Claim 1 is anticipated, Claim 19 is also anticipated under the same construction and analysis.  Three linear sections as recited in Claim 19 are circled below on a Lau stent.



### 8.   Claim 20 of the '743 patent is anticipated by Lau

Claim 20 of the '743 patent states that "[t]he stent of claim 1, wherein at least a portion of the first connecting struts have first linear sections coupled to joining struts of first expansion strut pairs, second linear sections coupled to joining struts of second expansion strut pairs, third and fourth linear sections coupling the first and second linear sections." If Claim 1 is anticipated, Claim 20 is also anticipated under the same construction and analysis. Four linear sections as recited in Claim 20 are circled below on a Lau stent.



60

## VI.     FEE

Payment of $12,000.00 is provided herewith.  Any additional fees that are necessary are authorized to be charged to our Deposit Account 50-2387.  A charge is also authorized for any other fees related to the present reexamination that are not otherwise provided for in the accompanying documents.

## VII.    CONCLUSION

For the reasons given above, reexamination of claims 1, 10, 11, 13, and 16-20 of the '743 patent is respectfully requested as there are substantial new questions of patentability in view of the claims being anticipated in view of prior art and Dr. Jang's claim construction proposed in the California litigation.

Respectfully submitted,

/Kristan L. Lansbery/

David R. Marsh (Atty. Reg. No. 41,408)
Kristan L. Lansbery (Atty. Reg. No. 53,183)

Date:  October 8, 2013

ARNOLD & PORTER LLP
Attn:  IP Docketing
555 12th Street, N.W.
Washington, D.C.  20004
(202) 942-5000 telephone
(202) 942-5999 facsimile