1

2

3                                                    O

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  G. DAVID JANG, M.D.,        )    Case No. EDCV 05-426-
                                )    VAP(MRWx)
12              Plaintiff,      )
                                )    **CLAIM CONSTRUCTION ORDER**
13       v.                     )
                                )
14  BOSTON SCIENTIFIC           )
    CORPORATION, a Delaware     )
15  corporation; SCIMED LIFE    )
    SYSTEMS, INC., a            )
16  Minnesota corporation,      )
                                )
17              Defendants.     )
    _____ )

18

19       The Court conducted a hearing on October 16, 2013

20  concerning the parties' proposed constructions of certain

21  claims in the two patents at issue here, pursuant to

22  Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.

23  Cir. 1995) (en banc) aff'd, 517 U.S. 370 (1996).  This

24  hearing was conducted in accordance with the instructions

25  of the Federal Circuit after it vacated this Court's 2006

26  claim construction order in Jang v. Boston Scientific

27  Corp., 493 F. Appx. 70, 71 (Fed. Cir. 2012).

28

# I. BACKGROUND

Plaintiff Dr. G. David Jang, M.D. ("Dr. Jang") is the inventor of certain coronary stents.  The United States Patent and Trademark Office issued U.S. Patent Nos. 5,922,021 ("the '021 patent") and 5,954,743 ("the '743 patent"), both named "Intravascular Stent" to Dr. Jang in 1999.[1]  Dr. Jang and Defendants Boston Scientific Corporation and Scimed Life Systems, Inc. (collectively, "BSC") entered into an agreement whereby Dr. Jang assigned his rights to those patents to BSC for monetary compensation if BSC used the patents to produce products commercially, and a smaller payment if BSC did not commercialize the patents.

Dr. Jang alleges that BSC breached the agreement by failing to compensate him for products it sold which were "covered by" the assigned patents, and instead paying him only the noncommercialization payment.  The parties sought to have the Court determine the construction of certain terms in the Jang patents to resolve the dispute.

---

[1] Both parties previously agreed and continue to agree the disputed claims at issue here affect both the '021 and '743 patents.  See Jang, 493 F. Appx. at 73 ("The specifications of the '021 and '743 Patents overlap substantially, and the parties do not dispute that the claim term in question is used consistently in both patents.")

On August 24, 2006, the Court issued its claim construction order ("2006 Claim Construction Order" (Doc. No. 99)).  On August 22, 2012, the Federal Circuit reversed the Court's claim construction concerning the claim "connecting strut column," vacated the Court's 2006 claim construction order, and remanded.  See Jang, 493 F. Appx. at 71.  The Federal Circuit held, with respect to the construction of that claim, that the Court "impermissibly imported the 'unattached' limitation into the claims based on the examples in the specification." Id. at 77.  According to the Federal Circuit, the Court erred when it relied upon a single example contained in the patent to import a limitation into the construction of a claim term that was not present in the claims, specifications, or file histories of the patents.  Id. at 76.

Following the appeal, the parties submitted opening claim construction briefs on July 19, 2013 (Doc. Nos. 351 ("BSC Br."), 355 ("Jang Br.")) and rebuttal briefs on August 2, 2013 (Doc. Nos. 362 ("BSC Rebuttal"), 363 ("Jang Rebuttal")).

## II. LEGAL STANDARD

Claim construction is a legal question for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 390 (1996); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448,

1  1454 (Fed. Cir. 1998) (en banc).  To construe a claim, a
2  court may consider the claim, the specifications, and the
3  prosecution file history.  Phillips v. AWH Corp., 415
4  F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  "[A]ny
5  articulated definition of a claim term ultimately must
6  relate to the infringement question it was intended to
7  answer."  E-Pass Tech, Inc. v. 3Com Corp., 473 F.3d 1213,
8  1219 (Fed. Cir. 2007).

9

10       The Court begins its construction of a patent claim
11  with the words of the claim itself, which "are generally
12  given their ordinary and customary meaning . . . , the
13  meaning that the term would have to a person of ordinary
14  skill in the art in question . . . as of the [patent's]
15  effective filing date."  Phillips, 415 F.3d at 1312-13
16  (internal quotation marks omitted).

17

18       The Court looks to the patent specifications when
19  construing "the meaning of a claim term as it is used by
20  the inventor in the context of the entirety of his
21  invention . . . ."  Comark Comm. v. Harris Corp., 156
22  F.3d 1182, 1187 (Fed. Cir. 1998).  Furthermore, in
23  Phillips, the Federal Circuit emphasized the
24  specification's critical importance: it "is always highly
25  relevant to the claim construction analysis.  Usually it
26  is dispositive; it is the single best guide to the
27  meaning of a disputed term."  Phillips, 415 F.3d at 1315
28

(quoting <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The prosecution history, like the specifications, provides evidence of how the Patent Officer and the inventor understood the patent.  <u>Phillips</u>, 415 F.3d at 1317 (citing <u>Lemelson v. Gen. Mills, Inc.</u>, 968 F.2d 1202, 1206 (Fed. Cir. 1992)).  The prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  <u>Id.</u> (citing <u>Inverness Med. Switz. GmBH v. Warner Lambert Co.</u>, 309 F.3d 1373, 1380-82 (Fed. Cir. 2002).  The prosecution history, however, is important because it can demonstrate "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  <u>Id.</u> (citing <u>Vitronics</u>, 90 F.3d at 1582-83; <u>Chimie v. PPG Indus., Inc.</u>, 402 F.3d 1371, 1384 (Fed. Cir. 2005)).

Finally, the Court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  <u>Phillips</u>, 415 F.3d at 1317.  With respect to expert

testimony, the Federal Circuit has stated that such testimony "can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field."  Id. at 1318 (citations omitted).

While the Federal Circuit has held that "extrinsic evidence may be useful to the court," overall, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of the claim language."  Id. at 1317-18 (citation and internal quotation marks omitted).  With these principles in mind, the Court turns to the terms at issue here.

### III. DISCUSSION

**A.   Scope of the Claim Terms to Be Construed**

The parties have differing views regarding the impact of the Federal Circuit's 2012 order.  Dr. Jang argues that BSC wants to revisit claim terms on remand that had been decided in the 2006 claim construction order, including some terms in which the Court adopted BSC's proposed construction, but were in no way affected by in

the Federal Circuit's opinion.[2]  Jang Br. at 1.  BSC does not dispute this contention.  Rather, BSC argues that the Federal Circuit's decision concerning the construction of the term "connecting strut column" necessarily implicates and calls into question other claim terms, such as "expansion strut" and "expansion strut pair."  BSC Rebuttal at 2-3.  BSC further argues that there is no precedent preventing it from re-litigating claim construction terms on remand, even if it had previously received the construction it sought in the previous Markman hearing.  Id. at 1-2.  Instead, BSC argues, the Court has the ability to change claim constructions on a "rolling" basis, citing Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc., 429 F.3d 1364 (Fed. Cir. 2005) and Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd., 599 F.3d 1308, 1314 (Fed. Cir. 2010). Id. at 2.

The Court has reproduced the parties' contentions with respect to this issue in the table attached as Appendix A to this Order.

---

[2] The Court adopted BSC's proposed constructions for the following claims: "expansion column," "expansion strut," "expansion strut pair," "connecting strut column," and "connecting strut." 2006 Claim Construction Order at 5 n.5 ("expansion strut" and "expansion strut pair"), 9 ("expansion column"), 12 ("connecting strut column"), 13 ("connecting strut").  The Court adopted Dr. Jang's construction of the following claims: "proximal," "distal," and "radius of curvature."  Id. at 14.

1    To the extent BSC requests that the Court revisit its
2  previous construction of claims in which the Court
3  adopted BSC's proposed construction and which were not
4  implicated by the Federal Circuit's opinion, the Court
5  declines BSC's invitation.  First, the Court agrees with
6  Dr. Jang that, as noted above, the Federal Circuit's
7  order only reversed this Court's 2006 claim construction
8  order as to the claim for "connecting strut column."
9  Hence, the scope of mandate from the Federal Circuit is
10 limited.

11

12   With respect to claim constructions made by this
13 Court, the Federal Circuit was only presented with "the
14 narrow issue of whether the connecting struts forming a
15 column must be 'unattached' to each other. . . .
16 [I]ndeed, it was the *only* issue that [Dr. Jang]
17 appeal[ed]."  Jang, 493 F. Appx. at 75.  The Federal
18 Court remanded the action back to this Court "for further
19 proceedings consistent with [its] opinion."  That
20 opinion, in turn, reversed "[b]ecause the district court
21 erroneously imported a limitation from the specification
22 into the term 'connecting strut column[.]'"

23

24   Under the "law of the case" doctrine, "a court will
25 generally refuse to reopen or reconsider what has already
26 been decided at an earlier stage of the litigation."
27 Suel v. Sec'y, Health & Human Servs., 192 F.3d 981, 985
28

8

1   (Fed. Cir. 1999) (citation omitted).  "[L]aw of the case
2   [is] the rule that 'a decision by the court on a point in
3   a case becomes the law of the case unless or until it is
4   reversed or modified by a higher court.'"  Gindes v.
5   United States, 740 F.2d 947, 950 (Fed. Cir. 1984)
6   (quoting Raylaine Worsteds, Inc. v. United States,  F.
7   Supp. 723, 726, 137 Ct. Cl. 54, 58 (1956)); see also
8   Christianson v. Colt Indus. Operating Corp., 486 U.S.
9   800, 816 (1988).
10
11      Departure from this doctrine generally requires "the
12   discovery of new and material evidence not presented in
13   the prior action or 'an intervening change of controlling
14   legal authority, or [a showing that] the prior decision
15   is clearly incorrect and its preservation would work a
16   manifest injustice.'"  Toro Co. v. White Consol. Indus.,
17   Inc., 383 F.3d 1326, 1336 (Fed. Cir. 2004).
18
19      Similarly, under the "mandate rule," "issues actually
20   decided [on appeal] — those within the scope of the
21   judgment appealed from, minus those explicitly reserved
22   or remanded by the court — are foreclosed from further
23   consideration."  Amado v. Microsoft Corp., 517 F.3d 1353,
24   1360 (Fed. Cir. 2008) (quoting Engel Indus., Inc. v.
25   Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999).
26   When applying this rule, "a district court is free to
27   take any action that is consistent with the appellate
28

mandate, as informed by both the formal judgment issued by the court and the court's written opinion." Exxon Chem. Patents, Inc. v. Lubrizol Corp., 137 F.3d 1475, 1484 (Fed. Cir. 1998). The district court's actions on remand should not be inconsistent with the letter or the spirit of the mandate from the appellate court. Laitram Corp. v. NEC Corp., 115 F.3d 947, 951 (Fed. Cir. 1997) (citing Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979)).

As the Federal Circuit found that the Court erred in its construction of the term "connecting strut column," the Court addresses the construction of that claim in this order. The Court finds that it is consistent with the Federal Circuit's mandate also to reconsider any other claim term that was construed using the same methodology as "connecting strut column," that is, by importing limitations from the examples in the patents that were not required by the language or specifications of the claim. See Jang, 493 F. Appx. at 76.

Similarly, the Court finds it would be inconsistent with the Federal Circuit's mandate and the "law of the case" doctrine to reevaluate other claim terms that were not directly or implicitly considered in the Federal Circuit's opinion, i.e., "expansion strut" and "expansion strut pair." Though the Federal Circuit remanded for proceedings consistent with its opinion, it did not find

that all of the Court's claim constructions were infected
with error requiring reversal or reconsideration upon
remand.  Thus, the Court finds that there is no reason to
disregard the "law of the case" doctrine in this
instance.  Moreover, the Court finds that it would be
inconsistent with the mandate of the Federal Circit to
revisit other claim terms not addressed directly or by
implication, especially those terms with constructions
initially advanced by BSC and which were ultimately
adopted by the Court in its 2006 claim construction order.

Second, even if the "law of the case" and the
"mandate rule" did not apply in this instance, the
decisions in <u>Pfizer</u> and <u>Pressure Products</u> do not support
the BSC's sweeping assertion that the Court can simply
reevaluate previously decided claim constructions without
a compelling reason.  In <u>Pfizer</u>, the claim construction
was undertaken as part of a preliminary injunction
analysis.  See <u>Pfizer</u>, 429 F.3d at 1372 (if a preliminary
injunction alleging infringement is sought, courts must
engage in claim construction when analyzing if the party
seeking a preliminary injunction is likely to succeed on
the merits).  The justification for the "rolling"
reevaluation of claim terms in <u>Pfizer</u> was due to the
preliminary nature of the proceedings.  In <u>Pressure
Products</u>, the district court, in the midst of a jury
trial, sua sponte supplemented its previous construction

of a term because testimony revealed a latent dispute over the trial court's definition of that term.  <u>See</u> <u>Pressure Products</u>, 599 F.3d at 1314.  Such a supplement was permissible, the Federal Circuit held, because the Court's understanding of the technology at issue had evolved.  <u>See id.</u> at 1315 ("this court understands that a trial judge may learn more about the technology during the trial that necessitates some clarification of claim terms . . . .")

There is no evolving understanding of the technology here, or any other aspect of the pending litigation that would require the Court to reevaluate claims that were previously construed and not implicated or called into doubt by the Federal Circuit's decision.

Accordingly, the Court declines to modify its previous claim construction for the following terms: "expansion strut," "expansion strut pair," "proximal," and "distal."

**B.   The Court's Previous Claim Construction Order and the Federal Circuit's Reversal**

In its initial clam construction order, the Court, adopting BSC's proposed construction, construed the term "connecting strut column" as follows: "A column formed solely of a plurality of connecting struts unattached to

each other and arranged along the circumference of the strut."  2006 Claim Construction Order at 9.  The Court found that, because "every single figure in the Jang patents [showing] 'connecting columns' . . . shows [] connecting struts forming those columns are not connected to each other," the "unattached" limitation in the claim construction was warranted.  See 2006 Claim Construction Order at 10-11.

The Federal Circuit reversed this Court's claim construction with respect to "connecting strut column." The Federal Circuit held that the construction impermissibly relied upon the embodiments in the claim showing only connecting strut columns with unattached connecting struts, when the specifications did not indicate or require that connecting struts be unattached.

The parties agree that the Federal Circuit's holding with respect to the construction of "connecting strut column" necessarily renders infirm the Court's construction of the terms "connecting strut" and "expansion column," as the construction of those terms similarly relied upon and imported limitations from the embodiments.  Accordingly, the Court will address the terms "connecting strut," "connecting strut columns," and "expansion strut."

## C.   Claim Construction

### 1.   "connecting strut"

In the Court's 2006 claim construction order, the Court adopted BSC's proposed construction and constructed the term "connecting strut" as follows: "A strut that connects adjacent columns."  2006 Claim Construction Order at 12.

In support of this construction, the Court found that "all the embodiments disclosed in the Jang patents depict 'connecting struts' connecting adjacent columns" and that the language of the specifications and the Summary of Invention consistently stated that "connecting struts" connected adjacent "expansion columns."  Id. at 13.

The parties both agree that new claim construction is necessary following the issuance of Federal Circuit's decision.  But while Dr. Jang proposes that the Court only excise from its previous construction the limitation that "connecting struts" must be adjacent to "expansion columns," BSC contends that "connecting struts" are *required* to be adjacent to "expansion columns," as well as proposing other geometrical limitations.  See BSC Rebuttal at 4 n.1 ("BSC submits that the requirement that adjacent 'expansion columns' be connected is proper in the interpretation of 'connecting strut,' 'connecting strut column,' or both terms.").

Dr. Jang proposes a limited change to the Court's previous construction of the term "connecting strut," as discussed above.  Dr. Jang's proposed construction of "connecting strut" is: "a strut that connects expansion columns."  Jang Br. at 18.

BSC proposes that "connecting strut" be construed as follows: "A strut that connects expansion strut pairs from adjacent expansion columns and that straightens on deployment so as to become generally parallel to the stent's longitudinal axis."  BSC Br. at 18.

In light of the Federal Circuit's holding in <u>Jang</u>, as discussed above, and the evidence proffered by the parties, the Court finds that Dr. Jang's construction is proper, for the following reasons.

First, Dr. Jang's proposed construction does not import the "adjacent" language that was previously used by the Court in its 2006 claim construction order, which relied upon the examples in the specifications.  <u>See</u> 2006 Claim Construction Order at 13 ("All of the embodiments disclosed in the Jang patents depict 'connecting struts' connecting adjacent columns; the language in the specifications and the Summary of the Invention likewise consistently state that the 'connecting struts' connect adjacent expansion columns.")

15

Furthermore, Dr. Jang's proposed construction is supported by the intrinsic evidence.  For example, in Claim 1 of the '021 patent, "connecting strut" is characterized as connecting a proximal, intermediate, and distal section of an "expansion strut pair," thus creating a "connecting strut column."  There is no limitation that the "connecting struts" must connect adjacent "expansion columns" or "expansion struts."

Other aspects of the patents, for example, those relating to the first "expansion strut," include the limitation that the first "expansion strut" must be adjacent to the second.  The aspects of the patent dealing with "connecting struts," however, do not contain any affirmative limitation that the "connecting struts" are required to be connected to adjacent "expansion strut pairs."

In contrast, while BSC agrees with Dr. Jang that the Court's original construction of the term "connecting strut" -- which was BSC's proposed construction at the time -- must be reconsidered following the Federal Circuit's decision in <u>Jang</u>, BSC's proposed construction for this term, in contrast, once again incorporates the "adjacent" limitation from the Court's previous claim construction.  BSC does not explain this inconsistency,

that is, why it proposes that the Court abandon its previous construction of this claim, while at the same time maintaining the "adjacent" limitation of the previous construction.

In support of re-imposing the limitation that "connecting struts" must connect adjacent "expansion columns," BSC relies on two pieces of evidence: (1) a description in the specification of the preferred embodiment, and (2) the declaration of Dr. James E. Moore, Jr. ("Moore Decl." (Doc. No. 352)).

Both of these arguments depend heavily upon the examples in the specification.  See BSC Br. at 18-19 (citing to Fig. 8G and 8F, each of which are embodiments of the '021 patent); Moore Decl. at 15-16 (citing and discussing the same).  With respect to the BSC's reliance on the description in the embodiments, the Court finds that such an argument is precisely the type previously rejected by the Federal Circuit.

Accordingly, the Court adopts Dr. Jang's construction of this claim.

## 2. "connecting strut column"

The Court adopted BSC's construction of this term in its original construction order, and construed a

"connecting strut column" as: "formed solely of a plurality of connecting struts unattached to each other and arranged in a column along the circumference of the stent."  2006 Claim Construction Order at 9.

As discussed above, the Federal Circuit vacated the Court's construction of this term because the Court impermissibly imported the "unattached" limitation from the preferred embodiment of the patent that was absent in the language of the patent itself.

Again, with respect to the Court's construction of this term, Dr. Jang contends that the Court need only excise the impermissible limitations the Court took from the embodiments.  Thus, Dr. Jang's proposed construction is: "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent."  Jang Br. at 18.  The only changes from the Court's previous construction in Dr. Jang's current proposed construction is the deletion of the "unattached" limitation, as discussed by the Federal Circuit, as well as the limitation that the column is formed "solely" of a plurality of connecting struts.

BSC proposes the following construction of this term: "a plurality of connecting struts in a circumferential column that connect adjacent expansion columns; a

18

structure that satisfies the definition of an expansion
column is not a connecting strut column."  BSC's Br. at
20.

Neither party now contends that the "connecting strut
columns" must "solely" be formed of a plurality of
"connecting struts," or that those "connecting struts"
must be "unattached" to each other.

The Court adopts Dr. Jang's proposed construction of
the term "connecting strut column" for the reasons
discussed below.

Dr. Jang's proposed construction of the claim term
"connecting strut column" specifically omits the
"unattached" and "solely" limitations as those
limitations were imported from the examples in the
specification, as with the "adjacent" limitation
discussed above in the "connecting strut" claim.
Furthermore, Dr. Jang contends that there is no support
in the intrinsic evidence for the negative limitation
that "a structure that satisfies the definition of an
expansion column is not a connecting strut column," as in
BSC's proposed construction.

BSC contends that its proposed construction
"maintain[s] clear distinctions between 'expansion

columns' and 'connecting strut columns,'" unlike Dr. Jang's proposed construction, which ignores the differences between those two elements of the patent and threatens the claim's validity.  BSC Br. at 20-26; BSC Rebuttal at 8-10.  According to BSC, Dr. Jang's proposed constructions would eradicate any distinction between an "expansion column" and a "connecting strut column."  BSC Rebuttal at 2.

BSC's position lacks a basis in the intrinsic evidence, however.  To the extent that BSC wishes to impose the limitation that "connecting strut columns" must be adjacent to "expansion columns", there is no basis in the language of the claims themselves to support that limitation.  Though BSC cites to numerous examples for the proposition that "connecting strut columns" *must* connect adjacent "expansion columns" (see BSC Rebuttal at 4-5), none of those examples come from the language of the claims themselves.  Rather, each of those references to "connecting strut columns" being adjacent to "expansion columns" is taken from the preferred embodiments of the patents.  Using the embodiments to import language of limitation when those limitations are not contained in the language of the claim itself is precisely the error that the Federal Circuit discerned in Jang.

1    Moreover, BSC's proposed construction of "connecting
2  strut column," like its proposed construction of
3  "connecting strut," includes the limitation that a
4  "connecting strut column" must connect adjacent
5  "expansion columns."  As discussed above, however, there
6  is no indication in the intrinsic evidence or in the
7  claims themselves that this is a requirement; other
8  aspects of the patent, such as those relating to the
9  "expansion columns," require that "expansion struts" and
10 "expansion strut pairs" be adjacent to each other.  As
11 the patents contain an affirmative proximity limitation
12 for one aspect of the design and not others, this
13 strongly indicates that the patent contemplates specific
14 design placement requirements of one aspect (i.e., the
15 "expansion struts" and "expansion strut pairs") but not
16 others (i.e., the "connecting struts" and "connecting
17 strut columns").

18

19    Furthermore, to the extent BSC claims that Dr. Jang's
20 proposed construction of "connecting strut column" and
21 "expansion column" will eliminate any distinction between
22 those two terms, that argument is not persuasive.  While
23 Dr. Jang admits that "connecting strut columns" and
24 "expansion columns" may, when deployed in certain
25 situations, perform similar functions and have similar
26 characteristics, the patents make it clear that those

27

28

1  aspects of the invention have distinct elements and
2  functions.  <u>See</u> Jang Rebuttal at 13.
3
4      Accordingly, the Court adopts Dr. Jang's proposed
5  construction of this claim.
6
7      **3.   "expansion column"**
8      In the 2006 claim construction order, the Court
9  construed the claim "expansion column" as: "a tubular
10 structure formed solely by a plurality of expansion strut
11 pairs arranged in a column along the circumference of the
12 stent."  2006 Claim Construction Order at 5, 9.
13
14     Dr. Jang again proposes only limited changes to the
15 Court's previous construction of this claim: "a structure
16 formed of a plurality of expansion strut pairs and
17 arranged in a column along the circumference of the
18 stent."  Jang Br. at 24.  BSC proposes the following
19 construction: "a structure formed of a plurality of
20 expansion strut pairs and arranged in a column along the
21 circumference of the stent."  BSC Br. at 14.  BSC
22 concedes that its proposed construction of "expansion
23 column" does not differ greatly from Dr. Jang's.  <u>See</u> BSC
24 Br. at 15.
25
26
27
28

The Court adopts Dr. Jang's proposed construction of the term "expansion column" for the reasons discussed below.

As with the previous two claims to be construed, Dr. Jang proposes minimal changes to the Court's previous construction of "expansion column," only omitting the words "tubular" and "solely."

Dr. Jang contends that "solely" and "tubular" must be removed from the Court's previous construction for the same reason that "adjacent" and "unattached" needed to be deleted, as in the claims discussed above. Jang Br. at 24. Neither party now contends that the terms "tubular" or "solely" are proper in the construction of this claim.

Though neither party now seeks to impose a limitation that the "expansion columns" be tubular in structure, Dr. Jang contends that BSC's proposed construction, imposing a limitation that the "expansion columns" be joined circumferentially to form a ring, is simply another way of saying "tubular." Jang Rebuttal at 22-22. According to Dr. Jang, characterizing the "expansion columns" as a ring invites the same kind of error which the Federal Circuit previously condemned: importing limitations from the preferred embodiments into the claims. Jang Rebuttal at 20 (noting that though the specification explicitly

mentions that expansion columns are preferred in an
unbroken ring structure, broken structures may also be
used; hence, there is no requirement that the "expansion
columns" form a ring).

     BSC also fails to explain why its previous proposed
construction for this claim, which was ultimately adopted
by the Court, is now subject to seemingly wholesale
change.

     Accordingly, the Court adopts Dr. Jang's proposed
construction of this claim.

# IV. CONCLUSION

For the reasons set forth above, the Court adopts the following construction for those claims disputed by the parties and considered by the Court.

| Claim | Court's Construction |
|---|---|
| *"connecting strut"* | "a strut that connects expansion columns" |
| *"connecting strut column"* | "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent" |
| *"expansion column"* | "a structure formed of a plurality of expansion strut pairs and arranged in a column along the circumference of the stent" |

Dated:  October 22, 2013

*Virginia A. Phillips*

VIRGINIA A. PHILLIPS
United States District Judge

**Appendix A**

| Claim Term | BSC's 2006 Proposed Construction | Court's 2006 Construction | BSC's Current Proposed Construction | Jang's Current Proposed Construction |
|---|---|---|---|---|
| *"connecting strut"* | "a strut that connects adjacent expansion columns" | "a strut that connects adjacent expansion columns" | "a strut that connects expansion strut pairs from adjacent expansion columns and straightens on deployment so as to become generally parallel to the stent's longitudinal axis | "a strut that connects expansion columns" |
| *"connecting strut column"* | "formed solely of a plurality of connecting struts unattached to each other and arranged in a column along the circumference of the stent" | "formed solely of a plurality of connecting struts unattached to each other and arranged in a column along the circumference of the stent" | "a plurality of connecting struts in a circumferential column that connect adjacent expansion columns; a structure that satisfies the definition of an expansion column is not a connecting strut column" | "a structure formed of a plurality of connecting struts and arranged in a column along the circumference of the stent" |
| *"expansion column"* | "a tubular structure formed solely by a plurality of expansion strut pairs arranged in a column along the circumference of the stent" | "a tubular structure formed solely by a plurality of expansion strut pairs arranged in a column along the circumference of the stent" | "a plurality of expansion strut pairs joined circumferentially to form a ring" | "a structure formed of a plurality of expansion strut pairs and arranged in a column along the circumference of the stent" |
| *"expansion strut pair"* | "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other" | "a combination of two circumferentially adjacent expansion struts coupled at one end by a joining strut and open at the other" | "two circumferentially adjacent expansion struts that are joint at one end by a joining strut and that spread apart circumferentially at the other on deployment of the stent" | No Change |
| *"expansion strut"* | "a strut in an expansion column" | "a strut in an expansion column" | "a strut that prior to a stent's deployment is generally parallel to the stent's longitudinal axis but that on deployment is reoriented in a circumferential direction" | No Change |