JEFFREY J. TONEY (*pro hac vice*)
jtoney@kasowitz.com
JONATHAN K. WALDROP (*pro hac vice*)
jwaldrop@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1349 West Peachtree Street, N.W., Suite 1500
Atlanta, GA 30309
Tel: (404) 260-6080; Fax: (404) 260-6081

N.E.B. MINNEAR (Bar No. 230190)
jminnear@kasowitz.com
JED I. BERGMAN (*pro hac vice*)
jbergman@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700; Fax: (212) 506-1800

UTTAM G. DUBAL (Bar No. 266007)
udubal@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170; Fax: (650) 453-5171

JAMES A. ODLUM (Bar No. 109766)
jodlum@mohlaw.com
MUNDELL, ODLUM & HAWS, LLP
650 E. Hospitality Lane, Suite 470
San Bernardino, CA 92408-3595
Tel: (909) 890-9500; Fax: (909) 890-9580

Attorneys for Plaintiff G. David Jang, M.D.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION - RIVERSIDE**

| | |
|---|---|
| G. DAVID JANG, M.D., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation, <br><br> Defendants. | CASE NO. ED CV 05-00426-VAP (MRWx) <br><br> **PLAINTIFF G. DAVID JANG, M.D.'S MOTION TO EXCLUDE THE TESTIMONY OF JAMES E. MOORE, JR., PH.D. AND DANIEL GREGORICH** <br><br> **Hon. Virginia A. Phillips** <br> **Date:  February 24, 2014** <br> **Time:  2:00 p.m.** <br> **Courtroom:  2** |

1

# TABLE OF CONTENTS

2

**Page**

3

4

I.  INTRODUCTION .......................................................................... 1

II. STATEMENT OF FACTS ........................................................... 2

    A.  Document requests and initial disclosures ........................... 2

    B.  Depositions and Discovery Deadlines ................................. 5

    C.  The Notice of Mr. Gregorich's deposition........................... 6

    D.  Defendants' Use of the Gregorich Affidavits with Dr. Moore........... 7

    E.  Motions to Compel .............................................................. 9

    F.  Expert discovery and BSC's Untimely Use and Production of

        the Gregorich Measurements ............................................. 10

    G.  Depositions of Dr. Jang's experts ...................................... 14

    H.  Dr. Jang's efforts to meet-and-confer regarding the Gregorich

        materials and Moore Report ............................................... 15

III. ARGUMENT AND CITATION OF AUTHORITIES ............................. 16

    A.  The Ninth Circuit and Other Federal Courts Uphold  Sanctions

        Excluding Evidence Where A Party Has Attempted to Use

        Information It Failed to Produce In Discovery As BSC Did

        Here. ................................................................................... 16

    B.  This Court should exclude Dr. Moore's and Mr. Gregorich's

        testimony and similarly exclude Mr. Gregorich's

        measurements and affidavits on which the witnesses rely from

        use at trial or in evidence. ................................................... 23

IV. CONCLUSION ............................................................................ 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**            **CASE NO. 05-00426-VAP (MRWx)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Friedman v. Medjet Assistance, LLC*,
   2010 U.S. Dist. LEXIS 145223 (C.D. Cal. Nov. 8, 2010) (Morrow, J.)............ 20

*Hoffman v. Constr. Protective Servs.*,
   541 F.3d 1175 (9th Cir. 2008) ..................................................... 17, 19

*Malico, Inc. v. Cooler Master USA, Inc.*,
   2013 U.S. Dist. LEXIS 118119 (N.D. Cal. Aug. 20, 2013)........................ 21, 22

*Plumley v. Mockett*,
   836 F. Supp. 2d 1053 (C.D. Cal. 2010) (King, J.) ...................................... 21, 24

*Robinson v. HD Supply, Inc.*,
   2013 U.S. Dist. LEXIS 155196 (E.D. Cal. Oct. 28, 2013) ............................... 18

*Tokai Corp. v. Easton Enters.*,
   632 F.3d 1358 (Fed. Cir. 2011) ..................................................... 19, 20

*Vieste, LLC v. Hill Redwood Dev., LTD.*,
   2011 U.S. Dist. LEXIS 136168 (N.D. Cal. Nov. 28, 2011)........................ 22, 23

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ..................................................... 17, 18

**Other Authorities**

F.R.C.P. 26(a)(2)(B) ................................................................... 17

F.R.C.P. 26(a) and (e) and 37(c)(1)..................................................... 1

F.R.C.P. 37 and 26..................................................................... 16

Rule 26 ............................................................................... 5

Rules 26 and 37 ....................................................................... 1

Rule 26(a) ...................................................................... passim

Rule 26(a)(1).......................................................................... 5

-ii-

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH          CASE NO. 05-00426-VAP (MRWx)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rule 26(a)(1)(A) ............................................................................................. 16, 17

Rule 26(a) and (e) ........................................................................................... 21, 22

Rule 26(e) ............................................................................................................... 23

Rule 26(e)(1)(A) ................................................................................................... 17

Rule 37 ................................................................................................. 18, 19, 25

Rule 37(c)(1) ................................................................................................. *passim*

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**          **CASE NO. 05-00426-VAP (MRWx)**

1       Plaintiff G. David Jang, M.D. ("Dr. Jang") respectfully moves the Court to

2   exclude the testimony of JAMES E. MOORE, JR., PH.D. and DANIEL

3   GREGORICH pursuant to Federal Rules of Civil Procedure 26(a) and (e) and

4   37(c)(1).

5       Defendants' expert witness, Dr. Moore, based his expert report on affidavits

6   of, and data provided by, Mr. Gregorich.  (*See* Expert Report of Professor James

7   E. Moore, Jr., Ph.D. Regarding Non-Infringement of U.S. Patent Nos. 5,922,021

8   and 5,954,743, a true and correct copy of which is attached to the Declaration of

9   Norman E.B. Minnear in support of Dr. Jang's Motion to Exclude, dated

10   January 24, 2014 and filed concurrently herewith, as Exhibit A.)  Defendants

11   failed to disclose Mr. Gregorich as a witness with material knowledge and, when

12   Dr. Jang attempted to depose him, Defendants refused to provide him for

13   deposition while maintaining he had no involvement or knowledge relevant to the

14   issues in this case.  After fact discovery closed, Defendants submitted Dr. Moore's

15   expert report which relied extensively upon Mr. Gregorich's testimony, an

16   interview with Mr. Gregorich, and measurements and calculations provided by

17   Mr. Gregorich and another BSC engineer.  Plaintiff served various discovery

18   requests and filed motions to compel information contained in the documents Dr.

19   Moore relied on, but Defendants refused to produce those documents and

20   information throughout discovery and motions to compel.  Absent an order

21   excluding this material and report, Defendants will have accomplished the very

22   thing which Rules 26 and 37 were implemented to prevent: ambush litigation.

23       Accordingly, Plaintiff asks the Court to exclude the affidavits of Daniel

24   Gregorich and other data he provided in conjunction with Dr. Moore's expert

25   report, dated December 19, 2013, as well as the Expert Report of Professor James

26   E. Moore, Jr., PH.D. Regarding Non-Infringement of U.S. Patent Nos. 5,922,021

27

28

1

1    and 5,954,743 to the extent it relied upon Mr. Gregorich's affidavits and
2    information he provided.

3                              **PRAYER FOR RELIEF**

4            Wherefore, Plaintiff Dr. Jang respectfully prays the Court grant this Motion.

5

6    Dated: January 24, 2014              KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

7

8                                         By: */s/ Jonathan K. Waldrop*
9                                             N.E.B. MINNEAR
                                              JED I. BERGMAN
10                                            JEFFREY J. TONEY
                                              JONATHAN K. WALDROP
11                                            UTTAM G. DUBAL

12                                        Attorneys for
                                          Plaintiff G. David Jang, M.D.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      <u>INTRODUCTION</u>**

Plaintiff respectfully moves the court to exclude the testimony of Defendants' expert witness, Dr. James E. Moore, Jr., in whole or in part; the testimony of Daniel Gregorich, whom Defendants refused to provide for deposition during the discovery period and whom Defendants have maintained has no involvement or knowledge relevant to the issues in this case; and any materials prepared by Mr. Gregorich, including but not limited to those certain affidavits upon which Dr. Moore relied in preparing his expert opinion and report dated December 19, 2013.  (*See* Expert Report of Professor James E. Moore, Jr., Ph.D. Regarding Non-Infringement of U.S. Patent Nos. 5,922,021 and 5,954,743, a true and correct copy of which is attached to the Declaration of Norman E. B. Minnear in support of Dr. Jang's Motion to Exclude, dated January 24, 2014 and filed concurrently herewith ("Minnear Decl."), as Exhibit A.)

This case centers around Defendants' breach of certain Licensing and Assignment Agreements under which Defendants are obligated to maintain and protect certain patents and to pay Plaintiff for their use of certain industry-standard cardiac stents that Plaintiff designed.  Defendants otherwise compete with Plaintiff in the cardiac stent industry and produced a line of stents (the "Express Stents") which practice the art underlying the stents they licensed from Plaintiff. Defendants now improperly refuse to pay Plaintiff the royalties he is due for those stents under the Agreements.

Plaintiff sought various pieces of technical information concerning the Express Stents' measurements, dimensions and function in his written and oral discovery since the inception of this case to prove that the Express Stents are the subject of Defendants' payment obligations, as detailed more fully in the Statement of Facts, *infra*.  Defendants have withheld this information, and in

-1-

particular the testimony of a noticed witness, one of Defendants' engineers, Mr. Gregorich, and most of his notes and other statements.  To justify their refusal to provide Mr. Gregorich for deposition during fact discovery, Defendants misrepresented to Dr. Jang that Mr. Gregorich had no relevant information regarding the accused Express Stent.

In meet and confer during September and October, 2013, Defendants repeatedly misrepresented to Plaintiff that Mr. Gregorich had no knowledge of the Express Stents and failed to produce his notes and other documents, while Defendants' counsel simultaneously was sharing this same work product with Dr. Moore for his use in his expert report.  On December 20, 2013, after the close of fact discovery, Defendants produced the report of their designated expert, Dr. Moore, which relied heavily on Mr. Gregorich's analysis.  Specifically, Dr. Moore's opinion, as set forth in his report, relies extensively on two affidavits of Mr. Gregorich (the "Gregorich Affidavits"), which contain information regarding the Express Stents' measurements, dimensions and function.  This information, which was authored in 2003-2004, has been the subject of Plaintiff's discovery since 2005, but Defendants refused to disclose it in discovery.

Under Ninth Circuit law, the remedy for Defendants' litigation misconduct is clear:  Defendants should be precluded from proffering as evidence the Gregorich Affidavits, evidence of other Gregorich work, and Dr. Moore's expert testimony that relies upon and incorporates the improperly undisclosed Gregorich Affidavits and information.  Any other result would allow Defendants to flout the discovery rules to Dr. Jang's extreme prejudice.

## II.   STATEMENT OF FACTS

### A.   Document requests and initial disclosures

Plaintiff filed this action on May 19, 2005, seeking damages for breach of certain licensing and assignment agreements pursuant to which he is entitled to

-2-

receive royalties on inventions practicing the art embodied in cardiac stents he designed.  In support of his claims, he immediately served discovery seeking the designs, measurements and functions of certain stents manufactured by Defendants known as Express Stents, beginning with his First Request for Production of Documents to Defendants on August 26, 2005.[1]  That discovery included, among other requests:[2]

**Request For Production No. 31:**

All DOCUMENTS RELATING TO the structure, function and/or operation of each BSC STENT.

**Request For Production No. 57:**

All DOCUMENTS RELATING TO the scope or claims of the JANG PATENTS, including but not limited to, opinions and advice of counsel upon which YOU rely or plan to rely as a defense.

**Request for Production No. 89:**

All documents or communications describing, summarizing, or analyzing the design of the Express stent, including but not limited to the functional characteristics attributable to the design or geometry of such stents.

**Request for Production No. 90:**

All documents or communications describing, summarizing, or analyzing the functional characteristics of the Express stent attributable to its design or geometry.

**Request for Production No. 98:**

---

[1] Over the course of discovery, Dr. Jang served seven sets of document requests consisting of 193 individual requests.  (Minnear Decl. ¶ 5.)

[2] In addition to the document requests specifically delineated, the following of Plaintiff's document requests also called for the production of the Gregorich Affidavits and work he performed relating to the Express Stents:  Request Numbers 63, 94, 95, 100, 101, 150, 169, 171, 174 and 175.  (*See* Minnear Decl. ¶ 5, Ex. C.)  Document Request Numbers 89, 90, 98, 100 and 101 were subject to the October 15, 2013 Motion to Compel.  (Dkt. 389.)

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**          **CASE NO. 05-00426-VAP (MRWx)**

1   All documents discussing or summarizing the structural performance of the

2   Micro and Macro Elements of the Tandem Architecture of the Express

3   stent.

4   (Minnear Decl. ¶ 5, Ex. C.)

5   Throughout fact discovery in this case, Dr. Jang also served numerous

6   interrogatories under which Mr. Gregorich or his work should have been

7   disclosed, including the following:

8   **INTERROGATORY NO. 15** (served on April 11, 2006):

9   If You contend that the Express stent is not covered by claim 1 of the '021

10  patent, please state with particularity all facts and arguments supporting this

11  contention, including without limitation, the identification of all claim

12  elements that You contend are absent from the Express stent, the proper

13  claim construction that You contend applies to each such claim element, the

14  intrinsic and extrinsic evidence that You contend support any such claim

15  construction, and all evidence supporting Your contention that such claim

16  element is absent in the Express stent.

17  **INTERROGATORY NO. 16** (served on April 11, 2006):

18  If You contend that the Express stent is not covered by claim 1 of the '743

19  patent, please state with particularity all facts and arguments supporting this

20  contention, including without limitation, the identification of all claim

21  elements that You contend are absent from the Express stent, the proper

22  claim construction that You contend applies to each such claim element, the

23  intrinsic and extrinsic evidence that You contend support any such claim

24  construction, and all evidence supporting Your contention that such claim

25  element is absent in the Express stent.

26  **INTERROGATORY NO. 25** (served on May 6, 2013):

27

28

-4-

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**          **CASE NO. 05-00426-VAP (MRWx)**

Identify by title and brief description all categories of documents or things prepared by or on behalf of Defendants that disclose or suggest the structure, function, and/or operation of the products identified in response to Interrogatory No. 8, such as user guides, product samples, brochures, specification sheets, and functional specifications.[3]

(Minnear Decl. ¶ 6, Ex. D.)

Defendants objected to each of these document requests and interrogatories but did produce a variety of documents. None of those documents included any documents or information prepared by Mr. Gregorich that are material to this case with the exception of one lab notebook. (Minnear Decl. ¶ 7.) Additionally, Defendants failed to identify Mr. Gregorich as an individual likely to have discoverable information in Defendants' Rule 26(a)(1) Initial Disclosures, served on September 8, 2005. (Minnear Decl. ¶ 4, Ex. B.) To Dr. Jang's knowledge and based upon recent communications with Defendants, Defendants never supplemented their Rule 26 Disclosures to identify Mr. Gregorich as a potential witness. (Minnear Decl. ¶¶ 28, 30-31.)

### B.   Depositions and Discovery Deadlines

Pursuant to the Court's Civil Trial Scheduling Order, fact discovery was set to close in this case on November 1, 2013. On November 5, 2013, the Court granted a limited extension of the fact discovery deadline to allow the completion of Dr. Jang's deposition by December 14, 2013 and Defendants' production of additional documents by November 15, 2013. (Dkt 424, 426.) Between October 10, 2013 and January 10, 2014, the parties took ten fact and expert depositions and participated in three hearings. (Minnear Decl. ¶ 11.)

---

[3] Interrogatory No. 8 (served on August 26, 2005) stated: "IDENTIFY (by name and product number) every BSC STENT sold, offered for sale, licensed or distributed by YOU since May 1, 2002." (Minnear Decl. ¶ 6.) Defendants identified the Express Stent in their response to Interrogatory No. 8. *See id*.

-5-

### C.  The Notice of Mr. Gregorich's deposition

On September 12, 2013, Dr. Jang served a Notice of Videotaped Deposition of Daniel Gregorich. (*See* Minnear Decl., Ex. 12, Ex. H.)

On September 24, 2013, Defendants' counsel, Sara Zogg, emailed Dr. Jang's counsel regarding the scheduling of depositions.  Although she offered dates for other witnesses, she refused to provide potential deposition dates for Mr. Gregorich, stating: "**We also have confirmed that Mr. Gregorich did not work on, and was not involved with, the Express stent system.  Thus, he is not relevant to any genuine issue in dispute**."  (Emphasis added) (Minnear Decl. ¶ 13, Ex. I.)

On September 25, 2013, Dr. Jang's counsel responded to Ms. Zogg's email, reiterating a request for Mr. Gregorich's deposition, noting that, "in at least the lab notebook that BSC produced (BSC0187835), Mr. Gregorich recorded work on stent design.  Please let us know his availability." (Minnear Decl. ¶ 14, Ex. J.)

On September 27, 2013, Ms. Zogg replied and again refused to provide dates for Mr. Gregorich's deposition, stating:

> As to your statements regarding Mr. Gregorich, simply stating that he was involved in "stent design" is not sufficient for purposes of the additional discovery that the Court has permitted.  As we have done repeatedly in prior corresponding and in our telephone conferences, we point you to the Court's instruction:  'Discovery should be kept to a minimum and should focus only on issues genuinely in dispute.' **Stent design generally -- when we have already confirmed that Mr. Gregorich did not work on Express -- is not within the scope contemplated by the Court**.

(Emphasis added) (Minnear Decl. ¶ 15, Ex. K.)

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**                    **CASE NO. 05-00426-VAP (MRWx)**

Later that same day, Dr. Jang's counsel reiterated its request for Mr. Gregorich's deposition, stating: "Again, we disagree with your statements about Mr. Gregorich.  On page 1 of his notebook, Mr. Gregorich's heading is 'Idea for improved stent geometry' and he compares what appears to be his idea against the 'Current Express Design.'  This is very much an issue genuinely in dispute – stent geometry and the Express stent.  Please look into and provide us with his availability so that we can schedule a mutually-convenient date for his deposition.  Thank you."  (Minnear Decl. ¶ 16, Ex. L.)  Defendants failed to respond to Dr. Jang's counsel's request.  (*See* Minnear Decl. ¶ 16.)

On October 4, 2013, Dr. Jang's counsel wrote to Defendants' counsel again, stating: "I wanted to follow-up on my email from last week regarding the deposition of Mr. Gregorich.  Please let us know his availability so that we can schedule a mutually-convenient date for his deposition." (Minnear Decl. ¶ 17, Ex. M.)  Defendants again failed to respond to Dr. Jang's counsel's request.  (*See* Minnear Decl. ¶ 17.)

On October 9, 2013, in the course of emails regarding other discovery matters, Dr. Jang's counsel again reminded Defendants' counsel about the need to schedule Mr. Gregorich's deposition, saying: "We note that BSC presently disputes Dr. Jang's ability to depose one of its witnesses, Mr. Gregorich, but that dispute has not necessitated ex parte relief." (Minnear Decl. 18, Ex. N.)  Defendants did not respond to this portion of Dr. Jang's counsel's request.  (*See* Minnear Decl. ¶ 18.)

### D. Defendants' Use of the Gregorich Affidavits with Dr. Moore

According to Defendants' expert, Dr. Moore, Defendants' counsel provided the Gregorich Affidavits to him approximately two-to-three months before his January 7, 2014 deposition, if not earlier.  (Deposition of James Moore, January 7,

1   2014 ("Moore Dep."), p. 166, Minnear Decl. ¶ 9, Ex. F.)  **Thus, Defendants'**
2   **counsel provided the affidavits to their expert in about October of 2013 – in**
3   **close proximity to the time when Defendants' counsel purportedly**
4   **"confirmed" to Dr. Jang's counsel that Mr. Gregorich had no knowledge**
5   **"relevant to any genuine issue in dispute".   The counsel who made those**
6   **statements, Sara Zogg, also represented Dr. Moore in his deposition.  At no**
7   **time in October did Defendants produce the Gregorich Affidavits to Plaintiff.**
8   (Minnear Decl. ¶¶ 7, 13, 19 and Ex. F.)

9        On October 10, 2013, Dr. Jang's counsel took the 30(b)(6) deposition of the
10   Defendants' 30(b)(6) designee, Matthew Miller and asked Mr. Miller about Mr.
11   Gregorich's involvement with the Express Stent.   Mr. Miller reiterated
12   Defendants' assertion that Mr. Gregorich had no material involvement with the
13   material issues in dispute:

14        Q.   Have you ever heard the name Dan Gregorich?

15        A.   Yeah, Gregorich?

16        Q.   Gregorich, Yes.

17        A.   Yep.

18        Q.   What -- what do you know about him?

19        MS. ZOGG: Object to the form; outside the scope.

20        A.   **Dan was a design engineer, and he worked in my group for**
21             **a time. I don't believe he worked directly on Express®,**
22             **though. I think he joined after that time frame.**

23        . . . .

24        Q.   Are there any other stent design engineers you can think of that

25             worked on the Express® Stent at any point in time?

26        A.   I think we talked about Dan Gregorich; but, as I said, I think

27             my recollection of him was that he worked on -- **he may have**

28                                            -8-

1  **done something on Express®, but I think -- my recollection**
2  **is he worked on subsequent designs, not this early design.** I
3  can't think of any other individuals.   There may have been
4  others. I just don't recall who they might have been.

5  . . .

6  **Q.  To the best of your recollection, did Mr. Gregorich work on**
7  **the Express® Stent at all?**

8  **A.   I can't say with complete certainty, but I – my best**
9  **recollection is -- would be no -- would be more likely no**
10  **than yes.**

11  (Deposition of Matthew Miller, Oct. 10, 2013 ("Miller Dep."), pp. 100-101, 132-
12  133, Minnear Decl. ¶ 8, Ex. E.)

13      There were no further meet-and-confer discussions regarding Mr.
14  Gregorich's deposition after Defendants' 30(b)(6) deposition and before
15  Defendants served the Moore Report on December 20, 2013.   Based on
16  Defendants' repeated refusals to permit Mr. Gregorich's deposition and repeated
17  representations that Mr. Gregorich had no knowledge "relevant to any genuine
18  issue in dispute," Plaintiff did not take Mr. Gregorich's deposition.   (Minnear
19  Decl. ¶ 19.)

20          **E.    Motions to Compel**

21      On October 15, 2013, the parties filed a Joint Stipulation Regarding
22  Plaintiff's Motion to Compel Production of Documents and to Provide Corporate
23  Testimony.  (Dkt. 389.)  The motion did not concern Dr. Jang's request for Mr.
24  Gregorich's deposition, but it included certain document requests pursuant to
25  which Defendants should have produced Mr. Gregorich's affidavits and related
26  work.  Dr. Jang narrowed the scope of his motion to compel on October 24, 2013.
27  (Dkt. 411.)  *At all times the motion to compel concerned certain measurements*

28  -9-

1  *that Dr. Jang contended were necessary to prosecute his case.   Defendants*

2  *contended in opposition to the motion that such measurements (a) did not exist*

3  *and (b) were immaterial to the litigation.* (Minnear Decl. ¶¶ 20-21.)

4        **F.      Expert discovery and BSC's Untimely Use and Production**

5                  **of the Gregorich Measurements**

6        Expert disclosures initially were due on November 22, 2013, with rebuttals

7  due on December 13 and the close of expert discovery on December 20.  Pursuant

8  to the parties' December 11, 2013 Joint Stipulation, the deadline for expert

9  rebuttals was extended to December 20, and the close of expert discovery was

10  extended to January 10, 2014.  (Minnear Decl. ¶ 11.)

11        Defendants' expert, Dr. Moore, provided his opening report regarding

12  alleged invalidity on November 22, 2013.   Dr. Moore later testified that he

13  interviewed Mr. Gregorich after the November 22nd submission and, in response,

14  Defendants' counsel provided him with BSC documents containing data and

15  measurements related to the Gregorich Affidavits and the Express Stents that he

16  had requested.  Dr. Moore later attached those documents to his December 20,

17  2013 rebuttal report as its Appendix C.  (Minnear Decl. ¶¶ 2-3, 9, Exs. A & F,

18  Moore Dep., pp. 174, 176-177.)

19        On December 20, 2013, Dr. Moore produced his rebuttal report regarding

20  alleged non-infringement relying on the Gregorich Affidavits, his earlier interview

21  with Mr. Gregorich and the BSC measurements of the Express Stents referred to

22  in the preceding paragraph.  **The December 20, 2013 Moore Report was the**

23  **first occasion on which Defendants produced or identified in any way Mr.**

24  **Gregorich's affidavits and other work relied upon by Dr. Moore, despite the**

25  **fact that the matters contained in his report have been at issue and the**

26  **subject of discovery since the inception of the case.**

27        The unproduced Gregorich documents – generated by Mr. Gregorich, whom

28
-10-

BSC repeatedly refused to provide for deposition – form one of the main pillars of support for BSC's sole expert report on non-infringement.  Dr. Moore devotes eighteen (18) paragraphs of his report to summarizing these documents and explaining why he believes they are relevant to this case.  (Minnear Decl., Ex. A, Moore Report, ¶¶ 60-77.)

Notwithstanding Defendants' repeated assertions that Mr. Gregorich had no material involvement with the Express Stents, Dr. Moore relied in significant part on work that Mr. Gregorich performed regarding the Express Stent for Defendants in 2003-2004. (*See, e.g.*, Minnear Decl., Ex. A (Moore Report), at ¶¶ 60-69 and its Appendices A-B (the Gregorich Affidavits).)  Dr. Moore stated in his report that his "opinions that the micro-elements of the accused Express stent products are 'expansion columns' and not 'connecting strut columns'" were based in part on his "review of work performed in 2004 by Dan Gregorich (currently an R&D Engineer and Tech Lead at BSC)" and his "interview … [of] Mr. Gregorich on Tuesday, December 10, 2013."  (*Id*. at ¶ 60 (citing to its Appendices A-B).)  The Moore Report describes Mr. Gregorich's tests "on physical samples of the Express workhorse stent and the Express large vessel stent," as well as "modified Express stents" Mr. Gregorich "manufactured" that Dr. Moore contends to be similar to Dr. Jang's patented stents. (*Id*. at ¶ 63; *see id*. at ¶¶ 60-69 and its Appendices A-B.)  These paragraphs of Dr. Moore's report rely entirely on the work Mr. Gregorich performed in 2003-2004, including the Gregorich Affidavits, and the information Mr. Gregorich provided to Dr. Moore during their December 10, 2013 interview.  Dr. Moore also expressly relied on measurements that Mr. Gregorich produced which have been at issue and the subject of discovery throughout the eight-year pendency of this litigation (including Dr. Jang's motions to compel), but which Defendants refused to produce.  (*See* Minnear Decl., Ex. A (Moore Report), ¶¶ 70-77 and its Appx. C.)  In reaching his opinion in paragraph 77 of the

-11-

1   report, Dr. Moore relied entirely on Mr. Gregorich's measurements and

2   calculations. (*Id*.)

3        Dr. Moore attempts to use the unproduced documents to support his

4   primary theory of non-infringement:  his contention that the Express Stents do not

5   infringe Dr. Jang's patent claims because the micro-element of Express's so-called

6   "tandem architecture" does not constitute, according to Dr. Moore, the

7   "connecting strut column" required by the claims.[4]  (Moore Report ¶ 40.)  Among

8   the few lines of argument Dr. Moore offers in support of his opinion is his

9   contention that Express's micro-element cannot be a "connecting strut column"

10  because Mr. Gregorich's unproduced testing, measurements, and analysis

11  allegedly show that the micro-elements function as "expansion columns," rather

12  than "connecting strut columns."   (Moore Report ¶ 77.)   In an attempt to

13  substantiate this, Dr. Moore explains at length Mr. Gregorich's work in creating

14  modified Express Stents without the micro-element present and directing

15  comparative compression tests of commercial Express Stents versus his modified

16  Express Stents to determine the function of micro-element.  (Moore Report ¶ 63,

17  70-71.)  Yet, BSC knowingly withheld and failed to disclose, much less produce,

18  this entire body of work – the images, measurements, and comparative testing

19  generated by Mr. Gregorich – and refused to produce him for deposition based on

20  the knowing misrepresentation that he had no knowledge of the Express Stents.

21  (Minnear Decl. ¶¶ 4-7, 13-19.)

22       BSC cannot argue credibly that it did not intend to argue that the micro-

23  element is not a "connecting strut column" or that Dr. Jang was arguing the

24  opposite.  The "connecting strut column" claim term has been hotly contested and

25  was the focus of Dr. Jang's appeal to the Federal Circuit.  In fact, the Federal

26

27  _____
    [4] Dr. Jang believes Dr. Moore's reliance on these materials is misplaced and, if
    necessary, will file a *Daubert* challenge detailing the reasons.

28                                      -12-

Circuit's opinion states plainly:  "Jang asserts that the 'micro-element' of the Express stent is the 'connecting strut column' claimed in its '021 and '743 patents."  (Dkt. 301, p. 6.)  If BSC had evidence that "the micro elements act as 'expansion columns,' not as 'connecting strut columns' or 'connecting 'struts'" (as Dr. Moore concludes from Mr. Gregorich's work), it should have produced it in fact discovery.  Instead, BSC not only failed to produce the evidence, it withheld its creator from deposition based on the false assertion that he had no knowledge of or involvement with the Express Stents.

Plaintiff was completely surprised to learn that Mr. Gregorich had analyzed and tested the Express Stent to the level of detail that Defendants' expert could consider and rely upon.  Dr. Moore's report represents BSC's effort to show that the Express Stents do not infringe the asserted claims of the '021 and '743 patents.  The issue of non-infringement, which Defendants address through Dr. Moore's reliance on the Gregorich Affidavits and other Gregorich materials, has been in issue since the case's inception, *i.e.*, for over eight years.  The specific issue of whether Defendants are practicing the "connecting strut column" element of the claims – which is central to Dr. Moore's analysis of the Gregorich Affidavits and materials – has been in issue at least since the Federal Circuit remanded the case on August 22, 2012 (mandate received October 1, 2012).  (Minnear Decl., Ex. A (Moore Report), at ¶¶ 60-77; *see also* Dkt. 301.)  Thus, Defendants have been under a continuing obligation to disclose the factual basis for their positions regarding the connecting strut column since at least the remand and regarding non-infringement since the inception of the case.

Mr. Gregorich's testing and analysis of the Express Stents plainly forms a major component of BSC's argument that the Express Stents do not practice the "connecting strut column" element of the claims.  BSC had this information and fed it to Dr. Moore while BSC was preparing its expert reports while denying Dr.

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**                    **CASE NO. 05-00426-VAP (MRWx)**

1  Jang the same access.  Plaintiff is prejudiced by this lack of timely access to these

2  materials even if he deposes Mr. Gregorich now.[5]

3      On January 3, 2014, prior to expert depositions, Dr. Jang's counsel offered

4  to exchange materials underlying the parties' expert reports.  Specifically, Dr.

5  Jang sought access to "the compression testing, Visicon scans, and stent

6  measurements referenced in Dr. Moore's report and depicted in Appendices A-C

7  thereto."  (Minnear Decl. ¶ 22, Ex. O.)  On January 4, 2014, Dr. Jang's counsel

8  followed up on its request.  (Minnear Decl. ¶ 23, Ex. P.)  Later that day, BSC

9  *again refused* to provide the materials, this time on the basis that Dr. Jang's

10  request was late.  (Minnear Decl. ¶ 24, Ex. Q.)   Notwithstanding BSC's failure to

11  provide its materials, on January 8, Dr. Jang provided to BSC the materials

12  underlying Dr. Jang's expert reports.   (Minnear Decl. ¶ 25, Ex. R.)   While

13  Defendants have not provided their expert report materials, in typically one-sided

14  fashion they indicated that they intended to leave open the deposition of Dr. Jang's

15  expert, Michael Lee, while they considered any materials related to his report.

16  (Minnear Decl. ¶ 26.)

17          **G.    Depositions of Dr. Jang's experts**

18      During the deposition of Dr. Jang's expert, Dr. Chronos, counsel for BSC

19  questioned Dr. Chronos regarding the Gregorich Affidavits and the analysis

20  contained in them, particularly the finite element analysis of the design and

21  structure of the Express Stents.  (*See* Deposition of Nicolas Chronos, January 10,

22  2014 ("Chronos Dep."), pp. 47-8; 88; 91-93; and 99, Minnear Decl. ¶ 10, Ex. G.)

23  In fact, during Dr. Chronos' deposition, BSC's counsel continued his questioning

24  despite Dr. Chronos noting that Dr. Jang had been refused access to Mr.

25  Gregorich:

26  _____

27  [5] BSC has identified no surprise argument from Dr. Jang which brought this evidence into issue only as of expert discovery.

28                                          -14-

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH          CASE NO. 05-00426-VAP (MRWx)**

1   Q      And when you say, "Is it as much as the Macro element, no,"

2          so my question is:  Have you performed any measurements or

3          analysis to determine the relative contribution of the Micro

4          element versus the Macro element?

5      . . .

6   MR. NILSSON:  That's the question I'm currently asking.

7   THE WITNESS:  If you're asking that question, no.  But I relied on

8          Mr. Lee's report and also, by the way, reports that were your

9          own from Gregorovich [sic] and others who've looked at this

10         whole area back in their days as expert witnesses for Boston

11         Scientific against Medinol discussing this exact point.

12  MR. NILSSON:  Yes.

13  THE WITNESS:  And their exact statement -- and my understanding

14         is Gregorovich is not available to us in this case because he's

15         an employee of Boston Scientific.  But I read and I was

16         provided with his whole definition in the Medinol case where

17         Boston Scientific was suing Medinol, right, and my

18         understanding is even in that, in his analysis, in the analysis by

19         Mike Lee, and even in your own expert witness, Dr. Moore,

20         there is a discussion of the engineering aspect.

21             So I'm here as a clinical expert.  We can continue and if

22         you want me to go more into this, I'd like to see those other

23         reports because I can, you know, then refresh my memory.

24  (Chronos Dep., pp. 87 – 89, Minnear Decl. Ex. G.)

25      **H.      Dr. Jang's efforts to meet-and-confer regarding the**

26      **Gregorich materials and Moore Report**

27  Prior to filing this motion, the parties' counsel met and conferred in a good

28

-15-

faith attempt to resolve the current dispute.   Dr. Jang's counsel wrote to Defendants' counsel on January 17, 2014 to request a meet-and-confer meeting about a "motion to strike and/or Daubert motion Dr. Jang may need to file regarding Dr. Moore's report in light of his reliance on Mr. Gregorich and how such a motion or motions would affect BSC's planned summary judgment motions," among other topics.  That conference took place on January 21, 2014, but the parties were unable to resolve their differences, thus necessitating this motion. (Minnear Decl. ¶¶ 27-28, Ex. S.)

On January 21, 2014, nearly three and one-half months after Defendants' counsel first misrepresented Mr. Gregorich's lack of knowledge of  the Express Stents and provided Dr. Moore with the Gregorich Affidavits, Defendants for the first time acknowledged without explanation that Mr. Gregorich has knowledge of the Express Stents and offered to make him available for deposition on that limited issue on January 31, 2014 in Minneapolis.  (Minnear Decl. ¶ 29, Ex. T.)

## III.     ARGUMENT AND CITATION OF AUTHORITIES

### A.     The Ninth Circuit and Other Federal Courts Uphold Sanctions Excluding Evidence Where A Party Has Attempted to Use Information It Failed to Produce In Discovery As BSC Did Here.

Federal Rules of Civil Procedure 37 and 26 prohibit a party from using materials or information at trial that it failed to disclose in discovery.   Rule 26(a)(1)(A) requires parties to submit initial disclosures, including:

(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along

-16-

with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy--or a description by category and location--of all documents, electrically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed. R. Civ. Proc. 26(a)(1)(A).

"Federal Rule of Civil Procedure 26(a)(2)(B) requires the parties to disclose the identity of each expert witness 'accompanied by a written report prepared and signed by the witness.'" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Id.*; *see also Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (same).

"Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures [and discovery responses] 'in a timely manner' when the prior response is 'incomplete or incorrect.' *Hoffman*, 541 F.3d at 1179. Rule 37(c)(1) provides that a party failing to provide information required by Rule 26(a) or (e) 'is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (*citing Yeti*, 259 F.3d at 1106. "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107.

In blatant violation of  Rule 26(a)(1)(A), BSC knowingly failed to identify Mr. Gregorich or his work product in its initial disclosures and in fact repeatedly and expressly denied their importance and relevance throughout fact discovery.

-17-

1    Mr. Gregorich's materials and involvement were only disclosed as being

2    meaningful in the Moore Report of December 20, 2013, after fact discovery had

3    closed.   Accordingly, pursuant to Rule 37, Dr. Moore's and Mr. Gregorich's

4    testimony and materials should be excluded from evidence and other use at trial.

5         In *Yeti*, The Ninth Circuit upheld the district court's exclusion of an expert's

6    testimony because the sanctioned party had failed to disclose his expert report

7    during the relevant disclosure period.   Although the sanction effectively precluded

8    the defendant from contesting plaintiff's damages evidence, the Ninth Circuit held

9    the sanction was appropriate. The Court ruled that the case was distinguishable

10   from those in which a district court is required to identify "willfulness, fault or bad

11   faith" before dismissing a case as a discovery sanction because the evidentiary

12   exclusion, "although onerous, was less than a dismissal." *Id*. at 1106.   The *Yeti*

13   Court noted that the district court is given wide latitude to issue sanctions under

14   Rule 37(c)(1) because the 1993 amendments to the Rule broadened the

15   sanctioning power, stating:

16        The Advisory Committee Notes describe it as a 'self-executing,'

17        'automatic' sanction to 'provide a strong inducement for disclosure of

18        material . . . .'  Courts have upheld the use of the sanction even when

19        a litigant's entire cause of action or defense has been precluded.

20        Thus, even though [defendant] never violated an explicit court order

21        to produce [defendant's expert] report and even absent a showing in

22        the record of bad faith or willfulness, exclusion is an appropriate

23        remedy for failing to fulfill the required disclosure requirements of

24        Rule 26(a).

25   *Id.,* 259 F.3d at 1106 (citations omitted).   "In determining whether expert

26   testimony should be excluded, 'the burden is on the party facing the sanction,' in

27   this case, Defendants, 'to demonstrate that the failure to comply with Rule 26(a) is

28

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**          **CASE NO. 05-00426-VAP (MRWx)**

1  substantially justified or harmless.'" *Robinson v. HD Supply, Inc*., 2013 U.S. Dist.

2  LEXIS 155196, 4-6 (E.D. Cal. Oct. 28, 2013) (*citing Torres v. City of L.A.*, 548

3  F.3d 1197, 1213 (9th Cir. (C.D. Cal.) 2008 (*citing Yeti*, 259 F.3d at 1107)).

4       In *Hoffman v. Construction Protective Services*, 541 F.3d 1175 (9th Cir.

5  2008), the Ninth Circuit upheld the District Court's exclusion of undisclosed

6  material because the failure to disclose was not harmless, holding that the

7  disruption of the court's and the parties' schedules that a requested reset trial date

8  would cause constituted impermissible harm. *See id*. at 1179-1180. The Ninth

9  Circuit ruled that exclusion of undisclosed evidence under Rule 37 is appropriate

10  unless the failure to disclose was substantially justified or harmless. *See id*. at

11  1179. The Ninth Circuit held:

12       Later disclosure of damages would have most likely required the

13       court to create a new briefing schedule and perhaps re-open

14       discovery, rather than simply set a trial date. Such modifications to

15       the court's and the parties' schedules supports a finding that the

16       failure to disclose was not harmless. It was eminently reasonable for

17       the court to require full disclosure of damages for the entire case.

18  *Id*. The *Hoffman* Court also rejected the argument that the district court needed to

19  make a finding of willfulness or bad faith to exclude the damages evidence. *See*

20  *id*. The court held: "To the contrary, the portion of Rule 37 relied on by the

21  district court has been described as a self-executing, automatic sanction to provide

22  a strong inducement for disclosure of material. The implementation of the sanction

23  is appropriate even when a litigant's entire cause of action . . . [will be]

24  precluded." *Id*. (*citing Yeti*, 259 F.3d at 1106).

25       In upholding the exclusion of noncompliant expert reports, the Federal

26  Circuit in *Tokai Corp. v. Easton Enters*., 632 F.3d 1358 (Fed. Cir. 2011) held:

27       Conclusory expert reports, eleventh hour disclosures, and attempts to

28       -19-

proffer expert testimony without compliance with Rule 26 violate both the rules and principles of discovery, and the obligations lawyers have to the court. Exclusion and forfeiture are appropriate consequences to avoid repeated occurrences of such manipulation of the litigation process.

*Id.* at 1366 (*citing Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008). The *Tokai* Court held that plaintiff's failure to submit the required expert reports prejudiced defendant by preventing it from deposing plaintiff's experts on the subject matter of their expert testimony and affirmed the district court's exclusion of the experts' declarations. *Id.*

California federal district courts regularly impose the sanctions Plaintiffs seek in situations like this one. In *Friedman v. Medjet Assistance, LLC*, 2010 U.S. Dist. LEXIS 145223 (C.D. Cal. Nov. 8, 2010) (Morrow, J.), the Central District excluded expert testimony where plaintiff's expert added a new expert opinion – or arguably a new basis for a previously disclosed opinion – after the disclosure deadlines. *See id.* at *14-*19. The *Friedman* Court held that regardless of whether the opinion was entirely new or a new basis for a prior opinion, plaintiff's expert's failure to timely disclose the required information pursuant to Rule 26(a) required it to be excluded under Rule 37(c)(1). *See id.* at *14-*21. The court stated: "Federal courts apply this rule strictly and require exclusion of the undisclosed evidence absent harmless error or substantial justification." *Id.* at *16 (*citing Yeti*, 259 F.3d at 1106). The *Friedman* Court noted that if the plaintiff had given defendant timely notice of the expert's intention to testify on a new condition, the defendant may have chosen to change its strategy regarding its own experts' analysis. *See id.* at *20-*21, n.34. Similarly here, if Defendants had produced the Gregorich Affidavits and his work materials – and permitted Plaintiff to depose Mr. Gregorich during fact discovery as requested – Dr. Jang

-20-

would have been able to adapt his strategy to address Defendants' arguments before Dr. Moore submitted his rebuttal report.

In *Plumley v. Mockett*, 836 F. Supp. 2d 1053 (C.D. Cal. 2010) (King, J.), a patent infringement case, the Central District likewise excluded an expert's declaration when it was not timely disclosed as required by Rule 26(a) and (e). Defendants characterized their expert's new declaration as supplemental and argued that made it timely.   The *Plumley* Court stated that supplementary disclosures do not permit a party to introduce new opinions after the disclosure deadline under the guise of a "supplement."   *Id*. at 1062.   The Central District held:

> Although Rule 26(e) obliges a party to 'supplement or correct' its disclosures upon information later acquired, this *'does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset)*. To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports.

*Id*. (Emphasis supplied). The court held:  "Excluding expert evidence as a sanction for failure to disclose expert witnesses in a timely fashion is automatic and mandatory unless the party can show the violation is either justified or harmless." *Id*. at 1064 (*quoting Carson Harbor Village, Ltd. v. Unocal Corp*., 2003 U.S. Dist. LEXIS 14438 at *7 (C.D. Cal. Aug. 8, 2003)).   The defendants failed to demonstrate substantial justification or harmlessness and consequently the court excluded the expert report from evidence despite the fact the new opinion was integral to defendants' patent unenforceability argument. *See id*. at 1064-1065.

Similarly, the Northern District of California recently excluded evidence in a patent infringement case under circumstances similar to those at bar in *Malico,*

-21-

*Inc. v. Cooler Master USA, Inc*., 2013 U.S. Dist. LEXIS 118119 (N.D. Cal. Aug. 20, 2013). In *Malico*, the defendants moved to strike certain photographs the plaintiff introduced for the first time in support of its infringement summary judgment motion. *See id*. at *21. The photographs purporting to be of an accused device were responsive to defendants' written discovery requests. *See id*. At oral argument, the plaintiff contended it did not need to produce the photographs during discovery because they were recently created. *See id*. at *22. The *Malico* Court held: "a party's own tardiness in creating a key piece of evidence on which it intends to rely in support of a dispositive motion does not excuse its failure to satisfy its disclosure obligations. If [plaintiff] elected to rely on photographs of an accused product in support of its motion, it should have taken and produced those images during discovery." *Id*. at *22-*23. The plaintiff also contended it had brought the pictured product to a number of litigation events at which defendants were present, thereby "informally" producing it, but the court held these did "not operate as an official and valid production." *Id*. at *24. The *Malico* Court noted that plaintiff had "conceded that it was in possession of the pictured device long before fact discovery closed. [Plaintiff's] discovery failure deprived defendants of an opportunity to have their technical expert inspect the device or to investigate its provenance and authenticity." *Id*. at *25. The court excluded the images pursuant to Rule 37(c)(1) because they were not timely and properly disclosed. *See id*.

In like fashion, the Northern District also excluded untimely disclosed evidence in *Vieste, LLC v. Hill Redwood Dev., LTD*., 2011 U.S. Dist. LEXIS 136168, 13-18 (N.D. Cal. Nov. 28, 2011). In *Vieste*, the movants sought to exclude two of the opposing party's officers' declarations submitted as evidence of damages pursuant to Rules 26(a) and (e) and Rule 37(c)(1) when those witnesses had not been disclosed in initial disclosures or any supplement thereto as witnesses with information on damages. *See id*. at *14-*15. The non-movants

-22-

conceded they had not disclosed one witness in their initial disclosures, but argued his identity had been made known during the discovery process. *See id*. at *15. In fact, he was deposed after another of non-movant's 30(b)(6) witnesses had identified him, but he was identified "long after the close of fact discovery." *Id*. Although they had been able to question the witness about the damages issue, the *Vieste* Court held "that [non-movant's] failure to identify [the witness] in their initial disclosures and the supplements thereto is not substantially justified." *Id*. at *16. The court excluded that witness' declaration under Rule 37(c)(1). *See id*.

The second witness in *Vieste* was identified in initial disclosures, but the disclosure was inaccurate in many respects and did not state he would offer testimony on damages or accounting. *See id*. at *17. The non-movants argued that because the second witness was the corporate CFO, it was consistent with his job to have him authenticate and describe the contents of financial records. *See id*. The movants asserted they had deposed the witness on the topics for which he was disclosed rather than damages or accounting record evidence because they did not know he was going to offer such testimony. *See id*. The *Vieste* Court held that non-movants' failure to supplement their initial disclosures regarding the second witness was not substantially justified and excluded that witness' declaration under Rule 37(c)(1). *See id*. at *18.

**B.    This Court should exclude Dr. Moore's and Mr. Gregorich's testimony and similarly exclude Mr. Gregorich's measurements and affidavits on which the witnesses rely from use at trial or in evidence.**

In the instant case, Defendants failed to disclose the Gregorich Affidavits and Mr. Gregorich's other work materials (except for one notebook) in their Rule 26(a) initial disclosures, in their responses to numerous document requests and interrogatories, or in Rule 26(e) supplemental disclosures, and refused to produce

-23-

him as a witness.  There is no question that Defendants repeatedly denied that Mr. Gregorich had any knowledge of or ever worked on the Express Stents and even invoked the Court's ruling narrowing the scope of discovery in denying his deposition to Plaintiff – while simultaneously providing Mr. Gregorich's work to their expert witness, Dr. Moore, with the intent that he rely on such work.  (*See* Minnear Decl., Ex. F (Moore Dep. p. 166)); Statement of Facts, *supra*, at 8-11.)  Thus, Defendants successfully "sandbagged" Dr. Jang in exactly the way the *Plumley* Court held warranted exclusion of an expert's report. (*See* Minnear Decl. ¶ 13, Ex. I.)  These are exactly the kinds of circumstances that the Ninth Circuit and Northern District held to justify the exclusion of improperly disclosed material.  Under the foregoing authority, this Court should exclude Dr. Moore's and Mr. Gregorich's testimony, and the Gregorich Affidavits on which Dr. Moore relies, from use at trial or in evidence.

As in the cases discussed above, there is no question that Defendants' failures to disclose have materially prejudiced Plaintiff.    Both fact and expert discovery have closed, so Defendants through their deception have precluded Plaintiff from learning the basis of Mr. Gregorich's affidavits and thus of Dr. Moore's expert opinion.  There cannot be even an allegation by Defendants that their wrongful conduct was not willful or in bad faith – clearly it was both of those things.

Neither is Defendants' belated attempt, first made on January 21, 2014, to offer Mr. Gregorich for deposition on January 31, 2014, sufficient to cure the prejudice Defendants have inflicted on Dr. Jang.  Plaintiff has been deprived of the use of this deposition and information for over eight years, since the very inception of the case, throughout various motions, fact discovery, expert discovery and in all of his efforts to evaluate, formulate and implement his litigation and discovery strategies.  (Minnear Decl. ¶¶ 29-30.)

-24-

This case perfectly typifies the circumstances justifying the preclusion mandated by Rule 37, and the Court should make a finding that Defendants' late disclosures were willful, intentional and in bad faith, consistent with the fact that Defendants' counsel who was preparing Dr. Moore for his expert report was simultaneously repeatedly denying to Plaintiff's counsel Mr. Gregorich's involvement with the Express Stents and delivering the Gregorich Affidavits and later, his stent measurements to Dr. Moore.

## IV.   **CONCLUSION**

WHEREFORE, Plaintiff respectfully prays the Court exclude (1) the testimony of Dr. Moore that relied upon the Gregorich Affidavits and his other work, (2) the testimony of Mr. Gregorich, and (3) any information provided by Mr. Gregorich on which Dr. Moore relies, from use at trial and admission into evidence, and grant any other relief the Court deems appropriate.


Dated:  January 24, 2014          KASOWITZ, BENSON, TORRES & FRIEDMAN LLP


                                  By: */s/ Jonathan K. Waldrop*
                                       N.E.B. MINNEAR
                                       JED I. BERGMAN
                                       JEFFREY J. TONEY
                                       JONATHAN K. WALDROP
                                       UTTAM G. DUBAL

                                       Attorneys for
                                       Plaintiff G. David Jang, M.D.

**PLAINTIFF'S MOTION TO EXCLUDE**
**TESTIMONY OF MOORE AND GREGORICH**          **CASE NO. 05-00426-VAP (MRWx)**