**ARNOLD & PORTER LLP**
Amie L. Medley (CA SBN 266586)
Amie.Medley@aporter.com
Brian Martinez (CA SBN: 274210)
Brian.Martinez@aporter.com
777 South Figueroa Street
Los Angeles, California  90017-5844
Tel:  (213) 243-4000;  Fax: (213) 243-4199

Matthew Wolf (*pro hac vice*)
Matthew.Wolf@aporter.com
Edward Han (*pro hac vice*)
Ed.Han@aporter.com
John Nilsson (*pro hac vice*)
John.Nilsson@aporter.com
Sara P. Zogg (*pro hac vice*)
Sara.Zogg@aporter.com
555 Twelfth Street NW
Washington, DC  20004-1206
Tel:  (202) 942-5000; Fax:  (202) 942-5999

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| G. DAVID JANG, M.D., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation, <br><br> Defendants. | Case No.  EDCV 05-00426-VAP-MRW <br><br> **DEFENDANTS' MOTION IN LIMINE NO. 1** <br><br><br> **Date:  April 21, 2014** <br> **Time:  2:00 pm** <br> **Dept.:  Courtroom 2** <br> **Judge:  Hon. Virginia A. Phillips** |

Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc., (formerly Scimed Life Systems, Inc.) (collectively, "BSC") respectfully submit this motion *in limine* pursuant to Federal Rules of Evidence 402 and 403 to preclude plaintiff G. David Jang, M.D. ("Dr. Jang") from referencing the doctrine of equivalents at trial.

## I.      PRELIMINARY STATEMENT

From the beginning of this litigation, throughout the discovery process, and even now as the parties prepare for trial, Dr. Jang has failed to disclose any facts or analysis supporting the contention that, but for the Assignment Agreement executed by the parties, the Express stent would infringe the asserted claims of United States Patent No. 5,954,743 ("the '743 patent") and United States Patent No. 5,922,021 ("the '021 patent") under the doctrine of equivalents.

When asked to identify his theory of infringement in written discovery, Dr. Jang merely stated that each element of the asserted claims "is present literally or under the doctrine of equivalents."  Dkt. No. 495 at 26.  He never stated *how* any specific element of the claims is supposedly met by Express under the doctrine of equivalents.  Nor did Dr. Jang's experts supply the missing basis for his assertion of infringement under the doctrine of equivalents in their reports.  Dr. Nicolas A.F. Chronos ("Dr. Chronos") merely repeats the boilerplate assertion, after each of his literal infringement opinions, that he also believes "that the accused stents meet this claim limitation under the doctrine of equivalents because any differences between this claim element and the Express stent would be insubstantial."  Ex. 1[1] at ¶¶ 78, 87, 97, 101, 104, 108, 113, 116, 119, 123, 128, 131, 142, 152, 156, and 160.  As described below, Federal Circuit precedent makes plain that this kind of cursory invocation of the doctrine of equivalents is insufficient.   Dr. Jang's other expert,

---

[1] All exhibits are attached to the Declaration of Amie L. Medley filed concurrently with Defendants' Motions *in limine* Nos. 1 and 2.

Michael Lee ("Mr. Lee"), never even mentions the doctrine of equivalents at all (let alone explains how the elements of the asserted claims are supposedly met under that doctrine). Because Dr. Jang never set forth his theory of infringement under the doctrine of equivalents in fact discovery or in his experts' reports, he should be precluded from attempting to do so at trial.

Moreover, even if Dr. Jang had properly disclosed his doctrine of equivalents theory and offered evidence and analysis to support it, he could not rely on the doctrine of equivalents to establish that the Express stents were covered products (*i.e.*, that they would have infringed the asserted patents but for the Assignment Agreement) because the United State Patent and Trademark Office ("USPTO") has invalidated the asserted patent claims as anticipated by several prior art references. Thus, if Express infringes the asserted claims under the doctrine of equivalents so too does the prior art. Federal Circuit case law makes plain, however, that the doctrine of equivalents may not extend the scope of the claims to "ensnare" the prior art. For this reason also Dr. Jang's untimely and unexplained theory of infringement under the doctrine of equivalents should be excluded.

## II.   ARGUMENT

### A.   Because Dr. Jang Failed To Disclose His Doctrine of Equivalents Theory,  It Should Be Excluded At Trial

In order to establish infringement under the doctrine of equivalents, a plaintiff must either: a) show that the accused device "performs substantially the same function in substantially the same way with substantially the same result as each claim limitation" or b) establish that only "insubstantial differences" between the elements of the asserted patent claims and the elements of the accused product exist. *AquaTex Indus., Inc.v. Techniche Solutions,* 479 F.3d 1320, 1326 (Fed. Cir. 2007); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 (1997).

Because Dr. Jang never set forth either variation of the equivalents analysis in his written discovery responses, he should be precluded from doing so at trial. *See*,

*e.g.*, *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, No. 12-cv-0189-WJM-KMT, 2014 WL 485876 at *6 (D. Colo. Feb. 6, 2014) ("[T]he court finds that Plaintiff waived its right to raise the doctrine of equivalents by failing to timely disclose it as an infringement theory."); *Spellbound Dev. Group, Inc. v. Pacific Handy Cutter*, No. SACV 09-00951 DOC (ANx), 2011 WL 5554312 at *6 (C.D. Cal. Nov. 14, 2011) (refusing to allow plaintiff to amend pleadings after close of discovery to add new infringement theory).  *See also Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1278 (Fed. Cir. 2012) ("Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes").  As the United States District Court for the Northern District of California has advised, a "boilerplate" reference to the doctrine of equivalents in a plaintiff's written discovery responses is not enough: "Boilerplate is not enough.  By failing to give [defendant] adequate notice of these theories during fact discovery, [plaintiff] severely prejudiced defendant's ability to refute any DOE theories."  *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, Case No. C11-5973 PSG, 2013 WL 4537838, *1 (N.D. Cal. August 22, 2013).

Moreover, even if Dr. Jang had provided any of the requisite detail in his interrogatory response, he still would be unable to point to the kind of expert analysis required to prove infringement under the doctrine of equivalents.  As the Federal Circuit has cautioned, when relying on the doctrine of equivalents, a party must "provide *particularized testimony* and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test… *[s]uch evidence must be presented on a limitation-by-limitation basis*."  *Texas Instrs. Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *Aquatex*, 479 F.3d at 1328.  Moreover, the patentee cannot rely on attorney argument, opponent admissions or lay testimony to provide this particularized testimony; rather, an expert witness must provide it.

- 3 -

*Aquatex*, 479 F.3d at 1329 ("the evidence of equivalents must be from the perspective of someone skilled in the art, for example 'through testimony of experts or others versed in the technology…'").

And for an expert to provide such "particularized testimony" on infringement under the doctrine of equivalents at trial, he or she must set it forth in his or her expert report on infringement.  The Federal Circuit has upheld the exclusion of expert testimony at trial because it "fail[ed] to see how [the expert's] statements relating to literal infringement of Amgen's process claims… are particularized testimony of equivalents… and Amgen has not pointed to any arguments at trial linking the two."  *Amgen Inc. v. F. Hoffman-LaRoche Ltd.*, 580 F.3d 1340, 1383 (Fed. Cir. 2009).  The report at issue also "lacked the limitation-by-limitation analysis required by our case law" and so was properly excluded.  *Id.*  Dr. Jang should similarly be limited at trial to the infringement analysis included in his expert reports.  *George M. Martin Co. v. Alliance Mach. Sys. Intern., LLC*, 560 F. Supp. 2d 893, 902 (N.D. Cal. 2008) (stating with regard to plaintiffs' doctrine of equivalents theory of infringement that "[a]t trial, plaintiffs' infringement argument will be limited to the four corners of the expert reports that they have provided.").

Here, neither of Dr. Jang's experts has provided anything remotely like the sort of detailed analysis of infringement under the doctrine of equivalents that would support such testimony at trial.  As noted above, Dr. Chronos merely invokes the doctrine of equivalents generally without ever explaining how and why Express meets any specific claim limitation under that theory.  The Federal Circuit has stated that merely opining that the accused product is "equivalent" to the invention is not enough.  *DePuy Spine, Inc. v. Medronic Sofamor Danel, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2009) ("a doctrine of equivalents analysis [requires] that equivalence be

- 4 -

1    assessed on a limitation-by-limitation basis, rather than from the perspective of the

2    invention as a whole." ). [2]

3            While Mr. Lee claims that "each of the Express stents incorporates the

4    functional equivalent of features, namely flexibility, trackability, and conformability

5    that are innovative purpose [sic] of the recited claims[,]" (Ex. 2 at ¶¶ 222, 227), this

6    assertion figures in his *literal infringement* analysis, not in any analysis of

7    infringement under the doctrine of equivalents.  *See Lear Siegler, Inc. v. Sealy*

8    *Mattress Co. of Michigan, Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("The evidence

9    and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's

10   case of literal infringement.").  As noted, Mr. Lee never even mentions the doctrine

11   of equivalents in his infringement report.

12           Moreover, even if Mr. Lee's reference to "functional equivalent" were a kind

13   of shorthand for the doctrine, his reference to "features … that are innovative purpose

14   [sic] of the recited claims" would still be insufficient.  Not one of these "features" is a

15   claim limitation, and not one figures in the Court's constructions.  Mr. Lee never

16   analyzes how Express meets any specific limitation under the doctrine of equivalents.

17   *DePuy Spine*, 469 F.3d at 1017 ("[A] doctrine of equivalents analysis [requires] that

18   equivalence be assessed on a limitation-by-limitation basis").  Vague and general

19   statements about the similarities between the asserted patent claims and the Express

20   stent are not adequate to support a claim of infringement by doctrine of equivalents.

21

22

23   _____

     [2] Aside from its lack of probative value, Dr. Chronos' opinions on the doctrine of

24   equivalents are legal conclusions and, as such, constitute improper expert testimony.

     *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 ,1356 (Fed. Cir. 2013)

25   ("The court… must exclude expert testimony that… invades the province of the jury

     to find facts and that of the court to make ultimate legal conclusions.").  *S.E.C. v.*

26   *Capital Consultants, LLC*, 397 F.3d. 733, 749 (9th Cir. 2005) ("Experts may interpret

     and analyze factual evidence but may not testify about the law.") (citing *Crow Tribe*

27   *of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996)).

28

*Aquatex*, 479 F.3d at 1328 ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.").

It is possible that, in opposing this motion, Dr. Jang may take the position that Mr. Lee's "functional" analysis somehow demonstrates how the Express stents' Micro-elements are "equivalent" to "connecting strut columns" (despite the fact that Mr. Lee himself fails to articulate this theory in his report). Even if viewed this generously, however, Mr. Lee's analysis would still be deficient under applicable precedent. At best, Mr. Lee can be said to point to what he claims to be a "similarity" in function between the Express Micro-elements and what he calls "Dr. Jang's designs."[3] He never analyzes the differences between the Express Micro-elements *and the specific claim limitations*, nor does he explain why any purported differences are insubstantial (the first approved method of analyzing infringement under the doctrine of equivalents). And he never explains how and why the Micro-elements purportedly perform a similar function in a substantially similar way to achieve substantially the same result *as the specific claim limitations* (the second approved method of analyzing infringement under the doctrine of equivalents). An expert's "particularized testimony" on infringement under the doctrine of equivalents must contain these pieces of the analysis. *AquaTex*, 479 F.3d at 1328 (citing *Texas Instrs.*, 90 F.3d at 1567). And to offer such testimony, the expert must set it forth in his or

_____

[3] Moreover, Mr. Lee never explains the basis for his opinions on "Dr. Jang's designs," or even what "Dr. Jang's designs" are. Even in his deposition, referencing Figure 51 of his report as "a Jang-type stent design," Mr. Lee testified that "I don't recall exactly how I determined that design -- so I can continue to think about that, but …" and then confirmed that Figure 51 was not based on any particular figure in the Jang patent. He further testified that he had created "probably tens, twenties" of the "hypothetical Jang stent[s]." (Ex. 4, (Lee Tr.) at 88:14-89:19.) But, he never disclosed his methodology in creating the "Dr. Jang designs," his selection criteria for choosing one of the "tens, twenties" of hypothetical designs, or any other information in his report.

- 6 -

her report.  *Amgen*, 580 F.3d 1340, 1383.  Thus, any testimony from Mr. Lee on infringement under the doctrine of equivalents should also be excluded.

**B.     The Doctrine of Equivalents is Not Available Because the Patents Claims Have Been Invalidated**

Even if Dr. Jang had properly disclosed his doctrine of equivalents theory and provided the type of detailed, limitation-by-limitation analysis required to establish infringement under that theory, it would still be inapplicable because the USPTO has concluded that the asserted claims cover the prior art under the scope of this Court's constructions.   It thus goes without saying that expanding the claims' scope still further so as to embrace or "ensnare" even more of the prior art is improper.  N.D. Cal. Model patent Jury Instruction 3.4; *DePuy Spine*, 567 F.3d at 1322 (stating that a patentee may not assert "a scope of equivalency that would encompass, or 'ensnare,' the prior art."); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) ("[T]here can be no infringement if the scope of equivalency of what is literally claimed would encompass the prior art.")

## III.   CONCLUSION

For the reasons explained above, BSC respectfully requests that the Court preclude Dr. Jang from advancing, whether through his expert witnesses, counsel or otherwise, any theory of infringement under the doctrine of equivalents.

1

2      Dated:  March 24, 2014                    By: /s/ *Amie L. Medley*
                                                      Amie L. Medley (State Bar No. 266586)
3                                                     Amie.Medley@aporter.com
                                                      Brian Martinez (State Bar No. 274210)
4                                                     Brian.Martinez@aporter.com
                                                      ARNOLD & PORTER LLP
5                                                     777 South Figueroa Street
6                                                     Los Angeles, California 90017-5844
                                                      Telephone: 213.243.4000
7                                                     Facsimile: 213.243.4199
8

9                                                     Matthew Wolf (*pro hac vice*)
10                                                    Matthew.Wolf@aporter.com
                                                      Edward Han (*pro hac vice*)
11                                                    Ed.Han@aporter.com
                                                      John Nilsson (*pro hac vice*)
12                                                    John.Nilsson@aporter.com
                                                      Sara Zogg (*pro hac vice*)
13                                                    Sara.Zogg@aporter.com
14                                                    ARNOLD & PORTER LLP
                                                      555 Twelfth Street NW
15                                                    Washington, DC 20004-1206
16                                                    Telephone: 202.942.5000
                                                      Facsimile: 202.942.5999
17
18
19                                                    *Attorneys for Defendants*
                                                      *Boston Scientific Corporation and*
20                                                    *Boston Scientific Scimed, Inc. (formerly*
                                                      *Scimed Life Systems, Inc.)*
21

22

23

24

25

26

27

28

DEFENDANTS' MOTION IN LIMINE NO. 1