JEFFREY J. TONEY (*pro hac vice*)
jtoney@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1349 West Peachtree Street, N.W., Suite 1500
Atlanta, GA 30309
Tel: (404) 260-6080; Fax: (404) 260-6081

JED I. BERGMAN (*pro hac vice*)
jbergman@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700; Fax: (212) 506-1800

JONATHAN K. WALDROP (*pro hac vice*)
jwaldrop@kasowitz.com
DARCY L. JONES (*pro hac vice*)
djones@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170; Fax: (650) 453-5171

JAMES A. ODLUM (Bar No. 109766)
jodlum@mohlaw.com
MUNDELL, ODLUM & HAWS, LLP
650 E. Hospitality Lane, Suite 470
San Bernardino, CA 92408-3595
Tel: (909) 890-9500; Fax: (909) 890-9580

Attorneys for Plaintiff
G. David Jang, M.D.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| G. DAVID JANG, M.D., | CASE NO. ED CV 05-00426-VAP (MRWx) |
| Plaintiff, | **PLAINTIFF G. DAVID JANG, M.D.'S BENCH BRIEF PRECLUDING ARGUMENT AND EVIDENCE REGARDING DEFENDANTS' PURPORTED VALIDITY CHALLENGES** |
| v. | |
| BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation, | **Hon. Virginia A. Phillips** |
| Defendants. | **Date:  June 8, 2015** **Time:  2:30 p.m.** **Courtroom:  2** |

**PLAINTIFF'S BENCH BRIEF REGARDING
DEFENDANTS' VALIDITY CHALLENGES**

CASE NO. 05-00426-VAP (MRWx)

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND .................................................. 4

    A.   BSC's Original And Amended Answers Did Not Assert An Invalidity Defense Or Identify A Pre-Litigation Invalidity Claim. ............................................................................... 4

    B.   BSC's 2006 Discovery Responses Did Not Challenge Validity Or Identify A Pre-Litigation Invalidity Claim. ............... 4

    C.   BSC's 2006 Claim Construction Briefs Did Not Challenge Validity Or Identify A Pre-Litigation Invalidity Claim. ...... 6

    D.   When BSC Moved to Amend Its Answer In 2013, It Did Not Identify A Pre-Litigation Invalidity Challenge ................. 7

    E.   This Court's 2013 Leave To Amend Ruling Relied On BSC's Representations To Find For BSC On Good Cause And "Undue Delay" Issues. ...................................................... 8

    F.   When BSC Tried To Amend Its Discovery Responses In 2013, It Still Did Not Identify A Pre-Litigation Invalidity Claim. ............... 9

    G.   When BSC Moved For Summary Judgment On Invalidity Grounds In 2014, It Still Did Not Identify A Pre-Litigation Invalidity Claim. ................................................................ 10

    H.   This Court's Summary Judgment Ruling Found That BSC First Raised The Issue Of Invalidity In 2006. .................... 11

    I.   In March 2014, Only Weeks Before The Scheduled Trial, BSC Claimed For The First Time – Without Support – That It Had Challenged Validity In 2003 ............................................. 12

    J.   This Court Precluded BSC From Presenting Evidence At Trial Concerning The 2014 USPTO Reexamination Or The Subsequent Invalidation Of The Jang Patents' Claims. ......... 14

    K.   BSC Has Continued Its Efforts To Inject The Issue Of Invalidity Into The Upcoming Trial ...................................... 14

III.  ARGUMENT ..................................................................... 15

    A.   BSC Should Be Sanctioned Under Rule 37 For Its Failure To Disclose Its Purported Supporting Witness(es) and Documents And Any Such Evidence Should Be Excluded At Trial. ........ 15

    B.   BSC's New Invalidity Position Is Also Barred By Its Multiple Prior Judicial Admissions. ........................................... 19

1

## TABLE OF CONTENTS
(continued)

Page

C.    BSC's New Invalidity Position Is Also Barred By The
      Doctrine Of Judicial Estoppel..............................................21

D.    Evidence And Jury Instructions Regarding BSC's Purported
      Validity Challenges Are Not Probative And Would Only Serve
      To Confuse The Jury And Waste Time ...........................................24

IV.   CONCLUSION ...........................................................................25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*American Title Ins. Co. v. Lacelaw Corp.*,
5   861 F.2d 224 (9th Cir. 1988) ................................................................ 20, 21

6   *Amini Innovation Corp. v. Anthony California, Inc.*,
7   2006 U.S. Dist. LEXIS 100800 (C.D. Cal. Sept. 21, 2006) ............................ 18

8   *Gospel Missions of Am. v. City of Los Angeles*,
    328 F.3d 548 (9th Cir. 2003) ................................................................ 20
9

10  *Hoffman v. Constr. Protective Servs.*,
    541 F.3d 1175 (9th Cir. 2008) .............................................................. 17
11

12  *Jackson v. City of Inglewood*,
    2009 WL 699948 (C.D. Cal. Mar. 12, 2009) ............................................ 21
13

14  *Lear, Inc. v. Adkins*,
    395 US 653 (1969) ........................................................................... 3, 7
15

16  *Mackin v. City of Coeur D'Alene*,
    551 F.Supp.2d 1205 (D. Idaho 2008), *affirmed by* 347 F.App'x 293
17  (9th Cir. 2009) ............................................................................... 20

18  *McEuin v. Crown Equip. Corp.*,
    328 F.3d 1028 (9th Cir. 2003) .............................................................. 24
19

20  *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
    692 F.3d 983 (9th Cir. 2012) ............................................................. 21, 22
21

22  *Rite-Nail Packaging Corp. v. Berryfast, Inc.*,
    706 F.2d 933 (9th Cir. 1983) ................................................................ 12

23  *Sandisk Corp. v. Memorex Prods.*,
    415 F.3d 1278 (Fed. Cir. 2005) ............................................................. 22
24

25  *Scarff v. Intuit, Inc.*,
    318 Fed. App'x. 483 (9th Cir. 2008) ...................................................... 20
26

27  *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*,
    112 F.3d 1561 (Fed. Cir. 1997) ........................................................... 3, 12
28

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*United States v. Davis,*
    332 F.3d 1163 (9th Cir. 2003) ........................................................................... 20

*Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.,*
    692 F.3d 1272 (Fed. Cir. 2012) ................................................................... 18, 19

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
    259 F.3d 1101 (9th Cir. 2001) .................................................................... 17, 18

*Zhang v. Am. Gem Seafoods, Inc.,*
    339 F.3d 1020 (9th Cir. 2003) ........................................................................ 18

**Statutes**

35 U.S.C. § 282(b)(1)-(2) ...................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................................... 4

Fed. R. Civ. P. 26 ........................................................................................... *passim*

Fed. R. Civ. P. 37 ........................................................................................... *passim*

Fed. R. Evid. 403 ........................................................................................... *passim*

Rule 15 .................................................................................................... 3, 9, 23

Rule 16 .............................................................................................................. 3, 8

1    Plaintiff G. David Jang, M.D. ("Dr. Jang") respectfully submits this brief in

2    response to the Court's invitation, at the February 9, 2015 hearing on motions *in*

3    *limine*, to address whether defendants (collectively "BSC") may present evidence

4    at trial, or seek corresponding jury instructions, regarding the date BSC allegedly

5    first challenged the validity of the patents-in-suit (collectively, the "Jang Patents").

6    **I.    INTRODUCTION**

7    On at least three occasions, this Court has rejected BSC's efforts to inject its

8    self-procured 2014 invalidation of the Jang Patents into the case.  The Court

9    rejected BSC's attempt to amend its answer.  Dkt. 455 at 8-9.  It rejected invalidity

10   as a basis for summary judgment.  Dkt. 555 at 17.  And most recently, the Court

11   rejected BSC's effort to present evidence of invalidity at trial.  Dkt. 554 at 7.

12   Undeterred by these legal troubles, BSC now turns its creativity to the facts.

13   Throughout this case, through discovery, and until the eve of trial in March 2014,

14   BSC at all times asserted that it first challenged the Jang Patents' validity, even

15   contingently, in connection with the original claim-construction briefing in **2006**.

16   Now, however, BSC claims it will introduce evidence at trial showing that it told

17   Dr. Jang his asserted construction of the Jang Patents would render them invalid as

18   early as **2003**.  That purported 2003 date is not coincidental:  because BSC admits

19   that all of its royalty obligations accrued and were due (if at all) by no later than

20   **May 2005**, its claim of invalidity can only matter, under this Court's prior rulings

21   and governing law, if BSC challenged validity *before May 2005*.[1]  Hence the

22   newly manufactured claim of a purported validity challenge in 2003.  Perhaps

23   most egregiously, after ten years of litigation, BSC still has not identified the

24   _____

25   [1] BSC admits that it reached the $2.5 billion Net Sales benchmark, sufficient to
     trigger all payments due under the Assignment Agreement, by no later than the

26   Complaint's May 19, 2005 filing date.  (*See* Declaration of Jonathan K. Waldrop
     ("Waldrop Decl."), filed concurrently herewith, Ex. H, Resp. to RFA Nos. 1 & 2

27   (hereafter, citation to exhibits refer to exhibits of the Waldrop Declaration).)

28   PLAINTIFF'S BENCH BRIEF REGARDING        -1-    CASE NO. 05-00426-VAP (MRWx)
     DEFENDANTS' VALIDITY CHALLENGES

1  documents it claims support this argument and only recently identified a witness

2  during the February 2015 hearing on the motions *in limine*.  Ex. I at 8.

3       This Court should reject BSC's last-minute attempt to change its story,

4  manufacture new facts, and shoehorn them into its discredited legal theories.

5  Invalidity is irrelevant to the issues in this trial, and as shown below, BSC's latest

6  iteration of its invalidity theory is both legally and factually without merit.

7       *First*, because BSC never disclosed the documents and did not timely

8  disclose the witness purportedly supporting its position – and affirmatively

9  concealed their existence throughout discovery – it deprived Dr. Jang of the

10  opportunity to depose BSC's witness or to cross-examine him on the unidentified

11  documents.  If BSC is permitted to present argument and evidence of these alleged

12  pre-2006 validity challenges at trial, then BSC would be pursuing the very ambush

13  litigation tactics that Rules 26 and 37 were implemented to prevent.

14       *Second*, and apart from its discovery-rule violations, BSC cannot raise its

15  newly-minted invalidity argument at trial because that position is barred by its

16  own prior judicial admissions.  In its summary judgment and other briefing in this

17  Court, BSC stated explicitly that it had raised invalidity only "[s]ince 2006," and

18  that before that time, it had "*no reason to suspect*" that Dr. Jang's position on

19  infringement would raise invalidity concerns.[2]  Dkt. 431 at 1, 7; Dkt. 479 at 6-7

20  (internal quotations omitted).  Ninth Circuit law clearly holds that such statements

21  are binding judicial admissions, and BSC cannot now walk away from its own

22  admissions and claim it *did* have "reason to suspect" these validity issues existed

23  in 2003, let alone that it "warned Dr. Jang" of that fact.

24

25

26  [2] During the March 3, 2014 summary judgment hearing, in response to the Court's
    tentative ruling referring to the 2006 date it had itself asserted, BSC for the first

27  time claimed it had challenged validity in 2003.  Ex. J at 4-5.

28  **PLAINTIFF'S BENCH BRIEF REGARDING**     -2-     **CASE NO. 05-00426-VAP (MRWx)**
    **DEFENDANTS' VALIDITY CHALLENGES**

1        *Third*, even without those specific admissions, BSC is estopped from

2    presenting its new "2003 validity challenge" by the doctrine of judicial estoppel.

3    Until March 2014, BSC consistently asserted that it first raised validity in its 2006

4    claim construction briefing, and that it had no reason to suspect the issue even

5    existed until this litigation began. *See, e.g.*, Dkt. 61, pp. 2, 18-21; Dkt. 71, p. 4.;

6    Dkt. 414 at 6; Dkt. 431 at 1, 7; Dkt. 464 at 1, 24; Dkt. 479 at 6-7, 11. This Court

7    relied on BSC's position to find it had shown "good cause" to modify the

8    scheduling order in this case under Rule 16 (Dkt. 455 at 5), and that it had not

9    shown "undue delay" in seeking leave to amend under Rule 15 (*id.* at 5-6).

10   Accordingly, BSC is estopped from reversing course on the eve of trial and taking

11   the contrary position.

12       *Fourth*, BSC's evidence of a purported pre-2005 validity challenge should

13   be excluded because the probative value of any such evidence would be vastly

14   outweighed by confusion and unfair prejudice and because it would mislead the

15   jury and waste time. *See* Fed. R. Evid. 403.

16       Thus, as shown more fully below, there is no basis for allowing evidence or

17   argument to the jury about any pre-Complaint invalidity challenges. BSC should

18   be sanctioned for its longstanding failure to disclose the purported witness(es) and

19   documents upon which it professes to rely; it should be held to its binding

20   admissions; and it should be estopped introducing any such evidence of pre-2005

21   validity challenges at trial.[3]

22

23   ---

[3] Dr. Jang does not concede, and in fact disputes, that *any* of BSC's pre-2013
"validity challenges" qualified under the *Lear/Kohle* doctrine to terminate its
24   obligations to pay royalties. *See Lear, Inc. v. Adkins*, 395 US 653 (1969)
("*Lear*"); *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.* ("*Kohle*"), 112 F.3d
25   1561 (Fed. Cir. 1997). Dr. Jang likewise does not concede, and in fact disputes,
that BSC's steps to pursue the invalidation of the Jang Patents in 2013-14 were
26   legally sufficient under the facts of this case. But the Court need not reach those
issues to decide this issue, and Dr. Jang accordingly continues to reserve his
27   rights.

28

## II.   FACTUAL BACKGROUND

The litigation and discovery record in this case demonstrates conclusively that BSC's newly hatched "2003 validity challenge" is nothing more than a convenient fiction. As shown below, BSC never asserted invalidity as a defense, never disclosed facts or evidence concerning such a purported 2003 challenge, and in fact repeatedly -- and successfully -- pressed the position that it had no reason to suspect that validity was an issue until 2005-06.

### A.   BSC's Original And Amended Answers Did Not Assert An Invalidity Defense Or Identify A Pre-Litigation Invalidity Claim.

Dr. Jang's original and amended Complaints, filed on May 20, 2005, and March 10, 2006, respectively, asserted that BSC's Express stents were "Contingent Payment Products" under the Assignment Agreement. Dkt. 1 ¶¶ 17, 22; Dkt. 50 ¶¶ 18, 31. BSC's original and amended Answer each asserted eight affirmative defenses, as well as counterclaims alleging that the Express stents did not infringe the Jang Patents and were not Contingent Payment Products. Dkt. 8 at 5-17; Dkt. 55 at 7-21. But neither pleading asserted an invalidity defense or counterclaim, even in the alternative. *Id.*; *cf.* 35 U.S.C. § 282(b)(1)-(2) (noninfringement and invalidity are separate defenses); Fed. R. Civ. P. 8 (defenses may be pled in the alternative and/or inconsistently). Moreover, neither pleading even mentioned a prior discussion of invalidity between the parties. *See id.*

### B.   BSC's 2006 Discovery Responses Did Not Challenge Validity Or Identify A Pre-Litigation Invalidity Claim.

BSC's discovery responses in 2006 likewise did not challenge the Jang Patents' validity in any way, let alone suggest that BSC had previously warned Dr. Jang *in 2003* that his infringement position might invalidate the Jang Patents.

In August 2005, Dr. Jang asked BSC by interrogatory to state the basis for its position that the Express stent was not a "Contingent Payment Product." Ex.

A, Interrog. No. 6.  BSC's response was that "the accused products are not 'Contingent Payment Products' because the claims of [the Jang Patents] cannot be said fairly to cover the accused products, either literally or under the doctrine of equivalents."  Ex. B, Resp. to Interrog. No. 6.  There was no mention of invalidity.

Similarly, Dr. Jang's Request for Admission No. 7 asked BSC to "[a]dmit that claim 1 of the '021 patent is valid and enforceable." Ex. C, RFA No. 7.  BSC responded that "to the extent that claim 1 of the '021 patent is properly construed, Request For Admission No. 7 is ADMITTED." Ex. D, Resp. to RFA No. 7.

Further, Dr. Jang specifically pursued discovery as to *any documents or witnesses* that might support a BSC validity challenge.  In his Interrogatory No. 13, Dr. Jang asked BSC, "[i]f You contend that claim 1 of the '021 patent is invalid," to "state with particularity the specific factual and legal basis for your contention in this regard," including, critically, identifying "any entity or individual that you know or believe to have factual information relevant to the claimed invalidity of claim 1, together with a general statement of the subject matter of such entity's or person's knowledge," and "all documents supporting this claim of invalidity." Ex. E, Interrog. No. 13.

In its response, BSC did *not* state that it had previously warned Dr. Jang in 2003 that his constructions might lead to invalidity.  It did *not* identify any individuals who might have knowledge relevant to its purported invalidity claim, and it did *not* identify any supporting documents.  Instead, BSC simply responded (subject to its objections) that "*it does not contend claim 1 of the '021 patent is invalid* to the extent that claim 1 of the '021 patent is properly construed." *Id.* (emphasis added).[4]

---

[4] In response to a parallel document request, which stated that "[i]f You contend that claim 1 of the '021 patent is invalid, please produce all documents relevant to this assertion," BSC stated, subject to its objections, that it "does not contend claim 1 of the '021 patent is invalid to the extent that claim 1 of the '021 patent is

PLAINTIFF'S BENCH BRIEF REGARDING      -5-    CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES

C.   **BSC's 2006 Claim Construction Briefs Did Not Challenge
Validity Or Identify A Pre-Litigation Invalidity Claim.**

BSC's 2006 claim construction briefs likewise never referred to a prior
discussion of invalidity with Dr. Jang.  Dkt. 61, pp. 2, 18-21; Dkt. 71, p. 4.
Although BSC included a detailed discussion of its past dealings with Dr. Jang, it
never suggested that it had previously advised Dr. Jang, in or around 2003, that his
constructions would render the patents invalid.  *See* Dkt. 61 at 12-14.

Nor did BSC actually challenge the Jang Patents' validity.  Rather, BSC
argued *as a matter of interpretation* that Dr. Jang's proposed claim constructions
should be rejected because they could impact the patents' validity.  Dkt. 61 at 19
("the Federal Circuit has repeatedly emphasized that, where a claim term is
susceptible to multiple interpretations, it should be interpreted in such a way as to
sustain the claim's validity").  As BSC freely admitted, it had no incentive to
question the Jang Patents' validity; after all, BSC was still "asserting the patents in
multiple litigations, the importance of which greatly outweighs what is at stake for
Boston Scientific in its dispute with Dr. Jang."  Dkt. 71 at 1.

To the contrary:  BSC acknowledged that it had "a compelling interest" in
"avoiding an overbroad interpretation of the Jang patents that would threaten their
validity in the currently pending and possible future cases."  *Id.*  In fact, from 2003
through 2010 BSC was actively prosecuting an infringement case based on the
Jang Patents against its competitor, Cordis.  BSC was selling billions of dollars of
Express stents while enjoying the protections of the Jang Patents to exclude its
competitors from the market.  The *last* thing BSC wanted to do was challenge the
validity of the Jang Patents.

properly construed."  Ex. F, Resp. to RFP No. 169.

**PLAINTIFF'S BENCH BRIEF REGARDING        -6-     CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES**

D.   <u>When BSC Moved to Amend Its Answer In 2013, It Did Not
     Identify A Pre-Litigation Invalidity Challenge.</u>

The first time BSC moved to amend its Answer to assert invalidity defenses
was in late 2013 (Dkt. 414), after the Court's tentative claim-construction ruling
appeared to adopt the constructions proposed by Dr. Jang -- and after BSC had
settled the multi-billion-dollar lawsuit against Cordis in which it had successfully
asserted the Jang patents.  In its motion, BSC did not assert that it had contested
validity in 2003, or at any point prior to the commencement of this lawsuit.
Instead, BSC claimed that it had first raised the issue of validity "in its own [2006]
claim construction papers."  Dkt. 414 at 6 (*citing* Dkt. 61 at 2).  Indeed, BSC
admitted that it had *never* challenged the Jang Patents' validity prior to seeking the
*ex parte* reexamination.  Dkt. 414 at 6 ("As their owner, BSC *never sought to
construe* their claims so as to render them invalid.")

In opposing leave to amend, Dr. Jang put the timing of BSC's earliest
validity challenge squarely at issue by arguing that "BSC never contested the
validity of Dr. Jang's patents until well after it had sold billions of dollars worth of
Express stents from 2002 through the commencement of this litigation . . . –  not
until October 2013 when it filed a re-examination proceeding at the [PTO]."  Dkt.
425 at 9.  Dr. Jang argued explicitly that "the *Lear* doctrine does not prevent a
patentee from recovering royalties *until the date the licensee first challenges the
validity of the patent*." (Dkt. 425 at 6 (emphasis added) (citing *Go Medical
Industries Pty, LTD. v. Inmed Corp*., 471 F.3d 1264, 1272-1273 (Fed. Cir. 2006)).
Dr. Jang's position was thus clear:  BSC's attempted invalidation of the Jang
Patents *in 2013* was irrelevant to his claims for amounts due *in or before 2005*.

If BSC had actually informed Dr. Jang *in 2003* that his infringement
challenge to Express would render the Jang Patents invalid – as it now claims –
this was the time for BSC to say so.  But it did not.  Instead, BSC asserted on reply

1    that "**[s]ince the early stages of this litigation (in 2005-2006)**, BSC has warned

2    Dr. Jang that, if the asserted claims were construed as broadly as he sought, then

3    they would be invalid in view of prior art." Dkt. 431 at 7 (emphasis added); *see*

4    *also id.* at 1 ("[s]ince 2006, BSC has warned that under the claim constructions

5    Dr. Jang has advocated the asserted claims of the [Jang Patents] would be

6    invalid.") BSC went on to explain that while "it has always disagreed with Dr.

7    Jang as to whether any valid claims of his patents cover the Express product," it

8    was only "[n]ow that the Court has broadened its prior constructions," that BSC

9    believed the claims were invalid. Dkt. 431 at 7.

10   BSC thus conceded that its pre-2006 position rested solely on non-

11   infringement (about which it had "always disagreed"), but it did not claim to have

12   challenged the validity of the Jang Patents, even contingently, at any point before

13   2006. Moreover, despite being notified of Dr. Jang's position that the timing of

14   BSC's first validity challenge was dispositive, BSC never moved to add an

15   affirmative defense limiting its potential damages under the *Lear/Kohle* doctrine.

16   **E.**    **This Court's 2013 Leave To Amend Ruling Relied On BSC's**

17   **Representations To Find For BSC On Good Cause And "Undue**

18   **Delay" Issues.**

19   In ruling on BSC's Motion to Amend, the Court first addressed whether

20   BSC has met the "good cause" requirement to amend the operative scheduling

21   order under Rule 16. The Court held that "BSC has shown good cause to modify

22   the 2006 scheduling order," basing that conclusion explicitly on BSC's averments

23   as to its 2006 validity challenge:

24        "BSC has been diligent in pursuing its patent invalidity theory. BSC

25        noted in its first round of claim construction briefing **in 2006** that Dr.

26        Jang's proposed constructions could undermine the validity of the

27        patents. [Citation omitted.] **Before that point, BSC had no reason**

28

1      **to suspect that Dr. Jang would attempt to construe the patent**

2      **claims in a way that could, according to BSC, lead to the**

3      **invalidity of the patents."**

4  Dkt. 455 at 5 (emphasis added).[5]  The Court relied on the same factual finding in

5  holding that BSC had satisfied the "undue delay" prong of the Rule 15 test for

6  leave to amend.  *Id.* at 6.  Even after the Court denied the motion on futility

7  grounds (*id.* at 8-9), BSC never moved to reargue or clarify the record, including

8  the Court's finding that before 2006, BSC had "no reason to suspect" that

9  invalidity might be an issue.

10      F.     <u>**When BSC Tried To Amend Its Discovery Responses In 2013, It**</u>

11            <u>**Still Did Not Identify A Pre-Litigation Invalidity Claim.**</u>

12      On November 1, 2013, BSC attempted belatedly by letter to rectify its

13  failure to assert invalidity in response to Dr. Jang's written discovery.  *See* Ex. G.

14  Thus, whereas BSC's 2006 discovery responses had asserted that Express was not

15  a "Contingent Payment Product" solely because it was not covered by the Jang

16  Patents, its November 2013 letter also stated that "BSC's Express stent is not a

17  'Contingent Payment Product' because under Dr. Jang's claim constructions (Dkt.

18  354) adopted by the Court in its *Markman* Order (Dkt. 423), all of the asserted

19  claims of the [Jang Patents] are invalid . . . ."  Ex. G at 2-3.

20      Even at this late date, however, BSC did *not* contend that it had raised the

21  validity issue *prior to 2006*.  Thus, in supplementing its response to Dr. Jang's

22  Interrogatory 13 – which had asked BSC to identify, *inter alia*, "any entity or

23  individual that you know or believe to have factual information relevant to the

24  claimed invalidity of claim 1, together with a general statement of the subject

25  matter of such entity's or person's knowledge," and "all documents supporting

26
27  [5] The parties did not brief, and the Court did not address, the legal sufficiency of BSC's contingent validity challenge.

28

this claim of invalidity" (Ex. E, Interrog. No. 13) – BSC *still* did not identify persons or documents concerning a 2003 invalidity claim.  BSC simply stated that "under Dr. Jang's claim constructions (Dkt. 354) adopted by the Court in its *Markman* Order (Dkt. 423), claim 1 of the '021 patent is invalid." Ex. G at 4.[6]

In fact, at no point prior to the close of fact discovery in December 2013 did BSC even hint, in any way, that it would maintain at trial it had warned Dr. Jang about validity issues back in 2003.

### G.    When BSC Moved For Summary Judgment On Invalidity Grounds In 2014, It Still Did Not Identify A Pre-Litigation Invalidity Claim.

Even in January 2014, when BSC asserted invalidity as one of the purported grounds for summary judgment, it did not mention a pre-litigation invalidity challenge.  Indeed, BSC asserted only that it had resisted Dr. Jang's proposed claim constructions since he brought the lawsuit in 2005.  Dkt. 464 at 1, 24. BSC's Statement of Uncontroverted Facts and Conclusions of Law in support of its motion likewise failed to mention any validity challenge (even a contingent one) before the lawsuit was filed.  Dkt. 463-2.

In his opposition brief, Dr. Jang again highlighted the importance of *when* the first challenge to validity was made.  Dr. Jang argued that "BSC waited until long after all relevant licensed sales (and thus, long after the accrual of all royalties disputed in this action) to challenge the validity of the patents-in-suit." Dkt. 471 at 21.  By this point, BSC had already admitted that based on its own Net Sales, all royalties were due (if at all) by no later than May 20, 2005.  Ex. H, Resp. to RFA No. 1 & 2.

---

[6] Similarly, in supplementing its response to Dr. Jang's request for production of "all documents relevant to" BSC's assertion of invalidity, BSC stated only that it would produce copies of its *ex parte* PTO reexamination requests.  *Id.* at 2.  It made no mention of pre-2006 documents.

1    In responding to Dr. Jang's arguments, BSC did not assert that it had

2   challenged validity at *any* point before the Complaint was filed.  Instead, citing

3   *Rite-Nail Packaging Corp. v. Berryfast, Inc.*, 706 F.2d 933, 936 (9ᵗʰ Cir. 1983), for

4   the proposition that while a licensee needs to "clearly notify the licensor that the

5   licensee is challenging the patent's validity" (Dkt. 479 at 5), BSC simply argued

6   that "the Court has already found" that "BSC noted in its first round of claim

7   construction briefing in 2006 that Jang's proposed constructions could undermine

8   the validity of the patents."  Dkt. 479 at 6 (*citing* (Dkt. 455 at 5).  BSC also

9   embraced and quoted the Court's prior finding that "[b]efore that point [in 2006],

10  BSC *had no reason to suspect* that Jang would attempt to construe the patent

11  claims in a way that could, according to BSC, lead to the invalidity of the patents."

12  *Id*. at 6-7 (emphasis added).

13    Thus, BSC admitted it had needed to "clearly notify" Dr. Jang that it was

14  challenging the patents' validity, but did not claim to have done so at any point

15  before 2006.  To the contrary:  BSC acknowledged that "[a]s the owner of the

16  patents, <u>BSC had no interest in challenging their validity until Jang re-urged</u>

17  <u>his constructions during the most recent claim construction phase</u> [in 2013]."

18  Dkt. 479 at 7 (emphasis added).

19    **H.    <u>This Court's Summary Judgment Ruling Found That BSC First</u>**

20    **<u>Raised The Issue Of Invalidity In 2006.</u>**

21    In its Order denying BSC's summary judgment motion, the Court found it

22  was undisputed that "Dr. Jang notified BSC as early as April 2003 of his belief

23  that the Express Stents infringed on the Jang Patents."  Dkt. 555 at 6.  At the same

24  time, relying on BSC's representations and its own prior findings (which BSC had

25  adopted and quoted in its brief), the Court held:

26    As BSC points out, it first made clear to the Court that the Jang

27    Patents could be invalid as overbroad – as opposed to *noninfringing*,

28  PLAINTIFF'S BENCH BRIEF REGARDING    -11-    CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES

as it initially argued – in its 2006 opening claim construction brief. (Reply at 8 n.5)  Thus, pursuant to *Kohle*, BSC potentially could be liable for all payments owed from the inception of the Assignment Agreement **until it initially took the position that the Jang patents were invalid in 2006.**[7]

Dkt. 555 at 17 (italics in original; emphasis added) (*citing Rite-Nail*, 706 F.2d at 937).  Despite that explicit statement by the Court that BSC could face liability for all payments due before 2006 – and despite BSC's prior admission that all payments were due, if at all, by no later than May 2005 – BSC never moved for reconsideration or challenged the Court's findings.[8]

I.     **In March 2014, Only Weeks Before The Scheduled Trial, BSC Claimed For The First Time – Without Support – That It Had Challenged Validity In 2003.**

It was only in March 2014 – after nine years of litigation, after the Court's tentative ruling denying BSC's summary judgment motion– that BSC claimed, for the first time, to have raised a validity challenge with Dr. Jang back in 2003. After initially raising the issue during the summary judgment hearing, BSC claimed in its Memorandum of Contentions of Law and Fact, that after Dr. Jang had claimed Express was a Contingent Payment Product in April 2003, "BSC promptly and consistently informed Dr. Jang that Express did not infringe any claim of the '021 or '743 patents, *and that if the claims were interpreted so*

---

[7] The Court was not asked at this time to rule on the sufficiency of BSC's 2006 contingent validity challenge under *Kohle* or *Rite-Nail*.

[8] As stated in footnote 2, *supra*, BSC for the first time contested the 2006 date for its initial validity challenge during the summary judgment hearing in response to the Court's tentative ruling – despite the fact it had explicitly adopted that date in its own briefing. Ex. J at 4-5.

*broadly as to cover Express that they would be invalid*." Dkt. 491 at 11 (emphasis
added). **BSC cited no evidence at all to support this assertion**. *Id.*

BSC then contradicted that assertion in the very same filing: "The evidence
will show that it was not until 2006, during claim construction in this litigation,
that Dr. Jang first asserted proposed claim constructions for the asserted claims
that would render the claims invalid.  At that time, and consistently thereafter,
BSC notified Dr. Jang that his proposed constructions would invalidate the
asserted claims." *Id.* at 15.

The Court denied BSC's summary judgment motion on March 27, 2014.
Dkt. 504; amended on March 5, 2015 (Dkt. 555).  On April 1, 2014, BSC sought
leave to petition the Federal Circuit for leave to file an interlocutory appeal.  Dkt.
513.  Here too, BSC advanced its new argument that "[i]n 2003, when Dr. Jang
first made the claim that BSC's Express stent was a Contingent Payment Product
for purposes of the Assignment Agreement, BSC informed him that, if the claims
of [Jang Patents] were read broadly enough to cover Express, then they would be
invalid." Dkt. 513-1 at 1-2. **BSC again cited no evidence to support this
contention**.  In its reply brief, BSC stated in a footnote:

> Dr. Jang claims that there is not "a scintilla of evidentiary support"
> for BSC's assertion "that it warned Dr. Jang in 2003 that if the claims
> cover Express, they would be invalid." (Dkt. 516 at 4.) To the extent
> trial is necessary, BSC will present testimony and documents
> showing this to have been the case in 2003, and it will identify emails
> from Dr. Jang himself proving that he was aware of the invalidity
> issue in 2003.

Dkt. 526 at 6, fn. 6.  Of course, BSC's prior responses to written discovery had
declined to identify any such witnesses or documents.  And once again, BSC did
not deign to identify the "documents," or the witness whose "testimony," would

PLAINTIFF'S BENCH BRIEF REGARDING        -13-   CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES

1   purportedly support this *ipse dixit* assertion.  BSC asserted it would identify

2   "emails from Dr. Jang himself" supporting its position, but more than a year after

3   filing that brief, it has still failed to do so.

4       This Court granted the motion on April 18, 2014.  Dkt. 537.  The Federal

5   Circuit denied the petition on September 16, 2014.  Dkt. 542.

6       **J.**    **This Court Precluded BSC From Presenting Evidence At Trial**

7           **Concerning The 2014 USPTO Reexamination Or The**

8           **Subsequent Invalidation Of The Jang Patents' Claims.**

9       With trial rescheduled for June 2015, the parties presented overlapping

10  motions *in limine* concerning the issue of invalidity.  Dr. Jang's motion (Dkt. 501)

11  sought to exclude evidence or argument concerning the Jang Patents' invalidity.

12  By contrast, BSC's motion (Dkt. 499) sought to preclude Dr. Jang from presenting

13  evidence or argument concerning the Jang Patents' novelty.

14      The Court granted Dr. Jang's motion, and denied BSC's, holding that "the

15  USPTO's previous findings of invalidity several years after the payments under

16  the Assignment Agreement were due are of no moment in this litigation."  Dkt.

17  554 at 7.  The Court found that allowing such evidence "would needlessly confuse

18  the jury," and precluded BSC from submitting any evidence concerning the PTO's

19  2014 reevaluation of the Jang Patents or its subsequent finding of invalidity.  *Id.*

20      **K.**    **BSC Has Continued Its Efforts To Inject The Issue Of Invalidity**

21          **Into The Upcoming Trial.**

22      At the February 9, 2015 hearing on motions *in limine*, BSC asserted it

23  would need to present evidence to the jury regarding the date it allegedly

24  challenged the validity of the Jang Patents.[9]  Ex. I, pp. 11-12, 16-18.  BSC claimed

25  ─────────────────────────
26  [9] It was during hearing on the motions *in limine* – more than a year after fact
    discovery closed – that BSC first identified its longtime in-house counsel, Todd
27  Messal, as the witness who purportedly told Dr. Jang in 2003 that if the claims
    were read so broadly as to infringe, then they would be invalid.  Ex. I at 7-8.

28  PLAINTIFF'S BENCH BRIEF REGARDING    -14-    CASE NO. 05-00426-VAP (MRWx)
    DEFENDANTS' VALIDITY CHALLENGES

1    this was necessary to find the date of its "validity challenge." *Id.* at 16-18. On the

2    other hand, Dr. Jang asserted it was unnecessary to address the current invalidity

3    of the Jang Patents to the jury in any context (including a jury instruction),

4    because those issues were irrelevant on the record of this case and in light of the

5    Court's prior rulings. *Id.* at 12-16. Counsel for Dr. Jang suggested that the parties

6    provide further briefing as to whether this topic should be presented to the jury

7    and the Court indicated it would welcome such briefing. *Id.* at 15-16. The parties

8    met and conferred on May 29, 2015 and were unable to resolve this dispute.

9    **III.   ARGUMENT**

10       As shown below, BSC should be precluded from presenting evidence and/or

11   argument concerning its purported 2003 validity challenge. Rule 37 prohibits the

12   sort of "sandbagging" technique -- trotting out a new set of facts long after

13   discovery closed, on the eve of trial -- that BSC is attempting to employ. Further,

14   any such evidence or argument is barred by BSC's own prior admissions and the

15   doctrine of judicial estoppel, and should also be excluded under Fed. R. Evid. 403.

16       A.   **BSC Should Be Sanctioned Under Rule 37 For Its Failure To**

17            **Disclose Its Purported Supporting Witness(es) and Documents**

18            **And Any Such Evidence Should Be Excluded At Trial.**

19       BSC has never identified any documents supporting its assertion that it

20   challenged validity in 2003 (or at any time before the Complaint was filed) and

21   just recently disclosed its witness. Before February 2015, the closest it came to

22   stating such evidence exists was its assertion, in April 2014, that: "To the extent

23   trial is necessary, BSC will present testimony and documents showing this to have

24   been the case in 2003, and it will identify emails from Dr. Jang himself proving

25   that he was aware of the invalidity issue in 2003." Dkt. 526 at 6, fn. 6.

26       As described in Section II.B., *supra*, Dr. Jang sought information through

27   interrogatories, document requests and requests for admission regarding

28   PLAINTIFF'S BENCH BRIEF REGARDING      -15-   CASE NO. 05-00426-VAP (MRWx)
     DEFENDANTS' VALIDITY CHALLENGES

1  contentions of invalidity BSC asserted. *See* Exs. A - F.  In his Interrogatory

2  No. 13, Dr. Jang explicitly sought discovery as to *any documents or witnesses* that

3  might support a BSC validity challenge, asking "[i]f You contend that claim 1 of

4  the '021 patent is invalid," to "state with particularity the specific factual and legal

5  basis for your contention in this regard," including, critically, "any entity or

6  individual that you know or believe to have factual information relevant to the

7  claimed invalidity of claim 1, together with a general statement of the subject

8  matter of such entity's or person's knowledge," and "all documents supporting

9  this claim of invalidity." Ex. E, Interrog. No. 13.  BSC's response did *not* (1) state

10  that it had previously warned Dr. Jang in 2003 that his constructions might lead to

11  invalidity, (2) identify any individuals who might have knowledge relevant to its

12  purported invalidity claim, or (3) identify any documents reflecting such

13  knowledge.  Instead, BSC simply responded (subject to its objections) that "*it does*

14  *not contend claim 1 of the '021 patent is invalid* to the extent that claim 1 of the

15  '021 patent is properly construed." *Id.* (emphasis added); *see also* Ex. F, Resp. to

16  RFP No. 169.

17      Even when BSC belatedly attempted to correct its previous failure to assert

18  invalidity in response to Dr. Jang's discovery, it still did not contend that it had

19  raised its contingent validity challenge prior to 2006.  And it failed utterly to

20  identify any witnesses or documents that would support its purported 2003

21  validity challenge. Ex. G; *see also* Section II.F., *supra*.  BSC *never* asserted or

22  even hinted, at any point before the December 2013 discovery cutoff, that it had

23  challenged validity in 2003.  Indeed, to this day, BSC has not sought to amend its

24  discovery responses (nor could it establish grounds to do so at this time).

25      Federal Rules of Civil Procedure 37 and 26 prohibit a party from using

26  materials or information at trial that it failed to disclose in discovery.  Rule

27  26(a)(1)(A) requires parties to submit initial disclosures, including:

28  PLAINTIFF'S BENCH BRIEF REGARDING     -16-   CASE NO. 05-00426-VAP (MRWx)
    DEFENDANTS' VALIDITY CHALLENGES

1        (A) In General. Except as exempted by Rule 26(a)(1)(B) or as

2        otherwise stipulated or ordered by the court, a party must, without

3        awaiting a discovery request, provide to the other parties:

4            (i) the name and, if known, the address and telephone number

5        of each individual likely to have discoverable information--along

6        with the subjects of that information--that the disclosing party may

7        use to support its claims or defenses, unless the use would be solely

8        for impeachment;

9            (ii) a copy--or a description by category and location--of all

10      documents, electrically stored information, and tangible things that

11      the disclosing party has in its possession, custody, or control and may

12      use to support its claims or defenses, unless the use would be solely

13      for impeachment;

14  Fed. R. Civ. Proc. 26(a)(1)(A).

15      "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at

16  trial of any information required to be disclosed by Rule 26(a) that is not properly

17  disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

18  (9th Cir. 2001); *see also Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175,

19  1179 (9th Cir. 2008) (same).

20      "Rule 26(e)(1)(A) requires disclosing parties to supplement their prior

21  disclosures [and discovery responses] 'in a timely manner' when the prior

22  response is 'incomplete or incorrect.' *Hoffman*, 541 F.3d at 1179. Rule 37(c)(1)

23  provides that a party failing to provide information required by Rule 26(a) or (e)

24  'is not allowed to use that information . . . to supply evidence on a motion, at a

25  hearing, or at a trial, unless the failure was substantially justified or is harmless.'"

26  *Id.* (*citing Yeti*, 259 F.3d at 1106). "Implicit in Rule 37(c)(1) is that the burden is

27  on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107.

28

PLAINTIFF'S BENCH BRIEF REGARDING   -17-   CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES

In blatant violation of Rule 26(e)(1)(A), BSC knowingly failed to identify the purported witnesses or documents upon which it intends to rely at trial despite having been repeatedly asked for all information regarding any potential assertions of invalidity in discovery. Indeed, even after asserting in 2014 it would rely upon such unidentified evidence at trial, BSC *still* -- more than a year after initially making this assertion -- has not sought to supplement its discovery responses to reflect any such witnesses or documents. Dkt. 526 at 6, fn. 6. Dr. Jang has had no opportunity to depose BSC's purported witness(es) or cross-examine its witnesses regarding the unidentified documents. Because discovery has long been closed, he will not have an opportunity to do so.

The appropriate sanction is exclusion. In *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003), the Ninth Circuit upheld the exclusion of documents produced after discovery had closed and the relevant witness had already been deposed. *Id.* at 1028; *see also Amini Innovation Corp. v. Anthony California, Inc.*, 2006 U.S. Dist. LEXIS 100800, 19-20 (C.D. Cal. Sept. 21, 2006) (Otero, J.) (holding that untimely produced evidence should be excluded under Rule 37(c)(1)).

Similarly, in *Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*, 692 F.3d 1272 (Fed. Cir. 2012), the Federal Circuit upheld a district court's sanction of exclusion of evidence although the non-disclosing party had supplemented its discovery responses in a timely manner – within one day of discovering the requested drawings and the day before the close of fact discovery (unlike here, where BSC still has not identified the relevant documents and just identified a witness). *Id.* at 1281-1283. However, because the non-disclosing party's supplementation was inadequate with regard to the specificity of the relevant discovery requests (as was the case here (*see,* Ex. G), the district "court found that [the non-disclosing party's] failure to supplement its interrogatory

PLAINTIFF'S BENCH BRIEF REGARDING     -18-   CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES

1    response harmed [the requesting party, MES] because . . . MES would need to

2    depose people and subpoena records to defend against testimony that these

3    drawings would elicit" and could not cure the harm at that late stage. *Id.* at 1282-

4    1283.  The Federal Circuit upheld the district court's Rule 37(c) sanction because

5    the non-disclosing party's "failure to supplement its interrogatory response

6    prejudiced MES and hindered MES's ability to put on its case and that this error

7    was not substantially justified or harmless." *Id.* at 1283.  Accordingly, BSC

8    likewise should be precluded from presenting any evidence supporting its new

9    claim that it challenged validity prior to the filing of this case.

10       **B.**     **BSC's New Invalidity Position Is Also Barred By Its Multiple**

11                **Prior Judicial Admissions.**

12       BSC's new position about a 2003 validity challenge is also barred by its

13   explicit prior judicial admissions that (a) it first raised the issue of validity in

14   2006, and (b) before that time, it had had no reason or incentive to say anything

15   about validity at all.  In particular, BSC has admitted judicially that:

16   •   "**Since the early stages of this litigation (in 2005-2006)**, BSC has warned Dr.

17       Jang that, if the asserted claims were construed as broadly as he sought, then

18       they would be invalid in view of prior art." Dkt. 431 at 7 (emphasis added).

19   •   "**Since 2006**, BSC has warned that under the claim constructions Dr. Jang has

20       advocated the asserted claims of the [Jang Patents] would be invalid." *Id.* at 1

21       (emphasis added).

22   •   "'BSC noted in its first round of claim construction briefing **in 2006** that Dr.

23       Jang's proposed constructions could undermine the validity of the patents.

24       [Citation omitted.]  **Before that point, BSC had no reason to suspect that**

25       **Dr. Jang would attempt to construe the patent claims in a way that could,**

26       **according to BSC, lead to the invalidity of the patents.'**" Dkt. 479 at 6-7

27       (*quoting* Dkt. 455 at 5 (emphasis added).

28   PLAINTIFF'S BENCH BRIEF REGARDING     -19-   CASE NO. 05-00426-VAP (MRWx)
     DEFENDANTS' VALIDITY CHALLENGES

1      •    "As the owner of the patents, **BSC had no interest in challenging their**

2           **validity until Jang re-urged his constructions during the most recent claim**

3           **construction phase**" [in 2013]. *Id.* at 11 (emphasis added).

4         "Any deliberate, clear, and unequivocal statement, either written or oral,

5   made in the course of a judicial proceeding, qualifies as a judicial admission."

6   *Scarff v. Intuit, Inc.*, 318 Fed. App'x. 483, 487 (9th Cir. 2008) (*quoting* 32 C.J.S.

7   Evidence § 542 (2008)).  These unambiguous statements in BSC's briefs – which,

8   as shown, are entirely consistent with the position BSC took throughout this

9   litigation – are judicial admissions that it first raised validity in 2006, and before

10   then it had no reasons to suspect validity was at issue.  BSC cannot now maintain

11   the contrary positions that as far back as 2003, (a) it *did* have "reason to suspect"

12   that Dr. Jang's infringement arguments could invalidate the patents, let alone

13   (b) that it "warned Dr. Jang" of that position.

14         The Ninth Circuit has held that representations of counsel in moving papers

15   and summary judgment briefing can be treated as binding judicial admissions.  *See*

16   *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003)

17   (Courts "have discretion to consider a statement made in briefs to be a judicial

18   admission ... binding on ... the trial court[.]"); *American Title Ins. Co. v. Lacelaw*

19   *Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("For purposes of summary judgment,

20   the courts have treated representation of counsel in a brief as admissions even

21   though not contained in a pleading or affidavit. … We agree and hold that

22   statement of facts contained in a brief may be considered admissions of the party

23   in the discretion of the district court."); *United States v. Davis*, 332 F.3d 1163,

24   1168 (9th Cir. 2003) (same); *Mackin v. City of Coeur D'Alene*, 551 F.Supp.2d

25   1205, 1207 & n. 2 (D. Idaho 2008), *affirmed by* 347 F.App'x 293 (9th Cir. 2009)

26   (treating statements made by plaintiffs in their opposition to a motion to dismiss as

27   judicial admissions); *Jackson v. City of Inglewood*, 2009 WL 699948, at *2 n. 4

28    PLAINTIFF'S BENCH BRIEF REGARDING    -20-    CASE NO. 05-00426-VAP (MRWx)
     DEFENDANTS' VALIDITY CHALLENGES

1   (C.D. Cal. Mar. 12, 2009) (treating as judicial admissions statements made in

2   declaration filed under penalty of perjury as part of opposition to motion to

3   dismiss).  A judicial admission "ha[s] the effect of withdrawing a fact from issue

4   and dispensing wholly with the need for proof of the fact."  *American Title*, 861

5   F.2d at 226 (citation omitted).

6          Here, BSC's unequivocal statements as to its own knowledge and conduct

7   are properly viewed as judicial admissions because they are entirely consistent

8   with the positions it has espoused throughout this litigation.  Treating BSC's

9   statements as judicial admissions is particularly appropriate because Dr. Jang

10  relied on them to his detriment.  If BSC had asserted at any point during the

11  discovery period that it challenged validity before 2006, Dr. Jang could have

12  probed those contentions in discovery.  But BSC's unambiguous admissions –

13  offered in response to Dr. Jang's specific assertion that any validity challenge had

14  come long after all accrued royalties were already due – deprived Dr. Jang of the

15  opportunity to do so and withdrew these facts from issue.  BSC cannot now march

16  into court and seek to establish that it warned Dr. Jang about invalidity in 2003.

17         C.    <u>BSC's New Invalidity Position Is Also Barred By The Doctrine</u>

18               <u>Of Judicial Estoppel.</u>

19         BSC's newly minted position that it challenged validity in 2003 is also

20  barred by judicial estoppel.  "Judicial estoppel[] generally prevents a party from

21  prevailing in one phase of a case on an argument and then relying on a

22  contradictory argument to prevail in another phase."  *Milton H. Greene Archives,*

23  *Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (*quoting New*

24  *Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) (internal citations omitted). "It is

25  an equitable doctrine invoked not only to prevent a party from gaining an

26  advantage by taking inconsistent positions, but also because of general

27  considerations of the orderly administration of justice and regard for the dignity of

28  PLAINTIFF'S BENCH BRIEF REGARDING       -21-   CASE NO. 05-00426-VAP (MRWx)
    DEFENDANTS' VALIDITY CHALLENGES

1   judicial proceedings, and to protect against a litigant playing fast and loose with

2   the courts."  *Id.* at 993 (*quoting Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d

3   778, 782 (9th Cir. 2001)) (internal citations omitted).

4        Generally, judicial estoppel applies where (1) a party's later position is

5   "clearly inconsistent" with its original position; (2) the court or another tribunal

6   accepted and relied on the original position; and (3) the party maintaining the

7   inconsistent position stands to gain an unfair advantage over the opposing party.

8   *Id.* at 994; *see also Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1290-1291

9   (Fed. Cir. 2005) (*citing New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))

10  (same).  The Ninth Circuit consistently has held that "if a litigant's current

11  position is manifestly inconsistent with a prior position such as to amount to an

12  affront to the court, judicial estoppel may apply."  *Id.* at 994 (*quoting Wyler*

13  *Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000)).

14       All of the factors for judicial estoppel are readily satisfied in this case.

15  *First,* BSC's original and current positions are plainly inconsistent.  Its original

16  position was that until 2006, BSC had "no reason to suspect" Dr. Jang's

17  infringement position would lead to invalidity, and that it was only thereafter, in

18  2006, that BSC "warned Dr. Jang" that his proposed constructions could lead to

19  invalidity.  Dkt. 431 at 7; Dkt. 470 at 5-6.

20       BSC's current position is exactly the opposite:  not only does BSC contend

21  that it *did* have "reason to suspect" that validity was at issue before 2006, but it

22  even goes so far as to claim that in April 2003, it "promptly and consistently"

23  informed Dr. Jang that "if the claims [of the Jang Patents] were interpreted so

24  broadly as to cover Express that they would be invalid."  Dkt. 523 at 11.  Both

25  cannot be true:  if BSC had no reason to suspect validity was at issue until 2006, it

26  could not have raised validity with Dr. Jang in 2003.

27

28  PLAINTIFF'S BENCH BRIEF REGARDING    -22-   CASE NO. 05-00426-VAP (MRWx)
    DEFENDANTS' VALIDITY CHALLENGES

1      *Second*, this Court relied on BSC's position that it had "no reason to

2  suspect" Dr. Jang's purportedly invalidating constructions before 2006.  In

3  considering BSC's 2013 motion to amend its answer and assert an invalidity

4  defense, the Court found – in BSC's favor – that although BSC failed to amend its

5  pleadings by the deadline set forth in the operative scheduling order, it had shown

6  "good cause" to modify that order.  Dkt. 455 at 3-5.  The Court found that "BSC

7  has been diligent in pursuing its patent invalidity theory" – a finding for which the

8  Court relied on BSC's position that "before [the 2006 claim construction briefing],

9  BSC had no reason to suspect that Dr. Jang would attempt to construe the patent

10  claims in a way that could, according to BSC, lead to the invalidity of the patents."

11  *Id.* at 5.  As the Court put it, BSC's failure to assert a timely invalidity defense

12  was excusable, since "[u]pon the exchange of the 2006 opening claim construction

13  briefs . . . , the deadline to amend any pleadings had already passed."  *Id.* at 5.

14  That finding would make no sense if BSC had known of the validity issue *in 2003*,

15  and thus rests directly on BSC's "no reason to suspect until 2006" position.[10]

16      *Third*, it would be grossly inequitable to Dr. Jang – and, respectfully, an

17  affront to this Court – to permit BSC to present its new 2003 validity argument at

18  trial.  BSC consistently asserted to the Court that it first raised the issue of

19  invalidity in its 2006 claim construction briefing.  *See* Dkt. 61, pp. 2, 18-21; Dkt.

20  71, p. 4.; Dkt. 414 at 6; Dkt. 431 at 1, 7; Dkt. 464 at 1, 24; Dkt. 479 at 6-7, 11.  It

21  consistently took the same position in written discovery.  *See* Exs. A -F.  It was

22  only in March 2014 that BSC suddenly began to assert, in its pretrial briefing, that

23  it had challenged the Jang Patents' validity as early as 2003.  *See, e.g.*, Dkt. 491 at

24  11; Dkt. 513-1 at 1-2; Dkt. 526 at 6, fn. 6; Ex. J at 4-5.  BSC has cited no evidence

25  supporting these claims (*see id.*), its written discovery never disclosed such

26  _____

[10] The Court applied the same reasoning to hold –in BSC's favor – that there was
27  no "undue delay" for purposes of Rule 15 in seeking leave to amend.  *Id.* at 6.

28  **PLAINTIFF'S BENCH BRIEF REGARDING**      -23-      **CASE NO. 05-00426-VAP (MRWx)**
   **DEFENDANTS' VALIDITY CHALLENGES**

1  evidence, and this Court should not permit this last-minute gambit to disrupt the

2  upcoming trial.

3      Further compounding the unfair detriment to Dr. Jang is the element of

4  unfair surprise.  Because BSC did not trot out this new theory until well after the

5  close of discovery – and *never* supplemented its interrogatory response to identify

6  any witnesses or documents purportedly relevant to its invalidity theory (Exs. E &

7  G) – Dr. Jang is still, today, in the dark.  He has had no opportunity to review the

8  (unidentified) documents, or to depose the just-identified witness, that BSC claims

9  support its position.  Moreover, as discovery has been long closed, he will not

10  have an opportunity to do so.   Under these circumstances, BSC should be

11  judicially estopped from advancing the factual contention that it challenged

12  validity, in any way, prior to claim-construction briefing in 2006.

13    **D.**    **Evidence And Jury Instructions Regarding BSC's Purported**

14        **Validity Challenges Are Not Probative And Would Only Serve**

15        **To Confuse The Jury And Waste Time**

16      As described above, this Court has repeatedly held that the issue of

17  invalidity is irrelevant and has no effect on Dr. Jang's breach of contract claims.

18  (*See, e.g.*, Dkt. 455 at 8.)  Allowing BSC to introduce evidence or even jury

19  instructions on this topic would only serve to confuse the jury, would not be

20  probative, and would be unduly prejudicial to Dr. Jang and wasteful of the Court's

21  time and resources.  "The court may exclude relevant evidence if its probative

22  value is substantially outweighed by a danger of one or more of the following:

23  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

24  time, or needlessly presenting cumulative evidence."  Fed. R. Evid 403.  The

25  Court has broad discretion to exclude evidence under Rule 403.  *McEuin v. Crown*

26  *Equip. Corp.*, 328 F.3d 1028, 1034 (9th Cir. 2003) (*quoting Longenecker v. Gen.*

27  *Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir. 1979) ([T]rial judges are better able

28

1  to sense the dynamics of a trial than we can ever be, and broad discretion must be

2  accorded them in balancing probative value against prejudice.")).

3    The Court has already held that BSC cannot raise the current invalidity of

4  the Jang Patents' claims.  (Dkt. 554 at 7.)  Allowing BSC to argue that it

5  challenged validity to avoid royalty obligations will open the door to this issue and

6  unduly prejudice Dr. Jang while having no actual probative value.  Were the jury

7  to hear that the asserted claims are presently invalid, Dr. Jang would need to

8  explain how the patent claims came to be invalidated, why he was unable to

9  defend the patents from BSC's efforts to invalidate them, how the patent claims

10  were valid at the times when he asserts BSC breached its contractual obligations

11  to him, and why their present invalidity is irrelevant to BSC's liability under the

12  Assignment Agreement.  Such arguments would take the jury far afield from the

13  issues of infringement and contract interpretation at the heart of this case, and

14  surely double the time necessary for trial.

15    Similarly, Dr. Jang would certainly be prejudiced.  Unfair prejudice in Rule

16  403 means "an undue tendency to suggest decision on an improper basis,

17  commonly, though not necessarily, an emotional one."  Rule 403, Advisory

18  Committee Notes.  Were the jury to be advised that the patent claims at issue have

19  been rendered invalid, they would undoubtedly wonder why they were

20  invalidated, and would speculate why Dr. Jang is asking for compensation for

21  invalid patents.  Accordingly, BSC should not be allowed to introduce evidence or

22  jury instructions regarding its purported validity challenges.

23  **IV.   <u>CONCLUSION</u>**

24    For the foregoing reasons, Dr. Jang respectfully asks the Court (1) to

25  preclude BSC from introducing evidence or argument regarding any pre-2006

26  validity challenges, (2) not to include a jury instruction on this issue or the Jang

27  Patents' current invalidity, and (3) such other relief as the Court deems proper.

28

**PLAINTIFF'S BENCH BRIEF REGARDING   -25-   CASE NO. 05-00426-VAP (MRWx)
DEFENDANTS' VALIDITY CHALLENGES**

1  Dated:  May 29, 2015                    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

2

3                                          By: /s/ Jonathan K. Waldrop
                                               JED I. BERGMAN
                                               JEFFREY J. TONEY
4                                              JONATHAN K. WALDROP
                                               DARCY L. JONES
5
                                           Attorneys for
6                                          Plaintiff G. David Jang, M.D.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28