**ARNOLD & PORTER LLP**
Wallace Wu (State Bar No. 220110)
Wallace.Wu@aporter.com
Amie Medley (State Bar No. 266586)
Amie.Medley@aporter.com
Allen Secretov (State Bar No. 301655)
Allen.Secretov@aporter.com
Los Angeles, California 90017-5844
Tel: (213) 243-4000; Fax: (213) 243-4199

Matthew Wolf (*pro hac vice*)
Matthew.Wolf@aporter.com
Edward Han (*pro hac vice*)
Ed.Han@aporter.com
John Nilsson (*pro hac vice*)
John.Nilsson@aporter.com
Sara P. Zogg *(pro hac vice)*
Sara.Zogg@aporter.com
555 Twelfth Street NW
Washington, DC 20004-1206
Tel: (202) 942-5000; Fax: (202) 942-5999

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| G. DAVID JANG, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation,<br><br>Defendants. | Case No. EDCV 05-00426-VAP-MRW<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(a)**<br><br>**Date: July 1, 2015**<br>**Time: 8:00 am**<br>**Dept.: Courtroom 2**<br>**Judge: Honorable Virginia A. Phillips** |

i

## **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. ARGUMENT................................................................................................................2

    A. Dr. Jang Has Failed To Present Evidence Required To Support A Verdict Of Literal Infringement ................................................................2

    B. Dr. Jang Has Failed To Present Any Relevant Evidence To Support Infringement Under The Doctrine Of Equivalents ....................................8

III. CONCLUSION ........................................................................................................10

Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc. (formerly Scimed Life Systems, Inc.) (collectively, "BSC") respectfully submit this memorandum in support of their motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) of no literal infringement and no infringement under the doctrine of equivalents ("DOE").

**I.     PRELIMINARY STATEMENT**

Judgment as a matter of law is appropriate when there is no legally sufficient basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a)(1). On the issue of literal infringement, no reasonable juror could find for Dr. Jang because, instead of analyzing the accused Express stent, Dr. Jang's expert, Mr. Michael Lee, analyzed an imaginary stent that has never been built, does not actually exist, and is admittedly not the accused Express stent. Accordingly, as explained in more detail below, Dr. Jang has failed to offer the testimony and evidence necessary to support a finding of literal infringement.

With respect to infringement under the doctrine of equivalents, the testimony of Mr. Lee confirmed the deficiencies in his analysis that BSC identified prior to trial. In some instances, Mr. Lee compared the accused Express stent as a whole to the asserted claims. In others, he compared the entire micro-element (some of which must be understood to be an expansion column for the doctrine to be implicated) to the claimed connecting strut. In none did he properly compare the non-infringing element – the Express stent's straight connector – to the unmet limitations (the non-parallel requirement and the "peak to peak" requirement). Moreover, Mr. Lee failed entirely to analyze "the way" in which the Express stent's connecting element supposedly achieves the function he ascribes to it (flexibility) and to compare that "way" to the "way" in which the connecting strut of the asserted claims supposedly achieves that function. Thus, as explained in more detail below, Dr. Jang's theory of infringement under the doctrine of equivalents is also fatally defective as a matter of

1

law. Pursuant to Rule 50, BSC thus respectfully requests the entry of judgment in its favor as a matter of law.

## II. ARGUMENT

### A. Dr. Jang Has Failed To Present Evidence Required To Support A Verdict Of Literal Infringement

The structural characteristics of the accused Express stent are undisputed. It consists of:

- Macroelements composed of sinusoidal linked metal wrapping around the stent (colored red in Fig. 1 below);
- alternating microelements also composed of sinusoidal linked metal wrapping around the stent (colored blue in Fig. 1 below) but with a smaller amplitude and a higher frequency than the corresponding portions of the macroelements; and
- straight connectors (colored green in Fig. 1 below) that connect between the "peaks" of the struts in macroelements and the corresponding "valleys" of the struts in microelements (in short, a peak-to-valley configuration).



**Fig. 1**

A straightforward application of the Court's claim construction[1] to the undisputed structural components of the Express stent shows that:

---

[1] *See* Dkt. # 423 (construing "expansion column" as "a structure formed of a plurality of expansion strut pairs and arranged in a column along the circumference of the stent"; "connecting strut" as "a strut that connects expansion columns"; "expansion strut pair" as "a combination of two circumferentially adjacent expansion struts

Footnote continued on next page

- each macroelement is an "expansion column;"
- each microelement is also an "expansion column;"[2] and
- each straight connector is a "connecting strut" (insofar as it connects one expansion column to another).

This "connecting strut," however, does not meet at least two requirements of claim 1 and its dependent claim 8 of U.S. Patent No. 5,922,021 (the '021 patent). Both require that (1) the distal section of a connecting strut be coupled to "***the proximal end***" of the second expansion strut pair of the second expansion column (in short, a peak-to-peak configuration) and (2) the connecting strut contains an intermediate section that is "***non-parallel***" to the proximal and distal sections.[3] In contrast, the Express stent's straight connectors each possess (1) a distal section that is coupled to the ***distal end*** (not the proximal end) of the second expansion strut pair of the second expansion column (in other words, a peak-to-valley, not a peak-to-peak configuration) and (2) an uninterrupted straight configuration ***without any non-parallel intermediate sections***. Because it lacks these two requirements, the Express stent does not literally infringe.

In an effort to manufacture a theory of literal infringement, Dr. Jang's experts, Mr. Lee and Dr. Chronos, concocted a connecting strut in the Express stent that

---

Footnote continued from previous page
coupled at one end by a joining strut and open at the other"; and "expansion strut" as "a strut in an expansion column")).

[2] On cross examination, Dr. Jang's expert, Mr. Michael Lee, readily admits that the Court's construction of "expansion column" does not depend on size and there could be different types of expansion columns. (June 25 Trial Tr. (rough) Afternoon Session at 109:7-9; 110:7-11.)

[3] The '021 patent provides an example of a peak-to-peak connecting strut with a non-parallel intermediate section in Fig. 8D of the '021 patent, as annotated below.



appears to possess *a peak-to-peak configuration and a non-parallel intermediate section*. This false version of Express was created by:

- calling one straight connector (the top green line in green portions of Fig. 2 below) the proximal section of a "connecting strut,"

- carving out half of the struts in a microelement (the red portions in Fig. 2 below) in order to create a non-parallel intermediate section of a "connecting strut;" and

- calling a second and separate straight connector (the bottom green line in the green portion of Fig. 2 below) the distal section of a "connecting strut" in order to create a peak-to-peak configuration.



**Fig. 2**

On cross-examination, Mr. Lee admitted that his imaginary stent (as illustrated in Fig. 3 below) has never been built or tested and is certainly not the accused Express stent.[4]

---

[4] *See* June 25 Trial Tr. (rough) Afternoon Session 113:10-114:1 ("Q: Now, hopefully we can agree that whatever that is, it's not an accurate depiction of a Micro element, right? A It's not an accurate depiction – it is not exactly a full Micro element, yes. Q: You've removed – some metal has been removed? A: … This is not a complete Express Stent…. Q You'd agree with me if a stent were built according to the structure, built in this right picture on Figure 40, we don't know how it would perform, do we? A No. We don't know how it performs until we make one of those

Footnote continued on next page



**Fig. 3**

To allow this fabrication of an imaginary accused stent to proceed to the jury would invite at least four legal errors. ***First***, although the "comprising" language in the preamble of the claim permits the presence of additional components, it does not allow a plaintiff to parse the accused product, dismantle it, and disregard those elements that do not fit within its theory of infringement. The Federal Circuit's decision in *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377 (Fed. Cir. 2000) is instructive. There, the claim required that an infringing composition possess between 0-1% cerium oxide. *Id*. at 1382. The accused product, however, contained 1.61% cerium oxide. *Id.* Relying on the "comprising" language in the asserted claim's preamble, the patentee argued that the first 0.92% of cerium oxide in the accused products acted as an antigreening agent and that the remaining 0.69% of cerium oxide could essentially be disregarded. *Id.* The Federal Circuit rejected the patentee's attempt to "***carve out*** a portion of cerium oxide" and upheld the trial court's denial of a preliminary injunction. *Id*. (emphasis added)  For the same reasons, this Court should reject Dr. Jang's efforts to "carve out" pieces of the Express stent's micro-element to fabricate an infringing product.

***Second***, the Federal Circuit has instructed that "[t]he usage 'comprising' means that additional components may be present in the device, but does not change the

---

Footnote continued from previous page
and test one of those, yes. Q And to your knowledge nothing like this has been made yet? A To my knowledge, I have not seen an actual stent and tested an actual stent like that….")

elements that are stated in the claim." *Outside the Box Innovations LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1305 (Fed. Cir. 2012); *see also Spectrum Intern. Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998) ("[C]omprising is not a weasel word with which to abrogate claim limitations.")  Dr. Jang's literal infringement theory would do just that, however.  When pressed, Mr. Lee acknowledged that, applying the claim language and the Court's claim constructions, the individual micro-elements "could be" expansion strut pairs.  (June 26 Part 1 Trial Tr. at 30:22-23 ("The answer is, maybe it could be an expansion strut pair.  In the right context, it could be an expansion strut pair.")  And, as the Court will recall, he could provide no basis under the claim language or the Court's constructions to suggest otherwise.  Dr. Jang's literal infringement theory can proceed only on the untenable premise that the "comprising" language of the preamble will allow a "connecting strut column" in the claim to be the same as an "expansion column" – a distinct element of the claim.  *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct components[s]' of the patented invention.").

*Third*, in carving out portions of the Express stent's micro-elements, Dr. Jang has created an imaginary stent that does not exist, has never existed and is admittedly not the accused Express stent.  A plaintiff in a patent infringement suit is not free to consider only those aspects of the accused device that suit its infringement theory and to disregard the rest.  *See ShieldMark, Inc. v. InSite Solutions, LLC*, Nos. 1:12 CV 223, 1:13 CV 572, 2013 WL 6116811 at *8 (N.D. Ohio Nov. 20, 2013) ("[T]here is no basis for excluding the edge [feature] when considering whether the elements of the patent have been infringed" because the edge feature was "part and parcel of the polymer layer," not a "separate distinct feature or element of the accused product.").

*Fourth*, Dr. Jang has not offered any expert testimony that properly applies this Court's claim construction.  Mr. Lee admitted that he departed from the Court's

construction. When asked by BSC's counsel on cross-examination, "I'd like for you to explain to me why… this portion of the micro-element that I've identified, is not an expansion strut pair?" Mr. Lee responded "[w]ell, through my analysis, as I went through the claim structure, and through my experience as, you know, an expert in stenting, I see these as smaller pieces which are more similar to connections than to expansion struts like the others, like the macro-elements." (June 26 Trial Tr. (rough) Morning Session Part 1, 27:14-21.) Later, during re-direct, when asked "[w]hy did you have a hard time addressing what was an expansion column versus a connecting column?" Mr. Lee responded:

> I have a hard time labeling something literally because if I step through it… and it meets the claims, then that already says, okay, it met that claim. If you step through a portion of a stent, or a product, and you don't meet the claims, you might say, okay, that analysis didn't work. But that doesn't mean you stop the analysis. You go on and you continue that.

(June 26 Trial Tr. (rough) Morning Session Part 2, 25:14-26:2.) Mr. Lee did not apply the Court's construction, but instead simply decided that the microelement is a connecting strut column rather than an expansion column.

Dr. Jang's other expert, Dr. Chronos, also admitted to straying from this Court's construction in performing his infringement analysis. When asked to describe why the microelement of the Express stent is not an expansion column, he cited his own experience, the claim language, and other reasons for not applying the Court's claim construction.

"[E]xpert opinions in patent litigation must be based on the court's claim construction in order to be considered relevant and reliable, and, therefore, admissible." *See Ecolab USA Inc. v. Diversey, Inc.*, No. 12-CV-1984, 2015 WL 2345264 at *5 (D. Minn. May 14, 2015); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, Case. No. C11-5973 PSG, 2013 WL 4537838 at *4 (N.D. Cal. Aug. 22, 2013) ("Any expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions."). Because Dr. Jang's experts departed from

the Court's claim construction in performing their infringement analysis, no admissible evidence has been offered to support Dr. Jang's literal infringement theory.

For these reasons, Dr. Jang has failed to present the required evidence to prove literal infringement of the asserted claims. BSC respectfully requests that the Court grant judgment in its favor as matter of law on the issue of literal infringement.[5]

### B. Dr. Jang Has Failed To Present Any Relevant Evidence To Support Infringement Under The Doctrine Of Equivalents

Dr. Jang's theory of infringement under the doctrine of equivalents is equally flawed. "Under the doctrine of equivalents, 'a product or process that does not literally infringe… the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012). "[A]n element in the accused device is equivalent to a claim limitation if it performs substantially the same function in substantially the same way to obtain substantially the same result." *Id.* To support infringement under the doctrine of equivalents (DOE), a patentee must compare "***a given limitation*** in the asserted claim and the ***corresponding element*** in the accused device." *Id.* (emphases added) The patentee "must [also] provide '***particularized testimony and linking argument*** with respect to the 'function, way, result' test." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013) (emphasis added).

The evidence before the jury and the Court at this trial has shown that Dr. Jang failed on both accounts. ***First***, Mr. Lee never analyzed whether the element of the

---

[5] As discussed in BSC's opposition to Dr. Jang's recent motion for sanctions, an infringement argument strikingly similar to Dr. Jang's argument here has already been rejected by the District Court in the Hague. (Dkt. 628 at 9-11.) BSC hereby incorporates by reference the findings by the District Court in the Hague and the reasoning thereof.

stent that does not literally infringe – the Express stent's straight connector – is equivalent to the '021 patent's "connecting strut." Instead, all of his bench tests and finite element analysis (FEA) focused on the issue of whether the entire micro-element would be equivalent to the "connecting strut." (*See* June 25 Trial Tr. (rough) Afternoon Session, 63:14-94:6.) Indeed, Mr. Lee did not even analyze what he views as a connecting strut or its non-parallel intermediate section as part of his analysis. (*See Id*.)[6] As Dr. Moore explained, a proper analysis would have focused on whether straight connectors in the accused Express stent perform substantially the same function, in substantially the same way, to achieve substantially the same result as the unmet "peak to peak" and "non-parallel" limitations for asserted claims' connecting strut. Neither Mr. Lee nor Dr. Chronos ever did that analysis. As a consequence, Dr. Jang's assertion of infringement under the doctrine of equivalents fails as a matter of law. *See, e.g., Miken Composites, L.L.C. v. Wilson Sporting Goods Co.,* 515 F.3d 1331, 1339 (Fed. Cir. 2008) (affirming the district court's grant of summary judgment of non DOE infringement because the testing by the patentee's expert was directed to the "equivalency of the accused products as a whole" and did not present evidence on the equivalence of any structural component of the accused bats to the "insert" limitation of the claim); *see also Gemalto S.A. v. HTC Corp.,* 754 F.3d 1364, 1374 (Fed. Cir. 2014) (affirming the district court's grant of summary judgment of noninfringement under the doctrine of equivalents because "[g]eneralized testimony

---

[6] Even if Mr. Lee attempted to analyze a straight connector, a straight connector in the Express stent with no non-parallel sections could not be equivalent to a connecting strut with a non-parallel section. *See Mirror Worlds*, 692 F.3d at 1358 (an argument that "the absence of a feature is equivalent to its presence" would be "a negation of the doctrine of equivalents."); *Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1106 (Fed. Cir. 2000) (affirming summary judgment of noninfringement under the doctrine of equivalents because it would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority)

9

as to the overall similarity between the claims and the accused infringer's product or process will not suffice").[7]

***Second***, Mr. Lee only analyzed one third of the required function-way-result test. At most, Mr. Lee's testimony suggested that the Express stent's Micro-element (which he wrongly analyzed in its entirety) and the claimed connecting strut both have some tendency to make the stent more flexible. He admitted, though, that he could point to nothing in his analysis that compared the way that the connecting elements of the Express stent further flexibility to the way in which the asserted claims' connecting strut achieves the same function. (June 26 Trial Tr. (rough) Morning Session Part 2, 6:4-9:9.) Accordingly, Dr. Jang's DOE infringement theory should be rejected as a matter of law on this basis alone. *See Augme Techs., Inc. v. Yahoo! Inc.,* 755 F.3d 1326, 1334-1337 (Fed. Cir. 2014) (affirming summary judgment of noninfringement under the doctrine of equivalents in part because of the lack of testimony whether the accused module and the "embedded first code module" perform the recited functions in substantially the same ''way.''); *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (affirming summary judgment of noninfringement under the doctrine of equivalents because the patentee failed to "show that the circuitry in the accused device functions in substantially the same way to achieve substantially the same result").

### III.  CONCLUSION

For the reasons explained above, BSC respectfully requests that the Court grant its motion for judgment as a matter of law.

Dated: July 1, 2015          /s/ Amie L. Medley
                             Amie L. Medley

---

[7] It should not come as a surprise that Mr. Lee did not perform any analysis on his perceived connecting struts or their intermediate sections because as discussed earlier, such connecting struts are imaginary, created solely for the purposes of manufacturing a literal infringement argument.