JEFFREY J. TONEY (pro hac vice)
jtoney@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
1349 West Peachtree Street, N.W., Suite 1500
Atlanta, GA 30309
Tel: (404) 260-6080; Fax: (404) 260-6081

JED I. BERGMAN (pro hac vice)
jbergman@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700; Fax: (212) 506-1800

JONATHAN K. WALDROP (Bar No. 297903)
jwaldrop@kasowitz.com
DARCY L. JONES (pro hac vice)
djones@kasowitz.com
ROBERT P. WATKINS III (Bar No. 298571)
rwatkins@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170; Fax: (650) 453-5171

JAMES A. ODLUM (Bar No. 109766)
jodlum@mohlaw.com
MUNDELL, ODLUM & HAWS, LLP
650 E. Hospitality Lane, Suite 470
San Bernardino, CA 92408-3595
Tel: (909) 890-9500; Fax: (909) 890-9580

Attorneys for Plaintiff G. David Jang, M.D.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION - RIVERSIDE**

| | |
|---|---|
| G. DAVID JANG, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation,<br><br>Defendants. | CASE NO. ED CV 05-00426-VAP (MRWx)<br><br>**PLAINTIFF G. DAVID JANG, M.D.'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(a)**<br><br>**Hon. Virginia A. Phillips**<br>**Date: July 6, 2015**<br>**Time: 3:00 p.m.**<br>**Courtroom: 2** |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. DR. JANG PRESENTED SIGNIFICANT EVIDENCE FROM WHICH THE JURY COULD REASONABLY CONCLUDE THAT THE EXPRESS STENT INFRINGES LITERALLY ......................... 3

    A. Dr. Jang Has Proven That The Accused Micro Element in the Express Stent Literally Infringes the '021 "Connecting Strut" Limitations ................................................................................. 3

    B. Dr. Jang's Expert Dr. Chronos Has Also Proven That The Accused Micro Element in the Express Stent Literally Infringes the '021 "Connecting Strut" Limitation ........................................ 5

    C. Dr. Chronos Properly Applied the Court's Claim Constructions in his Analysis ...................................................................................... 7

III. DR. JANG PRESENTED SIGNIFICANT EVIDENCE FROM WHICH THE JURY COULD REASONABLY CONCLUDE THAT THE EXPRESS STENT INFRINGES UNDER THE DOCTRINE OF EQUIVALENTS ...................................................................................... 9

    A. Dr. Jang's Expert Mike Lee Provided Evidence From Which the Jury Could Reasonably Find that the Express Stent Infringes ... the '021 Patent Under the Doctrine of Equivalents ........................ 10

    B. Dr. Jang's Expert Dr. Chronos Likewise Provided Evidence From Which the Jury Could Reasonably Find that the Express Stent Infringes the '021 Patent Under the Doctrine of Equivalents ............................................................................................... 12

    C. Dr. Jang's Experts Were Not Required to Begin with BSC's "Straight Connector" Assumptions to Perform the Doctrine of Equivalents Analysis ................................................................ 15

IV. CONCLUSION ......................................................................................... 16

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**                                  **CASE NO. 05-00426-VAP (MRWx)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................1

*Aquatex Industries, Inc. v. Techniche Solutions*,
   479 F.3d 1320 (Fed. Cir. 2007) ......................................................................... 9, 15

*Comark Commc'ns, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998) ................................................................................2

*Costa v. Desert Palace, Inc.*,
   299 F.3d 838 (9th Cir. 2002) ...................................................................................2

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
   339 U.S. 605 (1950) .................................................................................................9

*Johnson v. Paradise Valley Unified Sch. Dist.*,
   251 F.3d 1222 (9th Cir.2001) ............................................................................. 2, 4

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006) ................................................................................4

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996) ..................................................................................9

*Paice LLC v. Toyota Motor Corp.*,
   504 F.3d 1293 (Fed. Cir. 2007) ..............................................................................15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) .................................................................................................2

*Skydive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ..................................................................................4

*TI Group Auto. Sys. Inc. v. VDO N. Am., L.L.C.*,
   375 F.3d 1126 (Fed.Cir.2004) ..................................................................................2

*Tradecard, Inc. v. S1 Corp.*,
   509 F. Supp. 2d 304 (S.D.N.Y. 2007) .....................................................................3

-ii-

**Other Authorities**

Fed. R. Civ. P. 50(a) ................................................................................................ 1

-iii-

Plaintiff G. David Jang, M.D. ("Dr. Jang" or "Plaintiff") respectfully submits this opposition to Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc.'s (formerly Scimed Life Systems, Inc.) (collectively, "BSC") motion for judgment as a matter of law of no literal infringement and no infringement under the doctrine of equivalents.

## I. INTRODUCTION

Contrary to BSC's motion, Dr. Jang through his experts presented clear evidence that every limitation of claims 1 and 8 of the asserted U.S. Patent No. 5,922,021 ("the '021 Patent") is infringed by individual features of the accused BSC Express stent. Dr. Jang's expert witness in the field of stent design and engineering Michael J. Lee and interventional cardiologist expert Dr. Nicolas Chronos provided opinions supported by evidence to prove that the "Macro elements" of the accused BSC Express stent infringe: (1) the "expansion strut," "expansion column," and related limitations of claims 1 and 8 of the '021 patent (which BSC does not dispute); and (2) that the "Micro elements" infringe the "connecting strut," "connecting strut column" and related limitations of claims 1 and 8 of the '021 patent, both literally and under the doctrine of equivalents. BSC's motion should thus be denied.

The Court may only grant a Rule 50 motion for judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The standard on a judgment as a matter of law is identical to the standard on a summary judgment motion where the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 251-52 (1986). The Court must review all evidence of record

-1-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**                                   **CASE NO. 05-00426-VAP (MRWx)**

and draw all reasonable inferences in favor of the non-moving party, without weighing the facts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002).

Because the Court cannot make credibility determinations, weigh the evidence, or draw inferences from the facts themselves, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151; *see also Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (holding that the court "may not substitute its view of the evidence for that of the jury" or "make credibility determinations or weigh the evidence"). Since judgment as a matter of law is only appropriate where the record is "critically deficient of the minimum quantum of evidence" in support of the verdict, *TI Group Auto. Sys. Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004), BSC's burden on this motion is "a heavy one." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998).

As this Court noted in its March 27, 2014 Order denying BSC's motion for summary judgment, at that time, BSC had "adduced little other evidence in support of its theory of noninfringement." (Dkt. 555 at 14). And after a two-week jury trial, nothing has changed. BSC has fallen well short of its burden to show that the evidence presented at trial allows only for a reasonable conclusion that claims 1 and 8 of Dr. Jang's '021 patent are not infringed. Instead, Dr. Jang provided detailed limitation-by-limitation literal infringement analysis of asserted claims 1 and 8, as well as analysis under the doctrine of equivalents using finite element analysis ("FEA"), benchtop testing, and opinion testimony regarding actual clinical use of the accused Express stent. Specifically, BSC has failed to show that the jury could not arrive at a verdict of infringement, either literally or under the doctrine of equivalents, based on the evidence presented by Dr. Jang. Dr. Jang includes herewith as Exhibit A to the Declaration of Robert P. Watkins

-2-

1 III exemplary trial testimony demonstrating the evidence presented in support of a limitation-by-limitation infringement analysis performed by the experts, for both literal infringement and infringement under the doctrine of equivalents. For these reasons, the Court should deny BSC's motion.

## II. DR. JANG PRESENTED SIGNIFICANT EVIDENCE FROM WHICH THE JURY COULD REASONABLY CONCLUDE THAT THE EXPRESS STENT INFRINGES LITERALLY

### A. Dr. Jang Has Proven That The Accused Micro Element in the Express Stent Literally Infringes the '021 "Connecting Strut" Limitations

BSC's assertion that Dr. Jang's experts "manufactured a theory of literal infringement" by "concocting a connecting strut in the Express stent" to show that the Express stents "possess a peak-to-peak configuration and a non-parallel intermediate section" is completely false. Dr. Jang has introduced substantial evidence that the Express stent literally infringes claim 1 and claim 8 of the Patent-in-Suit, which included demonstratives modeling the connecting strut in both the '021 patent and accused Express stent.

*First*, there is no merit to BSC's allegation that Dr. Jang "concocted a connecting strut in the Express stent" or "imaginary stent" argument since Dr. Jang's experts never claimed that the diagrams labeled Fig. 2 and Fig. 3 in BSC's brief were the accused Express stent. Defendants' Memorandum of Points and Authorities In Support of Their Motion for Judgment as a Matter of Law Under Rule 50(a) (Dkt. 638-1) July 1, 2015 (hereafter, "BSC Br.", at 3). **Second,** courts have held that demonstrative exhibits – such as Fig. 2 and Fig. 3 – are allowed to assist the jury to understand the comparison of the accused device to the claims. *Tradecard, Inc. v. S1 Corp.*, 509 F. Supp. 2d 304, 324-25 (S.D.N.Y. 2007) ("An embodiment that helps the jury understand the comparison of the accused device

-3-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**        **CASE NO. 05-00426-VAP (MRWx)**

1  to the claims, or in finding whether or not the infringer was willful, also may be
2  relevant."). BSC's complaint seems to be that Mr. Lee used a demonstrative that
3  he drew himself to more clearly demonstrate the Express stent's infringement.
4  Such useful demonstratives should not be excluded from trial, especially when
5  accompanied by clear comparisons of the accused product – in in-person physical
6  form, in high definition images, in BSC's own engineering documents, in BSC's
7  own marketing documents, etc. – to the limitations of the asserted claims of the
8  patent. Mr. Lee compared each element of Claim 1 to Boston Scientific's Express
9  Stent. *See,* Exhibit A to Declaration of Robert P. Watkins III ("Watkins Decl.") in
10 support of Dr. Jang's Opposition to Defendants' Motion for Judgment as a Matter
11 of Law Under Rule 50(a); *see also*, June 25, 2015, PM Session, Trial Tr. at 31:1-4.

12 ***Third***, BSC's complaints about Mr. Lee's use of Fig. 2 and Fig. 3 at trial go
13 to the weight and credibility the jury assigns to the exhibit, which are not
14 determinations to be made by the Court in ruling on a motion for judgment as a
15 matter of law. *Johnson*, 251 F.3d at 1226 (holding that the court "may not
16 substitute its view of the evidence for that of the jury" or "make credibility
17 determinations or weigh the evidence"). So, as long as Dr. Jang's experts'
18 "testimony rests upon 'good grounds,' it should be tested by [BSC and its
19 expert's] testimony and active cross-examination rather than excluded from
20 jurors['] scrutiny for fear that they will not grasp its complexities or satisfactorily
21 weigh its inadequacies." *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d
22 1209, 1221 (Fed. Cir. 2006) (citing *In re TMI Litig.*, 193 F.3d 613, 692 (3rd Cir.
23 1999)). Therefore, BSC's assertion that Mr. Lee's demonstratives Fig. 2 and Fig.
24 3 were never "built or tested" goes to the weight of the evidence, which the jury is
25 tasked to decide.

26
27
28

-4-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**                                  **CASE NO. 05-00426-VAP (MRWx)**

*Fourth*, BSC's challenge to what BSC characterizes as Mr. Lee's "imaginary stent" is nothing more than a blatant attempt at an untimely *Daubert*[1] motion – and is patently false. These figures were based on figures and analysis provided in Mr. Lee's infringement expert report. In Court, Mr. Lee performed his literal infringement analysis using these illustrative figures along with Trial Ex. 968, which is an engineering drawing of an accused Express Stent. (June 25, 2015, PM session, Trial Tr. at 29:19-52:17). If BSC took issue with the demonstrative images used in the analysis in his expert report, BSC should have filed a *Daubert* motion, raised the issue at the pretrial conference, or objected at trial on that basis. Instead, BSC chose not to do any of the foregoing and thus has waived any argument it may have had. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012) ("Failure to raise a *Daubert* challenge at trial causes a party to waive the right to raise objections to the substance of expert testimony post-trial."). As such, BSC has waived any objections or challenges under *Daubert* to Mr. Lee's testimony about the alleged "imaginary stent."

## B. Dr. Jang's Expert Dr. Chronos Also Provided Compelling Evidence That The Accused Micro Element in the Express Stent Literally Infringes the '021 "Connecting Strut" Limitation

Dr. Chronos similarly confirmed that he performed a limitation-by-limitation literal infringement analysis comparing the features of the Express stent to the limitations of claims 1 and 8 of the '021 patent. *See, e.g.*, June 26, 2015, Trial Tr. at 163:7-13 ("So I was asked to look at the Express Stent, and I was asked to compare the features of the Express Stent to the '021 Patent, Dr. Jang's patent, and see if it infringed."). Dr. Chronos further confirmed that this extended

---

[1] Notably. BSC filed a Motion *in Limine* to exclude the analysis of both Mr. Lee and Dr. Chronos on infringement of Dr. Jang's '021 Patent under the doctrine of equivalents (Dkt. 498), which this Court denied, finding that Dr. Jang disclosed this theory in 2006 (Dkt. 554, at 10), and finding that "both Mr. Lee and Dr. Chronos have provided sufficient foundation to support theory under the doctrine of equivalents." *See*, Dkt. 554, at 13 (denying BSC's Motion in Limine stating "Dr. Jang may submit his doctrine of equivalents theory to the jury.").

-5-

JANG OPP. TO
BSC JMOL ON INFRINGEMENT                         CASE NO. 05-00426-VAP (MRWx)

to his literal infringement analysis of the disputed "connecting strut" limitations, which he provided in full to the jury. *See, e.g.*, *id.* at 170:7-179:6 (detailed analysis of Express stent physical samples, images, and marketing materials, explaining how the straight and zig-zag portions of the Micro element meet the proximal, distal, and non-parallel connecting strut portion requirements of Claim 1); *id.* at 169:13-23 ("it is very clear that the connecting strut – that the micro-element, as outlined in all the materials that Boston Scientific provides us, both its clinicians and in this case, are basically – those micro-element characteristics are the three-part connector with the offset and the proximal, mid, and distal piece."); *id.* at 170:3-6 ("Q. And what is Judge Phillips's definition of a connecting strut? A. So here is a connecting strut. And she suggests we interpret it as a strut that connects expansion columns."); June 30, 2015, Section 2, Draft Trial Tr. at 9:1-10:15 (testifying that Boston Scientific in marketing documents displays Micro elements as including zig-zag and straight portions, and Macro elements that do not include straight portions); June 26, 2015, Trial Tr. at 171:20-173:2.

Dr. Jang's burden was to show that BSC's Express stent included features to meet each element of the asserted claims, including each of the "connecting strut" and "expansion strut" elements. Mr. Lee provided clear opinions that the Express stent meets each and every limitation of Claims 1 and 8 of the '021 patent. *See*, Exhibit A to Watkins Decl. And Dr. Moore, BSC's expert, admitted that the Macro elements of the Express stent meet all "expansion strut," "expansion column," and related limitations. *See, e.g.*, June 30, 2015, PM Session, Trial Tr. at 7:3-21. Accordingly, the sole dispute relates to whether the Express stent infringes the "connecting strut" and related limitations. Dr. Jang has put forth substantial evidence that the Express stent's Micro elements meet the "connecting strut," "connecting strut column," and related limitations as construed by the Court, amply sufficient to allow a reasonable jury to find infringement.

-6-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**              **CASE NO. 05-00426-VAP (MRWx)**

Dr. Chronos also explicitly made clear his opinion that Micro elements in the Express stent comprise "connecting struts," and not "expansion struts." *See, e.g.*, June 30, 2015, Section 1, Draft Trial Tr. at 41:11-42:4 (referring to the zig-zag portion of a connecting strut as indicated by BSC counsel Mr. Han, "you'd have to say that was an expansion strut, and I wouldn't say that's an expansion strut; you would. And so – I mean, it looks, you know, like a piece of metal that's being bent, but I would say that is part of the micro-element which is a three-part connector. I wouldn't say it's an expansion strut."); June 30, 2015, Section 2, Draft Trial Tr. at 5:2-21 (nothing in the claims or claim constructions says all struts that expand are expansion struts).

Thus, contrary to BSC's assertion, there is more than sufficient evidence in the record for a reasonable jury to find by a preponderance of the evidence that the Express stent meets this limitation under the Court's constructions. Dr. Jang's burden was to show that BSC's Express stent included features to meet each element of the asserted claims, including each "connecting strut" and "expansion strut" element, and Dr. Jang has done so.

### C. Dr. Chronos Properly Applied the Court's Claim Constructions in his Analysis

In performing his infringement analysis in his November 22, 2013 Expert Report provided to Boston Scientific, in his deposition, and -- most importantly -- at trial, Dr. Chronos has properly applied the Court's claim constructions. Boston Scientific's JMOL motion simply points to other testimony given by Dr. Chronos to then argue without support that this further explanation was imported into his understanding of the claim constructions. Dkt. 638-1, at 7. However, the record is clear that Dr. Chronos reviewed and applied the Court's claim constructions in comparing the limitations of the asserted claims to the features of the accused products.

-7-

1 Dr. Chronos consistently testified that he reviewed and properly applied the Court's claim constructions throughout his infringement analysis. *See, e.g.*, June 26, 2015, Trial Tr. at 163:14-164:3 ("I reviewed Judge Phillips's' claim construction, which was sort of basically an indication as to how we were to interpret certain aspects of the claims."); *id.* at 165:11-15 ("I reviewed the whole patent. I read the whole patent from beginning to end. And then I specifically focused on the claims, Claim 1 and Claim 8, and I used the Court's construction – Judge Phillips's court constructions, claim constructions."); *id.* at 165:19-166:9 (reviewing Court's constructions); *id.* at 169:24-170:2 ("Throughout the whole case I used the claim constructions as construed by Judge Phillips"). More specifically, Dr. Chronos made clear that he strictly applied the Court's claim constructions to determine that Micro elements were connecting struts that connected Macro elements, which were expansion struts, and to determine that Micro elements were not expansion struts. *See, e.g.*, June 30, 2015, Section 1, Draft Trial Tr. at 42:5-43:4 ("I went through and I looked for the first thing on the left, which was an expansion column, and then I looked for another expansion column and what connected them."); *id.* at 47:21-48:11.

Dr. Chronos also made clear that he strictly applied the Court's claim constructions to determine that Micro elements were connecting struts that connected Macro elements, which were expansion struts, and to determine that Micro elements were not expansion struts. *See, e.g.*, *id.* at 42:5-43:4 ("I went through and I looked for the first thing on the left, which was an expansion column, and then I looked for another expansion column and what connected them."); *id.* at 47:21-48:11 ("it says, a structure formed of a plurality of expansion strut pairs, but I don't believe that [the Micro element] is a part of an expansion strut pair. I think it is part of the connecting column, the connecting struts, which is a proximal, distal, and intermediate part nonparallel with an offset."). Dr.

-8-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**      **CASE NO. 05-00426-VAP (MRWx)**

1  Chronos further testified that to find otherwise would be to ignore the architecture of the stent. *id.* at 49:21-51:21. Dr. Chronos further specifically denied adding to the Court's claim constructions in his literal infringement analysis. *id.* at 46:16-47:7 ("What I said is, I have applied what Judge Phillips construed as the Court constructions. I learned from that as to how to read and apply that wording to my read of the patent. I don't think I said I added to Judge Phillips's Court constructions, is what you're trying to say, I think.").

Hence, Dr. Jang has put forth substantial evidence that the Express stent meets the limitations that would allow a reasonable jury to conclude that BSC's Express stent literally infringes the Patent-in-Suit. Dr. Jang, therefore, requests that the Court deny BSC's motion for judgment as a matter of law on the issue of literal infringement.

### III. DR. JANG PRESENTED SIGNIFICANT EVIDENCE FROM WHICH THE JURY COULD REASONABLY CONCLUDE THAT THE EXPRESS STENT INFRINGES UNDER THE DOCTRINE OF EQUIVALENTS

BSC contends that there is no particularized testimony regarding Dr. Jang's application of the doctrine of equivalents to the "connecting strut." Dkt. 638-1, 8-10. Not so: Dr. Jang has easily met his burden to show infringement under the doctrine of equivalents. BSC's argument boils down to the fact that BSC disagrees with Dr. Jang's identification of the entire Micro element (straight and zig-zag portions) in its doctrine of equivalents analysis, and BSC's belief that Dr. Jang's experts instead should have focused on only the straight portions of the Micro element. BSC's JMOL motion thus attacks the conclusion of Dr. Jang's experts' analysis rather than the sufficiency of evidence and opinion presented to meet Dr. Jang's burden.

-9-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**  CASE NO. 05-00426-VAP (MRWx)

To support a finding of infringement under the doctrine of equivalents, Dr. Jang must either demonstrate: (1) an insubstantial difference between the claimed invention and the accused product; or (2) satisfy the function, way, result test. *Aquatex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). BSC implies that Dr. Jang failed to "provide particularized testimony and linking argument with respect to the function, way, result test." (Dkt. 638-1 at 8). However, "[e]quivalence... is not the prisoner of formula." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950). Indeed, "no specific formulation of evidence and argument is required" to prove infringement under the doctrine of equivalents. *See Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996) (rejecting Defendant's argument that plaintiff "did not provide sufficiently explicit witness testimony and 'linking attorney argument' on each of the four factual questions of function, way, result and 'why'").

Dr. Jang has clearly met his burden. Dr. Jang's experts both opined, and BSC did not dispute, that the Macro elements meet all "expansion strut" requirements of claims 1 and 8 of the '021 patent both literally and under the doctrine of equivalents. Dr. Jang's experts also both opined that the Micro elements meet all "connecting strut" requirements of the asserted claims under both theories.

### A. Dr. Jang's Expert Mr. Lee Provided Evidence From Which the Jury Could Reasonably Find that the Express Stent Infringes the '021 Patent Under the Doctrine of Equivalents

Boston Scientific fails to address the significant testimony of Mr. Lee demonstrating that the accused features of the Express stent infringe the connecting strut and connecting strut column limitations of the '021 patent. Mr. Lee provided specific explanation of the finite element analysis and benchtop testing he performed, and why it was relevant to this case:

-10-

**JANG OPP. TO
BSC JMOL ON INFRINGEMENT**          **CASE NO. 05-00426-VAP (MRWx)**

|   |   |
|---|---|
| 1 | This slide simply talks about a couple of ways to test the |
| 2 | product for function, way, result. The first test is bench |
| 3 | top testing. We talked about that a little bit before, but |
| 4 | what it means is you have a bench and on top of that |
| 5 | bench you may do some physical testing. Typical in a lab |
| 6 | environment where you have work benches everywhere, |
| 7 | this is a way to then take that product and test it for |
| 8 | whatever you're looking for.  The second method is finite |
| 9 | element analysis. And this is a computer program or |
| 10 | computer test to look at if you modeled this product and |
| 11 | you applied whatever parameters to it, does it function a |
| 12 | certain way that you're looking for.  So it's a computer |
| 13 | way to look at it very accurately. |

June 25, 2015, PM Session, Trial Tr. at 56:4-16.  Mr. Lee also specifically identified elements of claims 1 and 8 of the '021 Patent and analyzed the Express Stent for equivalent elements. *See, e.g.*, *id.* at 67:16-68:19 ("Q. Is this the stent that you actually tested to show infringement of Claims 1 and 8 under the Doctrine of Equivalents of the '021 patent? A. Yes. . . . Q And how did this help you reach your opinions that Claims 1 and 8 were infringed under the Doctrine of Equivalents by the Express Stent? A. Under the Doctrine of Equivalents I see it meets the same function in the function, way, result test. That is substantially the same thing as what is described in the Jang '021 patent."). This actual Express Stent was ultimately moved into evidence as Trial Exhibit 2822. *See, id.* at 68:18-21.  Mr. Lee further subjected a computer modeled Express Stent to a load to simulate the forces a blood vessel exerts on a stent. *id.* at 89:22-90:10.

After conducting two independent tests, Mr. Lee concluded that the Micro Elements – (including the straight, curvy, straight sections) are <u>insubstantially</u>

-11-

different from the connecting struts described in the '021 Patent. *See, e.g.*, *id.* at 93:17-20 ("Q. Do you have any doubts that the accused Express Stents infringe Claims 1 and 8 of the '021 patent under the Doctrine of Equivalents? A. I do not have any doubts."). Indeed, Mr. Lee testified that the three -part connecting strut, non-parallel, and offset -- as described in the accused Express Stent -- created the flexibility necessary to permit the Express Stent to bend so that it can navigate tortuous vessels. *See, e.g.*, June 26, 2015, Section 2, Draft Trial Tr. at 7:15-8:16.

### B. Dr. Jang's Expert Dr. Chronos Likewise Provided Evidence From Which the Jury Could Reasonably Find that the Express Stent Infringes the '021 Patent Under the Doctrine of Equivalents

Boston Scientific further fails to address the significant testimony of Dr. Chronos demonstrating that the accused features of the Express stent infringe the connecting strut and connecting strut column limitations of the '021 patent. *See, e.g.*, June 30, 2015, Section 1, Draft Trial Tr. at 29:7-17 ("And based on your personal experience as an interventional cardiologist, what was the result of the way in which flexibility was achieved in the Express Stent? A. I believe it was achieved by the new architecture, the application of a three-piece Micro element or three-piece connecting strut that offsets, that allowed this torque that you would see with the deployment of a stent, and allowed us very specifically to get down tortuous vessels and change the fate of patients who would either otherwise not be able to get a stent because their vessels were too tortuous or the lesions were too tight that we couldn't get into them."); June 30, 2015, Section 2, Draft Trial Tr. at 12:16-22.

Dr. Chronos specifically identified for the jury the individual portions of Dr. Jang's patented stent and the Express stent that he analyzed under the Doctrine of Equivalents. *See, e.g.*, June 30, 2015, Section 1, Draft Trial Tr. at 26:14-20 ("So here on the left of the slide it's the diagram from Dr. Jang's patent, Figure 9E,

-12-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**                                  **CASE NO. 05-00426-VAP (MRWx)**

which shows the connecting strut or what Boston calls the Micro element. And here is the actual stent itself. And as you see, the colored-in on the patent and then on the stent the equivalent pieces. As you can see, they are superimposed on the stent."). Dr. Chronos further specifically identified the portion of the Express stent being analyzed for infringement of the "connecting strut" element under the Doctrine of Equivalents, the entire Micro element. *See, e.g.*, June 26, 2015, Trial Tr. at 167:13-21 ("And all the aspects what I would say are the aspects of the micro-element are all in the same color.").

Dr. Jang's experts otherwise provided clear testimony that the Express stent infringes the '021 patent under the doctrine of equivalents.

**Specific "Function" Testimony:**

Dr. Chronos clearly provided his opinion regarding the function of the '021 patent's connecting strut and the Express stent's Micro elements. June 30, 2015, Section 1, Trial Tr. at 28:23-29:6 ("Q. And has your personal experience with the Express stent shown you anything about the Micro elements' function? A. I think overall the Express Stent is a very flexible stent. It certainly was a major leap forward at the time of when we were back in the late '90s and 2000s. . . . So it was very clear that a stent with this architecture provided us as cardiologists an increased flexible stent."); see, also, *id.* at 17:14-20 (Q. And what did the patent say about the function of the connecting strut? A. The patent says here – and I've outlined it – There is a need for a stent with a sufficient longitudinal flexibility in the unexpanded state to allow for navigation through tortuous vessels.); *id.* at 17:21-18:19. Dr. Chronos clearly provides his opinion as to how the features of the connecting strut in the Express stent, the Micro element sections, perform substantially the same function of the '021 patent's connecting strut. *See, e.g., id. at* 18:20-19:14 (BSC's marketing documents "clearly outlined their opinions on both flexibility and the features of the stent."); *id.* at 19:15-21:11 ("Micro element

-13-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**　　　　　　　　　　　　　　　　　　CASE NO. 05-00426-VAP (MRWx)

promotes flexibility enhancing deliverability. As I told you, a rather important feature for us as cardiologists to get this to the tortuous vessels."); *id.* at 22:13-14 ("short, narrowed Micro elements contribute to flexibility and conformability"); *id.* at 23:15-24:12 ("Micro elements provide flexibility on delivery; conformability on deployment.").

**Specific "Way" Testimony:**

Dr. Chronos clearly provided his opinion as to the way that the '021 patent's connecting struts, and the Express stent's Micro elements, perform the function he identified. *See, e.g.*, June 30, Section 1, Tr. at 29:7-17 ("And based on your personal experience as an interventional cardiologist, what was the result of the way in which flexibility was achieved in the Express Stent? A. I believe it was achieved by the new architecture, the application of a three-piece Micro element or three-piece connecting strut that offsets, that allowed this torque that you would see with the deployment of a stent, and allowed us very specifically to get down tortuous vessels and change the fate of patients who would either otherwise not be able to get a stent because their vessels were too tortuous or the lesions were too tight that we couldn't get into them.").

**Specific "Result" Testimony:**

Dr. Chronos also clearly provided his opinion as to the result achieved by the feature of the connecting strut in the Express stent, the Micro element, which performs substantially the same function of the '021 patent's connecting strut in substantially the same way. *See, e.g., id.* at 19:15-21:11 ("Micro element promotes flexibility enhancing deliverability. As I told you, a rather important feature for us as cardiologists to get this to the tortuous vessels."); *id.* at 23:15-25:10 ("They talk about the Tandem Architecture, a unique new design which achieves high radial force, flexibility, and excellent vessel support. And it's obviously achieved by the Micro elements, which they say bring flexibility during

-14-

delivery and conformability on deployment."); *id.* at 28:23-29:6 ("a stent with this architecture provided us as cardiologists an increased flexible stent.").

### C. Dr. Jang's Experts Were Not Required to Begin with BSC's "Straight Connector" Assumptions to Perform the Doctrine of Equivalents Analysis

Dr. Jang's experts provided their opinions that the multiple portions of the Micro element – the straight portions and the non-parallel portion connecting them – infringe the "connecting strut," "connecting column," and related limitations of claims 1 and 8 of Dr. Jang's '021 patent. BSC in its briefing essentially faults Dr. Jang's experts for not providing an opinion on infringement under the doctrine of equivalents applying Dr. Moore and BSC's view that the connecting strut in the Express stent is only one of the straight portions of the Micro element. Instead of responding to Dr. Jang's experts' actual analysis, BSC's expert Dr. Moore asserted without support that the feature of the Micro element that Dr. Chronos and Mr. Lee should have focused on was one of the single straight portions of the Micro element. June 30, 2015, PM Session, Trial Tr. at 14:15-15:24 ("Really, the only relevant issue is the straight connector of the Express, and does that operate like one of the angled connectors in the Jang '021 patent); *id.* 7:3-21, 8:17-9:4.

Dr. Jang was not, however, required to provide a doctrine of equivalents analysis based on BSC's strained, unsubstantiated view of the '021 Patent and the Express stent in order to meet its burden in this case. Dr. Jang's experts were not required to "re-start [their] testimony at square one when transitioning to a doctrine of equivalents analysis." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007). Instead, Mr. Lee and Dr. Chronos were allowed to explicitly or implicitly incorporate their earlier testimony into a doctrine of equivalents analysis. *Id*. When viewing the record as a whole, as it must be, the evidence presented establishes that the Express stent infringes the asserted claims

-15-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**                                                      **CASE NO. 05-00426-VAP (MRWx)**

under the doctrine of equivalents. In addition to presenting evidence from BSC's own witnesses, as well as its product literature and manuals, BSC's expert and Dr. Jang's experts expressly confirmed that the Express stent meets each and every element of those claims under the doctrine of equivalents.

Accordingly, as demonstrated above and otherwise on the record, Dr. Jang provided particularized testimony and linking argument as to the insubstantial differences between the '021 patent and the Express stent on a limitation-by-limitation basis. *AquaTex*, 479 F.3d at 1328. Dr. Jang has put forth substantial evidence that the Express stent meets the limitations that would allow a reasonable jury to conclude that BSC's Express stent infringes the Patent-in-Suit under the doctrine of equivalents. Dr. Jang, therefore, requests that the Court deny BSC's motion for judgment as a matter of law on the issue of infringement under the doctrine of equivalents.

## IV. CONCLUSION

For the reasons stated above, Dr. Jang respectfully requests this Court deny BSC's motion for judgment as a matter of law of no literal infringement and no infringement under the doctrine of equivalents.

Dated: July 5, 2015              KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: */s/ Jonathan K. Waldrop*
    JED I. BERGMAN
    JEFFREY J. TONEY
    JONATHAN K. WALDROP
    DARCY L. JONES
    ROBERT P. WATKINS III

Attorneys for Plaintiff G. David Jang, M.D.

-16-

**JANG OPP. TO**
**BSC JMOL ON INFRINGEMENT**                              **CASE NO. 05-00426-VAP (MRWx)**