**ARNOLD & PORTER LLP**
Wallace Wu (State Bar No. 220110)
Wallace.Wu@aporter.com
Amie Medley (State Bar No. 266586)
Amie.Medley@aporter.com
Allen Secretov (State Bar No. 301655)
Allen.Secretov@aporter.com
Los Angeles, California  90017-5844
Tel:  (213) 243-4000;  Fax: (213) 243-4199

Matthew Wolf (*pro hac vice*)
Matthew.Wolf@aporter.com
Edward Han (*pro hac vice*)
Ed.Han@aporter.com
John Nilsson *(pro hac vice)*
John.Nilsson@aporter.com
Sara P. Zogg *(pro hac vice)*
Sara.Zogg@aporter.com
555 Twelfth Street NW
Washington, DC  20004-1206
Tel:  (202) 942-5000; Fax:  (202) 942-5999

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| G. DAVID JANG, M.D.,<br><br>               Plaintiff,<br><br>     v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation,<br><br>               Defendants. | Case No.  EDCV 05-00426-VAP-MRW<br><br>**DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT**<br><br>**Date: August 18, 2015**<br>**Time: 9:00 a.m.**<br>**Dept.: Courtroom 2**<br>**Judge: Honorable Virginia A. Phillips** |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    PRELIMINARY STATEMENT ................................................................1

II.   ARGUMENT ........................................................................................2

    A.    BSC Has Not Waived, And Cannot Waive, The Ensnarement Issue .......3

    B.    Because Dr. Jang's Multiple Proposed Hypothetical Claims Are
        Improper The Court Can And Should Enter Judgment Of Non-
        Infringement In BSC's Favor .........................................................6

        1.    Dr. Jang's Improper Tactics ....................................................6

        2.    The Federal Circuit's Decision In Streamfeeder Prohibits
            Narrowing The Actual Claim To Form The Hypothetical Claim .....7

        3.    The Jury's Verdict Of No Literal Infringement Means
            That Express Cannot Infringe Dr. Jang's Narrowed
            Hypothetical Claim ...............................................................10

    C.    Any Hypothetical Claim Would Ensnare The Prior Art ........................11

        1.    The Correct Hypothetical Claim Ensnares The Prior Art ...............12

            a.    The Correct Hypothetical Claim Ensnares
                The Lau Patent ...........................................................13

            b.    The Correct Hypothetical Claim Also Ensnares
                The Brown Patent .......................................................16

            c.    The Hypothetical Claim Also Covers Wijay .........................17

        2.    A Hypothetical Claim Based On The Equivalents Theory
            Asserted By Dr. Jang At Trial Also Ensnares The Prior Art .........17

            a.    Dr. Jang's Hypothetical Claim From Trial Would
                Cover Lau ..................................................................20

            b.    Dr. Jang's Hypothetical Claim From Trial Would
                Cover Brown ..............................................................21

            c.    Dr. Jang's Hypothetical Claim From Trial Would
                Also Cover Wijay ........................................................22

        3.    Even Dr. Jang's Narrowed Hypothetical Claim Ensnares
            The Prior Art ......................................................................23

III.  CONCLUSION ....................................................................................25

**DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT**

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993)...................................................................................1

5

6

*Chet's Shoes, Inc. v. Kastner*,
710 F. Supp. 2d 436 (D. Vt. 2010) ........................................................22

7

8

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ...................................2, 3, 6, 10, 24

9

10

*EMI Group v. Cypress Semiconductor*,
268 F.3d 1342 (Fed. Cir. 2001) ..............................................................3

11

12

*EveryScape, Inc. v. Adobe Syst., Inc.*,
31 F. Supp. 3d 322 (D. Mass. 2014) ........................................................4

13

14

*Gemalto S.A. v. HTC Corp.*,
754 F.3d 1364 (Fed. Cir. 2014) ..............................................................1

15

16

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
339 U.S. 605 (1950).................................................................................1

17

18

*Int'l Visual Corp. v. Crown Metal Mfg. Co.*,
991 F.2d 768 (Fed. Cir. 1993) ..............................................................10

19

20

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
274 F.3d 1371 (Fed. Cir. 2001) ........................................................1, 3

21

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)...............................................................................24

22

23

*Marquip, Inc. v. Foster Am., Inc.*,
198 F.3d 1363 (Fed.Cir.1999) ........................................................1, 2, 3

24

25

*Mars, Inc. v. Coin Acceptors, Inc.*,
No. CIV-A-90-49-JCL, 1996 WL 34385063 (D.N.J. Sept. 3, 1996).................4

26

27

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ............................................................24

28

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*,
175 F.3d 974 (Fed. Cir. 1999) ..................................................*passim*

-ii-

*Swede Indus., Inc. v. Zebco Corp.*,
    26 F.3d 138 (Fed. Cir. 1994) ..................................................................15

*Touchcom, Inc. v. Bereskin & Parr*,
    790 F. Supp. 2d 435 (E.D. Tex. 2011) ...............................2, 3, 4, 6, 24

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*,
    904 F.2d 677 (Fed. Cir.1990) .......................................1, 3, 9, 20, 21

**STATUTES**

35 U.S.C. § 102 ..................................................................................24

35 U.S.C. § 103 ..................................................................................24

35 U.S.C. § 103(a) ...............................................................................3

**DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT**

## I.   PRELIMINARY STATEMENT

"It is well settled law that a patentee cannot assert a range of equivalents that encompasses the prior art." *Interactive Pictures Corp. v. Infinite Pictures, Inc*., 274 F.3d 1371, 1380 (Fed. Cir. 2001); *accord Gemalto S.A. v. HTC Corp*., 754 F.3d 1364, 1374 (Fed. Cir. 2014) ("[T]his court has consistently limited the doctrine of equivalents to prevent its application to ensnare prior art.") (quoting *Marquip, Inc. v. Foster Am., Inc.*, 198 F.3d 1363, 1367 (Fed.Cir.1999)).  The Federal Circuit has explained the rationale for this restriction on the scope of infringement under the doctrine of equivalents: "a patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Wilson Sporting Goods Co. v. David Geoffrey & Assoc*., 904 F.2d 677, 684 (Fed. Cir.1990) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 608 (1950)), *overruled in part on other grounds, Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 92 n.12 (1993).  Thus, ensnarement serves as a necessary check on the doctrine of equivalents, preventing a patentee from exploiting that doctrine to obtain claim coverage that never would have been allowed by the Patent Office.  *Id*.

Dr. Jang attempts to avoid the ensnarement question by mischaracterizing it as a defense that could be and has been waived.  Knowing full well these assertions are without merit, he has proposed (thus far) *eleven* hypothetical claims, each of which is *narrower* (in at least some respects) than the claims that the jury found not literally infringed by Express.  In so doing, he violates the Federal Circuit's explicit holding in *Streamfeeder, LLC v. Sure-Feed Sys., Inc*., 175 F.3d 974, 983 (Fed. Cir. 1999), that *the hypothetical claim may not be narrower than the actual claim in any way—* even if the patentee attempts to broaden the claim in some other way.  Thus, Dr. Jang has not even attempted to meet the threshold requirement of presenting a proper hypothetical claim to compare to the prior art.  Because Dr. Jang bears the burden of proving no ensnarement, and because he has shirked that burden, this Court can and should enter judgment in BSC's favor right now.

1    Dr. Jang's multiple asserted claims are, moreover, a transparent and improper

2    tactic designed to force BSC to devote time, space and argument to showing how

3    each of those claims, despite being narrower than the literal claim, nonetheless covers

4    the prior art.  BSC will show that (1) a hypothetical claim consistent with the jury's

5    finding of no literal infringement would cover the prior art, (2) a hypothetical claim

6    based on the improper equivalents theory advanced by Dr. Jang at trial would also

7    cover the prior art, and (3) even narrowed limitations of Dr. Jang's newly proposed

8    hypothetical claims would cover the prior art.  The differences between Express and

9    the prior art are simply too insignificant for Dr. Jang to meet his burden of

10   establishing that Express infringes claims 1 and 8 of the '021 patent without

11   ensnaring the prior art, even if he had attempted to do so.

12   **II.    ARGUMENT**

13       "[E]nsnarement is a question of law that must be decided by the Court, not a

14   jury." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 445 (E.D. Tex.

15   2011) (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314,

16   1323 (Fed. Cir. 2009)).  In deciding whether the patentee's theory of infringement

17   under the doctrine of equivalents impermissibly ensnares the prior art, the court

18   constructs "a hypothetical patent claim, sufficient in scope to cover literally the

19   accused device," *Marquip*, 198 F.3d at 1367 (citations omitted), as illustrated below.



-2-

Then it examines "whether the PTO would have allowed that hypothetical claim over the prior art at the time of invention." *Id*.  A hypothetical claim ensnares the prior art if the prior art falls within the claim—that is, the prior art discloses all of the limitations of the hypothetical claim just as the accused product does.  To make this determination, the district court may consider expert testimony and other extrinsic evidence.  *Touchcom*, 790 F. Supp. 2d at 445 (citing *DePuy Spine*, 567 F.3d at 1323).  If the hypothetical claim would have been anticipated by or obvious from the prior art, then the accused device does not infringe as a matter of law.  *Id*. (citing *DePuy Spine*, 567 F.3d at 1323).[1]

### A.   BSC Has Not Waived, And Cannot Waive, The Ensnarement Issue

Dr. Jang's "waiver" arguments are without merit.  Ensnarement is not an affirmative defense; it is a limitation that always governs the possible range of equivalents that a patentee may claim.  *Wilson Sporting Goods*, 904 F.2d at 684; *DePuy Spine,* 567 F.3d at 1323.  As noted above, the burden is not on BSC to prove that Dr. Jang's claims—as extended by the doctrine of equivalents—cover the prior art; the burden is on Dr. Jang to prove that they ***do not***.  *See, e.g., Depuy Spine*, 567 F.3d at 1325; *Streamfeeder*, 175 F.3d at 983; *Wilson Sporting Goods*, 904 F.2d at 685.  BSC's only burden is to identify prior art that would be ensnared under the patentee's theory of equivalents.  *See Interactive Pictures*, 274 F.3d at 1380; *Streamfeeder*, 175 F.3d at 983.  BSC did so in its March 17, 2014 pretrial memorandum:

> To the extent that Dr. Jang is permitted to introduce evidence that the
> Express stents include every limitation of each asserted claim under the

---

[1] "A prior art reference anticipates a patent claim if the reference discloses, either expressly or inherently, all of the limitations of the claim." *EMI Group v. Cypress Semiconductor*, 268 F.3d 1342, 1350 (Fed. Cir. 2001).  In addition, a claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).

---

-3-

1    doctrine of equivalents over BSC's objection … evidence of Lau

2    '154 … and the Brown and Wijay patents, will establish that the

3    Express stents are the same as what is in the prior art.  The doctrine of

4    equivalents may not be used to capture what was in the prior art.

5    (Dkt. # 491 at 8.)

6           The case law makes clear that a defendant such as BSC may present its

7    ensnarement theory relatively late in the case, in the context of dispositive motions or

8    even later.  *See Streamfeeder*, 175 F.3d at 980-81 (defendant first raised the issue of

9    ensnarement, which the court addressed on the merits, at summary judgment);

10   *EveryScape, Inc. v. Adobe Sys., Inc.*, 31 F. Supp. 3d 322, 323 (D. Mass. 2014). (same);

11   *Touchcom*, 790 F. Supp. 2d at 445-46 (allowing defendant to present prior art and

12   ensnarement theory raised for the first time in summary judgment reply); *Mars, Inc. v.*

13   *Coin Acceptors, Inc.*, No. CIV-A-90-49-JCL, 1996 WL 34385063, at *1 (D.N.J.

14   Sept. 3, 1996) (although defendant did not raise ensnarement in summary judgment

15   motion for non-infringement under doctrine of equivalents, court permitted defendant

16   to bring subsequent motion directed specifically to issue of ensnarement).

17          Here, BSC raised ensnarement once it finally became clear that Dr. Jang would

18   pursue an "equivalents" theory of breach of the Assignment Agreement.  Dr. Jang's

19   assertions that he "pled" the doctrine of equivalents or otherwise put BSC on notice

20   of this theory early in the case are simply false.  Dr. Jang's original May 19, 2005

21   Complaint did not mention the doctrine of equivalents—indeed, it did not mention

22   infringement at all.  (Dkt. # 1.)[2]  Neither Dr. Jang's March 7, 2006 Amended

23   Complaint (Dkt. # 50) nor his initial disclosures (served in September of 2005)

24

25

26   _____

27   [2] At the March 3, 2014 hearing on BSC's motion for summary judgment, Dr. Jang's
     Counsel stated, "[w]e have also pled Doctrine of Equivalence[.]"  (Ex. 1 at 38:6.)

28   There is absolutely no support in Dr. Jang's pleadings for this assertion.

-4-

**DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT**

mentioned infringement under the doctrine of equivalents.  (Ex. 2.)[3]  Dr. Jang's answer to BSC's Interrogatory No. 2 (served in October 2005), which purported to explain the basis for his assertion that BSC's Express stent was a "Contingent Payment Product" for purposes the Assignment Agreement, stated only that Express was "covered" by asserted claims of the '021 patent (and '743 patent)—again, never mentioning the doctrine of equivalents.  (Ex. 3 at 5.)  In response to BSC's Interrogatory No. 9, which asked whether Dr. Jang was asserting infringement under the doctrine of equivalents, Dr. Jang refused to say whether he was so doing, arguing that the interrogatory was "premature."  (*Id.* at 12.)

Dr. Jang subsequently updated his response to state, without explanation, that "each element of claims 1, 6, 7, 8, and 17 of United States Patent No. 5,922,021 and claims 1, 10, 11, 13, 16, 17, 18, 19, and 20 of United States Patent No. 5,954,743 is present literally or under the doctrine of equivalents in Defendants' Express family of stents[.]"  (Ex. 4 at 5.)  He never specified which elements of the accused products supposedly met the asserted claims under the doctrine or how.  In response to BSC's Interrogatory No. 10, which asked him to identify the elements of the asserted claims that were "contended to be present literally or under the doctrine of equivalents," Dr. Jang offered only a picture of an Express stent with numbered sections to provide "a general idea of where each element may be found"—without saying whether the element in question was present under the doctrine of equivalents.  (*Id.* at 7.)

In September 2006, Dr. Jang stipulated to summary judgment with respect to his claim that Express was covered by the '021 patent, so the issue of infringement (whether literal or under the doctrine of equivalents) was not part of the case again until after remand in 2013, when limited fact discovery resumed.  (Dkt. # 321.)  During that period, Dr. Jang never supplemented his prior interrogatory responses to identify which elements of the accused products supposedly met the asserted claims under the

---

[3] All exhibit numbers refer to the exhibits to the Declaration of Amie L. Medley ("Medley Decl.") unless otherwise noted.

doctrine of equivalents or how.  Instead, he first revisited the doctrine of equivalents in his November 2013 expert reports on infringement.  Because of the paucity of analysis concerning the doctrine of equivalents in those reports, BSC moved to exclude argument or testimony on that issue three months later.  (Dkt. No. 498.)  In so doing (just as it had in its pretrial memorandum filed the week before), BSC emphasized that "the doctrine of equivalents may not extend the scope of the claims to 'ensnare' the prior art." (*Id*. at 2.)  This was more than a year before the motions were granted and it finally became clear that Dr. Jang would be permitted to argue equivalents at trial. This record firmly establishes that, even if BSC could have waived the ensnarement issue, it did not do so.

> **B.  Because Dr. Jang's Multiple Proposed Hypothetical Claims Are Improper The Court Can And Should Enter Judgment Of Non-Infringement In BSC's Favor**

Dr. Jang's motive for attempting to avoid the ensnarement question is clear: With BSC having identified the applicable prior art, "the burden falls upon [Dr. Jang] … to establish that the asserted equivalency would not ensnare the prior art…." *Touchcom*, 790 F. Supp. 2d at 445 (citing *DePuy Spine*, 567 F.3d at 1323); *see Streamfeeder*, 175 F.3d at 981, 983.  Dr. Jang has not even attempted to meet this burden, instead asserting multiple, alternative "hypothetical claims" that are themselves legally improper.   Because it is Dr. Jang's burden to prove that the theory of equivalents he asserted does not ensnare the prior art, and because he has not even attempted to meet that burden, the Court can and should enter judgment of non-infringement in BSC's favor.

> ### 1.   Dr. Jang's Improper Tactics

From the outset, Dr. Jang has resisted presenting a hypothetical claim to compare to the prior art.  After repeated delays, the parties finally exchanged proposed

hypothetical claims on July 31.[4]  BSC proposed one hypothetical claim (for claim 1 and claim 8), which is discussed below.  (*See Infra* Part II.C.1.)  Dr. Jang presented six alternative hypothetical claims (for both claims 1 and 8).  The same day, BSC asked Dr. Jang to identify any authority for the proposition that a plaintiff is entitled to present multiple, alternative hypothetical claims.  (Ex. 6)  To date, he has not responded.  Instead, at 4:45p.m. EST on August 5, Dr. Jang proposed four new hypothetical claims (though only for claim 1).  Then, at 12:54 p.m. EST on August 6, Dr. Jang proposed yet another claim.  Thus, to date, Dr. Jang has proposed eleven alternative hypothetical claims (or claim combinations) without committing to any of them.  Dr. Jang's advancement of multiple, alternative hypothetical claims is improper and transparently designed to create a moving target, preventing the Court and BSC from devoting as much attention to any specific claim than they otherwise might.

## 2. The Federal Circuit's Decision In *Streamfeeder* Prohibits Narrowing The Actual Claim To Form The Hypothetical Claim

Dr. Jang's new hypothetical claims are also substantively improper.  Each of Dr. Jang's four hypothetical claims proposed on August 5 *narrows* claim 1 of the '021 patent in some respect (though three of them arguably broaden it in others).  His new hypothetical claims 1 and 2 add the limitation that the claimed connecting strut be "capable of lengthening in the direction of the longitudinal axis of the stent during flexing or bending of the stent," while broadening claim 1 to cover straight connecting struts (by eliminating the requirement of a "non-parallel" intermediate

---

[4] BSC first raised the issue of exchanging hypothetical claims on July 13, 2015.  (Ex. 5 at 3.)  On July 20, during a telephone call, BSC proposed a prompt exchange of hypothetical claims and, indeed, informed Dr. Jang's counsel of BSC's proposed hypothetical claim.  Dr. Jang refused to provide any date by which he would exchange hypothetical claims.  Medley Decl. at ¶ 7.  On July 24, BSC again proposed an exchange of hypothetical claims, following up with an email on Tuesday, July 28, but received no response.  (Ex. 6.)  BSC sent another follow up email on July 30.  Dr. Jang's counsel finally responded with an email on July 30, agreeing to exchange hypothetical claims on July 31, 2015.  *Id.*

**DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT**

section).  Similarly, his new hypothetical claim 4 adds the limitation that the connect strut column be "configured to provide increased flexibility compared to the first and second expansion columns" (while again broadening claim 1 to cover both straight connecting struts).[5]  Dr. Jang's new hypothetical claim 3 merely imposes the additional limitation that the connecting strut must have "a width less than the widths of the first and second expansion struts" without broadening the claim at all.[6]

In *Streamfeeder*, the Federal Circuit expressly prohibited a patentee's attempt to craft a hypothetical claim that is narrower than the actual claim.  The patent in that case addressed a device for feeding sheets of paper from the bottom of a stack. *Streamfeeder*, 175 F.3d at 975-76.  A "gate" prevented sheets other than the bottom-most sheet from being fed onto the belt.  *Id.* at 978.  The patentee insisted that the accused "gate," though different than the claimed one, was "equivalent."  *Id*. at 980. The accused infringer argued at summary judgment that (if the claim coverage were expanded to cover its gate) it would also ensnare the prior art.  *Id*.  In response, the patentee presented a hypothetical claim that—like Dr. Jang's new hypothetical claims 1, 2 and 4—narrowed the actual claim in one respect while broadening it in another. *Streamfeeder*, 175 F.3d at 982.  In particular, the patentee narrowed the crucial gate limitation, while broadening certain limitations having to with the allowable friction of the system.  *Id*.  The court thus concluded "that the district court erred as a matter of law in adopting Streamfeeder's hypothetical claim, because ***such a claim impermissibly narrowed*** the gate member limitation."  *Id*. at 983 (emphasis added).

Dr. Jang's newly proposed hypothetical claims 1, 2 and 4 are conceptually identical to the patentee's improper hypothetical claim in *Streamfeeder*, which engaged

---

[5] Dr. Jang's original hypothetical claims 5 and 6 also added functional limitations to the claims, requiring that the connecting strut add to flexibility.  (Ex. 6)

[6] Dr. Jang's original hypothetical claims 1, 2, 3, and 4 similarly added structural limitations to the claims, requiring that the connecting strut be narrower in width than the expansion struts that form the claimed expansion strut pairs.  (*Id*.)

in "narrowing and expanding the claims at the same time." *Id*. Although hypothetical claims arguably broaden claim 1 to cover connecting struts with both non-parallel intermediate segments and straight ones, they nonetheless add functional limitations, requiring that the connecting struts (hypothetical claims 1 and 2) or connecting strut columns (hypothetical claim 4) make the stent more flexible before deployment. *Streamfeeder* explicitly rejects such attempts to "cut and trim, expanding here, and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art." *Id*.

Dr. Jang's hypothetical claim 3 goes even further. Here, Dr. Jang has not attempted to broaden the actual claims in any respect; he has sought only to narrow them, adding the structural limitation that the connecting struts must be narrower in width than expansion struts. Similarly, all of his versions of dependent claim 8 are narrower than the original claim because, as shown above, every version of Dr. Jang's hypothetical claim 1 imposes additional narrowing limitations, which are incorporated into dependent claim 8.[7] The hypothetical claim analysis does not, however, permit Dr. Jang to *narrow* the claims to avoid the prior art. *Id*. ("A hypothetical claim analysis is not an opportunity to freely redraft granted claims.").

---

[7] Although it may seem counterintuitive, this Court must consider whether claim 8 (as broadened through the doctrine of equivalents) ensnares the prior art, even if it determines that claim 1 ensnares the prior art (and, thus, that BSC does not infringe the independent claim from which claim 8 depends). This is because, as a dependent claim, claim 8 is presumptively narrower than claim 1. It is theoretically possible (though not the case here) that a broader independent claim may ensnare the prior art (and thus may not be infringed under the doctrine of equivalents) while its narrower dependent claim does not. *Streamfeeder*, 175 F.3d at 985; *Wilson Sporting Goods*, 904 F.2d at 685-86.

### 3. The Jury's Verdict Of No Literal Infringement Means That Express Cannot Infringe Dr. Jang's Narrowed Hypothetical Claim

Dr. Jang's proposed hypothetical claims fail for the additional reason that they are inconsistent with the jury's finding of no literal infringement. The fundamental premise of any proper hypothetical claim is that it must be enlarged so as to literally cover the accuse product. *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (a hypothetical claim must enlarge the scope of an issued claim so that it literally covers an accused device). The Court then determines whether, so enlarged, the claim also covers the prior art. *See DePuy Spine*, 567 F.3d at 1323-24.

The jury's verdict that Express did not literally infringe actual claims 1 and 8 necessarily means that it cannot infringe Dr. Jang's proposed hypothetical claims. In returning a verdict of no literal infringement, the jury ratified BSC's understanding of the Express stent—BSC's only theory of non-infringement. Specifically, the jury necessarily found that the Express stent cannot have a "first connecting strut intermediate section [that is] non-parallel to the first connecting strut proximal and distal sections"—regardless of whether the connecting strut is wide or thin, flexible or inflexible. ***Nor can it have a connecting strut that connects expansion strut pairs that are longitudinally offset from one another, in a peak to peak configuration***. Thus, the proper hypothetical claim analysis here should look something like this.



Dr. Jang's hypothetical claims, however, continue to require and (thus be narrowed by) limitations that the jury necessarily found to be absent from Express, such as a non-parallel connecting strut in the case of his hypothetical claim 3, expansion strut pairs connected in a peak-to-valley, longitudinally offset configuration in the case of his hypothetical claims 1, 2 and 4, and the radii of curvature of claim 8 (which Dr. Jang refuses to modify at all).







By continuing to include limitations that the jury found not to be literally infringed, Dr. Jang has ignored the threshold requirement that the hypothetical claim must be broad enough to cover the accused product.

In sum, Dr. Jang has not attempted to meet even the threshold requirement of presenting a hypothetical claim to compare to the prior art. Forced to do so, he has presented multiple hypothetical claims that are narrower than the claims the jury found not literally infringed. Because Dr. Jang has shirked his burden of proving no ensnarement, the Court should enter judgment of non-infringement as a matter of law.

## C.    Any Hypothetical Claim Would Ensnare The Prior Art

Any permutation of a hypothetical claim in this case—including a proper hypothetical claim, Dr. Jang's improper equivalents theory at trial, or even the

improperly narrowed hypothetical claims that Dr. Jang has advanced for purposes of this hearing—would ensnare the prior art.

### 1.     The Correct Hypothetical Claim Ensnares The Prior Art

Even if the Court were to do Dr. Jang's work for him, and construct a proper hypothetical claim consistent with the jury's verdict of no literal infringement, a judgment of non-infringement would still be warranted.  Based on the jury's finding of no literal infringement, and BSC's only theory of non-infringement advanced at trial, a proper hypothetical claim would read as follows:

1.     A stent in a non-expanded state, comprising: a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair. a plurality of the first expansion strut pair forming a first expansion column [the "literal first expansion column limitation"];

a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal *or distal* end of the second expansion strut pair. a plurality of the second expansion strut pair forming a second expansion column; a first connecting strut including a first connecting strut proximal section. a first connecting strut distal section and a first connecting strut intermediate section, the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and the first connecting strut distal section being coupled *to the distal or* proximal end of the second expansion strut pair of the second expansion column, a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column, the first connecting strut intermediate section being either nonparallel

-12-

to the first connecting strut proximal and distal sections **or parallel to them**;
wherein the first expansion strut of the first expansion strut pair in the first
expansion column has a longitudinal axis offset from **or parallel** to a
longitudinal axis of the first expansion strut of the second expansion strut pair
in the second expansion column.8. The stent of claim 1. wherein **there is either**
a first radius of curvature is formed where the first connecting strut proximal
section is coupled to the first connecting strut intermediate section **or the two
are straight** and **there is either** a second radius of curvature is formed where
the first connecting strut distal section is coupled to the first connecting strut
intermediate section **or the two are straight**.

Only if these changes were to be made to claims 1 and 8 could the jury's verdict of no
literal infringement be reconciled with its verdict of infringement under the doctrine of
equivalents.  So revised, however, the hypothetical claim clearly covers U.S. Patent
No. 5,514,154 ("Lau"), U.S. Patent No. 6,818,014 ("Brown"), and U.S. Patent
No. 6,203,569 ("Wijay").  (Exs. 7, 8 & 9.)

### a.    The Correct Hypothetical Claim Ensnares The Lau Patent

As shown in the figure (based on Figure 5 of Lau) below, Lau shows a stent
in an unexpanded state.  On the left, two expansion struts are joined at their distal
(or right) end by a joining strut.  A plurality of these expansion strut pairs form a
first expansion column.  To the right is another expansion column.  The connector
between them is straight, which must be within the scope of the hypothetical claim
for it to cover Express.  The hypothetical claim also must cover expansion strut
pairs that are connected in a parallel fashion, as well as longitudinally offset, to
cover Express.  The expansion strut pairs are joined by the connector in a peak-to-
valley (distal to distal end) configuration, which must be within the hypothetical
claim for it to cover Express.  A plurality of these connecting struts form a first
connecting strut column.  They either may or may not possess first and second

radii of curvature (otherwise hypothetical claim 8 could not cover Express).



Thus, as shown above (and as Dr. Moore will explain in more detail at the hearing), Figure 5 of Lau falls squarely within the broadened hypothetical claim that was necessary for the jury to find infringement under the doctrine of equivalents in the absence of literal infringement.  So too does Figure 11, as shown below.  The only material difference is that, in Figure 11, the distal (or right) end of the First Expansion Strut Pair is connected to the proximal (or left) Second Expansion Strut

DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT

1   Pair, as recited in the original claim.[8]



A 1st expansion strut pair

A 2nd expansion strut pair (joined at distal or proximal end)

A plurality of 1st expansion strut pairs (1st expansion column)

A plurality of 2nd expansion strut pairs (2nd expansion column)

A "connecting strut," whose intermediate section may be parallel or non-parallel, and which may connect expansion strut pairs at the proximal or distal end in parallel or offset fashion

The "connecting strut" may be either straight or have multiple radii of curvature (claim 8)

---

[8] To the extent that Figure 11 does not visually depict more than one connecting strut in a connecting strut column, the Lau patent itself explicitly states that the number of connecting struts may be varied: "The number and location of elements interconnecting adjacent cylindrical elements can be varied in order to develop the desired longitudinal flexibility in the stent structure both in the unexpanded as well as the expanded condition."  (Ex. 7 at 3:5-9.)  *See Swede Indus., Inc. v. Zebco Corp.*, 26 F.3d 138 n. 2 (Fed. Cir. 1994) (all views of a mechanism are necessary to determine what is taught by the four corners of the reference and that using a single figure in isolation from the rest of the reference is erroneous).

### b.  The Correct Hypothetical Claim Also Ensnares The Brown Patent

This hypothetical claim also covers the Brown patent, as shown below.



Indeed, this figure taken from the Brown patent shows both the "peak to peak" connection and the "longitudinally offset" expansion strut pairs set forth in the original claim.  The sole distinction is that these expansion strut pairs are connected by a straight connecting strut, rather than a connecting strut with a non-parallel intermediate section.  Because, however, the jury necessarily found that such a straight connector was not within the literal scope of the claim, the hypothetical claim must be expanded to cover it.  So expanded, the hypothetical claim covers Brown, just as it covers Lau.

### c.   The Hypothetical Claim Also Covers Wijay

Finally, the hypothetical claim also clearly covers the Wijay patent.  Indeed, as shown below, Wijay possesses every element of original claims 1 and 8, even before they are expanded to form "hypothetical claims" that would cover Express.[9]



It goes without saying, then, that Wijay also discloses every element of broadened, hypothetical versions of these claims.

### 2.   A Hypothetical Claim Based On The Equivalents Theory Asserted By Dr. Jang At Trial Also Ensnares The Prior Art

If the Court were to base the hypothetical claim on the equivalents theory that Dr. Jang advanced at trial, it would also readily cover the prior art.  At trial, Dr. Jang advanced the equivalents argument that the micro-elements and straight connectors of the accused product were equivalent to "connecting strut columns":

---

[9] When confronted with Wijay during his deposition, Dr. Jang himself acknowledged that it contains all the requirements of claim 1 of the '021 patent, even before broadening the claim to form a hypothetical claim.  (Ex. 10 at 476:21-479:17.)

- "The evidence will show that their micro-element is equivalent—or is the same thing as Dr. Jang's connecting strut column." (6-24-2015 a.m. Tr. at 49:18-21 (emphasis added).)

- "[Mr. Lee] will show that he did extensive testing on the Express Stent and he found, he concluded—and I'll show you how and why—but he concluded the micro-elements, the part in the middle that's colored, is in fact the connecting column and, in fact, performs exactly the same function—or substantially the same function—that's a legal test— substantially the same function and substantially the same way." (6-24-2015 a.m. Tr. at 51:16-23 (emphasis added).)

Mr. Lee and Dr. Chronos thus took the position that pieces of the micro element were equivalent to the "connecting struts" of the '021 patent:

- Q What if one was to say, look, the Micro element, that is not a three-piece connector but some different configuration, how would that impact your analysis or opinions on the Doctrine of Equivalents? A Yeah, under the Doctrine of Equivalents it is function, way, result, even if that was not found literally. This—this test, this different test is a way to show does this perform substantially the same thing? Is it substantially the same function in substantially the same way to achieve substantially the same result." (6-25-2015 p.m. Tr. at 77:4-13 (Mr. Lee).)

- Q. In your opinion as an interventional cardiologist, is there a substantial difference between the connecting strut and Dr. Jang's '021 Patent and the connecting strut in Boston Scientific's Express Stent? A. The connecting struts in Boston Scientific's Express Stent, which they call *the Micro-element*, in my opinion *is the same as the three-part connector with an offset that is outlined in Dr. Jang's patent*. (6-30-2015 a.m. Tr. at 20:6-13 (Dr. Chronos) (emphasis added).)

-18-

In closing, Dr. Jang made the same argument: "[I]t's clear from Boston Scientific's own words that they're there, that the micro- element is an equivalent, at least the equivalent of the connecting strut columns." (7-7-2015 Tr. at 55:21-24.)

As BSC explained in its motion for judgment as a matter of law, this argument was improper because it allowed Dr. Jang to combine a structure in the accused device which met another element literally (the micro-element which met the definition of an expansion column, as the jury necessarily found) with a non-infringing element (the straight connector). (Dkt. # 638 at 8-10.) Putting aside the impropriety of this theory, however, the hypothetical claims 1 and 8 embodying it are clearly disclosed in the prior art. Those hypothetical claims would read as follows:

1.  A stent in a non-expanded state, comprising:  a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal end of the second expansion strut pair. a plurality of the second expansion strut pair forming a second expansion column; a first connecting strut including a first connecting strut proximal section. a first connecting strut distal section and a first connecting strut intermediate section, the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column, a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column, the first connecting strut intermediate section being nonparallel to the first connecting strut proximal and distal sections; ***the first connecting strut potentially comprising one or more expansion strut pairs; the first connecting strut column potentially comprising one or more expansion columns;***

-19-

wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset from *or parallel to* a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.

As shown below, the hypothetical claims based on Dr. Jang's equivalents theory at trial cover Lau, Brown, and Wijay.

### a. Dr. Jang's Hypothetical Claim From Trial Would Cover Lau

If the "connecting struts" of claim 1 can contain expansion strut pairs, as Dr. Jang asserted for purposes of equivalents, then it covers Lau's Figure 11. On the left, there is a first expansion column composed of a plurality of first expansion strut pairs (joined at the distal, or right, end). On the right, there is a second expansion column (joined at the proximal, or left, end). They are connected by a part of the stent that meets all of the requirements of the hypothetical claims 1 and 8—having an intermediate section that is "non-parallel" to the proximal (left) and distal sections, connecting expansion strut pairs that are longitudinally offset, and containing radii of curvatures where the distal and proximal sections of the connecting strut meet the intermediate section (claim 8). *See Wilson Sporting Goods*, 904 F.2d at 685-86.



### b.   Dr. Jang's Hypothetical Claim From Trial Would Cover Brown

The hypothetical claims based on Dr. Jang's equivalents theory at trial also cover the Brown patent, as shown below.  Again, on the left, there is a first expansion column composed of a plurality of first expansion strut pairs (joined at the distal, or right, end).  On the right, there is again a second expansion column (joined at the proximal, or left end).  As in the case of Lau, they are connected by a part of the stent that meets all of the requirements of the hypothetical claims 1 and 8; it (1) has an intermediate section that is "non-parallel" to the proximal (left) and distal sections; (2) it connects expansion strut pairs that are longitudinally offset.  And it contains radii of curvature sections whether the distal and proximal portions of the connecting strut meet the intermediate section (claim 8).  *See Wilson Sporting Goods*, 904 F.2d at 685-86.  There are, moreover, multiple such struts forming a connecting strut column.



-21-

### c.   Dr. Jang's Hypothetical Claim From Trial Would Also Cover Wijay

Finally, the hypothetical claims unequivocally cover Wijay, as shown below:



In sum, Dr. Jang advanced a theory of equivalents at trial that allowed connecting struts to include expansion strut pairs and connecting strut columns to include expansion columns.  The jury endorsed that theory of equivalents.  In so doing, it placed on Dr. Jang the obligation to show that his theory does not also ensnare the prior art.  Because he cannot do so, there can be no infringement under the doctrine of equivalents.  *Chet's Shoes, Inc. v. Kastner*, 710 F. Supp. 2d 436, 450 (D. Vt. 2010) ("Such a broad view of the '595 patent's main limitation would result in large swaths of the prior art being ensnared, and the doctrine of equivalents cannot be applied to reach this result.").[10]

---

[10] At 12:54 p.m. on August 6, 2015, the afternoon on which the parties' pre-hearing briefs were due, Dr. Jang notified BSC of his *eleventh* proposed hypothetical claim, which consisted solely of adding the words "at least" before the limitations describing the first connecting strut.  In the few hours that BSC has had to analyze this new hypothetical claim, it appears that it is co-extensive with the literal infringement theory that Dr. Jang presented to the jury; because the jury has already rejected that theory, that hypothetical claim is obviously both futile and improper.  To the extent

Footnote continued on next page

**DEFENDANTS' PRE-HEARING BRIEF ON ENSNAREMENT**

### 3.     Even Dr. Jang's Narrowed Hypothetical Claim Ensnares The Prior Art

Finally, even if Dr. Jang's narrowed hypothetical claims were proper (which they are not), they would still cover the prior art.  The notion of using connecting struts to form a more flexible stent was well-known in the prior art.  Like Dr. Jang's '021 patent, the Lau patent was created to address a need for a more flexible stent: "What has been needed and heretofore unavailable is a stent which has a high degree of flexibility so that it can be advanced through tortuous passageways and can be readily expanded[.]"  (Ex. 7 Lau at 1:44-46.)  Similarly, the Brown patent discloses a "longitudinally flexible expandable stent."  Through its arrangement of differently sized expansion elements (as in the Express stent) and connecting struts, Brown discloses "a tubular expandable stent of improved longitudinal flexibility."  (Ex. 8 at 1:11-12.)  Thus, Brown reads directly on Dr. Jang's proposed hypothetical claims 1, 2 and 4, which require only: (1) first expansion strut pairs in a first expansion column (closed at their distal or right end); (2) second expansion strut pairs in a second expansion column (closed at their proximal or left end); (3) connecting struts (straight or with a non-parallel intermediate section) connecting longitudinally offset expansion strut pairs and forming a "connecting strut column"; and (4) longitudinal flexibility.

Wijay too discloses all of these elements, including a "flexible stent."  Indeed, that is the patent's title.  The patent explains how the stent's connecting struts (which it calls "cross-ties") contribute to flexibility in precisely the same manner as the connecting struts of the '021 patent supposedly do—by having "bends" or curvatures:

---

Footnote continued from previous page

that Dr. Jang contends that this latest hypothetical claim is broader than the literal infringement theory considered by the jury, it would align with Dr. Jang's equivalence theory at trial, under which the connecting struts could include portions of expansion columns.  This hypothetical claim ensnares the prior art for the same reasons Dr. Jang's equivalence theory at trial ensnares the prior art, as shown above in section C.2.

1  "[t]he crossties [] have flexibility by having at least one bend." (Ex. 9 Abstract.)

2  Indeed, in the preferred embodiment of the invention, Wijay's "crossties 16 have

3  flexibility in that they have **at least one bend** 18, ***while a double bend, such as***

4  ***including 18 and 20, is preferred*** for the construction of the crossties 16." (*Id.* at

5  4:55-59 (emphasis added).)

6        Wijay also teaches that the various components of the stent can be made larger,

7  smaller, or narrower (as required in Dr. Jang's hypothetical claim 2) to accommodate

8  the needs of the user: "[E]ach of the bends 12 may be identical to each other. Each of

9  the bends 14 may be identical to each other. Each bend 12 may be identical to each

10  bend 14. One bend 12 can be different from another bend 12, which is in turn also

11  different from another bend 14, or any combinations of the above." (*Id.* at 4:47-52.)

12  Moreover, even if Wijay did not explicitly disclose this feature, Dr. Jang's proposed

13  hypothetical claim 2 would still have been obvious to one of ordinary skill in the art at

14  the time of the supposed invention in April of 1996. *See Streamfeeder*, 175 F.3d at 982

15  (hypothetical claim ensnared the prior art, even when no single prior art reference

16  disclosed all elements, because any undisclosed elements would have been obvious to

17  one of ordinary skill in the art); *Touchcom*, 790 F. Supp. 2d at 445-46 ("If, given the

18  state of the prior art, the hypothetical claim would be unpatentable due to either

19  anticipation (*see* 35 U.S.C. § 102), **or obviousness** (*see* 35 U.S.C. § 103) under the

20  prior art, then the accused device will be held non-infringing as a matter of law.")

21  (citing *DePuy Spine*, 567 F.3d at 1323) (emphasis added).

22        To the extent necessary, Dr. Moore will testify at the August 18, 2015

23  evidentiary hearing that making a connecting strut narrower than expansion strut pairs

24  that it connected would have been a predictable variation and thus obvious to one of

25  ordinary skill in the art in April of 1996. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,

26  401 (2007) ("If a person of ordinary skill can implement a predictable variation, §103

27  likely bars its patentability."); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333,

28  1344 (Fed. Cir. 2013) ("[N]othing in the record indicates that confining the otherwise

-24-

1  obvious 'gel composition' and 'fabric' limitations to the recited numerical limits in the

2  disputed dependent claims was anything other than the exercise of routine skill.  Each

3  of these features were well-known in the prior art and their use would have been

4  predictable by one of ordinary skill in the art.").

5  **III.   CONCLUSION**

6        For the reasons set forth herein and/or to be shown at the hearing, the Court

7  should enter judgment that BSC's Express stent does not infringe Dr. Jang's patent

8  under the doctrine of equivalents as a matter of law.

9

10  Dated:  August 6, 2015           By:  */s/ Amie Medley*

          Wallace Wu (State Bar No. 220110)

11            Wallace.Wu@aporter.com

          Amie Medley (State Bar No. 266586)

12            Amie.Medley@aporter.com

          Allen Secretov (State Bar No. 301655)

13            Allen.Secretov@aporter.com

14            777 South Figueroa Street

          Los Angeles, California 90017-5844

15            Tel: (213) 243-4000

16            Fax: (213) 243-4199

17

18            Matthew Wolf (*pro hac vice*)

          Matthew.Wolf@aporter.com

19            Edward Han (*pro hac vice*)

20            Ed.Han@aporter.com

          John Nilsson (*pro hac vice*)

21            John.Nilsson@aporter.com

22            **ARNOLD & PORTER LLP**

          555 Twelfth Street NW

23            Washington, DC 20004-1206

24            Telephone: 202.942.5000

          Facsimile: 202.942.5999

25

26            *Attorneys for Defendants*

          *Boston Scientific Corporation and*

27            *Boston Scientific Scimed, Inc.*

28