**ARNOLD & PORTER LLP**
Wallace Wu (State Bar No. 220110)
Wallace.Wu@aporter.com
Amie Medley (State Bar No. 266586)
Amie.Medley@aporter.com
Allen Secretov (State Bar No. 301655)
Allen.Secretov@aporter.com
777 South Figueroa Street
Los Angeles, California 90017-5844
Tel: (213) 243-4000; Fax: (213) 243-4199

Matthew Wolf (*pro hac vice*)
Matthew.Wolf@aporter.com
Edward Han (*pro hac vice*)
Ed.Han@aporter.com
John Nilsson (*pro hac vice*)
John.Nilsson@aporter.com
555 Twelfth Street NW
Washington, DC 20004-1206
Tel: (202) 942-5000; Fax: (202) 942-5999

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| G. DAVID JANG, M.D.,<br><br>           Plaintiff,<br><br>    v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; and SCIMED LIFE SYSTEMS, INC., a Minnesota corporation,<br><br>           Defendants. | Case No. EDCV 05-00426-VAP-MRW<br><br>**DEFENDANTS' CLOSING BRIEF ON ENSNAREMENT**<br><br>**Date:**    **August 25, 2015**<br>**Time:**    **N/A**<br>**Dept.:**    **Courtroom 2**<br>**Judge:**    **Honorable Virginia A. Phillips** |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT ........................................................................................ 2

    A.    Dr. Jang Failed To Meet His Burden Of Presenting Proper
           Hypothetical Claims................................................................... 2

         1.    Jang's Hypothetical Claim No. 3 Narrows The Scope Of
                  The Claims ...................................................................... 3

         2.    Jang's Hypothetical Claim No. 5 Fails To Broaden The
                  Scope Of The Claim ...................................................... 5

    B.    BSC Presented The Only Proper Hypothetical Claim, Which
           Ensnares The Prior Art................................................................ 6

    C.    The Equivalents Theory That Dr. Jang Advanced At Trial
           Ensnares The Prior Art.............................................................. 10

    D.    Even Dr. Jang's Improper Hypothetical Claims Ensnare Wijay ........ 12

         1.    Claims 1 And 8 Are Not Limited To Tubular Stents ............... 13

         2.    Dr. Jang Failed To Prove That Wijay Is Not Enabled............. 13

         3.    Dr. Jang's Attempt To "Swear Behind" Wijay Fails .............. 15

    E.    Dr. Jang's "Waiver" Arguments Lack Merit ..................................... 17

III.    CONCLUSION ................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003) ............................................................. 14

*In re Antor Media Corp.*,
    689 F.3d 1282 (Fed. Cir. 2012) ............................................................. 14

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989) ............................................................. 14

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
    707 F.3d 1342 (Fed. Cir. 2013) ............................................................... 3

*Coleman v. Dines*,
    754 F.2d 353 (Fed. Cir. 1985) ........................................................ 15, 16

*Davis v. Reddy*,
    620 F.2d 885 (C.C.P.A. 1980) ............................................................... 16

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009) ......................................... 1, 6, 17, 19

*EveryScape, Inc. v. Adobe Sys., Inc.*,
    31 F. Supp. 3d 322 ............................................................................... 19

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000) ............................................................. 19

*Gunter v. Stream*,
    573 F.2d 77 (C.C.P.A. 1978) ................................................................ 16

*Impax Labs., Inc. v. Aventis Pharm., Inc.*,
    545 F.3d 1312 (Fed. Cir. 2008) ............................................................. 14

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) ............................................................. 18

*Int'l Visual Corp. v. Crown Metal Mfg. Co.*,
    991 F.2d 768 (Fed. Cir. 1993) ........................................................ 1, 6, 7

*Izume Products Co. v. Koninklijke Philips Electronics N.V.*,
    315 Supp. 2d 589 (D. Del. 2004) .......................................................... 16

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*,
    15 F. Supp. 3d 499 (D. Del 2014) ................................................... 18, 19

*Mars, Inc. v. Coin Acceptors, Inc.*,
   No. CIV-A-90-49-JCL, 1996 WL 34385063 (D.N.J. Sept. 3, 1996)...................................... 19

*Mergenthaler v. Scudder*,
   11 App. D.C. 264 (D.C. Cir. 1897) ................................................................... 16

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996)........................................................................ 17

*Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen. Corp.*,
   424 F.3d 1347 (Fed. Cir. 2005)...................................................................... 14

*Rasmusson v. SmithKline Beecham Corp.*,
   413 F.3d 1318 (Fed. Cir. 2005)...................................................................... 15

*In re Sasse*,
   629 F.2d 675 (C.C.P.A. 1980) ........................................................................ 14

*Streamfeeder, LLC v. Sure Sys., Inc.*,
   175 F.3d 974 (Fed. Cir. 1999)....................................................... 1, 3, 5, 18, 19

*Touchcom, Inc. v. Bereskin & Parr*,
   790 F. Supp. 2d 425 (E.D. Tex. 2011) .......................................................... 19

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)............................................................................................ 3

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*,
   904 F.2d 677 (Fed. Cir. 1990)..................................................................... 1, 2, 7

**STATUTES**

35 U.S.C. § 112 ............................................................................................. 14

- iii -

# I.  INTRODUCTION

Dr. Jang's proposed hypothetical claims and his arguments before and during the ensnarement hearing demonstrate a lack of respect for and defiance of the jury's verdict of no literal infringement of claims 1 and 8 of the '021 patent.  Protesting that the jury's verdict is somehow incomprehensible, he ultimately chose to rely on two hypothetical claims, both of which contained limitations that the jury must have found Express not to infringe.  Indeed, the second (his Hypothetical Claim No. 5) contains *every* requirement of the original claims.  Thus, because his hypothetical claims do not broaden the claims beyond their literal scope, they are improper under *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990), and *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993).  Moreover, as Mr. Lee admitted at the hearing, Dr. Jang's Hypothetical Claim No. 3 actually attempts to *narrow* the claims in a crucial respect in order to sidestep the prior art, in violation of *Streamfeeder, LLC v. Sure Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999).  (Hr'g Tr. Part 2, 12:1-4 ("Q: The red language narrows the claim to exclude, for example, Lau and Brown, right?  A: Ah, that may be correct, yes."))  Just as he has ignored the jury's verdict of no literal infringement, Dr. Jang has ignored the Federal Circuit's decisions entirely.  Because it is Dr. Jang's burden to "persuad[e] the court that the hypothetical claim is patentable over the prior art," *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 567 F.3d 1314,1325 (Fed. Cir. 2009), judgment of non-infringement should be entered in BSC's favor as a matter of law.

Even though it was Dr. Jang's burden (one that he failed to meet), BSC nonetheless presented a proper (broader) hypothetical claim, which accounted for the jury's verdict of no literal infringement and removed the limitations that the jury must have found unmet.  In unrebutted testimony, Dr. Moore explained how this hypothetical claim ensnared U.S. 5,514,154 ("Lau") (Trial Ex. 1106), U.S.

- 1 -

6,818,014 ("Brown") (Ex. C), and U.S. 6,203,569 ("Wijay") (Ex. B)[1].  Dr. Moore went on to explain how the equivalents theory presented by Dr. Jang at trial (and reiterated at the hearing) ensnared the very same prior art.  He explained, moreover, that *every* hypothetical claim (even Dr. Jang's improper ones) ensnared the Wijay reference, which the PTO found to anticipate much narrower claims of the '021 patent.

Recognizing this, Dr. Jang made several desperate arguments to avoid Wijay entirely.  He argued that the existing claims cover only "tubular" stents, in contravention of the PTO's conclusions and Dr. Jang's own positions in this case. He argued that Wijay is not enabled, applying the wrong standard for that analysis. And he relied on a document never before produced to the PTO or to BSC to argue that he "conceived" of his invention before Wijay's invention.  In this too, Dr. Jang applied the wrong legal standard.  Under the correct standard, which requires a clear disclosure of all elements of the claimed invention, Dr. Jang failed to meet his burden of proving an earlier conception date, as shown by his own testimony and that of Mr. Lee.  In short, Dr. Jang's arguments to avoid Wijay – like his arguments as to "waiver" – are legally and factually insufficient.  Because it is Dr. Jang's burden to prove that the scope of equivalents necessary to capture Express does not ensnare the prior art, and because he failed to meet that burden, judgment of non-infringement should be entered in BSC's favor.

## II.   ARGUMENT

### A.   Dr. Jang Failed To Meet His Burden Of Presenting Proper Hypothetical Claims

The Federal Circuit has made clear that a proper hypothetical claim must be "sufficient in scope to *literally* cover the accused product."  *Wilson Sporting Goods*,

---

[1] All exhibits referenced herein refer to the Joint Exhibit List filed August 25, 2015 unless otherwise indicated.

904 F.2d at 684 (emphasis in original).  Because the ensnarement analysis can take place *only* if the jury has found no literal infringement (and, thus, has proceeded to the alternative theory of infringement under the doctrine of equivalents)[2], the hypothetical claim necessarily must be **broader** (*i.e.*, contain fewer limitations) than the literal claim.  Both of Dr. Jang's two proposed hypothetical claims fail this basic requirement, as explained below.

### 1.   Jang's Hypothetical Claim No. 3 Narrows The Scope Of The Claims

Dr. Jang's Hypothetical Claim No. 3 broadened one part of the claim but narrowed another, an approach expressly rejected by the Federal Circuit in *Streamfeeder*, 175 F.3d at 983 (ruling that "the district court erred as a matter of law in adopting Streamfeeder's hypothetical claim, because such a claim impermissibly narrowed the gate member limitation").  The paragraph Dr. Jang has changed reads:

> the first connecting strut ~~intermediate section being non-parallel to the first connecting strut proximal and distal sections~~ **column configured to provide increased flexibility compared to the first and second expansion columns**

Although Dr. Jang has broadened the original claim by eliminating the requirement that the first connecting strut have an "intermediate section being non-parallel to the first connecting strut proximal and distal sections," he has simultaneously *narrowed* the claim *by adding a requirement* that the "first connecting strut column

---

[2] At trial, Dr. Jang insisted – without citing any authority in support of the proposition – that the jury could find both literal infringement and infringement under the doctrine of equivalents concurrently.  The Court rejected this argument. Trial Tr., July 6, 2015, P.M. Session, 26:11-28:12.  In so doing, it followed precedent from the Supreme Court and elsewhere making clear that infringement under the doctrine of equivalents is *an alternative* to literal infringement.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346-47 (Fed. Cir. 2013).

[be] configured to provide increased flexibility compared to the first and second expansion columns."  The addition of the "flexibility" limitation restricts the number of devices and prior art references that the claim would cover, thereby *narrowing* the claim.  As Dr. Moore explained, "previously there was nothing in Claim 1 about flexibility, whether the connecting strut is more or less flexible than the expansion columns.  So, really, the limitation that [it] provides increased flexibility compared to the expansion columns narrows the claim down relative to the case where it could be stiffer."  (Hr'g Tr. Part 2, 64:22-65:2.)  Mr. Lee admitted that the claim was narrowed through the addition of this requirement.  (*Id.* at 12:1-4.)

Dr. Jang's motivation for this approach is clear.  Without the narrowing language requiring flexibility, the hypothetical claim clearly covers stent designs with straight connectors such as Brown, which discloses all of the other claim elements (and lacks only the non-parallel intermediate sections that Hypothetical Claim No. 3 eliminates), as shown below:



Mr. Lee admitted that, but for the addition of the "more flexible" requirement, Hypothetical Claim No. 3 would cover Brown: "Q. We have the

- 4 -

Brown chart you put up with counsel.  There's number 12.  There's the red language.  There you say Brown has been excluded by the language that's been added, right?  A. Yes."  (Hr'g Tr. Part 2, 11:7-11.)  In *Streamfeeder*, the Federal Circuit rejected such attempts to sidestep the prior art, stating "one cannot, in the course of litigation and outside of the PTO, cut and trim, expanding here, and narrowing there, to arrive at a claim that encompasses an accused device, but avoids the prior art."  175 F.3d at 983.  Because Jang's Hypothetical Claim No. 3 violates *Streamfeeder*'s rule against "narrowing and broadening a claim at the same time" it is improper and must be rejected.  *Id.* at 983.

## 2.     Jang's Hypothetical Claim No. 5 Fails To Broaden The Scope Of The Claim

Dr. Jang's Hypothetical Claim No. 5 fails to broaden the claims at all, resulting in a hypothetical claim of exactly the same scope as the original claims. The only change from the original claim language in Dr. Jang's Hypothetical Claim No. 5 is the addition of the words "at least" to one of the claim elements,[3] which has ***precisely the same effect*** as the Court's instruction to the jury regarding the word "comprising," which is used in Claim 1 of the '021 patent:  "A patent claim that uses the term 'comprising' is infringed as long as every element of the claim is present in the accused Express stent.  One cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."  (Jury Instruction No. 26.)  In light of the Court's instruction regarding "comprising," there is ***no difference*** between Hypothetical Claim No. 5 and the

---

[3] Dr. Jang's Hypothetical Claim No. 5 thus contains the claim element: "a first connecting strut including **at least** a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section, the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and the first connecting strut distal section being coupled to the proximal end of the second expansion strut pair of the second expansion column."

1  original claim language that the jury found not infringed by the Express stent.

2  In other words, Dr. Jang's Hypothetical Claim No. 5 does not broaden the

3  original claims in any way – *i.e.*, it does not remove any of the requirements of

4  those claims.  It contains all of the same elements, in exactly the same form, as the

5  original claims, including elements that the jury must have found not literally

6  infringed.  For example, the hypothetical claim requires the connecting strut to

7  possess an intermediate section that is non-parallel to the distal and proximal

8  sections.  It also requires that the distal end of the first expansion strut pair be

9  connected to the proximal end of the second (in a "peak to peak" connection).  It

10  also requires that the two expansion strut pairs be "longitudinally offset."  As

11  Dr. Moore explained, the jury, in reaching its verdict of no literal infringement,

12  must have found that the Express stent failed to meet these elements.  (Hr'g Tr. Part

13  2, 46:10-50:19.)  For his part, Mr. Lee did not even attempt to explain how Express

14  could infringe Dr. Jang's Hypothetical Claim No. 5 while not literally infringing

15  original claims 1 and 8.

16  Because Dr. Jang's Hypothetical Claim No. 5 cannot literally cover Express

17  without contradicting the jury's verdict, it is an improper hypothetical claim and

18  must be rejected.  *Int'l Visual*, 991 F.2d at 772 ("[The hypothetical claim] approach

19  requires a court to visualize a hypothetical claim ***that enlarges the scope of an***

20  ***issued claim so that it literally covers an accused device***") (emphasis added).

21  Because it is Dr. Jang's burden to "persuad[e] the court that the hypothetical claim

22  is patentable over the prior art," *DePuy Spine*, 567 F.3d at 1325, judgment of non-

23  infringement should be entered in BSC's favor as a matter of law.

24  **B.      BSC Presented The Only Proper Hypothetical Claim, Which**
**Ensnares The Prior Art**
25

26  Even though Dr. Jang has the burden of presenting a proper hypothetical

27  claim to demonstrate that the range of equivalents at issue does not ensnare the

28  prior art, BSC proposed its own hypothetical claim for the Court's consideration.

- 6 -

Dr. Moore explained how BSC presented a single, unified theory of non-infringement at trial.  (Hr'g Tr. Part 2,  46:10-50:19.)  Under that theory, the macro-elements (illustrated in red below) and micro-elements (blue) were each expansion columns connected by a straight connector (green):



*Id*. at 46:18-47:19.

Given what the jury therefore must have found in reaching its verdict of no literal infringement, Dr. Moore further explained how each of the alterations in its proposed hypothetical claim is necessary for the hypothetical claim to cover the Express stent literally, as required under *Wilson Sporting Goods* and *International Visual Corp*.  The hypothetical claim must cover both straight connecting struts and those with "non-parallel" intermediate sections (with two radii of curvature as required in dependent claim 8).  *Id*. at 49:1-25, 50:14-19.  It must cover expansion strut pairs that are non-offset and those that are offset.  *Id*. at 50:1-13.  And it must cover expansion strut pairs joined in peak-to-valley fashion as well as those connected in a peak-to-peak fashion as required in original claim 1.  *Id*. at 47:20-48:25.  Accordingly, BSC presented the following hypothetical claim:

1. A stent in a non-expanded state, comprising:

a first expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the first expansion strut pair that couples the first and second expansion struts at a distal end of the first expansion strut pair, a plurality of the first

expansion strut pair forming a first expansion column;

a second expansion strut pair including a first expansion strut positioned adjacent to a second expansion strut and a joining strut of the second expansion strut pair that couples the first and second expansion struts of the second expansion strut pair at a proximal **or distal** end of the second expansion strut pair. a plurality of the second expansion strut pair forming a second expansion column;

a first connecting strut including a first connecting strut proximal section. a first connecting strut distal section and a first connecting strut intermediate section, the first connecting strut proximal section being coupled to the distal end of the first expansion strut pair in the first expansion column and the first connecting strut distal section being coupled to the **distal or** proximal end of the second expansion strut pair of the second expansion column, a plurality of the first connecting strut forming a first connecting strut column that couples the first expansion column to the second expansion column, the first connecting strut intermediate section being **either** nonparallel to the first connecting strut proximal and distal sections **or parallel to them**;

wherein the first expansion strut of the first expansion strut pair in the first expansion column has a longitudinal axis offset **or non-offset** from a longitudinal axis of the first expansion strut of the second expansion strut pair in the second expansion column.

8. The stent of claim 1 wherein **there is either** a first radius of curvature ~~is formed~~ where the first connecting strut proximal section is coupled to the first connecting strut intermediate section **or the two are straight** and **there is either** a second radius of curvature ~~is formed~~ where the first connecting strut distal section is coupled to the first connecting strut intermediate section **or the two are straight**.

In contrast to Dr. Jang's hypothetical claims, BSC's hypothetical claim properly *broadens* the scope of the original claim by relaxing its requirements (*e.g.*, "nonparallel" becomes "either nonparallel or parallel"), resulting in a claim that would cover devices and prior art not covered by the original, more limited claim.

- 8 -

There is no real dispute that BSC's hypothetical claim covers the prior art. It covers the Lau patent, as Dr. Moore explained. *Id.* at 50:20-53:13.



It covers the Brown patent even more closely (requiring only the change to the "non-parallel" and "radii of curvature" limitations), as Dr. Moore also explained. *Id.* at 53:14-54:18.[4]



_____

[4] Mr. Lee's suggestion that a straight connecting strut (as disclosed in Lau and Brown) would not have an "intermediate section" and, thus, that BSC's hypothetical claim would ensnare neither reference (Hr'g Tr. Part 2, 38:4-6) is incorrect. As Dr. Moore pointed out, any connecting strut, including a straight one, may be divided into three sections. (*Id.* at 51:17-24.) To suggest that an intermediate section must be geometrically distinct would, moreover, render the separate non-parallel requirement superfluous.

DEFENDANTS' CLOSING BRIEF ON ENSNAREMENT

And BSC's hypothetical claim covers the Wijay patent. *Id*. at 54:19-21, 55:13-56:2. Indeed, as Dr. Moore pointed out, none of the changes that BSC made to the original claims is necessary for the claims to ensnare Wijay. *Id*. at 56:3-56:7. The original language covers Wijay in and of itself (as the Patent Office found in connection with claims 1 and 23).

## C. The Equivalents Theory That Dr. Jang Advanced At Trial Ensnares The Prior Art

BSC also showed how the doctrine of equivalents theory Dr. Jang urged at trial ensnared the prior art. (Hr'g Tr. Part 2, 56:21-59:10.) Specifically, Dr. Jang argued at trial that the micro-element of the Express stent was equivalent to the connecting strut column disclosed in the '021 patent, even if the jury found that the micro-element included expansion strut pairs and met the definition of an expansion strut column. Dr. Jang did not argue otherwise at the ensnarement hearing, and, in fact, reiterated the same argument in questioning Dr. Moore. *Id.* at 75:19-24 ("You understand Dr. Jang's theory of equivalents, right, that is that the Micro element … as a whole functions as a connecting column, not just straight connectors, not just the Micro element, but the two together function as a connecting column?"). Thus, at the hearing, BSC presented a version of Claims 1 and 8 of the '021 patent that reflects the equivalents theory Dr. Jang advanced at trial by adding the following phrase: "the first connecting strut potentially comprising one or more expansion strut pairs; the first connecting strut column potentially comprising one or more expansion columns." This added language allows for the possibility that the connecting strut would include expansion strut pairs and function as an expansion strut columns. *Id*. at 56:15-57:4.

Dr. Moore explained how this version of the claim language also covers the prior art. (Hr'g Tr. Part 2, 56:21-59:10.) For instance, he explained how a connecting strut could be "drawn" from Lau's expansion columns in the same way that Dr. Jang and his experts attempted to "draw" a connecting strut from the micro-

- 10 -

elements of Express (*Id*. at 58:4-13):



And he explained how the same could be said of Brown.  *Id*. at 58:25-59:6.



Thus, the only doctrine of equivalents theory advanced by Dr. Jang at trial also ensnares the prior art.

### D.   Even Dr. Jang's Improper Hypothetical Claims Ensnare Wijay

Dr. Moore explained how every hypothetical claim that had been advanced by either party ensnares the Wijay patent.  Indeed, even Dr. Jang's Hypothetical No. 3, which was deliberately narrowed to avoid the prior art, ensnares Wijay.  The Wijay patent (titled simply "Flexible Stent") focuses specifically on the flexibility of the "cross-ties."  As Dr. Moore testified, the cross-ties disclosed in Wijay "correspond[] to the connecting struts in the language of the Jang patent."  (Hr'g Tr. Part 2, 67:2-3.)  The patent's abstract and summary of invention describes "crossties that have flexibility by having at least one bend."  (Wijay, Col. 3:61-63.) The patent specification also discloses that "[f]lexibility is also provided in the longitudinal direction as the crossties may elongate in that direction without putting the stent … into a kink or a longitudinal bind."  (Wijay, Col. 5:13-15.)  When asked how the invention in Wijay achieves the desired flexibility, Dr. Moore explained that the Wijay patent "talks about the cross-ties or the connecting struts having bends, a single bend, a double bend, as being preferred geometries for their connection struts."  (Hr'g Tr. Part 2, 67:15-17.)  Moreover, as shown below, Wijay discloses every structural component of the original claims:



Wijay thus contains every limitation of the original Claim 1.  This is further

evidenced by the PTO's conclusion that Wijay anticipated Claim 23 of the '021 patent, which contains all of Claim 1's requirements and more.  (JANG 0027284) ('021 patent, 18:9-40, 19:53-21:15).

Clearly recognizing  that Wijay ensnares any of the hypothetical claims advanced at the recent hearing, Dr. Jang tried desperately to avoid it, raising three new arguments.  *First*, he argued that claim 1 is limited to "tubular" stents and that Wijay discloses only a wire stent.  *Second*, he argued, for the first time at the hearing, that Wijay was not enabled.  *Third*, he attempted to rely on a never before produced "conception" document to argue, for the first time, that Wijay was not even prior art.  As explained below, all of these arguments lack merit.

### 1.     Claims 1 And 8 Are Not Limited To Tubular Stents

In arguing that claim 1 should be limited to a "tubular" stent, Dr. Jang invoked statements made by BSC during reexamination of claims 23, 24 and 36 of the '021 patent in 2009-2011.  The PTO explicitly rejected that argument, however, concluding that that "[t]here is nothing in claims 23 and 24 to limit the claims to a cut tube stent."  Ex. D at JANG 0027172.  Similarly, nothing in claims 1 or 8 limits them to a tubular stent.  Indeed, in this very case, Dr. Jang argued successfully against such a "tubular" requirement.  (Dkt. 72, 8:12-12:11.)  Adding a tubular limitation now also completely contradicts Dr. Jang's earlier Markman position, in which he stated that such a structure was nowhere "described, let alone defined," in the '021 patent.  (Dkt. 57, 18:23-25.)  Having taken such a clear position on this issue earlier in this case, Dr. Jang should be estopped from reversing course and arguing that the claims only apply to tubular stents.

### 2.     Dr. Jang Failed To Prove That Wijay Is Not Enabled

Dr. Jang has also failed to show that Wijay is not enabled.  "[W]hen an accused infringer asserts that a prior art patent anticipates specific patent claims, the infringer enjoys a presumption that the anticipating disclosure also enables the

claimed invention." *Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312, 1316 (Fed. Cir. 2008); *see Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).  This presumption applies in the district court as well as the PTO.  *In re Antor Media Corp.*, 689 F.3d 1282, 1288 (Fed. Cir. 2012). Furthermore, this presumption can only be rebutted by a preponderance of the evidence.  *In re Sasse*, 629 F.2d 675, 681 (C.C.P.A. 1980).  Dr. Jang offered no evidence at the hearing sufficient to rebut the presumption of enablement.

Mr. Lee applied the wrong legal standard in his analysis; he understood that for Wijay to be enabled for purposes of anticipation, it must meet the standard imposed by 35 U.S.C. § 112 – *i.e.*, a person of ordinary skill in the art must be able to practice or make the invention without undue experimentation.  (Hr'g Tr. Part 2, 29:16-30:3 ("[M]y concept of what that is is I should be able to practice or make the invention without undue experimentation."))  Enablement of an anticipatory reference, however, has a different focus.  *Antor Media Corp.*, 689 F.3d at 1291.  It does not matter whether the prior art reference enables a person of ordinary skill in the art to use or make the invention disclosed in the reference itself:  "Even if a reference discloses an inoperative device, it is prior art for all that it teaches." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).  The prior art reference need only disclose features that anticipate portions of the claimed invention.  "A prior art reference need not enable its full disclosure; it only needs to enable the portions of its disclosure alleged to anticipate the claimed invention."  *Antor Media Corp.*, 689 F.3d at 1291; *see also Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005) ("While section 112 'provides that the specification must enable one skilled in the art to "use" the invention … section 102 makes no such requirement as to an anticipatory disclosure.'").  Thus, the standard for enablement of an anticipatory reference and the section 112 standard for enablement of an asserted patent are very different.

*Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1325 (Fed. Cir. 2005) ("The standard for what constitutes proper enablement of a prior art reference for purposes of anticipation under section 102, however, differs from the enablement standard under section 112.").

In any case, the PTO's own express findings support the conclusion that Wijay is enabled.  As Mr. Lee confirmed, the PTO has previously found Wijay to be enabled on two separate occasions: first, when the patent was issued and again during the reexamination of the '021 patent, when the examiner decided that Wijay anticipated claims 23 and 24.  (Hr'g Tr. Part 2, 28:21-29:4 ("Yeah.  When it's issued, then they would think it would be enable at that time."), 30:8-12. ("[I]f the patent office had found that Wijay was not enabled, it wouldn't have cancelled Claims 23 and 24 of the '021 patent, right?  A: That's… the perspective of the patent office, yes.")).  Dr. Moore explained that Wijay enabled the making of both a wire and laser-cut version of the stent.  (Hr'g Tr. Part 2, 60:2-61:7).  For all of these reasons, Dr. Jang did not even come close to overcoming the presumption that Wijay's is enabled.

### 3.  Dr. Jang's Attempt To "Swear Behind" Wijay Fails

Dr. Jang's eleventh-hour attempt to swear behind Wijay is similarly unavailing.  Mr. Lee again applied the wrong legal standard in his analysis, stating his belief that the complete description standard would allow for "someone of ordinary skill in the art [to] imagine a substantial or insubstantial change to it, or an easy change" and then make that change in order to meet the limitation of the patent claims.  (Hr'g Tr. Part 2, 35:8-36:5.)  To prove priority, however, the conception date of the ***complete invention*** must be clearly established.  *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985).  Conception is the complete performance of the mental part of the inventive act, "the formation of a ***definite and permanent idea of the complete and operative invention***, as it is thereafter to be applied in practice."

- 15 -

*Id.* (quoting *Gunter v. Stream*, 573 F.2d 77, 80 (C.C.P.A. 1978) (emphasis in original) (citing *Mergenthaler v. Scudder*, 11 App. D.C. 264, 276 (D.C. Cir. 1897)). Proving conception thus requires a party to show possession of ***every feature*** recited in the claim, and that ***every limitation*** of the claim must have been known to the inventor at the alleged time of conception.  *Id*. (emphasis added) (citing *Davis v. Reddy*, 620 F.2d 885, 889 (C.C.P.A. 1980)).

The 1995 diagrams Dr. Jang produced in this litigation the night before the hearing (whether or not they were given to Dr. Jang's counsel in 2004, as he testified) do not come close to meeting this standard.  Mr. Lee and Dr. Jang's counsel admitted that the "peak-to-peak" requirement is an essential element of the '021 patent.  (Hr'g Tr. Part 1, 56:16-24; Hr'g Tr. Part 2, 36:6-16.)  Yet Dr. Jang's 1995 drawings, which Dr. Jang and Mr. Lee both describe as "cartoons," lack this feature.  (Hr'g Tr. Part 2, 34:1-3; 36:6-20, 69:17-71:3.)  Instead, as Mr. Lee and Dr. Jang admitted, they show connecting struts that connect expansion struts from the middle of the expansion struts rather than the peaks in a side-to-side fashion.  (Hr'g Tr. Part 1, 109:22-110:7; Hr'g Tr. Part 2, 71:1-11.)  Dr. Moore testified that this side-to-side design shown in the diagrams would render such a stent very difficult to crimp, and its ability to deploy and perform would also be uncertain.  (Hr'g Tr. Part 2, 71:8-15.)  Dr. Jang's 1995 diagrams thus fail to disclose clearly all of the features and limitations of the '021 patent and thus fail to prove conception.[5]

---

[5] Testimony from Mr. Lee and Dr. Jang that subsequent modifications could have been made to create the undisclosed elements is irrelevant.  In *Izume Products Co. v. Koninklijke Philips Electronics N.V.,* the court found that something as simple as changing the orientation of blades (with respect to the direction of rotation) in an electric rotary razor from vertical in the first conception to inclined in the patent did not entitle the patent to the earlier conception date.  315 F. Supp. 2d 589, 609-10 (D. Del. 2004).  The court rejected the plaintiff's argument that "common sense" dictated changing the orientation of the blades, and held that this obviousness did not defeat the requirement that conception must encompass all limitations of the claimed invention.  *Id.*

1    Finally, Dr. Jang's new assertion that he conceived of his invention in the

2    Fall of 1995 is directly contrary to statements made under oath to this Court. The

3    original provisional patent application date was April 26, 1996.  (Trial Ex. 2941.)

4    At trial, Mr. Lee told the jury that this date represented "when the invention was

5    established"; it is the date on which "Dr. Jang came up with the invention."  (Trial

6    Tr., June 25, 2015, A.M. Session at 73:12-25.)  He made the same point in sworn

7    declarations to the Court.  (Dkt. 369 ¶ 39.)  Dr. Jang should not be permitted at this

8    late date to rely on previously unproduced documents in an attempt to contradict his

9    own prior sworn statements.

10   **E.    Dr. Jang's "Waiver" Arguments Lack Merit**

11   As the Court noted at the hearing, "[ensnarement is] not properly called a

12   'defense', I think as both sides have acknowledged."  (Hr'g Tr. Part 1, 4:17-19.)

13   Dr. Jang bears the burden of proving "that the hypothetical claim is patentable over

14   the prior art." *DePuy Spine*, 567 F.3d at 1323.  BSC's only burden was to identify

15   prior art that would be ensnared under Dr. Jang's equivalents theory, as the Court

16   also acknowledged: "Well, they don't have to raise it as a defense.  They have to

17   give you notice, I think is perhaps a better way of looking at it."  (Hr'g Tr. Part 1,

18   23:9-11.)

19   The Federal Court has also made clear that "the burden of coming forward

20   with evidence to show that the accused device is in the prior art is upon the accused

21   infringer" ***only after*** "the patentee has made a prima facie case of infringement

22   under the doctrine of equivalents." *Nat'l Presto Indus., Inc. v. W. Bend Co.*,

23   76 F.3d 1185, 1192 (Fed. Cir. 1996).  As the Court acknowledged in its questions to

24   BSC's counsel, "the issue of whether the plaintiff was going to be allowed to

25   introduce the doctrine of equivalents [was decided] rather late in the game."  (Hr'g

26   Tr. Part 1, 10:14-18.)  Even so, and despite the fact that Dr. Jang never disclosed a

27   fully development theory of equivalents, BSC raised ensnarement as soon as

28

1    Dr. Jang indicated that he might pursue an equivalence theory.  BSC raised

2    ensnarement in its expert report on non-infringement in 2013, even though

3    Dr. Jang's expert report on infringement included only barebones references to the

4    doctrine of equivalents.  BSC later moved to exclude Dr. Jang's purported doctrine

5    of equivalents theory, emphasizing that "the doctrine of equivalents may not extend

6    the scope of the claims to 'ensnare' the prior art." (Dkt. 498 at 2.)  By the time the

7    motions *in limine* were decided in February of 2015 and it became clear that

8    Dr. Jang would be permitted to argue equivalents at trial, BSC had already made

9    reference to ensnarement several times and identified the prior art references on

10   which it would rely.  In doing so, BSC met its burden of identifying the prior art at

11   issue.  *See Streamfeeder*, 175 F.3d at 983 (an accused infringer "satisfies its burden

12   of going forward … by presenting prior art which shows that the asserted range of

13   equivalence would encompass they prior art.")  *Interactive Pictures Corp. v.*

14   *Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001) (an accused infringers

15   must "produc[e] evidence of prior art to challenge a hypothetical claim")

16        The Court asked Dr. Jang's counsel during the ensnarement hearing

17   "wouldn't it be inconsistent, given that I ruled that the mentions in the expert

18   reports and the mention of the doctrine of equivalents back in 2006 were sufficient

19   for you to preserve and then rely on the doctrine of equivalents at trial … to then

20   say that the issue of ensnarement wasn't raised, wasn't preserved by the defense by

21   their reference to it once it was clear that you were trying to raise the doctrine of

22   equivalents?"  (Hr'g Tr. Part 1, 24:13-20.)  As the Court's question suggests,

23   requiring BSC to raise the ensnarement issue in detail when Dr. Jang had not

24   disclosed his theory of infringement under the doctrine of equivalents in any detail

25   would not only be inconsistent, but would, in effect, improperly shift the burden on

26   the issue from Dr. Jang to BSC.[6]

27

28   _____

[6] Dr. Jang relies on *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F. Supp.

- 18 -

1    Dr. Jang's reliance on *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed.

2    Cir. 2000) is unpersuasive.  First and foremost, insofar as *Fiskars* describes

3    ensnarement as a "defense," it is contrary to the Federal Circuit's later opinion in

4    *Depuy Spine* (and the balance of that Court's precedent), which explains that

5    ensnarement is not an affirmative defense imposing the burden of persuasion on the

6    defendant.  567 F.3d at 1323 (holding that ensnarement, like prosecution history

7    estoppel, is "a legal limitation[] on the application of the doctrine of equivalents.").

8    Even if *Fiskars* were still in force with regard to ensnarement, the accused infringer

9    in that case failed to raise the ensnarement issue ***at all*** – it did not assert that a

10   hypothetical claim covering the accused device would ensnare the prior art or

11   identify any such prior art; instead, the defendant merely argued that it was the

12   plaintiff's burden to prove that its equivalents theory did not ensnare the prior art.

13   221 F.3d at 1323.  In contrast, as explained above, BSC made Dr. Jang specifically

14   aware of its ensnarement position and identified the relevant prior art in its

15   March 17, 2014 pretrial memorandum.  (Dkt. 491 at 8.)

16   ───────────────────────────────────────

17   3d 499 (D. Del 2014), for the proposition that an accused infringer must provide an
     element-by-element analysis of the prior art before trial in order to avoid waiving

18   ensnarement.  (Dkt. 686 at 5, n.3.)  As BSC has previously shown, however, the
     case law is clear that the ensnarement theory can be raised for the first time

19   relatively late in a case.  *See Streamfeeder*, 175 F.3d at 980-81 (defendant first
     raised the issue of ensnarement, which the court addressed on the merits, at

20   summary judgment); *EveryScape, Inc. v. Adobe Sys., Inc.*, 31 F. Supp. 3d 322, 323

21   (D. Mass. 2014) (same); *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 425,
     445-46 (E.D. Tex. 2011) (allowing defendant to present prior art and ensnarement

22   theory raised for the first time in summary judgment reply); *Mars, Inc. v. Coin*

23   *Acceptors, Inc.*, No. CIV-A-90-49-JCL, 1996 WL 34385063, at *1 (D.N.J. Sept. 3,
     1996) (although defendant did not raise ensnarement in summary judgment motion

24   for non-infringement under doctrine of equivalents, court permitted defendant to
     bring subsequent motion directed specifically to issue of ensnarement).

25   Additionally, "the ensnarement inquiry is separate and distinct from the jury's

26   element-by-element equivalence analysis."  *DePuy Spine*, 567 F.3d at 1323.  The
     footnote in *Juniper* cited by Dr. Jang is specific to the procedures of the court in

27   question and is inapposite here.

28

1

## III.   CONCLUSION

For the reasons shown above and at the ensnarement hearing, Dr. Jang failed to meet his burden of proposing a proper hypothetical claim.  The evidence establishes that any proper hypothetical claim would ensnare the prior art, as would any claim based on the doctrine of equivalents theory Dr. Jang advanced at trial.  In any event, the hypothetical claims presented by Dr. Jang at the hearing as well as his theory of infringement under the doctrine of equivalents at trial both ensnare the prior art.  Judgment should therefore be entered in favor of BSC.

1

2  Dated:  August 25, 2015                    By: */s/Amie Medley*
3                                                 Wallace Wu (State Bar No. 220110)
                                                  Wallace.Wu@aporter.com
4                                                 Amie Medley (State Bar No. 266586)
5                                                 Amie.Medley@aporter.com
                                                  Allen Secretov (State Bar No. 301655)
6                                                 Allen.Secretov@aporter.com
7                                                 777 South Figueroa Street
                                                  Los Angeles, California 90017-5844
8                                                 Tel: (213) 243-4000
9                                                 Fax: (213) 243-4199

10                                                Matthew Wolf (*pro hac vice*)
11                                                Matthew.Wolf@aporter.com
                                                  Edward Han (*pro hac vice*)
12                                                Ed.Han@aporter.com
13                                                John Nilsson (*pro hac vice*)
                                                  John.Nilsson@aporter.com
14                                                **ARNOLD & PORTER LLP**
15                                                555 Twelfth Street NW
                                                  Washington, DC 20004-1206
16                                                Telephone: 202.942.5000
17                                                Facsimile: 202.942.5999

18                                                *Attorneys for Defendants*
19                                                *Boston Scientific Corporation and*
                                                  *Boston Scientific Scimed, Inc.*
20

21

22

23

24

25

26

27

28

DEFENDANTS' CLOSING BRIEF ON ENSNAREMENT