O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| G. DAVID JANG, M.D., | ) Case No. EDCV 05-426-VAP(MRWx) |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER GRANTING JUDGMENT IN FAVOR OF DEFENDANTS** |
| BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; SCIMED LIFE SYSTEMS, INC., a Minnesota corporation, | ) |
| Defendants. | ) |

On July 8, 2015, a duly-empaneled jury in this case delivered its special verdict. The jury found in favor of Defendants Boston Scientific Corporation and Scimed Life Systems, Inc., (collectively, "BSC"), and against Plaintiff G. David Jang, M.D ("Dr. Jang") on the interrogatories inquiring whether Defendant's Express stents literally infringed Claims 1 and 8 of U.S. Patent 5,922,021 ("the '021 Patent"). The jury found in favor of Dr. Jang and against BSC on interrogatories inquiring

whether the Express stents infringed Claims 1 and 8 of the '021 Patent under the doctrine of equivalents. (See Doc. No. 661.)

Following the jury's findings in favor of Dr. Jang under the doctrine of equivalents, the Court set an evidentiary hearing concerning the ensnarement defense, pursuant to DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314 (Fed. Cir. 2009). On August 18, 2015, the Court conducted that evidentiary hearing. (See Doc. No. 711.) In lieu of closing arguments, the Court directed the parties to submit closing briefs, which were filed on August 25, 2015. (See Doc. No. 708 ("Defs.' Br."); Doc. No. 710 ("Pl.'s Br.").) Having considered the evidence and arguments presented at the hearing and the written submissions, the Court rules as follows.

**I. BACKGROUND**

"Ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art."[1] DePuy, 567 F.3d at 1322 (citing Wilson

---

[1] Though the defense of ensnarement was not a theory that was explicitly enumerated by the Supreme Court in Warner-Jenkinson as a legal limitation on the doctrine of equivalents, the Federal Circuit analogized the defense of ensnarement to prosecution history estoppel in DePuy. DePuy, 567 F.3d at 1323 ("Although Warner-Jenkinson did not explicitly mention 'ensnarement' as one of the 'various legal limitations on the application of the doctrine of equivalents' to be decided by a court, we have consistently treated it as such.").

Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 683 (Fed. Cir. 1990), overruled in part on other grounds, Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 92 n.12 (1993)). The defense of ensnarement is one of various "legal limitations on the application of the doctrine of equivalents." Id. at 1323 (quoting Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 n.8 (1997)). Ensnarement is a legal limitation that is decided by the court, either on a motion for partial summary judgment, or a motion for judgment as a matter of law at the close of evidence and after the jury verdict. Id.

Once a patentee invokes a theory of infringement under the doctrine of equivalents and the alleged infringer has raised an ensnarement defense, the initial burden rests on the alleged infringer to present "prior art which shows that the asserted range of equivalence would encompass the prior art . . . ." Streamfeeder, LLC v. Sure-Feed Sys., Inc., 175 F.3d 974, 983 (Fed. Cir. 1999). After the infringer satisfies this burden, the burden then shifts to the patentee "to show that [his] claim does not cover the prior art." Id.; see also DePuy, 567 F.3d at 1324 ("The burden of persuasion is on the patentee to establish that the asserted scope of equivalency would not ensnare prior art."). Where a jury has been empaneled as a finder of fact and has rendered

its decision, the court is to "presume that the jury resolved underlying evidentiary conflicts in [patentee's] favor [given that it prevailed at trial under the doctrine of equivalents]." <u>Wilson Sporting Goods</u>, 904 F.2d at 684.

**II. BSC DID NOT WAIVE ITS RIGHT TO RAISE ENSNAREMENT**

In Dr. Jang's opening brief filed before the ensnarement hearing, he argued that BSC's ensnarement defense should be stricken because it was pled insufficiently, and therefore BSC had not met its initial burden of presenting prior art. (Doc. No. 686.) BSC countered by arguing that ensnarement is not an affirmative defense that can be "waived" in the traditional sense, but instead "is a limitation that always governs the possible range of equivalents that a patentee may claim." (Doc. No. 684.) In addition to raising this issue in the opening briefs, the parties also made arguments with respect to waiver during the ensnarement hearing, as well as in their closing briefs.

The Court rejects BSC's contention that the defense of ensnarement cannot be waived. In <u>Fiskars, Inc. v. Hunt Mfg. Co.</u>, 221 F.3d 1318 (Fed. Cir. 2000), the Federal Circuit disallowed an ensnarement defense where the accused infringer "did not allege that its device is in the prior art, or that a hypothetical claim covering

its device would be unpatentable." 221 F.3d at 1323. As the alleged infringer had not met its initial burden to present prior art, "there was nothing for [the patentee] to rebut." Id.

In connection with the analogous defense of prosecution history estoppel, the Federal Circuit also has held that an alleged infringer's failure "to timely argue and support its prosecution history estoppel defense in district court" constituted a waiver of that argument. Yeu v. Kim, 904 F.2d 44, at *1 (Fed. Cir. 1990) (Table); see also Teva Pharm. USA, Inc. v. Sandoz, Inc., 876 F. Supp. 2d 295, 347 (S.D.N.Y. 2012) rev'd in part on other grounds, 723 F.3d 1363 (Fed. Cir. 2013) (declining to consider a prosecution history estoppel defense where the alleged infringer "waited until after trial to raise this defense."). Thus, an alleged infringer's leeway to assert an ensnarement defense is not unlimited, and certainly must be advanced prior to trial.[2]

---

[2] The Federal Circuit has not held that ensnarement is an affirmative defense that a party must raise at any particular stage of the proceedings. See Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC, 739 F.3d 694, 702 (Fed. Cir. 2014) (assuming for purposes of argument that the analogous theory of prosecution history estoppel was an affirmative defense, but that it did not need to be raised in the defendant's answer). District courts also have not reached consensus on the issue. See Deep9 Corp. v. Barnes & Noble, Inc., 772 F. Supp. 2d 1349, 1351 (W.D. Wash. 2011) (striking affirmative defense of prosecution history estoppel because it was not an affirmative defense, but allowing defendant to raise it later in the case).

The record in this case abounds with accusations of tardiness by both sides: BSC claims Dr. Jang did not raise timely his theory of infringement under the doctrine of equivalents, and Dr. Jang argues BSC failed to disclose its ensnarement defense in a timely fashion. Though the Court has considered the parties' respective arguments, it declines to reverse its prior ruling, i.e., that Dr. Jang's theory of infringement under the doctrine of equivalents was raised timely, and was properly before the jury.[3]  The Court also declines to find that BSC failed to respond timely with its assertion of the ensnarement defense.

Even assuming, without deciding, that BSC raised the ensnarement defense for the first time after the Court denied the defense's motion for summary judgment in 2014, BSC raised its contention that Dr. Jang's construction of the claim terms ensnared the prior art when it filed its in limine motions.[4]  Ensnarement can be raised after a court has heard summary judgment motions. See Juniper Networks, Inc. v. Palo Alto Networks, Inc., 15 F. Supp.

---

[3] Indeed, the Court held as much in response to BSC's motion in limine concerning this issue. (See Motion in Limine Order (Doc. No. 554) at 12-13.)

[4] In fact, BSC filed a motion in limine seeking to preclude Dr. Jang's theory under the doctrine of equivalents and filed its memorandum of contentions of fact and law stating that "the doctrine of equivalents may not be used to capture what was in the prior art," before the Court ruled on its motion for summary judgment. (See Doc. Nos. 491, 498.)

3d 499, 518 n.18 (D. Del. 2014) (denying summary judgment and stating that if the accused infringer wished to move forward with an ensnarement defense, "it [would] need to provide the court with a proffer before trial.").

The Court finds that BSC's references to the Lau, Brown, and Wijay patents in its motion in limine regarding the doctrine of equivalents and its pretrial memorandum are sufficient to "go[] forward" with its ensnarement defense.  See Streamfeeder, 175 F.3d at 983. Accordingly, the burden now shifts to Dr. Jang "to show that [his] claim does not cover the prior art." Id.

**III. DR. JANG'S HYPOTHETICAL CLAIMS ARE IMPROPER**

At the ensnarement hearing BSC argued that, as a threshold matter, Dr. Jang cannot meet his burden of showing that the claims of the '021 patent, as construed by the court, did not cover the prior art because his hypothetical claims violated principles espoused in Streamfeeder and Int'l Visual Corp. v. Crown Metal Mfg. Co., 991 F.2d 768 (Fed. Cir. 1993).  (Ensnarement Hearing A.M. Tr. at 70:25-71:15.)

While "[s]light broadening is permitted" during the drafting of a hypothetical claim, the "[h]ypothetical claim analysis . . . cannot be used to redraft granted

7

claims in litigation by narrowing and broadening a claim at the same time." Streamfeeder, 175 F.3d at 983. This is because "[w]holesale redrafting of granted claims during litigation by narrowing and expanding the claims at the same time in creating a hypothetical claim is not supported by [Federal Circuit] case law and it avoids the examination process." Id. Thus, a "hypothetical claim is only a device for limited, not substantial, inclusion of unclaimed subject matter and not for exclusion of unduly limiting subject matter." Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co., 204 F.3d 1360, 1366 (Fed. Cir. 2000).

Moreover, as explained by the Federal Circuit in Int'l Visual, where a patentee asserts claims under the doctrine of equivalents, he must put forward a hypothetical claim that is broader than the patented claim. 911 F.2d at 772 (analysis under the doctrine of equivalents "requires a court to visualize a hypothetical claim that enlarges the scope of an issued claim so that it literally covers an accused device and to determine whether that hypothetical claim would have been patentable over the prior art."); see also Wilson Sporting Goods, 904 F.2d at 685 ("The specific question before us, then, is whether [the patentee] has proved that a hypothetical claim, similar to claim 1 but broad

enough to literally cover [the accused infringer's product], could have been patentable.").

Dr. Jang has advanced two hypothetical claims, which the parties have referred to as hypothetical claims three and five. The Court discusses each in turn.

### 1. Hypothetical Claim Three Impermissibly Narrows the Claim

Dr. Jang's hypothetical claim three reads:

> the first connecting strut ~~intermediate section being non-parallel to the first connecting strut proximal and distal sections~~ **column configured to provide increased flexibility compared to the first and second expansion columns**

BSC contends this hypothetical claim broadens the original claim by eliminating the requirement regarding the location of the intermediate section, while simultaneously narrowing the claim by adding a requirement of increased flexibility. (Defs.' Br. 3-4.) BSC's expert witness Dr. Moore testified that, because there was nothing in the relevant sections of the original claims that provided for flexibility in this manner, this new requirement of flexibility in hypothetical claim three "narrows the claim down relative

to the case where it could be stiffer." (Ensnarement Hearing P.M. Tr. at 65:1-2.) On cross-examination, Dr. Jang's expert Mr. Lee admitted that the addition of the language concerning flexibility in the hypothetical claim three would narrow the original claims of the patent to exclude prior art. (Id. at 12:1-4.)

Dr. Jang counters this argument by contending that the flexibility limitation does not narrow the claim, but "instead replaces a limitation in a specific way" thereby broadening the claim. (Pl.'s Br. at 10.) Dr. Jang also argues that Streamfeeder is inapplicable here, because the Streamfeeder court found that it was impermissible only to alter two limitations (one narrowing, one broadening) to add requirements not present in the prior art. (Id.) Thus, Dr. Jang argues, Streamfeeder "does not prohibit 'narrowing' per se, but the addition of separate modifications that narrow the claim." (Id.)

The Court disagrees that Streamfeeder prohibits only a hypothetical claim that simultaneously broadens and narrows an original claim, or that it allows for some amount of narrowing. (Id. at 10-11.) As explained in Streamfeeder, and in Ultra-Tex, a case relying on Streamfeeder, a hypothetical claim that narrows the original claim in any way is impermissible. See Streamfeeder, 175 F.3d at 983; Ultra-Tex, 204 F.3d at

1366 (forbidding a patentee from using a "hypothetical analysis to 'freely redraft' its claim by impermissibly broadening and narrowing it at the same time."); see also 2 Annotated Patent Digest § 13:75.

   Moreover, the Court also disagrees that the addition of the language concerning flexibility actually broadens the language of the original claim.  (Pl.'s Br. at 11.) As Dr. Moore explained, the original claim here did not describe a connecting strut being more flexible than the expansion columns.  Thus, the addition of a flexibility limitation is a narrowing of the claim, thereby preventing the hypothetical claim from covering products that allow the expansion columns to be stiff, rather than flexible.

   Accordingly, as Dr. Jang's proposed hypothetical Claim Three improperly narrows the claims of the original patent, it is impermissible in light of Streamfeeder and must be rejected.

### 2. Hypothetical Claim Five Impermissibly Fails to Broaden the Claim

Dr. Jang's hypothetical Claim Five reads:

> a first connecting strut including **at least** a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section . . .

BSC argues that the sole addition of "at least" to the language of hypothetical claim five is impermissible because it fails to broaden the claims of the original patent, thereby "resulting in a hypothetical claim of exactly the same scope as the original claims." (Defs.' Br. at 5.) This is because the supposedly broadened hypothetical claim "does not remove any of the requirements of [claims of the original patent]," and thus, in other words, "[i]t contains all of the same elements, in exactly the same form, as the original claims . . . ." (Id. at 6.)

Dr. Jang contends that hypothetical claim five is broader because it "clarifies that the connecting strut, like the Micro elements, may have additional 'metal.'" (Pl.'s Br. at 13.)

12

As noted above, <u>Int'l Visual</u> requires the court to "visualize a hypothetical claim that enlarges the scope of an issued claim so that it literally covers an accused device and to determine whether that hypothetical claim would have been patentable over the prior art." 991 F.2d at 772. Thus, it follows that if the patentee's hypothetical claim does not enlarge the scope of the original claim, the hypothetical claim must be rejected.

The Court agrees with BSC that the language of hypothetical claim five does not broaden the language of any claim of the original patent, as it does not remove any requirement of those claims; indeed, adding "at least" in the context of the claim language does not broaden it at all. As BSC argues, even with this addition, the hypothetical claim still "contains all of the same elements, in exactly the same form, as the original claims . . . ." (Defs.' Br. at 6.)

Accordingly, as Dr. Jang's proposed hypothetical claim five fails to broaden original claims of the patent, it is impermissible in light of <u>Int'l Visual</u> and must be rejected.

### IV. CONCLUSION

For the foregoing reasons stated, the Court finds BSC is entitled to entry of judgment in its favor and against

1  Dr. Jang on the claims that the Express stents infringed
2  Claims 1 and 8 of the '021 Patent under the doctrine of
3  equivalents. The jury having rendered its verdict on the
4  special interrogatories on the theory of liability for
5  literal infringement in favor of BSC, BSC therefore is
6  entitled to a final judgment in its favor on all claims,
7  and shall submit a Proposed Judgment.

10  Dated: September 29, 2015          _____
11                                       VIRGINIA A. PHILLIPS
                                         United States District Judge